ORIGINAL

FILED
Clerk
District Court

DEC 1 7 2018

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**Bruce Berline, Esq.**
**Berline & Associates, LLC**
Macaranas Building, Second Floor
P.O. Box 5682 CHRB
Garapan, Saipan, MP 96950
Telephone (670) 233-3663/5261
Facsimile (670) 233-5262

Attorney For Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

**CV  18-00030**

| | |
|---|---|
| TIANMING WANG, DONG HAN, YONGJUN MENG, LIANGCAI SUN, YOULI WANG, QINGCHUN XU, and DUXIN YANG,<br><br>Plaintiffs,<br><br>vs.<br><br><br>GOLD MANTIS CONSTRUCTION DECORATION (CNMI), LLC,<br><br>Defendant. | CIVIL ACTION NO. 18-_____<br><br>**COMPLAINT** |

**INTRODUCTION**

1.      Plaintiffs are six men from China who paid large fees based on promises of high-paying construction jobs in Saipan. Instead, their employer Gold Mantis - one of the firms hired to construct the Imperial Pacific casino - forced them to labor for long hours for below minimum wage under extremely dangerous conditions.

-1-

2.     The Imperial Pacific construction site had an injury incidence rate above the national average. There were safety violations in plain sight, and employees received neither adequate training nor protective equipment. Rather than seek to improve conditions on the worksite, Imperial Pacific and its contractors sought to conceal the severity of the problem from government authorities, medical providers, and any other party that might hold them accountable.

3.     Each of the Plaintiffs suffered a physical injury while working as an employee of Gold Mantis, including a badly burnt leg, scalded hand, and partially severed finger. Not only did Gold Mantis refuse to take the injured workers to the hospital, but in order to keep hidden their own illegal practices, also threatened Plaintiffs that they risked being arrested if they sought medical attention on their own. Thus, Plaintiffs were left to care for these injuries on their own.

4.     Gold Mantis never purchased workers compensation insurance for these employees. Despite the fact that Plaintiffs sustained serious and severe injuries, missed time from work, and paid medical expenses out of their own pockets, Gold Mantis never compensated them a penny for the injuries they suffered at work. Even after Plaintiffs' attorneys contacted Gold Mantis concerning the injuries, Gold Mantis still denied that the workers were its employees and refused to take any responsibility. Accordingly, Plaintiffs now bring this action seeking compensation for the multitude of damages stemming from those injuries.

**JURISDICTION**

5.     This Court has jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(a)(2).

**VENUE**

6.     Venue is proper, pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to this cause of action occurred in the Commonwealth of the Northern Mariana Islands.

**PARTIES**

7.     Plaintiff Tianming Wang (Mr. Tianming Wang) is a resident and citizen of the People's Republic of China.

8.     Plaintiff Dong Han (Mr. Han) is a resident and citizen of the People's Republic of China.

-2-

1       9.     Plaintiff Yongjun Meng (Mr. Meng) is a resident and citizen of the People's Republic of

2  China.

3       10.    Plaintiff Liangcai Sun (Mr. Sun) is a resident and citizen of the People's Republic of

4  China.

5       11.    Plaintiff Youli Wang (Mr. Youli Wang) is a resident and citizen of the People's Republic

6  of China.

7       12.    Plaintiff Duxin Yang (Mr. Yang) is a resident and citizen of the People's Republic of

8  China.

9       13.    Mr. Tianming Wang, Mr. Han, Mr. Meng, Mr. Sun, Mr. Youli Wang, Mr. Xu, and Mr.

10  Yang are referred to collectively as "Plaintiffs".

11       14.    Defendant Gold Mantis Construction Decoration (CNMI), LLC (hereinafter, "Gold

12  Mantis") is, and was at all time relevant hereto, a limited liability company created and existing under

13  CNMI law with its principle office located in Saipan, CNMI.

14       15.    On information and belief, Gold Mantis CNMI is a wholly owned subsidiary of an entity

15  in China (hereinafter, "Gold Mantis China") named either Gold Mantis (International) Construction

16  Decoration Limited, Gold Mantis (China) Construction Decoration Limited, or Suzhou Gold Mantis

17  Construction Decoration Co., Ltd.

18       16.    On information and belief, Gold Mantis China is a public company traded on the

19  Shenzhen stock exchange.

20       17.    On information and belief, towards the end of 2015, Gold Mantis China invested U.S.

21  $30 million into a subsidiary entity in Saipan.

22                **FACTS**

23            **Company background**

24       18.    Imperial Pacific International (CNMI), LLC (hereinafter, "Imperial Pacific") was granted

25  an exclusive license to build casino resorts in Saipan, CNMI. The first of these was to be built on a site

26  in Garapan on the island of Saipan ("Casino Worksite").

27

19.     Imperial Pacific hired multiple Chinese construction companies to perform the work on the casino resort in Garapan.

20.     On information and belief, Gold Mantis signed an agreement with Imperial Pacific for $160 million to perform certain work on the Casino Worksite project.

21.     Other construction companies hired by Imperial Pacific for the project include MCC International Saipan Ltd. Co. ("MCC"), Beilida New Materials System Engineering Co. Ltd. ("Beilida"), and Sino Great Wall International Engineering Co. LLC.

**Plaintiffs' employment by Gold Mantis**

22.     Gold Mantis employed roughly 500 Chinese construction workers for the Casino Worksite project, including Plaintiffs.

23.     Many of these Chinese construction workers, including Plaintiffs, paid large recruitment fees based on the promise of good jobs in Saipan.

24.     In order to get the job with Gold Mantis, several Plaintiffs were required to pay an additional fee out of their own pocket to their supervisor.

25.     Plaintiffs were provided shirts and hardhats that said "Gold Mantis" on them.

26.     Gold Mantis set Plaintiffs' work schedule and assigned their work duties.

27.     Gold Mantis set Plaintiffs' rate of pay and decided whether, when, and how to pay them.

28.     Gold Mantis arranged Plaintiffs' housing, meals, and transportation to and from the worksite.

29.     Gold Mantis maintained records concerning Plaintiffs' work, including the number of days worked by each Plaintiff.

30.     Gold Mantis had the power to hire, fire, and discipline Plaintiffs.

31.     Plaintiffs worked for Gold Mantis under abusive and exploitative conditions.

32.     A Gold Mantis manager in charge of safety on the site, Mr. Wang Xiong Liu, was regularly present on the site where Plaintiffs worked, frequently told Plaintiffs to pay attention to safety,

-4-

and on several occasions made statements at meetings attended by Plaintiffs that the company would not be responsible for workers on tourist visas if they got injured on the job.

33.     One particular Gold Mantis supervisor, Xianghu Kong ("Supervisor Kong") often screamed at Plaintiffs.

34.     In several cases, Supervisor Kong summarily fired workers in anger over a single incident, such as where an employee took a rest during work.

35.     Supervisor Kong intimidated workers by threatening to physically harm any employee who challenged or was not entirely obedient to him.

36.     Plaintiffs and their coworkers regularly worked 12 or more hours per day.

37.     Plaintiffs were required to work shifts of approximately 24 hours on occasion.

38.     Gold Mantis systematically paid workers less than the minimum wage required under applicable laws.

39.     Gold Mantis did not keep accurate records of the hours worked by its employees as required by law.

40.     In or around March 2017, after federal government authorities such as the Federal Bureau of Investigation, began investigating various contractors on the casino project, Gold Mantis abandoned Plaintiffs and their coworkers on Saipan. Gold Mantis managers and supervisors returned to China while Plaintiffs and their coworkers were left unpaid in their inadequate housing and without food and water.

41.     After some supervisors had fled, Mr. Wei Yuan of Gold Mantis came to the workers' dormitory to discuss the number of days they had worked and unpaid wages still owed to them.

42.     After numerous protests by Plaintiffs and other employees, Gold Mantis eventually reached a settlement with the U.S. Department of Labor in which it agreed to pay millions of dollars to Plaintiffs and their coworkers for wage and hour violations that occurred during their employment.

**Gold Mantis' disregard for the safety of its employees**

43.     Gold Mantis showed a reckless disregard for safety conditions on the worksite and the safety or well-being of its employees, including Plaintiffs.

-5-

1    44.    Gold Mantis did not provide Plaintiffs with adequate training to perform their jobs safely.

2    45.    Gold Mantis did not provide Plaintiffs with the proper protective equipment to perform
3    their jobs safely.

4    46.    Gold Mantis did not purchase workers compensation insurance on behalf of Plaintiffs.

5    47.    Gold Mantis did not post required notices regarding workers compensation in or about
6    the workplace, nor did it make any other effort to inform its employees of their right to compensation
7    for injuries sustained at work.

8    48.    Instead, Gold Mantis told its workers that the company would not have any responsibility
9    if they got injured because they were in Saipan illegally.

10    49.    Gold Mantis did not file the legally required reports with government authorities upon
11    discovering that Plaintiffs or other employees sustained injuries at work, and thus did not provide
12    Plaintiffs with copies of any such reports as required by law.

13    50.    Gold Mantis did not provide or arrange medical care for Plaintiffs and their coworkers
14    who sustained injuries at work.

15    51.    Gold Mantis threatened Plaintiffs by stating that if they sought out medical care on their
16    own, they could face deportation or other troubles with the immigration authorities.

17    52.    Gold Mantis systematically discouraged its employees from contacting government,
18    medical or other authorities outside of the company, including by telling them that they were in Saipan
19    illegally and could be arrested or deported at any time.

20
21                        **Gold Mantis knew of the unsafe conditions on the worksite
                           but failed to respond appropriately**

22    53.    Gold Mantis knew of the unsafe conditions on the Casino Worksite, but failed to take
23    appropriate actions to remedy the situation and ensure the safety of its employees.

24    54.    There was a massive number of injuries on the Casino Worksite as untrained and
25    inexperienced workers were being pushed to work round-the-clock under unsafe conditions.

26
27
                                            -6-

55.     As reported in the Saipan Tribune and elsewhere, in February 2016, one MCC worker on the Casino Worksite had his leg crushed after a pipe that was not properly secured fell from a crane.

56.     As reported by Bloomberg, the Casino Worksite was filled with widespread dangers: including that generators weren't properly grounded, workers were missing basic equipment such as safety glasses and correct footwear, and welders lacked anything like the necessary training to handle torches.

57.     On December 4, 2016, MCC reported to the Occupational Safety and Health Administration (hereinafter, "OSHA") that a worker on the Casino Worksite died of a heart attack.

58.     On December 6, 2016, a Compliance Safety and Health Officer (hereinafter, "CSHO") from OSHA went to the Casino Worksite to investigate claims of a large number of workers being seriously injured and a reported worker death due to a heart attack.

59.     When the CSHO approached the Casino Worksite, he was able to observe workers exposed to fall hazards because they were climbing between levels of scaffolding without continuous fall protection.

60.     The CSHO explained his intention to inspect the Casino Worksite to representatives of the construction companies on the project, including Gold Mantis, but was denied access to the site.

61.     According to assistant U.S. attorney James J. Benedetto, the inspection was prompted by "an online complaint by a doctor working at the Commonwealth Health Center's emergency room reporting serious injuries at the project on a daily basis."

62.     As part of an application seeking a warrant for OSHA to inspect the worksite, the CSHO filed an affidavit, dated December 15, 2016 ("OSHA Affidavit"), which included a spreadsheet reflecting approximately 80 serious injuries from the worksite logged at the hospital on Saipan ("CHCC") from January 1 to December 6, 2016. The causes of the injuries and number of people injured by each cause included: hit by moving/falling item (43); fall from height of one to twenty meters (9); injured by power tool (12); cut by metal/wood (7); pain after lifting (2); stepped on nail (3); infected wound (1); stepped in hole (1); twisted ankle (1); electrocution (1).

-7-

63.     The OSHA Affidavit stated that based on this information, the incident rate for injuries on the Casino Worksite "greatly exceeds" the national average.

64.     The OSHA Affidavit described a report by a treating physician at CHCC that after someone from the worksite fell and broke his back, and the physician recommended that he be admitted and not transported, the injured person was not allowed to be admitted and was promptly transported to China.

65.     Even when presented with all of this evidence, OSHA was still initially refused entry onto the worksite to conduct an inspection.

66.     OSHA eventually conducted an inspection of the Casino Worksite from December 16-22, 2016.

67.     During this inspection, OSHA found no less than twenty "serious violations" by MCC, Beilida, and Gold Mantis and proposed fines totaling over $191,000.

68.     OSHA issued four citations against Gold Mantis for "serious" violations of federal workplace safety rules based on observations made on December 16, 2016. The violations included (1) failure to provide required eye and face protection for employees using a metal cut-off saw; (2) failure to properly store large steel beams, which were stacked in way that could easily fall and strike workers; (3) failure to protect workers from strike-by hazards by permitting the use of a frayed rope to lift large steel beams; and (4) failure to take proper steps to prevent injuries caused by a drill press to its operator and nearby workers.

69.     OSHA issued numerous citations against MCC for violations of federal workplace safety rules, including: the presence of holes that were not covered and people could fall through; multiple fall hazards, such as unsecured and unsafe scaffolding; and failing to use compliant reporting forms.

70.     One of the OSHA citations against MCC identifies seven workers who were injured in just a three-week period but for whom MCC made no record of their injury and did not report the case to OSHA. These injuries included a cut finger from operating a saw that resulted in amputation and several injuries of workers struck by heavy metal objects.

71.     OSHA issued numerous citations against Beilida for violations of federal workplace safety rules, including: failure to properly store compressed gas cylinders; operating torch equipment with broken oxygen gauge needles; multiple fall hazards; permitting workers to walk under a crane with a cart of compressed gas cylinders; and failing to use compliant reporting forms.

72.     Even after the OSHA inspection, Gold Mantis and the construction companies on the Casino Worksite project failed to adequately address the dangerous, illegal conditions on the worksite.

73.     Even after the OSHA inspection, severe injuries continued to occur, including the death of at least one worker on March 22, 2017.

74.     The worker fatality on March 22, 2017 prompted an additional investigation by OSHA, which resulted in citations against Beilida for five "serious" safety violations, including improper planking, missing toe boards, missing X bracing, and improper stair treads.

**Plaintiffs' injuries**

**Tianming Wang**

75.     On or about February 20, 2017, Mr. Tianming Wang began his employment with Gold Mantis working on the Casino Worksite.

76.     In the evening of March 17, 2017, Mr. Tianming Wang was at the construction site cutting a long piece of steel with a torch.

77.     The sparks produced by his cutting work ignited a substance in a nearby overturned barrel. The substance in the barrel exploded and a flame shot out of the barrel, engulfing Mr. Tianming Wang's lower left leg.

78.     The fire and the explosion incinerated Tianming Wang's pant leg and caused horrific burns on his lower left leg.

79.     Mr. Tianming Wang was in excruciating pain and in need of immediate medical assistance.

80.     Gold Mantis supervisors and agents were on site at the time of Mr. Tianming Wang's injury.

81.     After learning of Mr. Tianming Wang's injuries, Gold Mantis refused to take him to the emergency room, call for emergency medical assistance, or arrange any other form of medical attention.

82.     Mr. Tianming Wang was never provided any medical assistance by or through Gold Mantis.

83.     Gold Mantis officials told Mr. Tianming Wang that, because he was working in Saipan illegally, he could be arrested if he went to the hospital.

84.     Instead of arranging any form of medical attention, Gold Mantis transported Mr. Tianming Wang back to the dormitory and left him to tend to his injuries himself.

85.     Mr. Tianming Wang was unable to work after his injury.

86.     Mr. Tianming Wang spent hundreds of dollars of his own money to purchase medication to address his injury and pain.

87.     Mr. Tianming Wang's physical injury, the fear of immigration authorities, and despair of being unable to obtain adequate medical attention caused him an acute degree of anxiety and distress.

88.     To this day, Mr. Tianming Wang still suffers from pain in his lower left leg, which still has not fully healed.

89.     Mr. Tianming Wang's extreme burns have resulted in severe scarring and permanent disfigurement.

90.     Mr. Tianming Wang's inability to use his left leg for many months has resulted in a weakening of his left leg, muscular imbalances, and a limp that he fears could be permanent.

91.     At the Casino Worksite, Gold Mantis did not take appropriate precautions for the sort of work that Mr. Tianming Wang was required to perform. Overturned barrels containing highly flammable substances were left haphazardly about the site.

92.     Gold Mantis did not provide Mr. Tianming Wang with necessary training or safety equipment for working with a cutting torch.

93.     Gold Mantis never compensated Mr. Tianming Wang for his injuries, and never provided him with any pay for the time that he was unable to work.

-10-

1

2                                    **Dong Han**

3          94.     On or about February 20, 2017, Mr. Han began his employment with Gold Mantis

4    working on the Casino Worksite.

5          95.     On or about March 17, 2017, Mr. Han was loading heavy, metal pipes with other workers

6    when the stack of pipes shifted.

7          96.     The pipes crushed Mr. Han's pinky finger on his right hand causing severe pain, swelling,

8    and bruising.

9          97.     Gold Mantis supervisors and agents were on site at the time of Mr. Han's injury.

10         98.     After learning of Mr. Han's injuries, Gold Mantis refused to take him to the emergency

11   room, call for emergency medical assistance, or arrange any other form of medical attention.

12         99.     Mr. Han was never provided any medical assistance by or through Gold Mantis.

13         100.    Instead of arranging any form of medical attention, Gold Mantis told him to return to the

14   dormitory and rest.

15         101.    Mr. Han was unable to work for a period of time after his injury.

16         102.    As a result of his injuries, Mr. Han has suffered severe pain, a long and painful recovery

17   and rehabilitation process, and still suffers from weakness and diminished use of his right hand.

18         103.    After the accident, Mr. Han was emotionally shaken, with these feelings only amplified

19   by the mistreatment and lack of care by Gold Mantis.

20         104.    Mr. Han's physical injury, concern about earning an income, fear of authorities, and

21   despair of being unable to obtain adequate medical attention caused him an acute degree of anxiety and

22   distress.

23         105.    At the worksite, Gold Mantis did not take appropriate precautions for the sort of work

24   that Mr. Han was required to perform, such as appropriately stacking steel beams on the construction

25   site.

26

27

1    106.    Gold Mantis never compensated Mr. Han for his injuries, and never provided him with
2    any pay for the time that he was unable to work.

3                                                    **Yongjun Meng**

4    107.    On or about February 14, 2017, Mr. Meng began his employment with Gold Mantis
5    working on the Casino Worksite.

6    108.    Mr. Meng was recruited as a construction worker, but Defendant transferred him to
7    kitchen duty on or around February 26, 2017. Mr. Meng was not provided with any training for this new
8    position.

9    109.    In or around early March 2017, Mr. Meng and two other kitchen workers were loading
10   a large vat of soup onto a vehicle for transport to the construction site. The soup was extremely hot and
11   the vat was very heavy. As the workers were lifting the vat into the vehicle, the soup spilled onto Mr.
12   Meng, causing severe burns to his left hand and left leg.

13   110.    Mr. Meng was in incredible pain and requested that Gold Mantis arrange immediate
14   medical attention.

15   111.    Gold Mantis refused to take Mr. Meng to the emergency room or call for emergency
16   medical assistance. Further, the company told him not to go to the hospital because of his undocumented
17   status.

18   112.    Mr. Meng went to a clinic, where he was given a shot and medicine for the burn.

19   113.    Mr. Meng purchased a cream from the Chinese supermarket to ease his pain on multiple
20   occasions, costing him hundreds of U.S. dollars.

21   114.    Mr. Meng was unable to work after his injury due to the tremendous pain.

22   115.    Prior to his burns healing, Gold Mantis dispatched Mr. Meng's coworker to tell him that
23   he was required to return to work, even though he was still physically unable to do so.

24   116.    The injuries to Mr. Meng's hand rendered him unable to work for months and his severe
25   burns caused him a great deal of pain and suffering. He still suffers from diminished use of his left hand.

26

27

-12-

117. Mr. Meng's physical pain, the fear of immigration authorities, concern of his growing debts from not earning income and spending money on medical care, and despair of being unable to obtain adequate medical attention caused him an acute degree of anxiety and distress.

118. At the work site, Gold Mantis did not take appropriate safety precautions for the work that Mr. Meng was required to perform. Gold Mantis did not provide adequate equipment or manpower to transport the large vats of scalding hot soup. Mr. Meng was not provided with appropriate gloves or other protective safety equipment for dealing with the hot items. Moreover, the container of boiling hot soup was not appropriately secured to avoid spilling.

119. Gold Mantis never compensated Mr. Meng for his injuries, and never provided him with any pay for the time that he was unable to work.

**Liangcai Sun**

120. Mr. Sun began working for Gold Mantis on or around January 16, 2017.

121. On or around January 26, 2017, while working in what is now the lobby area of the Imperial Pacific casino, Mr. Sun and another employee were transporting large, heavy boxes. Mr. Sun was attempting to lift and move the box with another worker when it became unsteady. The box fell onto Mr. Sun's left hand, smashing his index finger.

122. Mr. Sun was in incredible pain; his finger was bleeding and his hand swelling. The injury caused a partial amputation of the finger.

123. Gold Mantis supervisors and agents were on site at the time of Mr. Sun's injury.

124. After learning of Mr. Sun's injuries, Gold Mantis refused to take him to the emergency room, call for emergency medical assistance, or arrange any other form of medical attention.

125. Mr. Sun was never provided any medical assistance by or through Gold Mantis.

126. Instead, Mr. Sun's supervisor told him to go home and rest.

127. A co-worker assisted Mr. Sun by purchasing some medicine and a gauze bandage.

128. The next day, due to the unbearable pain, Mr. Sun went on his own to the Marianas Medical Center. He was required to go back for numerous appointments and was told to consult a hand

-13-

surgeon. He paid hundreds of dollars of his own money for the consultation alone. However, Mr. Sun was unable to afford the suggested x-ray for his hand.

129.    Mr. Sun was not able to work after the injury to his hand.

130.    The incident resulted in the total loss of his fingernail.

131.    Later on, a doctor at CHC told him that he needed to consult a surgeon concerning the possible need to amputate the tip of his left index finger.

132.    Upon his return to China, medical providers there told Mr. Sun that he requires further surgery.

133.    To this day, Mr. Sun deals with alternating pain and numbness in his finger, which could permanently affect his usage of his hand and his ability to work.

134.    As a result of his injuries, Mr. Sun has suffered severe pain, a long and painful recovery and rehabilitation process, and still suffers from diminished use of his left hand. The partial amputation of the tip of his left index finger caused by the accident has resulted in what could be permanent damage and disfigurement. After the accident, Mr. Sun was emotionally shaken, with these feelings only amplified by the lack of care and mistreatment at the hands of Gold Mantis. To date, Mr. Sun still suffers from continued pain and suffering and diminished use of his left hand.

135.    Mr. Sun's physical suffering, trepidation about being arrested or deported, dispair of his growing debts, and sense of helplessness from being unable to obtain adequate medical attention caused him an acute degree of anxiety and distress.

136.    Gold Mantis never compensated Mr. Sun for his injury, his inability to work, or his medical expenses, which reached over one thousand U.S. dollars.

**Youli Wang**

137.    Mr. Youli Wang began working for Gold Mantis in or around November 2016.

138.    On or about January 20, 2017, while Mr. Youli Wang was loading beams of steel onto a piece of plywood (to then be loaded with a forklift), he and other workers sat on top of the load to

balance it. As the load was lifted, the plywood snapped, sending the load of steel and the workers falling to the ground. This caused the steel pieces to shift, smashing his left hand, fracturing his left ring finger.

139.    Mr. Youli Wang was immediately in extreme pain. His finger began swelling and bleeding profusely. His fingernail was torn completely off of his finger.

140.    Gold Mantis supervisors and agents were on site at the time of Mr. Youli Wang's injury.

141.    Despite Mr. Youli Wang's injuries, Gold Mantis refused to take him to the emergency room, call for emergency medical assistance, or arrange any other form of medical attention.

142.    Mr. Youli Wang was never provided any medical assistance by or through Gold Mantis.

143.    When he finally was brought (not by Gold Mantis) to CHC many months after his accident, the physician confirmed the fracture of his finger and that the fingernail was now growing into his hand, causing him pain.

144.    As a result of his injuries, Mr. Youli Wang has suffered severe pain, a long and painful recovery and rehabilitation process, and still suffers from diminished use of his left hand. His finger still has not healed completely and may require treatment from a specialist. After the accident, he was emotionally shaken, with these feelings only amplified by the lack of care and mistreatment at the hands of Gold Mantis.

145.    Mr. Wang Youli's physical suffering, the fear of government authorities, concern of his growing debts from not earning income, and frustration of being unable to obtain adequate medical attention caused him an acute degree of anxiety and distress.

146.    Gold Mantis failed to provide appropriate equipment or manpower for the safe movement of this material.

147.    Despite Mr. Li's inability to work after his injury, he was not provided with compensation for his lost wages. He also was not provided with any compensation or his injuries.

-15-

1               **Qingchun Xu**

2        148.    Mr. Xu began working for Gold Mantis on or around February 14, 2017.

3        149.    On several occasions, Mr. Xu was required to work a shift lasting a full day and then
4    return to work roughly eight hours later.

5        150.    On or about March 30, 2017, Mr. Xu was working at the Casino Worksite moving very
6    heavy pieces of stone.

7        151.    Mr. Xu and another worker were using ropes to lift a piece of stone up the stairs.
8    However, the stone was too heavy and fell onto Xu's left lower leg, inverting his ankle, and causing a
9    sprain.

10       152.    Mr. Xu was in a tremendous amount of pain and could not walk on his left ankle.

11       153.    Gold Mantis refused to take Mr. Xu to the emergency room, call for emergency medical
12   assistance, or arrange any other form of medical attention.

13       154.    Mr. Xu was never provided any medical assistance by or through Gold Mantis.

14       155.    Mr. Xu went to a small medical clinic on his own and paid for the costs himself.

15       156.    As a result of his injuries, Mr. Xu has suffered severe pain, a long and painful recovery
16   and rehabilitation process, and still suffers from diminished use of his left ankle. After the accident, Mr.
17   Xu was emotionally shaken, with these feelings only amplified by the lack of care and mistreatment at
18   the hands of Gold Mantis.

19       157.    Mr. Xu's physical pain, the fear of being arrested or deported, concern of his growing
20   debts from not earning income, and despair of being unable to obtain adequate medical attention caused
21   him an acute degree of anxiety and distress.

22       158.    Gold Mantis did not provide the appropriate equipment or manpower for the safe
23   movement of this material.

24       159.    Despite Mr. Xu's inability to work after his injury, he was not provided with
25   compensation for his lost wages. Gold Mantis also never compensated Mr. Xu for his injuries, and never
26   reimbursed him for the money he spent on his own medical care.

27

-16-

1

**Duxin Yang**

2      160.    Mr. Yang began working for Gold Mantis on or around December 3, 2016.

3      161.    In or around mid-December, 2016, Mr. Yang was at the Casino Worksite moving heavy

4  pieces of plaster. While moving a large piece along the floor, it fell over and crushed the middle finger

5  on his right hand. The finger swelled immediately and was bleeding badly. Mr. Yang was in a

6  tremendous amount of pain and could not use his right hand.

7      162.    Gold Mantis personnel was on the site when Mr. Yang was injured and was aware of his

8  injury.

9      163.    Gold Mantis refused to take Mr. Yang to the emergency room, call for emergency medical

10  assistance, or arrange any other form of medical attention.

11      164.    Mr. Yang was never provided any medical assistance by or through Gold Mantis.

12      165.    Several weeks after the accident, Mr. Yang went to CHC because he was still suffering

13  from his badly injured finger.

14      166.    As a result of his injuries, Mr. Yang has suffered severe pain, a long and painful recovery

15  and rehabilitation process, and still suffers from diminished use of his hand. After the accident, Mr.

16  Yang was emotionally shaken, with these feelings only amplified by the lack of care and mistreatment

17  at the hands of Gold Mantis.

18      167.    Mr. Yang's physical pain, the fear of being arrested or deported, concern of his growing

19  debts from not earning income, and despair of being unable to obtain adequate medical attention caused

20  him an acute degree of anxiety and distress.

21      168.    Gold Mantis did not provide the appropriate equipment or manpower for the safe

22  movement of the heavy pieces of plaster.

23      169.    Despite Mr. Yang's inability to work after his injury, he was not provided with

24  compensation for his lost wages.

25      170.    Gold Mantis also never compensated Mr. Yang for his injuries.

26

27

1

**Gold Mantis' failure to secure compensation**

2      171.    Despite the fact that Gold Mantis was aware of Plaintiffs' injuries at the time they
3  occurred, Gold Mantis did not follow the procedures required by law to record and report workplace
4  injuries, nor did Gold Mantis compensate workers for their injuries.

5      172.    The fact that Plaintiffs suffered injuries while working for Gold Mantis was published
6  in local newspapers in 2017.

7      173.    When Plaintiffs asked Gold Mantis' lawyers about compensation for their work-related
8  injuries while preparing to depart Saipan for China, they were told that a company representative would
9  meet them at the airport in China to discuss the matter. Nobody from the company met them in China
10 to discuss this.

11     174.    In late 2017, Plaintiffs' counsel sent letters to Gold Mantis' representative detailing the
12 injuries they suffered while employed by Gold Mantis, including the time, place, nature, and cause of
13 the injuries.

14     175.    In response to the aforementioned letters, Gold Mantis responded by denying that
15 Plaintiffs were employees of Gold Mantis and stating that it would not settle Plaintiffs' injury claims.

16     176.    In response to the aforementioned letters, Gold Mantis did not file any injury report or
17 take any other step towards securing compensation for Plaintiffs.

18

19                          **FIRST CAUSE OF ACTION**
                                    **NEGLIGENCE**
20

21     177.    Plaintiffs repeat, re-allege, and incorporate herein by reference, each and every allegation
22 contained in the preceding paragraphs.

23     178.    Gold Mantis had a duty to Plaintiffs, both as its employees and/or as workers on its
24 construction site, including but not limited to: ensuring a safe worksite, working environment, and
25 working conditions; ensuring the use of safe work practices; and providing appropriate safety equipment
26 and safety training.

27

-18-

179.   Gold Mantis breached its duty to Plaintiffs by, amongst other things:

    a.   Failing to provide a safe worksite and safe working conditions;

    b.   Failing to comply with federal government regulations concerning workplace safety;

    c.   Failing to provide appropriate equipment to complete the assigned tasks;

    d.   Failing to provide appropriate safety training;

    e.   Failing to provide appropriate protective equipment to workers;

    f.   Failing to purchase or arrange workers' compensation insurance;

    g.   Failing to report workers' injuries; and

    h.   Failing to respond appropriately to injuries.

180.   The above actions or inactions by Gold Mantis were the direct and proximate cause of the injuries and damages suffered by Plaintiffs, including but not limited to physical injuries, pain and suffering, medical costs, future medical or other treatment, loss of wages, and other damages.

181.   Gold Mantis's conduct constitutes gross negligence, and/or a reckless and/or malicious and/or willful, wanton disregard of Plaintiffs' rights, well-being, or safety.

## SECOND CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

182.   Plaintiffs repeat, re-allege, and incorporate herein by reference, each and every allegation contained in the preceding paragraphs.

183.   Rather than take all possible steps to ensure the safety of Plaintiffs and its other employees, Gold Mantis not only permitted unsafe conditions to persist but also took steps to prevent government and other authorities from detecting these unsafe conditions.

184.   After each Plaintiff suffered his injury, Gold Mantis refused to provide or arrange for the provision of appropriate medical attention to that Plaintiff.

-19-

1     185.   To the contrary, Gold Mantis affirmatively sought to prevent Plaintiffs from seeking
2  medical attention through a variety of threats and intimidation tactics.

3     186.   When Plaintiffs needed time to recover from their injuries, Gold Mantis refused to
4  provide them with paid time off.

5     187.   Gold Mantis did not compensate Plaintiffs in any way for the injuries sustained while at
6  work or other costs or damages stemming from those injuries.

7     188.   Gold Mantis' conduct was extreme and outrageous.

8     189.   Gold Mantis intentionally, recklessly, and/or knew or should have known its actions were
9  certain or substantially likely to cause, worsen, or prevent from improving physical harm and/or severe
10  emotional distress to Plaintiffs, including but not limited to fright, horror, grief, anger, disappointment,
11  worry, despair, and helplessness of an acute and severe nature.

12     190.   Gold Mantis's conduct constitutes gross negligence, and/or a reckless and/or malicious
13  and/or willful, wanton disregard of Plaintiffs' rights, well-being, or safety.

## PRAYER FOR RELIEF

17     191.   WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:
18    (1)   General damages in an amount to be proven at trial;
19    (2)   Special damages in an amount to be proven at trial;
20    (3)   Punitive damages in an amount to be proven at trial;
21    (4)   Costs of this suit; and
22    (5)   Such other and further relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

25     192.   Plaintiffs hereby demand a trial by jury.

-20-

1    DATED this _12th_ day of December, 2018.

2

3                                BERLINE & ASSOCIATES, LLC

4

5

6                                /s/

7                                Bruce Berline, Esq.
8                                Attorney for Plaintiffs
                                 Macaranas Building, Second Floor
9                                P.O. Box 5682 CHRB
                                 Garapan, Saipan, MP 96950
10                               Telephone: (670) 233-3663
                                 Facsimile: (670) 233-5262
11                               Email: bruce@saipanlaw.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

                                        -21-