Law Offices of Stephen Nutting, LLC
TIBERIUS D. MOCANU
Marianas Business Plaza, 6th Floor
P.O. Box 5093
Saipan, MP 96950
Commonwealth of the Northern Mariana Islands
Tel.:   (670) 234-6891
Fax:   (670) 234-6893
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
OF THE
THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| TIANMING WANG, DONG HAN, YONGJUN MENG, LIANGCAI SUN, YOULI WANG, QINGCHUN XU, and DUXIN YANG | ) ) ) ) ) ) | CASE NO. CV-18-000030  MOTION TO DISMISS UNDER RULE 12(b)(1) AND 12(b)(6) AND MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| GOLD MANTIS CONSTRUCTION DECORATION (CNMI), LLC, | ) ) ) | |
| Defendant. | ) | |

COMES NOW, the undersigned counsel Tiberius D. Mocanu, on behalf of the Defendant Gold Mantis Construction Decoration (CNMI), LLC, to hereby file this Motion to Dismiss Under Rule 12(b)(1) and 12(b)(6) and this Memorandum of Law in Support of the same.

## INTRODUCTION

1. Tianming Wang, Dong Han, Yongjun Meng, Liangcai Sun, Youli Wang, Qingchun Xu, and Duxin Yang (collectively referred to herein as "Plaintiffs") filed their instant Complaint on December 17, 2018. *See* Complaint, CV-18-00030 (Dec. 17, 2013).

2. Plaintiffs state that they are citizens of the People's Republic of China. *Id.* ¶¶ 7-12.

3. Plaintiffs allege that this Court has jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(a)(2), which contemplates diversity jurisdiction for citizens of a state and citizens of a foreign state. *Id.* ¶ 5.

4. The defendant, Gold Mantis Construction (Decoration) LLC ("Gold Mantis LLC"), is a single-member owned limited-liability company organized and existing under CNMI law.

5. Gold Mantis is wholly owned by a single-member, Gold Mantis (International) Construction Decoration Limited, a corporation created and operating in the People's Republic of China.

6. This Court does not have subject-matter jurisdiction because there is no diversity of citizenship between Plaintiffs and Gold Mantis LLC.

7. There is no diversity of citizenship between Plaintiffs and Gold Mantis LLC because Gold Mantis LLC and Plaintiffs are all citizens of the People's Republic of China.

8. Federal courts do not have diversity jurisdiction over foreign plaintiffs suing a foreign defendant.

9. Therefore, in the absence of complete diversity this Court lacks original jurisdiction to adjudicate this matter.[1]

10. In addition, and alternatively to this Court's lack of subject matter jurisdiction, Plaintiffs also fail to sufficiently state a claim for intentional infliction of emotion distress.

11. Accordingly, even if jurisdiction was present, Plaintiffs fail to state a claim for IIED and thus the claim fails as a matter of law.

## LEGAL STANDARD

i. <u>Motion to Dismiss under Rule 12(b)(6)</u>

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims within the complaint. FED. R. CIV. P. 12(b)(6); *see also* NMI R. CIV. P. 12(b)(6); (identical language as federal rule). The same motion enables a defendant to raise the defense that the complaint "fails to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P 12(b)(6), a pleading "must contain sufficient factual matter accepted as true, to state a claim for relief that is plausible on its face." *Alvarez v. Seahorse*, 2017 WL 3973035 *3 (D. N. Mar. I. 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 555-56 (2007)). In other words, "the pleading must contain more than labels and conclusions; the factual allegations must be enough to raise a right to relief above a speculative level." *Id.* (citing *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (internal quotations

---

[1] This Court also does not have jurisdiction based on a federal question since the claims are based on state law, 28 U.S.C. § 1331, and supplemental jurisdiction does not apply, *see* 28 U.S.C. § 1367(a).

omitted). "If the well-pleaded allegations are merely consistent with a defendant's liability, the plausibility threshold has not been satisfied." *Alvarez*, 2017 WL 3973035 *3 (citing *Iqbal*, 556 U.S. at 678) (internal quotations omitted).

ii. Motion to Dismiss Under Rule 12(b)(1)

A motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) tests the plaintiff's jurisdictional allegations within the complaint. FED. R. CIV. P. 12(b)(1). A defendant may challenge jurisdictional allegations by a "facial" attack or a "factual" attack. *Commonwealth Utilities Corporation v. Johnson*, 245 F. Supp. 3d. 1239, 1246-247 (D. N. Mar. I. 2017). In a "facial" attack, the defendant "accepts the truth of a plaintiff's allegations but asserts that they are insufficient to invoke federal jurisdiction." *Id.* (citation omitted). The district court resolves a "facial" attack on subject matter jurisdiction as it would a motion to dismiss under Rule 12(b)(6). *Id.* The assertion that a federal court lacks subject-matter jurisdiction may be raised by a party at any stage in the litigation. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

"The party alleging subject matter jurisdiction has the burden of establishing it." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3); *see Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).

iii. Diversity Jurisdiction Under 28 U.S.C. 1332(a)

Title 28 U.S.C. § 1332(a)(2) states that "district courts shall have original jurisdiction of all civil actions where the matter controversy exceeds the sum or value of $75,000.00 exclusive

of interest and costs, and is between…citizens of a State and citizens or subjects of a foreign state….” 28 U.S.C. § 1332(a)(2). "As to the meaning of [28 U.S.C. § 1332(a)(2)] the rule established by Chief Justice Marshall controls: diversity must be complete." *Faysound Ltd. v. United Coconut Chemicals, Inc.*, 878 F.2d 290, 295 (9th Cir. 1989) (citing *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978)). "A court exercising diversity jurisdiction applies state substantive law." *Flores*, 2012 WL 2550593 *4 (citing *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1306 (9th Cir. 1992)).

## ARGUMENT

I. <u>There is no diversity jurisdiction because the Plaintiffs and Gold Mantis LLC are citizens of the same foreign state.</u>

A limited-liability company ("LLC") it a citizen of every state of which its owners/members are citizens. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Though LLC's possess corporate traits, the Ninth Circuit, and five other Circuits who have addressed the issue of LLC citizenship, treated LLCs like partnerships for the purposes of diversity jurisdiction. *Id.* (citing *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004); *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 828-29 (8th Cir. 2004); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004); *Handelsman v. Bedford Village Assocs. Ltd. P'ship*, 213 F.3d 48, 51 (2d. Cir. 2000); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998)). This treatment of LLCs is in line with the United States Supreme Court's "consistent refusal to extend the corporate citizenship rule to non-corporate entities, including those that share some of the characteristics of the corporations." *Johnson*, 437 F.3d at 899 (citing *Carden v. Arkoma*

*Associates*, 494 U.S. 185, 189 (1990) (treating a limited partnership as having the citizenship of all its members.)).

Conversely, "a corporation shall be deemed to be a citizen of any state by which it has been incorporated and of the state where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *see Dickens v. American Int'l Grp. Inc.*, 2014 WL 12588282 (C.D. Cal. 2014) (deeming 28 U.S.C. 1332(c)(1) as the "general and well-known rule regarding corporate citizenship."). The Supreme Court has interpreted "principal place of business" as "referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities," which is normally the headquarters or the "nerve center" of the corporation. *Hertz v. Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (adopting "nerve center" approach.). "The metaphor of a corporate 'brain,' while not precise, suggests a single location," *id.* at 95, in which would serve as a corporation's "center of overall direction, control, and coordination." *Id.* at 95-96.

Here, Gold Mantis LLC facially attacks plaintiffs' claim of diversity jurisdiction. Gold Mantis LLC accepts as true that all seven (7) of the plaintiffs are residents and citizens of the People's Republic of China. *See* Complaint ¶¶ 7-13. Gold Mantis LLC further admits that it is a limited-liability company and with its sole member as Gold Mantis (International) Construction Decoration Limited., *see id.* ¶14, which is incorporated in, and with its principal place of business, in Suzhou, China.[2] Accordingly, as a matter of law, Gold Mantis LLC is imputed with the citizenship of its sole-member, Gold Mantis (International) Construction Decoration Limited. Therefore, for the purposes of determining diversity jurisdiction, Gold Mantis LLC is a citizen of the People's Republic of China.

---

[2] Suzhou Gold Mantis Construction Decoration Co. Ltd.'s corporate headquarters is located at 888 West Ring Road, Suzhou City, China 215004. (http://www.goldmantis.com/jtl2013/en/ll.htm)

Consequently, because all of the plaintiffs, as well as the defendant, are citizens of the same jurisdiction, complete diversity is absent.

II. <u>Both the Plaintiffs and Gold Mantis are foreign citizens.</u>

The Ninth Circuit adheres to the rule: "Diversity jurisdiction does not encompass foreign plaintiffs suing foreign defendants." *Faysound Ltd. v. United Coconut Chemicals, Inc.*, 878 F.2d 290, 294 (9th Cir. 1989) (citing *Cheng v. Boeing Co.*, 708 F.2d 1406, 1412 (9th Cir.), *cert. denied*, 464 U.S. 1017 (1983)).

Here, because all of the plaintiffs, as well as Gold Mantis, are citizens foreign to the United States, diversity jurisdiction is lacking.

III. <u>Plaintiffs fail to sufficiently plead their claim to show Intentional Infliction of Emotional Distress.</u>

Under CNMI law, a cause of action for intentional infliction of emotional distress (IIED) "requires proof of four elements: (1) that the conduct complained of was outrageous; (2) that the conduct was intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Charfauros v. Bd. of Elections*, 5 N.M.I. 188 ¶ 62 (1998).

Here, plaintiffs fail to state a claim of IIED because they fail properly allege (i) outrageous conduct, (ii) intent or recklessness, and (iii) severe emotional distress.

i. <u>Plaintiffs fail to properly allege the element of "outrageous conduct" to support a claim for IIED.</u>

To sufficiently plead IIED, "the plaintiff must set forth facts establishing the outrageousness of the conduct as a matter of law[.]" *Charfauros*, 5 N.M.I. 188 at ¶ 64. As the Commonwealth Supreme Court described before, courts have a special duty "to guard the gateway to the cause of action for IIED," *id.*, "by determining, in the first instance, whether the

defendant's conduct may reasonably be regarded as so extreme and outrageous as to prevent recovery," *id.* (quoting Restatement (Second) of Torts § 46). Such determination is meant to prevent courts from becoming "embroiled in petty disputes that nonetheless cause someone to feel emotionally disturbed and distressed." *Id.* As this Court has stated before:

> The test is not whether the plaintiff subjectively felt outraged but whether a reasonable person, an "average member of the community" presented with the facts of the case, would regard the conduct as "utterly intolerable in a civilized society."

*Yu Min Zhao v. United States*, 2016 WL 4004575 (D. N. Mar. I. 2016) (citing *Charfauros*, 5 N.M.I. 188 (1998) (applying CNMI law). In *Charfauros*, the Commonwealth Supreme Court described conduct to be "outrageous" when it "go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." 5 N.M.I. 188 at 68.

Federal district courts have noted, "[i]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of [IIED]." *Darboe v. Staples, Inc.*, 243 F. Supp. 2d. 5, 19 (S.D.N.Y. 2003) (citations omitted) (applying New Jersey Law); *Ogden v. Keystone Residence*, 226 F. Supp. 2d. 588, 604 (M.D. Pa. 2002) (quoting *Cox v. Keystone Carbon*, 861 F.2d 390, 395 (3d. Cir. 1998) (applying Pennsylvania law).

In this case, Plaintiffs attempt to show "outrageous conduct" by alleging that Gold Mantis LLC (1) failed to take steps to ensure each Plaintiff's safety (2) failed to mitigate its damages by permitting unsafe working conditions and (3) preventing authorities from detecting the same. *See* Complaint ¶ 183-84. Plaintiffs also allege that Gold Mantis LLC "affirmatively sought to prevent Plaintiffs from seeking medical attention through a variety of threats and

intimidation tactics." *Id.* ¶ 185. In addition, Plaintiffs claim that Gold Mantis LLC refused to provide Plaintiffs with time off and did not compensate them for the injuries they had sustained. *Id.* ¶ 186-87. Plaintiffs allegations, however, are not sufficient to show "outrageous" conduct.

Courts in the Commonwealth have found certain acts to be sufficiently "outrageous" to support an IIED claim. For instance, in *Charfauros*, the Commonwealth Supreme Court found the violation of a fundamental right, i.e., the right to vote, outrageous. *Charfauros*, 1998 MP 16 ¶ 70. In *Black v. Brewer*, this Court found that a former employer and supervisor's who ruined plaintiff's chances to gain employment as a school teacher (i.e., "blacklisting her from any available" school teacher position in the CNMI) was outrageous. *Black v. Brewer*, 2007 WL 9701577 *4 (D. N. Mar. I. 2007).

Unlike *Charfarous* and *Brewer*. Gold Mantis LLC did not interfere with any of the Plaintiff's fundamental rights like the defendant in *Charfarous* nor did Gold Mantis LLC proactively seek to ruin the Plaintiffs' chances for future employment in a related trade like the defendant in *Black*. Further, Gold Mantis LLC did not actually prevent Plaintiffs from receiving medical treatment as the Complaint itself seeks reimbursement for medical treatment received. *See* Complaint ¶¶ 4, 86, 112, 127-28, 131, 143, 155, 165, 191.

Moreover, the acts that Plaintiffs characterize as "threat or intimidation tactics" are not outrageous as to not be accepted in a civilized community. Here, according to Plaintiff's complaint, Gold Mantis LLC either warned Plaintiffs of the potential consequences of their illegal immigration status and/or gave them time off to recover. *See* Complaint ¶¶ 83, 84, 100, 111, 126, 145. Plaintiffs allege that Gold Mantis LLC refused to arrange medical care. However, Plaintiffs do not allege that Gold Mantis LLC prevented any of them from seeking

medical care on their own. This must be the case as Plaintiffs allege medical expenses they paid out of pocket. *See id.* ¶¶ 4, 191.

Though a supposed refusal or failure to provide medical care may be reprehensible, courts have held that conduct which is tortious, illegal, or even prompted by an unlawful or malicious motive does not in and of itself rise to the level of "outrageous" necessary to support a claim for IIED. Restatement (Second) of Torts § 46 cmt. d. (1965); *see e.g., Briggs v. Aldi, Inc.*, 218 F. Supp. 2d 1260, 1263 (D. Kan. 2002) ("Even if defendant's decision to terminate plaintiff was driven by an unlawful motive such as plaintiff's race, defendant's conduct is not so extreme and outrage as those terms are construed by the Kansas courts for purposes of assessing the tort of intentional infliction of emotional distress."); *Jackson v. Blue Dolphin Communications of N.C.*, 226 F. Supp. 2d 785, 792, 795 (W.D.N.C. 2002) (holding that the fact that plaintiff's discharge was sufficient for wrongful discharge claim pursuant to public policy doctrine was insufficient alone to prove tort of emotional distress tort); *Rigby v. Fallsway Equip. Co.*, 779 N.E.2d 1056, 1064-65 (Ohio Ct. App. 2002); *GTE Southwest Inc.*, 998 S.W.2d at 616.

For instance, in *Harris v. Jefferson Partners*, the South Dakota Supreme Court held that a defendant's refusal to arrange medical care or consider the plaintiff's onerous circumstances did not constitute "outrageous conduct." *Harris v. Jefferson Partners*, 653 N.W.2d 496, 501-02 (S.D. 2002). There, the defendant, a bus company, was involved in an accident which caused the elderly plaintiff to suffer a serious groin injury. *Id.* at 497-98. Consequently, the plaintiff was unable to walk a short two-blocks to the nearest bus station to arrange transportation to his next destination on the bus line—as instructed by the bus driver at the time. *Id.* Suffering from

his injury, the plaintiff requested that the bus driver call an ambulance for him, but the bus driver refused. *Id.* After ultimately receiving treatment at a hospital, the plaintiff had to arrange for his own transportation back to his hometown. *Id.* at 498.

After analyzing IIED through the Restatement, the South Dakota Supreme Court held that the bus-company exerted "inconsiderate behavior, perhaps even callous indifference," but it was not "an extreme outrage" to sustain a claim for IIED. *Id.* at 502. Here, like *Harris*, Gold Mantis LLC's alleged refusal to arrange medical care despite the plaintiffs' supposedly onerous circumstances was not outrageous.

    ii.    <u>Plaintiffs fail to sufficiently plead the requisite intent or recklessness to support their claims for IIED.</u>

A claim for IIED "can only be made where the actions were done intentionally or recklessly." *Century Ins. Co., Ltd. v. Hong Kong Entertainment (Overseas) Investments, Ltd.*, 2009 MP 4 ¶ 19 (Restatement (Second) of Torts § 46 (1965)). Concerning requisite intent, the Commonwealth Supreme Court has stated that intent is present when an "actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Id.* (citing Restatement (Second) of Torts § 8 A (1965)). "[i]t is the intent to harm one emotionally that constitutes the basis for the tort of an intentional infliction of emotional distress." *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1264 (Ind. Ct. App. 2002) (citation omitted). Thus, for Plaintiffs to plead a claim of IIED, they must allege that Gold Mantis LLC intended to inflict severe emotional distress on plaintiff. *See Century Ins. Co., Ltd.*, 2009 MP 4 ¶ 19 (Restatement (Second) of Torts § 46 (1965)); *see also Brown v. Shaffer*, 942 S.W.2d 162, 165 (Tex. App. 1997) (citation omitted).

In regard to recklessness, the Restatement states that:

> [an] actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

*Id.* (citing Restatement (Second) of Torts § 500). The Supreme Court of Texas has held that "a claim for [IIED] cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort." *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999) (citation omitted). Accordingly, per the Texas Court, "a claim for [IIED] will not lie if emotional distress is not the intended or primary consequence of the defendant's conduct." *Id.*

     Plaintiffs fail to allege that it was Gold Mantis LLC's actual intent to harm Plaintiffs emotionally. Plaintiffs allege that Gold Mantis LLC "knew or should have known" that its supposed actions "were certain or substantially likely to cause" emotional distress. *See* Complaint ¶ 189. However, Plaintiffs allege insufficient facts to show it was Gold Mantis LLC's desire to, or belief with substantial certainty that, its actions would cause emotional distress. Perhaps, at best, on the Complaint's face, an inference can be drawn that Gold Mantis LLC did not act as an ordinary contractor is expected to act in light of the Plaintiffs injuries. Thus, the Complaint only alleges what can best be inferred as an indifference to the Plaintiffs' physical well-being, and an *indifference* towards the resulting emotions. It does not allege that Gold Mantis LLC had the *specific* intention to cause emotional distress. This court should not have to strain to find the requisite intent to support IIED. *See Atalig v. Mobil Oil Mariana Islands, Inc.*, 2013 MP 11 ¶ 23. Consequently, Plaintiffs have failed to allege the requisite intent necessary to sustain a claim for IIED.

  iv. <u>Plaintiffs fail to properly allege the element of "severe distress" to support a claim for IIED.</u>

"To maintain a cause of action [for IIED], plaintiffs must demonstrate their injuries were severe…." *Charfauros*, 5 N.M.I. 188 ¶ 73.  Like the determination of whether a defendant's conduct reached the level of "outrageous conduct," courts must also play a gatekeeping role with respect to the determination of whether alleged injuries are demonstrably "severe" to be sufficient as a matter of law. *Id.*

> The rule stated in this Section applies only where the *emotional distress* has in fact resulted and where it is severe. It is only where [an injury] is extreme that the liability arises….*The law intervenes where the distress inflicted is so severe that no reasonable man could be expected to endure it.*

Restatement (Second) of Torts § 46 (emphasis added). Thus, conduct by the employer or co-workers of the complaining employee must cause actual, severe emotional distress, *id.*, and not merely some lesser, though genuine, emotional reaction such as fright, horror, grief, anger, disappointment, worry, despair, or acute helplessness. *See e.g.,* Complaint ¶ 189.

  Plaintiffs will likely argue that because they sought medical care that is evidence of severe distress. However, although seeking treatment may be a factor in determining severity, courts have held that seeking care is not controlling on the determination of "severity." *See EEOC v. Voss Elec. Co.*, 257 F. Supp. 2d 1354, 1363 (W.D. Okla. 2003) (holding recurrence of disease and hospitalization insufficient to meet "severity" requirement); *see also Bush v. Am. Honda Motor Co.*, 227 F. Supp. 2d 780, 801 (S.D. Ohio 2002) (holding that continued sessions with psychologist did not create "genuine issues of material fact" with respect to severity of emotional distress).

Moreover, the care sought was not for Plaintiff's emotional distress but was instead for their alleged underlying physical injuries. Necessarily, Plaintiffs are left to argue that they suffered severe emotional distress between the time they suffered their injuries and the time they received care. It cannot be inferred from the allegations that Gold Mantis LLC physically prohibited Plaintiffs from seeking medical care. Instead, at best, the complaint alleges that Gold Mantis did not provide medical care promptly as a responsible contractor should have. Thus, Plaintiffs sought care themselves and now potentially seek reimbursement. Consequently, simply seeking treatment, and that for the underlying physical injury, does not constitute sufficient severity to sustain a claim for IIED.

## CONCLUSION

Based on the foregoing, this Court lacks subject matter jurisdiction to adjudicate this matter and must therefore DISMISS the plaintiffs' claims under Rules 12(b)(1) and 12(b)(6).

Dated: January 30, 2019

                                    /s/
                        TIBERIUS D. MOCANU
                        Attorney for Defendant