**ROBERT TENORIO TORRES**
**ATTORNEY AT LAW**
**Plata Drive Whispering Palms (Chalan Kiya)**
**P.O. Box 503758**
**Saipan, MP 96950**
**Tel: (670) 234-7859**
**Fax: (670) 234-5749**

*Attorney for Defendant*
*MCC International Saipan Ltd. Co.*

IN THE DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| TIANMING WANG, DONG HAN, YONGJUN MENG, LIANGCAI SUN, YOULI WANG, QINGCHUN XU, and DUXIN YANG<br><br>Plaintiffs,<br><br>vs.<br><br>GOLD MANTIS CONSTRUCTION DECORATION (CNMI), LLC, MCC INTERNATIONAL SAIPAN LTD. CO., and IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,<br><br>Defendants. | Civil Action No.: 18-cv-00030<br><br>**DEFENDANT MCC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS AND MOTION FOR A MORE DEFINITE STATEMENT** |

Defendant MCC International Saipan Ltd. Co. ("MCC") submits this Reply Memorandum in Support of its Motion to Dismiss and Motion for a More Definite Statement, and in response to Plaintiffs' Opposition Memorandum.

**I. INTRODUCTION**

As set forth in MCC's initial memorandum, Plaintiffs' forced labor claims under the TVPA should be dismissed for failure to state a plausible claim against MCC. Plaintiffs continue to argue

that MCC engaged in a scheme involving forced labor of unauthorized workers from China.[1] By making use of the term "Defendants" and failing to specify the necessary elements of their claims as to MCC specifically, MCC is forced to defend against claims by plaintiffs who never allege having worked for MCC. Plaintiffs make their arguments cogently but what is salient is that they fail to allege facts that MCC violated the TVPA or was the cause of their injuries. When Plaintiffs' allegations are measured against the facts necessary to state a plausible cause of action under their legal theories, Plaintiffs' complaint comes up short as to a cause of action. For these reasons, MCC respectfully requests that the Court dismiss Counts I-IV of the First Amended Complaint as to MCC and require Plaintiffs to file a more definite statement

## II. ARGUMENT

**A.  Plaintiffs Failed to Plead Sufficient Facts to Plausibly Allege That MCC Subjected Plaintiffs to "Forced Labor" Under the TVPA.**

Plaintiffs' attempts to convert their wage and hour claims into forced labor claims under the Trafficking Victims Protection Act ("TVPA") are not cognizable and should be dismissed as against MCC. The TVPA provides a civil cause of action against a defendant that knowingly provides or obtains the labor or services by: "(1) means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a).

---

[1] Plaintiffs also ask this Court to permit them to conduct discovery when they have not even made it past a motion to dismiss. Opp. at 29. Plaintiffs' request should be denied because "fair notice pleading under Rule 8 is not intended to give parties free license to engage in unfounded fishing expeditions on matters for which they bear the burden of proof at trial." *Perez v. Gordon & Wong Law Grp., P.C.*, No. 11-CV-03323-LHK, 2012 WL 1029425, at *8 (N.D. Cal. Mar. 26, 2012). FRCP 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

2

Congress passed the TVPA in order to "implement the Thirteenth Amendment against slavery or involuntary servitude." *United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014). "Congress intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion," as well as through "physical or legal coercion." *United States v. Dann*, 652 F.3d 1160, 1169 (9th Cir. 2011) (internal quotation marks omitted). It is not intended to redress everyday wage and hour disputes. *United States v. Bradley*, 390 F.3d 145, 155 (1st Cir. 2004) (making the distinction between "merely abusive employers" and employers who "deliberately sought to compel forced labor"). Rather, typical forced labor claims "involve prostitution, forced sweatshop work, or forced domestic service." *Toviave*, 761 F.3d at 626. These claims relate to cases with "squalid or otherwise intolerable living conditions, extreme isolation . . .." *Muchira v. Al-Rawaf*, 850 F.3d 605, 618–19 (4th Cir. 2017).

In this case, Plaintiffs' FAC makes no such allegations. Plaintiffs argue that "Defendants," presumably including MCC, violated the TVPA by obtaining "the labor services of Plaintiffs by means of a scheme, plan, or pattern intended to cause Plaintiffs to believe that, if they did not perform such labor, they or another person would suffer serious harm or physical restraint." FAC ¶ 312. Under this alleged "scheme," Plaintiffs were forced into labor because they incurred debts and needed to earn money to pay off those debts. FAC ¶¶ 313, 315. Plaintiffs' theory fails to meet the elements required by the statute and MCC amplifies this point in this discussion.

In order to constitute "serious harm" under the statute, the harm must "compel a reasonable person" to keep providing services in order to avoid the harm. 18 U.S.C. § 1589(c)(2). Plaintiffs argue that they suffered serious harm because they feared not being able to repay their debts. Opp. at 8. Plaintiffs string cite a number of cases in support of this proposition. However, the majority of these cases require more than fear of unpaid debt to be considered a "serious harm." *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 790 F. Supp. 2d 1134, 1146 (C.D. Cal. 2011) (finding that threats to, among other things, fire plaintiffs, sue them, allow their visas to expire, or deport them sufficiently

3

stated a claim for forced labor); *U.S. v. Calimlim*, 538 F.3d 706, 713 (7th Cir. 2008) (affirming forced labor criminal prosecution where evidence showed that defendants "intentionally manipulated" an immigrant worker by convincing her that leaving them would be illegal and result in deportation); *United States v. Farrell*, 563 F.3d 364, 372 (8th Cir.2009) (workers were "threatened with physical force," and "threat[ened] to have immigration authorities arrest and deport the workers if they did not 'comply' with the [defendants'] directives"). *See also U.S. v. Campbell*, 770 F.3d 556, 559 (7th Cir. 2014) (defendant lured young women to work for him as masseuses and required them to sever all communication with their families and friends, "renamed them, branded them with tattoos, abused them, and forced them to engage in prostitution"); *U.S. v. Sabhanani*, 599 F.3d 215, 224-32 (2d Cir. 2010) (victims were brought into the United States illegally, forced to sleep on the floor, dressed in rags, provided inadequate food, and threatened with arrest). Even when fear of not being able to repay debt is a component of the harm alleged, it must be sufficiently serious. For example, in *United States v. Dann, supra,* the Ninth Circuit court found such grave harm where the defendant threatened to withhold two years in back wage payments and required an additional payment of $8,000 if the plaintiff terminated her employment. *Dann*, 652 F.3d at 1171.

The FAC does not allege that Plaintiffs owed MCC any money or that they were compelled to stay in order to repay a debt to MCC. In contrast to cases cited by Plaintiffs, the FAC lacks allegations that MCC threatened Plaintiffs financially or otherwise that would keep them from terminating their employment. Rather, the gravamen of the allegations contained in the FAC against MCC a simply this: that Plaintiffs were not paid the wages they were owed.

Plaintiffs make use of their shotgun form pleading to lump MCC into alleged forced labor violations of plaintiffs who had no discernable relationship with MCC. As more fully addressed below, Plaintiffs argue that their FAC subheadings "indicate the relevance of those paragraphs and to which Defendant they are applicable." Opp. at 34. The only "serious harm" Plaintiffs allege with respect to MCC specifically is that they would be sent back to China if they did not work hard (FAC

4

¶ 70) and informing these plaintiffs that if they quit nobody else would hire them because they were working illegally (FAC ¶ 74).

Plaintiffs argue that a threat of deportation may constitute a serious harm. Opp. at 11. MCC takes no issue with this assertion and recognizes that many jurisdictions have found that threat of deportation may be sufficient to satisfy the "serious harm" of forced labor. *Nuñag–Tanedo v. E. Baton Rouge*, 790 F. Supp. 2d 1134, 1146 (C.D. Cal. 2011); *Aragon v. Che Ku*, 277 F. Supp. 3d 1055, 1070 (D. Minn. 2017); *Dann*, 652 F.3d at 1172. Nevertheless, MCC does take issue with the sufficiency of Plaintiffs' pleading regarding this alleged threat of deportation attributable to or by MCC.

Plaintiffs do manage to make specific allegations concerning threats of deportation from Defendant Gold Mantis and Supervisor Kong. FAC ¶¶ 7, 115-16, 118-19. Apart from these, the FAC makes no other specific allegations concerning threats of deportation. For example, it is alleged that "Defendants" told Plaintiffs "that if they sought out medical care on their own, they could face deportation or other troubles with immigration authorities." FAC ¶ 160. This allegation is not a threat that any of the Defendants would have the Plaintiffs deported. Plaintiffs also allege that "since their injuries" Plaintiffs have suffered a fear of being arrested or deported. FAC ¶ 304. Again, this allegation is not a threat that the Defendants would have Plaintiffs deported. This is especially true where Plaintiffs do not allege a relationship with Defendants that extends beyond the time of their injuries. Paragraphs 313 and 316 of the FAC are mere recitations of the elements for a forced labor cause of action and these paragraphs make use of shotgun pleading to lump all the Defendants and Plaintiffs together.

As to MCC specifically, MCC Plaintiffs assert that they were told if they did not work hard, they would be sent back to China. FAC ¶ 70. Plaintiffs do not allege that MCC threatened to report them to federal immigration authorities, which might have led to their confinement or deportation. The harm Plaintiffs would suffer by being sent back to their home country is not by itself a threat sufficient to continue forced labor. *See, Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1177 (9th

5

Cir. 2012) (rejecting forced labor claims when the alleged victims were able to walk away at any time). Plaintiffs' claim that such allegations are sufficient to violate the TVPA stretches the language of the statute.

Even if the threat of sending Plaintiffs back to their home country constituted serious harm, Plaintiffs have failed to allege that this was MCC's intent. "The linchpin of the serious harm analysis under § 1589 is not just that serious harm was threatened but that the employer *intended* the victim to believe that such harm would befall her if she left her employment." *Muchira v. Al-Rawaf*, 850 F.3d 605, 618 (4th Cir. 2017) (emphasis added). In order to survive a motion to dismiss, Plaintiffs must plead facts to support the conclusion that MCC "knowingly or intentionally engaged in actions or made threats that were sufficiently serious to compel a reasonable person in [Plaintiffs'] position" to continue working for MCC. *Id.*

Plaintiffs' allegations undermine this conclusion. MCC Plaintiffs freely left their alleged employment with MCC and went to work for a different employer. FAC ¶¶ 217-19, 234-36, 252. Plaintiffs' allegations concerning the element of intent are couched in their shotgun formulaic recitation of the element. *See* FAC ¶¶ 312, 318, 324-25. But this shotgun approach is undermined when Plaintiffs state that despite such threats, they left employment with MCC freely and unrestricted to proceed to work for Gold Mantis.

Plaintiffs confusingly argue that MCC is liable for "trafficking under 18 U.S.C. § 1590 because" it harbored "Plaintiffs by providing them housing and food[.]" Opp. at 13. Tellingly, Plaintiffs do not point out where in their 41-page FAC these allegations were made. This is because the FAC makes no such allegations as to MCC. Paragraphs 88 and 100 of the FAC make these allegations against Defendant Gold Mantis, and Paragraph 193 implicates Defendant Imperial Pacific. Clearly, Plaintiffs are capable of making specific allegations, as they have done here. Paragraphs 319 and 325 of the FAC should be ignored as they are a formulaic recitation of the

elements of the cause of action, unfairly alleging that "Defendants" harbored Plaintiffs with no specific allegations as to MCC.

Plaintiffs' sole argument that MCC benefited from this alleged scheme is because MCC was the general contractor for the project. Opp. at 14. Plaintiffs' allegations are nothing more than a recitation of the element of the claim and only vaguely alleges that MCC received a benefit. Plaintiffs do not allege what services they performed under threat that benefited MCC.

MCC respectfully requests that the Court dismiss Plaintiffs' First Cause of Action as to MCC.

**B.     The Court Should Dismiss Plaintiffs' Commonwealth Law Claims as to MCC.**

Plaintiffs' CNMI TVPA claim is premised on the same allegations as their federal TVPA claim. FAC ¶¶ 93-99. It still fails for all of the same reasons. Plaintiffs' factual allegations are deficient because they are merely a formulaic recitation of the elements of the cause of action. Plaintiffs' Second Cause of Action should be dismissed for the same reasons their first cause of action should be dismissed.

Plaintiffs failed to plead sufficient facts to state a claim for negligence against MCC. Plaintiffs' detail certain allegations for some elements of their negligence cause of action. Opp. at 19-20. Plaintiffs' negligence claim fails because the FAC establishes that they cannot demonstrate the requisite element of legal causation between any of the alleged acts or omissions by MCC and their injuries. MCC agrees with Plaintiffs' assertion that "whether a particular negligent act is the proximate cause of a resulting injury is a question of fact for the jury." Opp. at 20. However, this is a motion to dismiss testing the sufficiency of the pleading.

As to the element of causation, Plaintiffs cite several paragraphs of the FAC concerning duty and breach, ending with the conclusory statement that "[t]hese acts and omissions by MCC were a cause of Plaintiffs' injuries. (FAC ¶¶232-233, 241, 251, 276, 285, 296, 334)." These paragraphs of the FAC cited by Plaintiffs fail to allege a causal link between their losses and MCC. Paragraphs 232-33

7

of the FAC allege that Defendants failed to take proper precautions and did not provide Plaintiff Wang with necessary training or safety equipment. Similarly, Paragraph 241 of the FAC alleges that Defendants did not take "appropriate precautions" for Plaintiff Han. Paragraph 251 alleges that Defendant Gold Mantis failed to take proper precautions and did not provide Plaintiff Meng with necessary safety equipment. Paragraph 276 alleges that Defendants failed to provide appropriate equipment or manpower to safely move material. Paragraph 285 of the FAC alleges that Defendant Gold Mantis did not provide appropriate equipment or manpower to safely move material. Similarly, paragraph 296 of the FAC alleges that Defendant Gold Mantis did not provide appropriate equipment or manpower to safely move pieces of plaster. All of these paragraphs of the FAC allege breach of a duty, not causation, and none specifically name MCC. Finally, paragraph 334 of the FAC is merely a formulaic recitation of the causation element for a negligence claim.

In their opposition Plaintiffs reveal their theory of liability by citing to the Restatement (Third) of Torts § 27 (multiple sufficient causes), as well as a New York case where that court held that a jury could find that the contractor was liable for the injuries of its subcontractor's employee. Opp. at 22. Plaintiffs' reliance on *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308 (1980) is misplaced. In *Derdiarian*, the general contractor owed a duty to the employee of the subcontractor to provide a safe worksite. In contrast, the FAC makes no allegation that Defendant Gold Mantis was a subcontractor of MCC. Even if this allegation were made, there is still the failure to allege any causal link between Plaintiffs' losses and MCC. Plaintiffs' negligence claim thus fails for lack of causation and MCC respectfully requests that the Court dismiss Plaintiffs' Third Cause of Action as to MCC.

Plaintiffs have failed to state a claim for contractor liability against MCC. As stated in the Motion to Dismiss, Plaintiffs' allegations as to this cause of action are conclusory and merely a formulaic recitation of the statutory elements. According to Supreme Court precedent the Court is not bound to accept these conclusions and the Plaintiffs must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v.*

8

*Twombly*, 550 U.S. 544, 555 (2007). As such, the requisite pleading standard is not met, and Plaintiffs' Fourth Cause of Action should be dismissed as to MCC.

### C.     Ordering Plaintiffs to make a more definite statement is appropriate.

In their Opposition, Plaintiffs argue that that the allegations pled in their FAC are sufficiently clear because the term "Defendants" means all three Defendants and that subheadings indicate to which of the Defendants specific allegations apply. Opp. at 34. MCC does appreciate Plaintiffs' "painstaking" efforts to plead with clarity. However, it remains that Plaintiffs' use of shotgun pleading makes it difficult to form a responsive pleading and could interfere with the Court's ability to administer justice.  Moreover, it is not for the Court nor Defendants including MCC to presume to fill in the gaps when there is lacking clarity.  A more definite statement will ensure that when pleading multiple claims against multiple defendants separation of and detailing of allegations is appropriate and proper.

For example, and as discussed above, the FAC does not allege that MCC housed or provided meals for the Plaintiffs. However, in their Opposition, Plaintiffs argue that the FAC alleges MCC harbored the Plaintiffs by providing housing and meals. Opp. at 13. Paradoxically, the FAC does make specific harboring allegations as to Defendants Gold Mantis and Imperial Pacific. Once again, all Defendants are lumped together when Plaintiffs' pleadings incorporate every antecedent allegation by reference.  By shotgun pleadings MCC is lumped into a claim when no allegations are stated as to its alleged conduct or behavior.  This is the defect for which MCC urges a more definite statement.

This Court has previously recognized the prejudice that can befall defendants when a plaintiff makes use of the shotgun form. *Kim v. Quichocho*, 708 F. Supp. 2d 1079, 1091 (D. N. Mar. I. 2010). In the *Kim* case, the defendants did not file a motion for a more definite statement. Rather, it appears those defendants incorporated their argument into their 12(b)(6) motion. Nevertheless, this

9

Court put the plaintiff "on notice" of the Court's "concerns with shotgun pleadings" should plaintiff file an amended complaint. *Id.* The same concerns are applicable in the matter and MCC respectfully requests that the Court require Plaintiffs to file a more definite statement.

### III. CONCLUSION

In light of the above, Defendant MCC respectfully requests that the Court grant its Motion to Dismiss the Complaint and order Plaintiffs to file a More Definite Statement.

RESPECTFULLY SUBMITTED, May 17, 2019.

*/s/ Robert T. Torres*
ROBERT T. TORRES – F0197
Attorney for Defendant
MCC International Saipan Ltd. Co.