Phillip J. Tydingco (Bar No. F0324)
Imperial Pacific International (CNMI), LLC
Marina Heights Business Park, Suite 101, Puerto Rico
PMB 918 Box 10000
Saipan, MP 96950
Tel: 670-237-8401/8404

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| TIANMING WANG, DONG HAN, YONGJUN MENG, LIANGCAI SUN, YOULI WANG, QUINGCHUN XU, and XIYANG DU,<br><br>Plaintiffs,<br><br>v.<br><br>GOLD MANTIS CONSTRUCTION DECORATION (CNMI), LLC, MCC INTERNATIONAL SAIPAN LTD. CO., and IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC<br><br>Defendants. | CASE 1:18-CV-00030<br><br>DEFENDANT IMPERIAL PACIFIC INTERNATIONAL (IPI's) REPLY MEMORANDUM IN SUPPORT OF IPI'S MOTION TO DISMISS AND MOTION TO STAY |

I.  **The Third and Fourth Claims for Relief Should be Dismissed Without Leave to Amend**

The third and fourth claims for relief are not federal claims. They are diversity claims predicated on the Commonwealth's Workers Compensation law. Accordingly, they are governed by Commonwealth law. *Wang Xiao Ting v. Tasi Tours & Transportation, Inc.*, 2015 WL 1811250, at *3 (D. N.M.I, 2015). Plaintiffs have not advanced any argument or contention which negates dismissal of the two claims.

The Commonwealth's Workers Compensation law expressly provides that:

> [w]here the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this chapter, is the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of such other employee's employment; **provided that, if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death resulted from the injury, may elect to claim compensation under this chapter, or to maintain an action at law or for damages on account of such injury or death.**

4 CMC §9305. Section 9305 makes the Workers Compensation provisions exclusive when an employer secures workers compensation coverage. The highlighted exception to the exclusivity of the Workers Compensation provisions is clearly the statutory provision plaintiffs' rely on in pursuing their 3rd and 4th claims for relief as they specifically contend IPI did not secure any Workers Compensation insurance coverage as required by law. *See* FAC ¶ 157. The phrase "fails to secure compensation" as used in §9305 is construed as meaning the failure to obtain any Workers Compensation policy. *See Bernal v. Tenorio*, Civil Action No. 93-890 "Order Granting Summary Judgment" at 4 (N.M.I. Super. Ct. May 25, 1994). The Declaration of Magdalena P. Attao establishes IPI possessed Workers Compensation coverage. Plaintiffs exercise of the most minimal due diligence prior to filing this federal lawsuit would have easily revealed the existence of IPI's Workers Compensation policy and the falsity of their allegations that IPI did not secure Workers Compensation coverage.

Not surprisingly or unexpectedly, upon being confronted with the existence of IPI's Workers Compensation Policy, plaintiffs switched tactics and now contend that IPI's policy does not cover them. However, the exclusivity of the Workers Compensation law means that the coverage issue has to be raised and addressed before the Commonwealth Workers Compensation Commission which decides such matters and not this federal court. *See Santos v. PSS*, 2002 MP 12(2006)[Judicial review of WCC determination on existence of coverage]; *Bernal, supra* [same].

Even more so, it seems Plaintiffs cannot advance the argument that IPI's policy does not cover them as the presumption of coverage exists under Commonwealth law. 4 CMC §9329. Specifically, Commonwealth law provides that "[i]n any proceedings for the enforcement of a claim for compensation under this chapter, **it shall be presumed, in the absence of substantial evidence to the contrary: (a) That the claim comes within the provisions of this chapter..**" (emphasis added) 4 CMC 9329(a). Thus, since IPI possessed Workers Compensation Insurance the presumption exists that plaintiffs' claim comes within its coverage. To the extent Plaintiffs can challenge this presumption which exists for their own benefit, they have to do so before the Commonwealth Workers Compensation Commission. They have not yet done so.

As noted in IPI's dismissal memorandum, Commonwealth law contains a one year limitation period for filing a claim which comes within the purview of the Workers Compensation statutory scheme. 4 CMC §9322. The only statutory exceptions to this one year limitation period are if an employer waives the limitation period or if the employee is a minor or suffers from a mental defect. *Id.* None of the exceptions apply in this case as IPI does not waive the defense, Plaintiffs are not minors and none of the Plaintiffs claim to suffer from a mental defect. This means the one year limitation period applies to Plaintiffs Workers Compensation claims against IPI.

None of the Plaintiffs allege or otherwise contend that they filed their claim within one year of their alleged injuries. Thus, even if Plaintiffs could raise their Workers Compensation claim issues directly to this federal court instead of the Workers Compensation Commission, then they had to do so within one year of their alleged injury. They did not do so. The FAC clearly establishes that more than one year has lapsed between the alleged injury of each Plaintiff and the filing of this federal lawsuit against IPI.

3

Plaintiffs seek to evade the exclusivity bar by claiming that IPI has not shown that it posted notices of Workers Compensation coverage as required by 4 CMC 9343. Plaintiffs' Response Memorandum at 30 lines 16-22. Plaintiffs base this contention on *Muna v. Pacific Development Inc*, Civil Action No. 96-1115, Decision and Order, (N. Mar. I. Super. Ct. August 10, 1998). Reliance on *Muna* is misguided.

*Muna* concerned an injury that occurred in 1994 and the trial court relied on the provisions of the Workers Compensation Act as enacted by P.L. 6-33. *See Muna*, Decision and Order at 1-3. However, the provision of the Workers Compensation Act relating to the posting of notices, 4 CMC §9343, was amended by P.L. 9-33 §9. The amendment was not before the Court in *Muna* as the amendment occurred after the date of the accident at issue. *See* P.L. 9-33 §17["The enactment of this Act shall not have the effect of terminating, or in any way modifying, any liability, civil or criminal, which shall already be in existence at the date this Act becomes effective."].

The legislative amendment provided that "4 CMC Section 9343 is amended as subsection (a) and by adding a new subsection (b) to read as follows...." P.L. 9-33 §9. In other words, the amendment to §9343 made the previous statutory provision concerning the posting of notices subsection (a), and it then enacted a subsection (b) which specifically addressed the consequences for an employer's failure to post the required notices.

Subsection (b) as enacted by P.L. 9-33 is still a part of the Commonwealth's Workers Compensation law. It reads as follows: "[f]ailure of the employer to post all notices including updated notices required by this section shall be cause for the administrator to assess against such employer a civil penalty of $100." 4 CMC §9343(b). This amendment is essentially the legislature overturning the portion of *Muna* Plaintiffs seek to rely on by

4

specifically providing that the failure to post a notice only exposes an employer to a financial penalty. This means the failure to post a notice is akin to *Muna's* interpretation and application of 4 CMC §9339 which assesses a fine for an employer's failure to report an injury. *Muna*, Decision and Order at 5.

With respect to §9339, *Muna* held the exclusivity of the Act applies even if the employer fails to send the required report as the statute provides a financial penalty as the remedy for such failure. *See Id.* Accordingly, the legislative amendment to §9343 established a financial penalty for an employer's failure to post the required notices. Pursuant to *Muna*, this means the exclusivity of Act applies if the employer fails to comply with that requirement as the employer is only exposed to a financial penalty. See *Muna*, Decision and Order at 5. *Muna*, therefore, does not assist Plaintiffs and the alleged failure of defendants to post the required notices does not create an exception to the exclusivity of the Workers Compensation coverage under Commonwealth law.

Even more so, the alleged failure to post is immaterial to Plaintiffs' 4th Claim for Relief. The duty to post notice of workers compensation coverage is limited to employers. *See* 4 CMC §9343. The Fourth Claim for relief is not premised on an employer and employee relationship. Rather it is a statutory provision designed to ensure coverage for certain workers by a third party when their employer has failed to secure Workers Compensation coverage. Specifically, the 4th Claim for Relief is not premised on IPI being the Plaintiffs' employer. It rests upon IPI allegedly being a construction contractor. *See* 4 CMC §9304["...the contractor shall be liable for and shall secure payment of such compensation **to employees of the subcontractor** unless the subcontractor has secured such payments."(emphasis added)] The Workers Compensation law does not obligate a non-employer subject to §9304 to post notice of coverage. *See* 4 CMC §9343.

Hence, the alleged failure to post notice of coverage is immaterial with respect to the 4th Claim for Relief.

Lastly, Plaintiffs display a misunderstanding of a FRCP Rule 12(b)(6) motion by asserting this Court should disregard or not consider the existence of the Workers Compensation policy for purposes of IPI's dismissal motion.

Rule 12(b)(6) jurisprudence holds that a trial court may properly consider certain documents not attached to a pleading without converting the motion into one for summary judgment when the complaint relies on or makes reference to the document. *Lizama v. ANZ Guam, Inc.*, 2017 WL 3446493, at *3 (D. N.M.I. 2017), aff'd, 729 Fed. Appx. 594 (9th Cir. 2018)(unpublished); *Yu Hua Jin Aquino v. San Nicolas*, 2011 WL 52542, at *1 n.2 (D. N.M.I. 2011). *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir.2003)[ "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."]. As this Court recognizes, "'[w]hen [the] plaintiff fails to introduce a pertinent document as part of his pleading, [the] defendant may introduce the exhibit as part of his motion attacking the pleading.'" *Lizama*, 2017 WL 3446493, at *3 citing *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1327 at 762–63 (2d ed. 1990)). Thus, this Court can appropriately acknowledge and consider IPI's Workers Compensation policy without converting the dismissal motion into one for summary judgment. *Id*; *Aquino*, 2011 WL 52542, at *1 n.2

## II. The First and Second Claims for Relief Should be Dismissed

To survive a Rule 12(b)(6) dismissal motion a complaint must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007); *Han Hui Yu v. Soi-In Corp.*, 2009 WL 10676224, at *1 (D. N.M. I.

6

2009). Plaintiffs' factual allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action ...." *Id.* (citations omitted).

The FAC fails to meet this pleading threshold and Plaintiffs' response memorandum does not demonstrate otherwise.

As pointed out in IPI's moving memorandum, the Trafficking Victims Protection Reauthorization Act ("TVPA" or "TVPRA") codified at 18 U.S.C. § 1589 *et seq*, does not regulate labor practices, redress employment disputes, or provide a remedy for fraud. *See Muchira v. Al-Rawaf*, 2015 WL 1787144, at *7 (E.D. Va. 2015) aff'd 850 F.3d 605 (4th Cir. 2017). Rather, it is a criminal statute enacted to combat serious human trafficking. *Id.* Plaintiffs do not dispute this underlying purpose for the statutory scheme. While the TVPRA is designed to assist and provide a civil remedy for legitimate victims of serious human trafficking, unfortunately, there are some who seek to exploit or "game" the system by wrongfully including "deep pocket" defendants like IPI for the sole purpose of financial enrichment. In doing so, they contravene *Twombly* by relying on broad and conclusory allegations which merely parrot the statutory elements. They do not allege sufficient facts showing how IPI is liable for the alleged forced labor and trafficking.

For instance, plaintiffs now concede IPI's liability is predicated on it having "'benefitted' from the forced labor scheme." Plaintiffs' Response Memorandum at 16 lines 15- 17. This alleged benefit apparently derives from progress being made on IPI's construction project that allowed it "to keep its license and earn billions through its gambling operations." *Id.* This concession means IPI is entitled to dismissal of any other basis for liability that Plaintiffs may have alleged in the FAC. Nevertheless, the FAC fails to sufficiently satisfy the alleged "benefit" basis for liability.

7

Essentially, Plaintiffs contend IPI "benefitted" from the forced labor and trafficking scheme because it was in "danger" of losing its casino license and the forced labor and trafficking schemes enabled IPI to retain its license. *See* Plaintiffs' Response Memorandum at 16 lines 15- 17. This contention rests upon conclusory allegations without any credible support. For instance, IPI's license cannot be revoked or otherwise terminated without due process of law which, among other procedures, necessitates the institution of administrative proceedings by the Commonwealth Casino Commission. *See* 4 CMC §2317(d)[License suspension or revocation subject to judicial review]; NMIAC §175-10.1-675[Suspension or revocation of casino license subject to Commonwealth Administrative Procedures Act. *See Also* 1 CMC §9101 *et seq* [Commonwealth Administrative Procedures Act]. The FAC does not allege any facts indicating the Commonwealth had taken any steps to suspend or revoke IPI's casino license. Instead, Plaintiffs only allege that IPI obtained an extension of time to complete the construction project. *See* FAC ¶51. Likewise, the FAC does not contain any allegation that the Commonwealth had instituted or was about to institute administrative proceedings pursuant to the Commonwealth Administrative Procedures Act to suspend or revoke IPI's casino license. In other words, plaintiffs "benefit" claim relies on a conclusory, wholly speculative and an unsupported assertion of a pending adverse sanction being levied on IPI by the Commonwealth. Such a ritualistic and conclusory assertion of an offense element is insufficient under *Twombly*.

More fundamentally, however, for IPI to be liable for "benefitting," Plaintiffs have to have been actual victims of forced labor or trafficking. As IPI asserted in its moving memorandum and MCC has articulated in its moving and reply memoranda, the FAC fails to sufficiency plead or plausibly show that Plaintiffs were victims of forced labor or trafficking.[1] As an example, Plaintiffs now concede that the physical injuries they allege in the FAC were not

---

[1] IPI hereby adopts and incorporates MCC's legal analysis and argument concerning the insufficiency of Plaintiffs' pleading.

inflicted as part of the alleged forced labor or trafficking scheme and therefore do not constitute the "serious harm" element. Plaintiffs' Response Memorandum at 12 n.5. In their response, Plaintiffs assert the "serious harm" rests upon another basis. They contend the serious harm consists of the failure or inability to repay their debts. Plaintiffs' Response Memorandum at 8 lines 20-24. Plaintiffs cite FAC ¶¶ 52-53, 55-56, 101-102 188 and 315, as the allegations supporting this serious harm. The cited FAC paragraphs, however, do not survive scrutiny under the *Twombly* analysis.

> The FAC paragraphs Plaintiffs rely on to plead serious harm provide as follows:
>
> 52. Plaintiffs and many of the other Chinese construction workers on the Casino Project paid large recruitment fees for jobs in Saipan based on the promise of good conditions, high wages, legal work status, and immigration benefits. Some Plaintiffs were specifically promised jobs working on the Casino Project.
>
> 53. Plaintiffs borrowed money, often at high interest rates, to pay these recruitment fees. In some instances, Plaintiffs used their home as collateral to borrow this money
>
> 55. Defendants' managers referred to employees lacking work visas as "heigong", which literally means "black worker" in Chinese and implies that the person lacks legal status.
>
> 56. Upon information and belief, individuals and/or entities working for, with, or on behalf of Defendants were involved in recruiting workers from China who they knew lacked work visas and were paying recruitment fees for their jobs. These individuals and/or entities often received a financial benefit from the workers' payment of those recruitment fees.
>
> 101. Upon information and belief, Supervisor Kong and other Gold Mantis managers were aware that Plaintiffs incurred large debts to come work in Saipan. Plaintiff Youli Wang had conversations with Zhengwei Zhang, a Gold Mantis manager, about this fact.
>
> 102. During meetings, Supervisor Kong told Plaintiffs and their coworkers that they must war hard in order to repay their debts.
>
> 188. Upon information and belief, Imperial Pacific was aware of the prevalence of foreign migrant workers in the construction industry incurring debt in order to pay recruitment fees for job opportunities abroad.
>
> 315. Plaintiffs believed that if they stopped working for Defendants, they would be unable to earn sufficient money to repay their debts and the accumulating interest, causing various forms of serious harm including: harassment or physical violence towards them or their relatives perpetrated by those who loaned them money; loss of their family homes or other

9

> collateral and the corresponding hardship; and severe embarrassment, shame, or "loss of face" amongst their relatives, friends, and community.

Such conclusory and non-specific allegations regarding "serious harm" if debts were not repaid fail to satisfy *Twombly*. Moreover, it should be noted that "[t]he linchpin of the serious harm analysis under § 1589 is not just that serious harm was threatened but that the employer intended the victim to believe that such harm would befall her." *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011). The FAC does not contain any assertion that MCC or any other employer "intended" each plaintiff to believe that he would in fact suffer serious harm.

Furthermore, the harm or threat of harm, "considered from the vantage point of a reasonable person in the place of the victim, **must be 'sufficiently serious' to compel that person to remain**" in her condition of servitude when she otherwise would have left. *Muchira*, 850 F.3d at 618 as amended (Mar. 3, 2017) citing *Dann*, 652 F.3d at 1170 (Emphasis added). Plaintiffs do not identify or otherwise point to any FAC allegation indicating that each plaintiff desired to leave their employment but declined to do so because the alleged threats compelled them not to do so.

As pled, the FAC fails to sufficiently allege a claim for forced labor or trafficking.

### III. The Motion to Strike is Proper

The TVPRA does not regulate labor practices. *See Muchira v. Al-Rawaf*, 2015 WL 1787144, at *7 (E.D. Va. 2015). FAC ¶¶ 127-155 relate to allege labor practices or OSHA violations. The FAC does not allege or otherwise indicate to how the facts asserted in ¶¶ 127-155 relate to Plaintiffs forced labor and trafficking claims. The only apparent basis for including such unrelated allegations in the FAC is simply to incite anger and evoke unfair prejudice and bias against IPI. Accordingly, the allegations should be stricken.

## IV. This Civil Action Is Subject to the Mandatory Stay

Plaintiffs principally rely on *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, 2011 WL 5188424 (W.D. Ark. 2011) to oppose the mandatory stay. Plaintiffs Response Memorandum at 37 lines 6 - 24[Plaintiffs claiming *Kolbek* is "most instructive for the present matter."]. *Kolbek* is a relic and is not instructive for this case.

*Kolbek* is premised on the erroneous concept that only the federal government can request a stay of a civil action pursuant to 18 U.S.C. §1595. *See* 2011 WL 5188424 at *2-*3. Since *Kolbek*, federal courts have recognized that a civil defendant can file for the mandatory stay under §1595. *Nesbitt v. Bemer*, 2018 WL 5619716, at *1 (D. Conn. 2018); *Plaintiff A v. Schair*, 744 F.3d 1247, 1250 (11th Cir. 2014); *Lunkes v. Yannai*, 882 F. Supp. 2d 545, 548 (S.D.N.Y. 2012).

*Kolbek* also misses the point that in some instances it may not be in the government's advantage to seek a stay and may therefore rely on the civil litigation as a prime source for information to supplement its investigation and/or decision to pursue criminal action. It is an established fact that the government has engaged in criminal investigations and criminal prosecutions based on the facts and occurrences as Plaintiffs contend demonstrate forced labor and trafficking. The government has not, however, announced that it has completed its investigations and/or that it will not pursue any criminal action against IPI. This circumstance places IPI in the untenable position of having to choose between its 5th and 6th Amendment rights and defending against the forced labor and trafficking alleged in this lawsuit. *See Nesbitt*, 2018 WL 5619716 at *5. Noticeably, in their response, Plaintiffs do not address the constitutional implications of IPI being confronted with this Hobson's choice.

11

Most instructive for this case is *Nesbitt's* astute analysis concerning the Hobson's Choice dilemma. *Nesbitt* concluded that "the constitutional issues at stake are of sufficient gravity that denying a stay would be manifestly unjust to the defendant ..." *Id.*, 2018 WL 5619716 at *6.

## CONCLUSION

Plaintiffs' response memorandum fails to advance any argument or contention that justifies denying IPI's motions to dismiss, strike or to stay.

Respectively Submitted,

/s/ Phillip J. Tydingco
Phillip J. Tydingco
IPI General Counsel
Attorney for Defendant IPI