Bruce Berline
BERLINE & ASSOCIATES, LLC
Second Floor, Macaranas Building
PO Box 5682 CHRB
Saipan, MP 96950
Tel: (670) 233-3663
Fax: (670) 233-5262
Email: bruce@saipanlaw.com

Aaron Halegua
AARON HALEGUA, PLLC
154 Grand Street
New York, New York 10013
Tel: (646) 854-9061
Email: ah@aaronhalegua.com

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

TIANMING WANG, *et. al*,

Plaintiffs,

v.

GOLD MANTIS CONSTRUCTION
DECORATION (CNMI), LLC, *et. al*,

Defendants.

Case No. 18-cv-0030

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT IPI'S MOTION FOR A PROTECTIVE ORDER AND PLAINTIFFS' COUNTER-MOTION TO COMPEL**

Hearing Date:
Hearing Time:
Judge: Hon. Ramona V. Manglona

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**TABLE OF CONTENTS**

I.     **PRELIMINARY STATEMENT** ............................................................................... 1

II.    **BACKGROUND** ....................................................................................... 3

III.  **ARGUMENT**............................................................................................... 6

      **A. IPI'S MOTION FOR A PROTECTIVE ORDER SHOULD BE DENIED**…...…………6

        1.  IPI has not met its "heavy burden" of establishing "good cause" for a protective order by showing "specific examples" of the harm it will endure………………….………......…6

        2.  IPI's unsupported assertion that this situation is akin to qualified immunity cases is plainly wrong and has been rejected by courts………………....……9

        3.  IPI did not meet and confer in "good faith" before filing this Motion for a protective order…………………………………………11

      **B. THE COURT SHOULD GRANT PLAINTIFFS' MOTION TO COMPEL IPI TO PRODUCE DOCUMENTS AND ANSWER INTERROGATORIES**…………………13

      **C. IPI AND ITS ATTORNEYS SHOULD BE ORDERED TO PAY PLAINTIFFS' REASONABLE EXPENSES AND ATTORNEYS' FEES**…………..……………......15

IV.  **CONCLUSION** ............................................................................................... 16

**TABLE OF AUTHORITIES**

**Cases**

*Baldwin v. United States*, 823 F. Supp. 2d 1087 (D. N. Mar. I. 2011) ................................................ 13

*Bauer v. Winkel*, 31 Fed. R. Serv. 2d 732 (D. N. Mar. I. 1981) ............................................................ 7

*Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470 (9th Cir. 1992) ..................................... 7

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ......................................................................................... 10

*Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir. 1975)................................................................. 6

*Braswell v. United States*, 487 U.S. 99 (1988)…………………………………………...…………...8

*Cardenas v. Dorel Juvenile Grp., Inc.*, 231 F.R.D. 616 (D. Kan. 2005) ........................................... 13

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949) ........................................................... 11

*Dunn v. Castro*, 621 F.3d 1196 (9th Cir. 2010) ................................................................................. 10

*FirstNet Ins. Co. v. Zhen Rui Brother Corp.*,

        2011 WL 8034171 (D. N. Mar. I. Oct. 24, 2011)....................................................... passim

*Grand Canyon Skywalk Dev. LLC v. Steele*, 2014 WL 60216 (D. Nev. Jan. 7, 2014).................... 8, 9

*Hamilton v. TBC Corp.*, 2018 WL 9815585 (C.D. Cal. Mar. 29, 2018) ............................................ 14

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ....................................................................................... 10

*In re Twelve Grand Jury Subpoenas*, 908 F.3d 525 (9th Cir. 2018)…………………………………….8

*Jornigan v. New Mexico Mut. Cas. Co.*, 2004 WL 3426754 (D.N.M. June 9, 2004)......................... 10

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,

        2011 WL 5188424 (W.D. Ark. Oct. 31, 2011) .......................................................................... 8

*Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 WL 489743 (E.D. Cal. Feb. 7, 2011)....................... 9

*Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) ................................................................... 10

*Nationstar Mortgagee, LLC. v. Flamingo Trails No. 7 Landscape Maint. Assoc.*,

        316 F.R.D. 327 (D. Nev. 2016)...................................................................................... 14, 15

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.,* 307 F.3d 1206 (9th Cir. 2002) ........................ 7

*Pioche Mines Consolidated, Inc. v. Dolman*, 333 F.2d 257 (9th Cir. 1964) .................................. 2, 14

*Plaintiff A v. Schair*, 744 F.3d 1247 (11th Cir. 2014).................................................................. passim

*Russo v. Lopez*, 2012 WL 1463591 (D. Nev. Apr. 27, 2012) ................................................................. 7

*Sanders v. Davis*, 2011 WL 809959 (W.D.N.C. Mar. 2, 2011)............................................................ 11

*Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597 (D. Nev. 2011) ............................................................. 8

*Wintrust Mortg. v. Wettstein*, 2017 WL 10562962 (C.D. Cal. Apr. 17, 2017)................................ 2, 14

*Wood v. McEwen*, 644 F.2d 797 (9th Cir. 1981)................................................................................9

**Federal Statutes**

18 U.S.C. § 1589................................................................................................................. passim

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Plaintiffs, through their attorneys, hereby submit this memorandum of law in support of Plaintiffs' opposition to Defendant Imperial Pacific International (CNMI), LLC's ("IPI") Motion for a Protective Order ("Motion") and hereby move this Court, based on this memorandum of law and the Declaration of Aaron Halegua, dated November 26, 2019 ("Halegua Decl.") and all exhibits attached thereto, for an order pursuant to Fed. R. Civ. P. 37(a) compelling IPI to respond to Plaintiffs' discovery requests and pay Plaintiffs' reasonable attorneys' fees.

## I. **PRELIMINARY STATEMENT**

In a remarkably persistent effort to avoid producing even a single document or answering a single interrogatory in this litigation, on November 21, 2019 – months after being served with Plaintiffs' discovery requests and just four days prior to the date on which it had agreed to respond to those requests – IPI moved this Court for a protective order ("Motion") to stay all discovery. (Doc. No. 47). In its memorandum of law ("IPI Mem."), citing no relevant legal authority, IPI unpersuasively argues that "good cause" exists for the Court to halt all discovery of any form because, one week earlier, IPI filed (for the second time) a motion for a stay ("Stay Motion") pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA").

IPI does not come close to meeting its "heavy burden" for obtaining a protective order and stopping all discovery. *FirstNet Ins. Co. v. Zhen Rui Brother Corp.*, No. 11-cv-005, 2011 WL 8034171, at *2 (D. N. Mar. I. Oct. 24, 2011). IPI's brief does not cite a single case concerning the TVPRA, let alone one in which a protective order was granted because the civil defendant had a pending § 1595(b) motion for a stay. IPI offers no specific facts or examples of the harm that will result if a protective order is not granted, only conclusory statements and speculation. IPI provides zero legal authority to support its contention that its Motion is similar to the granting of a protective order when a qualified immunity motion is pending—and ignores cases that directly address the fundamentally distinct purposes of the § 1595(b) stay (temporarily delay discovery to avoid

1

1    obstructing federal prosecutors) and the qualified immunity doctrine (prevent public officials from

2    ever being subjected to discovery or suit). *Plaintiff A v. Schair*, 744 F.3d 1247, 1254 (11th Cir. 2014).

3    Moreover, as Plaintiffs have explained (Doc. No. 50), IPI's underlying Stay Motion is doomed to fail

4    because it does not even *allege* that the criminal investigation and this case involve the same

5    "victim"—a statutory requirement under § 1595. Therefore, the mere filing of a meritless Stay Motion

6    cannot justify the drastic preliminary relief that IPI requests. Accordingly, IPI's Motion for a

7    protective order – clearly just one more tactic to delay discovery – must be rejected.

8         Concurrently, the Court should grant Plaintiffs' counter-motion to compel IPI to produce

9    documents and to answer interrogatories. These discovery requests were served electronically on

10   September 18, 2019, and after IPI objected, served again by hand on October 25, 2019. While the

11   other defendants have produced thousands of pages of discovery and initial interrogatory answers, IPI

12   has not produced a single document or interrogatory answer. Instead, IPI has persisted in its objections

13   to service and to the format of Plaintiffs' interrogatories, even in the face of legal authority to the

14   contrary. In numerous letters, emails, and meet and confer teleconferences between the parties, IPI has

15   rejected every proposed compromise for it to start producing discovery. During Plaintiffs' meet and

16   confer, IPI insisted that Plaintiffs would receive discovery responses on November 25, but not before

17   then. However, on that day, IPI boldly objected to producing any discovery because of its *pending*

18   motion for a protective order – thus effectively granting its own motion – despite Plaintiffs having

19   provided clear Ninth Circuit authority that the mere *filing* of such a motion does not absolve a party

20   of its discovery obligations. *Wintrust Mortg. v. Wettstein*, No. 16-cv-06441, 2017 WL 10562962, at

21   *2 (C.D. Cal. Apr. 17, 2017) (the party's "assertion is contrary to settled law which establishes that a

22   party needs to obtain a protective order, not just make a motion for one") (*citing Pioche Mines*

23   *Consolidated, Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964)). Inexplicably, IPI even continued to

24

2

object to electronic service, despite having previously acknowledged in writing that it considered the October 25 service to be valid.

It has become evident that action by this Court is necessary to compel IPI to participate in discovery as well as address its dilatory tactics and clear lack of good faith. The fact that IPI's Motion for a protective order makes *preemptive* arguments as to why it should not be sanctioned for discovery abuses – not only citing Rule 37(d)(2), but bolding its words – demonstrates IPI's awareness that its conduct is so plainly beyond the pale. The Court cannot condone such behavior, and thus should grant Plaintiffs' motion to compel discovery and order IPI to pay Plaintiffs' reasonable attorneys' fees.

## II. <u>BACKGROUND</u>

Plaintiffs are seven men from China who, upon promises of high wages and good conditions, paid large recruitment fees for jobs in Saipan. (FAC ¶¶3, 12-19, 52). Plaintiffs were employed by Defendants Gold Mantis Construction Decoration (CNMI), LLC ("Gold Mantis") and MCC International Saipan Ltd. Co. ("MCC") to build IPI's casino and hotel project in Garapan. The First Amended Complaint ("FAC") alleged four causes of action related to forced labor, negligence, and failure to secure compensation for Plaintiffs' injuries. (Doc. No. 6).

On April 30, 2019, all Defendants filed motions to dismiss the FAC, and IPI moved to stay (Doc. No. 14) these proceedings pursuant to 18 U.S.C. § 1595(b). At oral argument on June 6, 2019, the Court denied IPI's motion for a stay from the bench because IPI had offered no evidence of an existing criminal investigation into a forced labor or trafficking scheme. (Doc. No. 29). The Court later denied all of Defendants' motions in a written order dated June 24, 2019 and ordered discovery to proceed. (Doc. No. 30).

A case management plan was entered by the Court on September 10, 2019. (Doc. No. 43). Plaintiffs served interrogatories as well as requests for documents on all Defendants on September 18, 2019, triggering a deadline to respond by October 21, 2019. (Halegua Decl. ¶3; Exhibit B ("Plaintiffs'

1    Document Requests"); Exhibit C ("Plaintiffs' Interrogatories")). Since then, although deficiencies

2    exist, MCC and Gold Mantis have produced thousands of pages of documents as well as initial answers

3    to Plaintiffs' interrogatories. (*Id.* ¶20).

4        IPI requested a two-week extension of time to respond to Plaintiffs' discovery requests,

5    providing numerous reasons but never mentioning an objection to service. (Halegua Decl. ¶4, Ex. D).

6    On October 22, 2019, IPI then served written responses to Plaintiffs' Document Requests that objected

7    to electronic service; no documents were produced. (*Id.* ¶5, Exs. E, F). Plaintiffs requested a meet and

8    confer to address this objection and, in the meantime, without waiving any rights, Plaintiffs served

9    their discovery requests on IPI by hand-delivery on October 25, 2019. (*Id.* ¶6, Ex. G). Nonetheless,

10   during the meet and confer on October 31, 2019, IPI refused to provide a date by which it would

11   produce responsive documents. (*Id.* ¶7, Ex. H).   IPI stated that it would respond to Plaintiffs'

12   Interrogatories by November 4 and never mentioned an intention to continue objecting to service even

13   after hand-delivery had occurred six days prior. (*Id.*). On November 4, 2019, IPI responded to

14   Plaintiffs' Interrogatories by objecting to electronic service and alleging that several of Plaintiffs

15   interrogatories were "multi-part" questions. IPI did not answer a single interrogatory. (*Id.* ¶9, Ex. J).

16       Plaintiffs provided IPI with legal authority from this Court and others in the Ninth Circuit

17   establishing that electronic service was proper and that its interrogatories were proper. (*Id.* ¶10, Ex.

18   K). IPI refused to negotiate or budge from its position that it had no obligation to respond to Plaintiffs'

19   discovery requests. (*Id.* ¶12, Ex. L). In the interim, on November 13, 2019, IPI filed a motion to stay

20   discovery pursuant to 18 U.S.C. § 1595(b) on the basis that its offices had been searched and its records

21   subpoenaed in connection with a criminal investigation ("Investigation") (*Id.* ¶11; Doc. No. 45).

22       Plaintiffs requested a meet and confer for November 18 or 19 to discuss IPI's objections and

23   when it would respond to Plaintiffs' discovery requests. (*Id.* ¶12). In advance of that call, Plaintiffs

24   sent a letter that proposed a compromise in which IPI would produce responsive documents on a date

1   between 30-days after Plaintiffs' electronic service of Plaintiffs' Document Requests and 30-days after

2   hand-delivery of Plaintiffs' Document Requests. Plaintiffs also proposed a compromise in which IPI

3   at least respond to those interrogatories that IPI did not allege constituted "multi-part" questions, while

4   judicial intervention be sought for the remaining interrogatories. Plaintiffs also reiterated that they

5   would not consent to stay the litigation while IPI's motion to stay was pending. (*Id.* ¶14, Ex. M).

6          During the call, IPI rejected each of the proposed compromises. Instead, IPI stated that

7   November 25 was the proper date on which its discovery requests were due and made repeated

8   statements to suggest that IPI would be providing substantive responses to Plaintiffs' discovery

9   requests, even mentioning making available "hard copies" and providing electronic documents

10  "through external drives or thumb drives." (*Id.* ¶15, Ex. N; Doc. No. 47-2 at 7-10 ("IPI Meeting

11  Notes")).[1] IPI never mentioned its intention to seek a protective order to stop all litigation while its

12  motion for a stay was pending. (*Id.* ¶15, Ex. N; IPI Meeting Notes). Similarly, IPI never mentioned

13  any intention to seek judicial intervention prior to or after the phone call. (*Id.* ¶¶15-17, Exs. N, O).

14         On November 21, 2019, to Plaintiffs' surprise, IPI then filed a motion for a protective order

15  stopping all discovery until its motion for a stay is decided. (Doc. No. 47). On November 25, 2019,

16  Plaintiffs sent an email to IPI concerning its failure to meet and confer in "good faith" before filing its

17  motion for a protective order, and providing legal authority from the Ninth Circuit establishing that

18

19  [1] IPI submitted the notes taken by IPI employee Melina Salas during the November 19, 2019 meet and
    confer teleconference in connection with its motion for a protective order (Doc. No. 47-2 at 7-10, "IPI
20  Meeting Notes"). Plaintiffs contest the completeness and accuracy of the IPI Meeting Notes.
    Nonetheless, the document does make clear that IPI continually stated that it would respond to
21  Plaintiffs' discovery requests by November 25. Specifically, the IPI Meeting Notes record the
    following statements by IPI's counsel: "Well [sic] lay it out there to the extent that we have hard
22  copies, we'll have those made available and off [sic] course electronically, through external drives or
    thumb drives…"; "well if it's not within our objection well [sic] try and make it available to the extent
23  that we can…"; "if you feel that our responses by the 25th are not proper or consistent with or I'm
    sorry not in keeping with the discovery rules, then I guess you will file your motion to compel."
24

merely filing for a protective order, without obtaining a court order, does not absolve a party of its discovery obligations. The email stated that Plaintiffs still expected IPI to fully respond to its discovery requests on that day, and would file a motion to compel if it did not. (*Id.* ¶17, Ex. O).

On November 25, 2019, IPI served "updated" versions of its objections to Plaintiffs' Document Requests (*id.* ¶18, Ex. P) and Plaintiffs' Interrogatories (*id.* ¶18, Ex. Q). These documents have no date on them. The only "update" appears to be that IPI added this objection to each response: "IPI need not produce any document until after resolution of its motions for a protective order and for a mandatory stay pursuant to 18 U.S.C. § 1595." Even though IPI acknowledged that at least the hand-delivery of Plaintiffs' document requests on October 25 constituted valid service, the very first objection in IPI's response to Plaintiffs' Interrogatories is that IPI did not agree in writing to electronic service. (*Id.* ¶18, Ex. Q). On November 25, 2019, after receiving these responses, Plaintiffs informed IPI that it intended to file a motion to compel, but invited IPI to call Plaintiffs' counsel if there was any circumstance in which IPI would consider producing documents or answering interrogatories prior to the Court deciding its motion for a protective order. IPI did not call. (*Id.* ¶19, Ex. R).

### III. ARGUMENT

**A. IPI'S MOTION FOR A PROTECTIVE ORDER SHOULD BE DENIED.**

    1. <u>IPI has not met its "heavy burden" of establishing "good cause" for a protective order by showing "specific examples" of the harm it will endure.</u>

The district court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). As is well-established in this Circuit, and has been held by this Court, "[t]he party resisting discovery bears a heavy burden of showing why discovery should be denied." *FirstNet*, 2011 WL 8034171, at *2 (*citing Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

6

1

2

3

4

5

6

7

8

9

10

11

12

13

"The rule requires more than broad allegations of harm, unsubstantiated by specific examples or articulated reasoning…. The movant must point to specific facts that support the request, as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Russo v. Lopez*, No. 11-cv-00284, 2012 WL 1463591, at *3 (D. Nev. Apr. 27, 2012) (internal citations and quotations omitted). *See also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.,* 307 F.3d 1206, 1210–11 (9th Cir. 2002) (good cause requires "showing specific prejudice or harm will result if no protective order is granted"); *Beckman Indus., Inc. v. International Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992) (holding that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test"); *FirstNet*, 2011 WL 8034171, at *2 (failure to identify the "class of information" deserving of protection); *Bauer v. Winkel*, 31 Fed. R. Serv. 2d 732 (D. N. Mar. I. 1981) (party had "not demonstrated good cause for a protective order … [where] conclusory state[ments] that the deposition would be annoying, oppressive, embarrassing and without legitimate ends" were unsupported by "specific facts").

14

15

16

17

18

19

IPI's motion must be denied because it is a textbook example of "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Beckman Indus.,* 966 F.2d at 476. The only potential "harm" from not staying discovery that IPI even mentions are (i) that it will "undermine IPI's ability to defend itself" in the criminal investigation, and (ii) its "ability to answer discovery is impeded by the Fifth Amendment rights of individuals from whom IPI needs to obtain information." (IPI Mem. at 4).

20

21

22

23

24

IPI provides no specific facts or examples supporting its contention that failing to stay discovery will "undermine [its] ability to defend itself," let alone any legal authority supporting the idea that this is grounds for a protective order. As for its alleged Fifth Amendment concerns – an argument that IPI raised previously and that this Court denied (Docs. No. 14, 29) – IPI again provides not a single specific example. Both in this Motion and its Stay Motion, as Plaintiffs have argued (*see*

1   Doc. No. 50), IPI makes no showing that the Investigation and civil case are even related, let alone

2   name a single witness who will likely need to assert the Fifth Amendment in connection with the civil

3   case. Further, even if there were such individuals, IPI offers no authority establishing that the potential

4   assertion of the Fifth Amendment by a company's employees constitutes "good cause" for issuing a

5   protective order barring all discovery against that entity. *See Kolbek v. Twenty First Century Holiness*

6   *Tabernacle Church, Inc.*, 2011 WL 5188424, at *2 (W.D. Ark. Oct. 31, 2011) (the stay provision of

7   the TVPRA was included at the behest of the Department of Justice; "the statute was not created to

8   protect civil defendants"); *see also In re Twelve Grand Jury Subpoenas*, 908 F.3d 525, 528 (9th Cir.

9   2018) ("'[C]orporations and other collective entities' do not enjoy the [Fifth Amendment] privilege")

10  (*citing Braswell v. United States*, 487 U.S. 99, 104 (1988)).

11          The mere filing of IPI's non-dispositive motion for a stay under § 1595(b) similarly does not

12  constitute "good cause" to issue a non-tailored protective order stopping all discovery. *Tradebay, LLC*

13  *v. eBay, Inc.*, 278 F.R.D. 597, 603 (D. Nev. 2011) ("The fact that a non-frivolous motion is pending

14  is simply not enough to warrant a blanket stay of all discovery"); *Grand Canyon Skywalk Dev. LLC v.*

15  *Steele*, No. 13-cv-00596, 2014 WL 60216, at *3 (D. Nev. Jan. 7, 2014) ("Discovery would be

16  unnecessarily delayed in too many cases if the district courts applied a lenient standard in staying all

17  discovery until a decision on such a motion"). Courts will generally only consider staying discovery

18  due to a pending motion to dismiss where that motion would be dispositive, but even that is not itself

19  a sufficient basis. *Tradebay*, 278 F.R.D. at 600 ("The Federal Rules of Civil Procedure do not provide

20  for automatic or blanket stays of discovery when a potentially dispositive motion is pending").

21          When courts consider pending dispositive motions to dismiss, a still further distinction is

22  drawn between motions asserting defendant immunity or a lack of jurisdiction – i.e. where the

23  propriety of the party's role as a defendant is at issue – and those simply asserting a failure to state a

24  claim. *Grand Canyon*, 2014 WL 60216, at *3. Furthermore, the court will often take a "peek" to see

8

1    if the underlying motion is meritorious before simply issuing a protective order staying discovery.

2    *Mlejnecky v. Olympus Imaging Am., Inc.*, No. 10-cv-2630, 2011 WL 489743, at *8 (E.D. Cal. Feb. 7,

3    2011) (collecting cases); *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) ("A district court may ...

4    stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief").

5         In the present case, IPI has not filed a dispositive motion that would remove IPI from the case,

6    nor would the motion absolve IPI of participating in discovery altogether. The sole question it

7    addresses is *when* discovery should commence. Accordingly, even assuming IPI might obtain the stay

8    at some future point, permitting discovery prior to that point would not "undermine" the purpose of a

9    § 1595(b) stay. *Grand Canyon*, 2014 WL 60216, at *3.

10        Moreover, a preliminary evaluation of IPI's motion for a stay reveals that it is extremely

11   unlikely to succeed. As set forth in Plaintiffs' opposition to that motion (Doc. No. 50), while § 1595(b)

12   permits a stay of a civil case where there is a criminal investigation arising from the "same occurrence

13   *in which the claimant is the victim*," IPI cites no evidence that the Investigation concerns a forced

14   labor or trafficking scheme, let alone one in which Plaintiffs are the victims. (Doc. Nos. 45, 50). IPI's

15   brief does not even mention the word "Plaintiffs." (*Id.*). Accordingly, it would be illogical to grant this

16   drastic preliminary relief to IPI when it is clearly not entitled to the ultimate relief it requests.

17

18        2. <u>IPI's unsupported assertion that this situation is akin to qualified
            immunity cases is plainly wrong and has been rejected by courts</u>.

19        IPI asserts, without any citing legal authority, that "the stay issue presented in this case is akin

20   to how courts address a Rule 26 protective order for a stay of discovery in cases involving an assertion

21   of qualified immunity" and "the same reasoning applies." (IPI Mem. at 4). In fact, courts have found

22   quite the opposite. *Plaintiff A*, 744 F.3d at 1254. The doctrines differ in two critical ways that IPI

23   simply ignores.

24

9

1    First, most crucially, qualified immunity not only protects a defendant from liability, but an

2  essential purpose of the doctrine is that officials not be burdened with the discovery process itself. *See*

3  *Jornigan v. New Mexico Mut. Cas. Co.*, No. 03-cv-13, 2004 WL 3426754, at \*2 (D.N.M. June 9, 2004)

4  ("The defense is 'meant to give government officials a right, not merely to avoid standing trial, *but*

5  *also to avoid the burdens of such pretrial matters as discovery*'" (*quoting Behrens v. Pelletier*, 516

6  U.S. 299, 308 (1996)) (emphasis added); *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (same);

7  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 973 (9th Cir. 2009) ("qualified immunity is an immunity from

8  suit, distinct from the merits of the underlying claim"). Therefore, subjecting government officials to

9  the "disruptive" impact of civil discovery would be a harm that undermines the doctrine itself.

10  *Behrens*, 516 U.S. at 308. Immunity from suit "is of no use" if a defendant was already subjected to

11  "burdensome pre-trial discovery." *Moss*, 572 F.3d at 973. For this reason, the Supreme Court has

12  directed that "[u]ntil this threshold immunity question is resolved, discovery should not be allowed."

13  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This contrasts sharply with the stay provision under

14  § 1595(b) – which was intended to benefit law enforcement (not trafficking defendants), and does not

15  shield defendants from participating in discovery, but only addressees *when* that discovery will take

16  place. *Plaintiff A*, 744 F.3d at 1254.

17    Second, and relatedly, the qualified immunity issue is dispositive for the concerned defendant.

18  If an individual is entitled to qualified immunity, the case against that official will end. In the TVPRA

19  context, discovery will still occur even if a § 1595(b) stay were granted; it would merely be delayed.

20    Courts have explicitly rejected the equivalency between the qualified immunity doctrine and a

21  § 1595(b) stay that IPI seeks to establish here. In *Plaintiff A*, the Eleventh Circuit declined to hear a

22  defendant's appeal of the district court's decision to lift the stay in a civil TVPRA action. *Plaintiff A*,

23  744 F.3d at 1254. The court noted that a decision concerning qualified immunity is amongst the

24  examples of "important issues significant enough to justify immediate appellate jurisdiction" because

it involves "a substantial public interest," but allowing a civil trafficking case to proceed with discovery neither "puts an important issue at stake—much less *a substantial public interest*."2 *Id.* The court explicitly rejected the same Fifth Amendment concerns that IPI raises in its brief, noting that the TVPRA's mandatory stay was not intended to protect the rights or interests of civil trafficking defendants, and the consequence of a defendant choosing to invoke the Fifth Amendment right is not an "important issue[]." *Id.* at 1254-55.

### 3. IPI did not meet and confer in "good faith" before filing this Motion for a protective order.

In filing for a protective order, the moving party "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c). This requirement is mirrored in Local Rule 26.2(a)(1): "A party with a discovery dispute must first meet and confer with the opposing party in a good-faith effort to resolve by agreement the issues in dispute." Failure to comply with this requirement shall result in a denial of the motion. *Sanders v. Davis*, No. 09-cv-447, 2011 WL 809959, at *2 (W.D.N.C. Mar. 2, 2011).

IPI did not satisfy the requirement to "meet and confer…in good faith" because it never informed Plaintiffs that it intended to seek a protective order, or any court intervention, prior to doing so. To the contrary, during the November 19 meet and confer call, as confirmed by IPI's own meeting notes, IPI lead Plaintiffs to believe that it would be responding to their discovery requests the following week. (Halegua Decl. ¶15, Ex. N; IPI Meeting Notes).

2 This analysis was part of the Eleventh Circuit's application of the three-prong test of the collateral order doctrine, which seeks to identify instances where the interlocutory appeal raises issues "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Plaintiff A*, 744 F.3d at 1252–53 (*quoting Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546 (1949).

11

This Court has previously considered what constitutes a "good faith" effort in this context. *FirstNet*, 2011 WL 8034171, at *3-4. In *FirstNet*, the Court held that plaintiff's attorney satisfied this requirement before filing a motion to compel based on the following sequence of events:

- prior to the initial telephone conference, plaintiff's counsel, in writing, explicitly "announced that he was taking the necessary steps before filing a motion to compel and would be calling 'to confer on the discovery;'"

- shortly after the call, plaintiff's counsel sent an email memorializing the conversation and stating that he was still concerned about the proposed timeline for obtaining the discovery;

- in another email, plaintiff's counsel stated, "I would like to tee up the issue with the court sooner rather than later if you intend to maintain the privacy objection," to which he received no response.

*Id.* at *4. The Court found it particularly compelling that the email sent by plaintiff's counsel prior to the call "made it absolutely clear that FirstNet's purpose was to confer on discovery disputes as a last step before resorting to a Rule 37 motion to compel." *Id.*

In the present case, IPI never even mentioned its intention to move for a protective order prior to doing so – including prior to the meet and confer, on that call, or at any point thereafter. It was only in response to Plaintiffs' request to meet and confer prior to filing a motion to compel that IPI stated its desire to meet and confer on whether Plaintiffs would agree to stay discovery pending the Court ruling on IPI's Stay Motion. (Halegua Decl. ¶12). Plaintiffs responded that they would not agree. (*Id.* ¶13). Although IPI responded with a lengthy email to Plaintiffs on November 16, 2019, it did not mention the stay issue. (*Id.* ¶13, Ex. L). Plaintiffs then sent a November 16 letter setting out the issues for the meet and confer, and IPI's reply did not mention the stay issue. (*Id.* ¶14, Ex. M).

During the November 19, 2019 meet and confer telephone call, IPI asked if Plaintiffs would agree to suspend or stay discovery until its motion for a stay was heard by the Court. Plaintiffs stated that they did not agree to a stay simply because IPI filed a motion, noting that it was not meaningfully different than IPI's previous motion for a stay that the Court denied, and did not agree to expedite the

1    hearing on the stay motion. No mention was made of an intention to move for a protective order or to

2    seek any Court intervention. (Halegua Decl¶15, Ex. N). Quite to the contrary, IPI stated on multiple

3    occasions that Plaintiffs would receive IPI's discovery responses on November 25. (IPI Meeting

4    Notes). If IPI notified Plaintiffs of its intention to seek a protective order and stated that it would not

5    be producing *any* discovery whatsoever until that motion was decided, Plaintiffs would have

6    immediately filed a motion to compel.

7

**B. THE COURT SHOULD GRANT PLAINTIFFS' MOTION TO COMPEL IPI TO
8    PRODUCE DOCUMENTS AND ANSWER INTERROGATORIES.**

9    Pursuant to Fed. R. Civ. P. 37(a), a party may move to compel discovery where the opposing

10   party has failed to provide requested discovery. Responses to requests for documents and ESI must be

11   provided within thirty days of service. Fed. R. Civ. P. 34. Similarly, interrogatories must be answered

12   or objected to within 30 days after being served, with any grounds for objection being stated with

13   specificity. Fed. R. Civ. P. 33(b); *see also FirstNet*, 2011 WL 8034171, at *3. As noted above, prior

14   to filing a motion to compel, the moving party must have made a good faith effort to confer or attempt

15   to confer with the other affected parties in an effort to resolve the dispute without court action.

16   IPI has produced no documents and answered no interrogatories since those requests were

17   served – first by email on September 18 and again by hand-delivery on October 25. IPI objected that

18   service by email was improper and that Plaintiffs' interrogatories exceeded the 50 single-part questions

19   authorized by the Court. Plaintiffs sent numerous letters and emails setting forth the legal authority

20   supporting its position and seeking to reach a compromise to resolve IPI's objections to service and to

21   the number of interrogatories.[3] Plaintiffs also raised these issues in the November 19 telephone

22

23   [3] As set out more fully in Plaintiffs' letter to IPI (Halegua Decl. ¶10, Ex. K), IPI's objection to
     electronic service was squarely rejected by this Court, *Baldwin v. United States*, 823 F. Supp. 2d 1087,
24   1109-110 (D. N. Mar. I. 2011), and an interrogatory whose subparts concern a "common theme" is
     considered to be a single interrogatory, *Cardenas v. Dorel Juvenile Grp., Inc.*, 231 F.R.D. 616, 619-
     20 (D. Kan. 2005).

1   conference. IPI rejected any compromise on its position that it was not obligated to respond until

2   November 25 and made no commitment to answer the interrogatories. Now, IPI has failed to provide

3   any documents or answer any interrogatories even 30 days after Plaintiffs hand-delivered the discovery

4   requests to IPI's office. Plaintiffs explicitly stated on the November 19 call that if there were any

5   outstanding deficiencies after November 25, Plaintiffs would make a motion to compel.

6         The only potential grounds that IPI *might* offer for still not having responded is that it has filed

7   a motion for a protective order, as discussed above. However, the Federal Rules of Civil Procedure

8   and the Ninth Circuit are both very clear that a motion for a protective order is not "self-executing"

9   and a party is not excused from responding to discovery merely by *filing* such a motion. *See* Fed. R.

10  Civ. P. 37 Notes of Advisory Committee on Rules—1993 Amendment ("In this connection, it should

11  be noted that the filing of a motion under Rule 26(c) is not self-executing—the relief authorized under

12  that rule depends on obtaining the court's order to that effect"); *Hamilton v. TBC Corp.*, No. 17-cv-

13  01060, 2018 WL 9815585, at *3 (C.D. Cal. Mar. 29, 2018) ("In this Circuit, case law is clear that a

14  pending motion is not sufficient to excuse appearance. The party to be deposed must also obtain a

15  protective order or stay"); *Nationstar Mortgagee, LLC. v. Flamingo Trails No. 7 Landscape Maint.*

16  *Assoc.*, 316 F.R.D. 327, 337 (D. Nev. 2016) ("[T]he fact that the filing of a motion for protective order

17  is necessary to excuse a nonappearance at a deposition does not mean that the filing of a motion for

18  protective order is sufficient to excuse that nonappearance"); *Wintrust Mortg.*, 2017 WL 10562962, at

19  *2 (the party's "assertion is contrary to settled law which establishes that a party needs to obtain a

20  protective order, not just make a motion for one") (*citing Pioche Mines Consolidated*, 333 F.2d at

21  269). This authority was provided to IPI, but it was not deterred from producing zero discovery.

22        IPI has repeatedly demonstrated an intent to simply avoid responding to discovery by any

23  means necessary. Even in the face of persuasive legal authority, it has rejected every effort to reach a

24

14

compromise and begin responding to Plaintiffs' discovery requests. The intervention of this Court is necessary to compel IPI to fulfill its discovery obligations.

## C.   IPI AND ITS ATTORNEYS SHOULD BE ORDERED TO PAY PLAINTIFFS' REASONABLE EXPENSES AND ATTORNEYS' FEES.

If a motion to compel discovery is granted, or the requested discovery is provided after the motion was filed, then "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless that conduct is substantially justified. Fed. R. Civ. P. 37(a)(5)(A). *See also FirstNet*, 2011 WL 8034171, at \*5 (assessing reasonable expenses and attorney's fees against defendant based on finding that its "failure even to attempt to carry its burden on its claim of attorney-client privilege, its dilatoriness in responding to reasonable requests for action by [plaintiff], and its last-minute objection to interrogatories do not substantially justify [defendant's] resistance to [plaintiff's] request for disclosures").

IPI has found every excuse to avoid responding to Plaintiffs' discovery, thus requiring Plaintiffs to draft numerous letters and emails as well as engage in numerous telephone conferences. IPI rarely supports its position with any legal authority. It has ignored or rejected Plaintiffs' reasonable proposals to compromise. Further, its "last-minute" motion for a protective order neither justifies its resistance to producing discovery, nor immunizes it from paying Plaintiffs' reasonable attorneys' fees or being sanctioned. *See Nationstar*, 316 F.R.D. at 337 (sanctioning defendant and rejecting argument that entitled to not appear at deposition because it had filed an unmeritorious motion for a protective order just days before the scheduled date). In other words, the mere filing of *any* motion for a protective order does not automatically make a party's violation of its discovery obligations "substantially justified" as per Fed. R. Civ. P. 37(d)(3). *Id.*

15

Perhaps the most telling evidence of IPI's bad faith and misconduct is that its Motion for a protective order *preemptively* makes arguments as to why IPI should not be sanctioned for failing to comply with Plaintiffs' discovery requests. IPI not only cites language from Fed. R. Civ. P. 37(d)(2), but puts it in bold type. (IPI Mem. at 2). However, this Rule is unrelated to the standard for granting a protective order; instead, it concerns the circumstances under which a party who violates discovery obligations may be sanctioned. IPI must recognize how far beyond the pale its conduct has been and thus feels the need to preemptively defend itself from sanctions. In fact, it is only further evidence as to why the Court must intervene to condemn IPI's conduct.

## IV.  **CONCLUSION**

For the foregoing reasons, the Court should deny IPI's motion for a protective order and grant Plaintiffs' motion to compel.

Respectfully submitted,

/s/

_____
Aaron Halegua (*admitted pro hac vice*)
AARON HALEGUA, PLLC
154 Grand Street
New York, New York 10013
Tel: (646) 854-9061
Email: ah@aaronhalegua.com

Bruce Berline
BERLINE & ASSOCIATES, LLC
Second Floor, Macaranas Building
PO Box 5682 CHRB
Saipan, MP 96950
Tel: (670) 233-3663
Fax: (670) 233-5262
Email: bruce@saipanlaw.com

Attorneys for Plaintiffs

16