Bruce Berline
BERLINE & ASSOCIATES, LLC
Second Floor, Macaranas Building
PO Box 5682 CHRB
Saipan, MP 96950
Tel.: (670) 233-3663
Fax: (670) 233-5262
Email: bruce@saipanlaw.com

Aaron Halegua
AARON HALEGUA, PLLC
154 Grand Street
New York, New York 10013
Tel.: (646) 854-9061
Email: ah@aaronhalegua.com

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| TIANMING WANG, *et al.*, | Case No. 18-cv-0030 |
| Plaintiffs, | |
| v. | **PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND MEMORANDUM OF LAW IN SUPPORT** |
| GOLD MANTIS CONSTRUCTION DECORATION (CNMI), LLC, *et al.*, | |
| Defendants. | Hearing Date: n/a<br>Hearing Time: n/a<br>Judge: Hon. Ramona V. Manglona |

Pursuant to this Court's direction, Plaintiffs submit this motion for attorneys' fees and costs related to their motion to compel Defendant Imperial International (CNMI), LLC ("IPI") to produce discovery. (Doc. No. 61). The motion is supported by declarations from Plaintiffs' attorneys, Aaron Halegua and Bruce Berline, each dated December 20, 2019, and all exhibits attached thereto.

1

As set forth below, Plaintiffs request an award of $31,801 in attorneys' fees and $156.25 in costs in connection with their motion to compel. Plaintiffs were forced to spend considerable time researching and responding to IPI's discovery objections, participating in teleconferences, opposing IPI's motion for a protective order, and preparing Plaintiffs' own motion to compel. Accordingly, Plaintiffs' request for an award reflecting 72.74 hours of attorney time and 11.98 hours of paralegal time is reasonable—particularly as Plaintiffs excluded time for legal research performed by a third attorney, excluded time spent on the motion to stay, excluded Mr. Halegua's travel time to Saipan for oral argument, and still further reduced Mr. Halegua's hours by 10 percent. Plaintiffs proposed hourly rates of $300 for Mr. Berline and $417 for Mr. Halegua are also reasonable. Mr. Halegua's rate is taken from a conservative application of the already-conservative rates in the USAO Attorneys' Fees Matrix, which is a reasonable benchmark for a complex case involving a rarely-litigated statute in which Mr. Halegua has expertise. Mr. Halegua's normal billing rate of $450 hour at his New York law firm and far higher rates awarded to comparable attorneys further underscore the reasonableness of his requested rate.

## I. BACKGROUND

Plaintiffs' motion to compel (Doc. No. 51) sets forth the nature of this action and the procedural history, including a detailed recitation of all steps taken from the time that Plaintiffs served their discovery requests on IPI in September, 2019, until that motion to compel was filed on November 26, 2019. That history is not restated here. After Plaintiffs' motion was filed, however, Plaintiffs were required to review IPI's opposition (Doc. No. 57) as well as draft a reply in support of their motion to compel (Doc. No. 60). Plaintiffs then needed to prepare for and participate in oral argument on December 12, 2019, during which the Court, consistent with Plaintiffs' request, denied IPI's motions for a stay and protective order while granting Plaintiffs' motion to compel and awarding attorneys' fees. (Doc. No. 61).

## II. ARGUMENT

If a motion to compel is granted, the district court must require the non-moving party to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. Fed. R. Civ. P. 37(a)(5)(A). The Supreme Court has directed that a "reasonable fee" is one "that

is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

In the Ninth Circuit, calculation of a reasonable fee award begins with the lodestar method: the number of hours reasonably expended by the party multiplied by a reasonable hourly rate. *See Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996); *Radich v. Guerrero*, No. 14-cv-00020, 2016 WL 5109151, at *1–3 (D. N. Mar. I. Sept. 20, 2016). "After making that computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation." *Morales*, 96 F.3d at 363–64 (citations and footnote omitted); *see also Perdue*, 559 U.S. at 552 (the presumptively reasonable fee yielded by the lodestar method may be enhanced in exceptional circumstances).[1] The preferred method is that the relevant factors be incorporated into the initial lodestar calculation—rather than used to make an adjustment afterwards. *Morales*, 96 F.3d at 364, n.9. Accordingly, factors such as the "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, ... [and] (4) the results obtained" are often treated as subsumed in the lodestar analysis. *Id.*; *see also Radich*, 2016 WL 5109151, at *1.

**Reasonable Hourly Rates**

In the civil rights context, a "reasonable fee" is one that is "'sufficient to induce a capable attorney to undertake the representation of a meritorious'" case of that sort. *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) (*quoting Perdue*, 559 U.S. at 552). Accordingly, the "district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel. The way to do so is to

---

[1] The *Kerr* factors include: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Radich*, 2016 WL 5109151, at *1.

3

compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Vogel*, 893 F.3d at 1158 (internal quotations omitted). These principles apply not only where a party that prevails at trial, but where a default judgment has been obtained or after successful motion practice. *See Vogel*, 893 F.3d at 1158; *Radich*, 2016 WL 5109151, at *1–8.

While the relevant community is generally the forum in which the district sits, the Ninth Circuit has repeatedly held that "[r]ates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotations and citations omitted); *see also Radich*, 2016 WL 5109151, at *2 ("'Community' may refer to 'a community of practitioners' when the subject matter of the litigation is 'one where the attorneys practicing it are highly specialized and the market of legal services in that area is a national market'") (*quoting Kaylor-Trent v. John C. Bonewicz, P.C.*, 916 F. Supp. 2d 878, 884 (C.D. Ill. 2013)); *Cunningham, et al. v. Federal Express Corporation, et al.*, No. 17-cv-845, Doc. No. 108, *4-5 (M.D. Tenn., Aug. 12, 2019) (awarding the higher "out-of-town rates" requested by counsel because they are "specialists" in litigating under the statute in question, the contingency fee arrangement, and the "experience, skill, and effort" of the attorneys).[2]

For Mr. Halegua, as in *Radich*, the relevant community of lawyers with similar expertise is "national, not local." *Radich*, 2016 WL 5109151, at *3. In making this determination in *Radich*, this Court found relevant: the lack of other gun-rights cases in the District; that the "area of … law is highly specialized;" the CNMI bar's lack of experience with civil rights cases; and that it was "an undesirable case to take" for most local attorneys. *Id.* at *3. All of these characteristics are also present in the instant matter.

The TVPRA is a highly-specialized statute and cases are rare not only in the CNMI, but in *any* jurisdiction. *See Echon, et al. v. Sackett, et al.*, No. 14-cv-3420, Doc. No. 239, *33 (D. Colo., February 12, 2019) (noting that "TVPRA litigation remains relatively rare and is rife with

---

[2] A copy of this decision is provided as Exhibit C to Aaron Halegua's Declaration.

4

unsettled issues and matters of first impression") (internal quotations omitted).[3] In the fifteen years since the statute was amended to provide a private right of action in 2003, only 299 civil cases were filed in the federal courts—only 12 of which involved the construction industry. (Halegua Decl., Ex. B.) The highest number of cases were brought in New York (62) and California (26). (*Id.*) By contrast, a Westlaw search shows only a single civil TVPRA case in this district back in 2008, *Jiang Li Rong v. Hong Kong Entm't (Overseas) Investments Ltd.*, No. 05-cv-0048, 2008 WL 11343485, at *1 (D. N. Mar. I. Apr. 21, 2008). Conversations with local attorneys and national experts confirm that this is the only such case. (Halegua Decl. ¶19). In fact, IPI's motions for a stay and protective order, which analogize a TVRPA stay with an assertion of qualified immunity, underscore the fact that many non-specialists are unfamiliar with the purpose and application of the statute.

       The propriety of considering a national community of lawyers in assessing Mr. Halegua's rate is further evidenced by the complex nature and issues presented in this case. (Halegua Decl. ¶¶17, 21.) Furthermore, the case is "undesirable" for most local lawyers, and finding local co-counsel would be difficult. *See* Berline Decl. ¶¶5–11. The Plaintiffs are mono-lingual Mandarin speakers who are now back in China; the case must be taken on a contingency basis because the clients lack funds to pay a lawyer; the legal and factual issues are novel and complex; and, even if Plaintiffs prevail, collection of any judgment is far from certain. (Halegua Decl. ¶¶21). Plaintiffs are unaware of any Chinese-speaking attorneys in the CNMI who practice in this Court. (Berline Decl. ¶7).

       Mr. Halegua also has specialized knowledge, skills, and experience useful to this litigation. *See Pierce v. Underwood*, 487 U.S. 552, 572 (1988) (higher rates justified for "attorneys having some distinctive knowledge or specialized skill needful for the litigation in question," including "knowledge of foreign law or language"). Halegua first worked on civil TVPRA cases involving labor trafficking at the start of his legal career as a Skadden Fellow at The Legal Aid Society. (Halegua Decl. ¶7). In the intervening decade, he has represented dozens of Chinese workers in numerous federal court litigations, including serving as lead counsel and

---

[3] A copy of this decision is provided as Exhibit A to Aaron Halegua's Declaration.

lead trial counsel—obtaining two judgments over $500,000. (*Id.* ¶¶7, 9). Mr. Halegua is a member of Immigration & Human Trafficking Committee of the ABA's Labor and Employment Law Section, and his expertise on labor trafficking specifically has been sought out by international law firms, the U.S. Government, the Human Rights Foundation, Brown University, and numerous other organizations. (*Id.* ¶¶14). Mr. Halegua also is fluent in Mandarin Chinese and is a recognized and published expert on Chinese law. (*Id.* ¶¶11–16). He has been retained by numerous international and domestic law firms because of this expertise. (*Id.*).

Plaintiffs request an hourly rate of $417 for Mr. Halegua's work on this case, which is reasonable in light of his "experience, skill, and reputation." *Radich*, 2016 WL 5109151, at *2 (citing *Webb v. Ada County*, 285 F.3d 829, 840 and n.6 (9th Cir. 2002)). Mr. Halegua primarily takes cases on a contingency basis. However, in his non-contingency litigation work, he bills and has been paid an hourly rate of $400-450. (Halegua Decl. ¶27). Nearly three years prior, in 2016, Mr. Halegua was retained by a law firm at a rate of $350 per hour to provide expertise on labor trafficking issues involving Chinese workers. (*Id.* ¶¶26).

The rate regularly charged and requested by Mr. Halegua is less than the rate awarded many attorneys of comparable experience and skill. For instance, in a recent civil rights case in Colorado on behalf of a class of au pairs alleging antitrust and wage and hour violations, the court did not take issue with the hourly rates of two of Mr. Halegua's law school classmates: $668 for Juan Valdivieso, an attorney at Boies Schiller Flexner LLP ("Boies Schiller") based in New York, and $450 for David Seligman, a public interest attorney in Colorado. *Beltran, et al. v. Interexchange, Inc.*, No. 14-cv-3074-CMA-KMT, Doc. Nos. 1206, 1230 (D. Colo., May 16, 2019, July 18, 2019); (Halegua Decl. ¶28).[4] Mr. Halegua has previously been retained by that same firm, Boies Schiller, to assist in a case alleging that the Bank of China facilitated an act of

---

[4] *Beltran* was a class action in which the lodestar calculation was offered by plaintiffs' counsel as a means to gauge the reasonableness of their proposal to receive a certain percentage of the total settlement amount as attorneys' fees. The Court granted the firm the percentage requested, finding no issue either with the proposed percentage or the lodestar calculation. The motion setting forth the attorneys' rates and lodestar calculation as well as the order granting the motion are provided as Exhibits D and E, respectively, to Mr. Halegua's Declaration.

6

1    terrorism. (Halegua Decl. ¶9). In a complex FLSA class action, the district court in Colorado

2    granted $670,000 in attorneys' fees requested by Outten & Golden, a firm specializing in

3    employment law with its main office in New York. *Slaughter v. Sykes Enters., Inc.*, No. 17-cv-

4    2038, 2019 WL 529512, at *8-9 (D. Colo. Feb 11, 2019) (approving the firm's current billing

5    rates ranging from $550-950 per hour for partners, $290-450 per hour for associates, and $260

6    per hour for paralegals).

7         Mr. Halegua's requested rate of $417 per hour is below that to which he would be

8    entitled under the USAO Attorneys' Fees Matrix. Numerous courts have used indices that

9    compile data on lawyers' billing rates as a guide to determining a reasonable hourly rate. *See*

10   *Garnes v. Barnhardt*, No. 02-cv-4428, 2006 WL 249522, at *7 (N.D. Cal. Jan. 31, 2006) (finding

11   such matrices to be a "reliable official source" for determining appropriate hourly rates); *Fox v.*

12   *Vice*, 563 U.S. 826, 838 (2011) ("determination of fees should not result in a second major

13   litigation") (internal quotation and citation omitted). The United States Attorney's Office

14   considers these rates presumptively reasonable: it will settle attorneys' fees claims at the USAO

15   Matrix rates without demanding any additional evidence from the prevailing party. (USAO

16   Matrix at n.7). *See Radich*, 2016 WL 5109151, at *2 (using the USAO Matrix as a guidepost to

17   gauge reasonableness). The USAO Matrix provides an hourly rate of $417 for 2018-2019 for an

18   attorney of 8-10 years of experience. (Halegua Decl., Ex. F). Mr. Halegua requests this rate

19   despite the fact that, under the USAO Matrix instructions, he technically qualifies as an attorney

20   of 11 years of experience and the 2019-2020 rates now apply.[5]

21        Even the USAO Matrix may understate the appropriate market rates, however, because it

22   is based on a survey of law firms of all types (not only those doing complex litigation) both in

23   and around Washington, D.C.—thus including areas with rates far lower than in the city itself.

24   *See DL v. District of Columbia*, 924 F.3d 585, 592–93 (D.C. Cir. May 21, 2019). Instead, some

25   courts have favored the version of the *Laffey* matrix that is updated using the Legal Services

26   Index ("LSI *Laffey* rates)—which may still be below actual market rates. *See, e.g., Salazar ex*

27

28   ---

     [5] The hourly rate is $433 for an attorney of 8-10 years of experience in 2019-2020. For attorneys
     with 11-15 years of experience, the rates are $491 for 2018-2019 and $510 for 2019-2020.

*rel. Salazar v. D.C.*, 809 F.3d 58, 64-65 (D.C. Cir. 2015) (affirming district court's application of the LSI *Laffey* rates despite them being a "conservative estimate" of actual market rates). The updated version of the LSI *Laffey* rates lists an hourly rate of $658 for 2018-2019 and $661 for 2019-2020 for an attorney of 8-10 years of experience, and rates of $742 and $747 for attorneys with 11-19 years of experience. (Halegua Decl., Ex. G).

In light of the fact that Mr. Halegua regularly bills and receives $450 per hour for his services, the rates of the USAO Matrix and LSI *Laffey* rates, the rates awarded to comparable attorneys, and the specific nature of this case—including its complexity, contingency fee arrangement, potentially difficult recovery, and unavailability of suitable local counsel—an hourly rate of $417 per hour for Mr. Halegua is reasonable.

As for Mr. Berline, consistent with his billing rate at the time, this Court awarded him $250 per hour back in early 2017. *See Yu Xuan v. Joee Yeon Corporation and Se Young Corporation, et al.*, No. 12-cv-0032, Doc. No. 226, *10 (D.N.Mar.I. Jan. 27, 2017). In that Order, the Court noted that William Fitzgerald billed at $300 per hour and David Banes, who had over twenty years of experience, billed up to $290 per hour. *Id.* at *10. Nearly three years later, Mr. Berline now bills and receives $300 per hour from some clients, consistent with what other attorneys were charging in 2017. (Berline Decl. ¶12). Accordingly, it is reasonable for the Court to award him a rate of $300 per hour in this complex, contingency-fee litigation.

Plaintiffs are also seeking compensation at a rate of $166 per hour for the time spent by Jacob Kessler, Mr. Halegua's paralegal in New York, who assisted in locating cases, creating a table of contents and table of authorities, and preparing binders for oral argument. (Halegua Decl. ¶37, Ex. I). In the CNMI, this Court has found a rate of $90 per hour for paralegals to be reasonable. *See Yu Xuan*, Doc. No. 226 at *11. Because Mr. Kessler is a full-time employee with Aaron Halegua, PLLC, and works out of the firm's New York office, his time should be compensated at a national or New York rate. (*Id.* ¶37). The USAO Matrix provides an hourly rate for paralegals of $166 in 2018-2019 and $173 in 2019-2020; and the comparable LSI *Laffey* rates are $202 and $203 per hour. Outten & Golden bill their paralegals time at $260 per hour,

which the court in *Slaughter* approved. *Slaughter*, 2019 WL 529512, at *8-9. Therefore, a rate of $166 per hour is reasonable.

### **Reasonable Hours**

Plaintiffs are requesting a fee award reflecting 68.3 hours performed by Mr. Halegua, 4.44 by Mr. Berline, and 11.98 by Mr. Kessler. These hours were *reasonably* expended as part of Plaintiffs' efforts to compel IPI to respond to discovery requests and reflect that "billing judgment" was exercised. *Vogel*, 893 F.3d at 1160. The hours are supported by Plaintiffs' declarations, including contemporaneous time records in increments of one-tenth of an hour (or less) with clear descriptions of the work performed. *Radich*, 2016 WL 5109151, at *7.

As detailed above, Plaintiffs were forced to participate in multiple teleconferences, draft multiple letters, and research relevant legal authority in an effort to persuade IPI. Thereafter, Plaintiffs needed to respond to the various arguments advanced in IPI's motion for a protective order, including those that it eventually abandoned—such as equating its request for a stay with an assertion of qualified immunity. Plaintiffs reviewed each of the cases cited by IPI in its brief. Plaintiffs also needed to prepare a motion to compel, including a declaration that recited and attached evidence detailing this history.

During this process, IPI also filed its second motion to stay this litigation, reviewing each case cited by IPI as well as drafting an opposition brief. It is now quite apparent that this motion was little more than another roadblock constructed by IPI in its effort to avoid producing any discovery, and thus opposing it was necessary for Plaintiffs to achieve their eventual goal of compelling discovery from IPI. Nonetheless, Plaintiffs have excluded the 12 hours spent by Mr. Halegua on this motion and the time spent by Mr. Berline and Mr. Kessler. (Halegua Decl. ¶33).

In this process, Plaintiffs' attorneys worked efficiently and divided work reasonably. In order to avoid duplication of efforts, prior to the filing of any motions, Mr. Halegua primarily took responsibility for communicating with IPI, including drafting letters and providing relevant legal authority. Similarly, in responding to IPI's motions and making Plaintiffs' motion to compel, Mr. Halegua took primary responsibility. Time billed by Mr. Berline was primarily limited to conversations with Mr. Halegua about strategy, participation in the meet and confer

teleconferences with IPI's attorneys, and providing comments on the briefs and motions. (Berline Decl., Ex. A).

Due to the number of briefs that had to be prepared in a short time, Plaintiffs also received assistance with legal research from Time Wang – an experienced plaintiffs' attorney – who spent roughly 15 hours related to the motion to compel. (Halegua Decl. ¶36). However, in furtherance of putting forth a reasonable fee request, these hours have not been included in this petition, despite the presumptive reasonableness of doing so. *See Radich*, 2016 WL 5109151, at \*4 ("Time spent in consultation with third parties is compensable if it contributed to the representation").

Plaintiffs' fee request is also reasonable because paralegals, instead of attorneys, were used to perform administrative tasks. For instance, Mr. Kessler located the cases cited by IPI on Westlaw, prepared the table of contents and table of authorities for Plaintiffs' brief, cite-checked Plaintiffs' brief, and made binders in preparation for oral argument. (Halegua Decl. ¶37).

| Time-Keeper | Rate | Hours | Total |
|---|---|---|---|
| Bruce Berline | $300 | 4.44 | $1,332 |
| Aaron Halegua | $417 | 68.3 | $28,481 |
| Jacob Kessler | $166 | 11.98 | $1,988 |

**Costs and Expenses**

Plaintiffs occurred numerous costs in connection with their efforts to compel IPI to produce discovery, particularly due to IPI's objections to service. This required Plaintiffs to hand-deliver and mail the discovery requests and subsequent letters to IPI. Mr. Halegua also incurred costs to travel and stay in the CNMI in order to argue against IPI's motion for a protective order. Nonetheless, Plaintiffs are not seeking these costs. Instead, Plaintiffs only request $156.25 for the copying and printing at Mr. Berline's office related to preparation for oral argument, such as printing relevant cases and filings, and related to this motion for attorneys' fees. This is based on Mr. Berline's usual rate of $0.25 per page, which is reasonable for the CNMI. (Berline Decl., ¶14, Ex. A).

### III.  CONCLUSION

In conclusion, Plaintiffs request $31,801 in attorneys' fees and $156.25 in costs as a reasonable award for their successful motion to compel and preparation of this motion.

Respectfully submitted,

/s/

_____
Aaron Halegua (*admitted pro hac vice*)
AARON HALEGUA, PLLC
154 Grand Street
New York, New York 10013
Tel.:   (646) 854-9061
Email: ah@aaronhalegua.com

Bruce Berline
BERLINE & ASSOCIATES, LLC
Second Floor, Macaranas Building
PO Box 5682 CHRB
Saipan, MP 96950
Tel.:   (670) 233-3663
Fax:   (670) 233-5262
Email: bruce@saipanlaw.com

Attorneys for Plaintiffs