Bruce Berline
BERLINE & ASSOCIATES, LLC
Second Floor, Macaranas Building
PO Box 5682 CHRB
Saipan, MP 96950
Tel: (670) 233-3663
Fax: (670) 233-5262
Email: bruce@saipanlaw.com

Aaron Halegua
AARON HALEGUA, PLLC
154 Grand Street
New York, New York 10013
Tel: (646) 854-9061
Email: ah@aaronhalegua.com

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| TIANMING WANG, *et. al*,<br><br>        Plaintiffs,<br><br>    v.<br><br>GOLD MANTIS CONSTRUCTION DECORATION (CNMI), LLC, *et. al*,<br><br>        Defendants. | Case No. 18-cv-0030<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANT IPI**<br><br>Hearing Date: April 16, 2020<br>Hearing Time: 8:30 am<br>Judge: Hon. Ramona V. Manglona |

# TABLE OF CONTENTS

I. **INTRODUCTION**……………………………………………………………………………1

II. **ARGUMENT**………………………………………………………………………………..3

   A. **IPI HAS OFFERED NO CASELAW OR EVIDENCE TO ESTABLISH THAT ITS NONCOMPLIANCE WAS NOT ITS "FAULT"**……………………………………………3

      1. **IPI admits that it violated the orders of this Court**………………………………3

      2. **IPI has not demonstrated that its noncompliance was outside its control**…………..4

         a. IPI has not established that collecting company emails, which are stored on a central server, was outside of its control………………………………………………....5

         b. IPI has not established that collecting or producing data from company-issued mobile phones was outside of its control...……………………………………………6

         c. IPI has not established that producing ACONEX data was outside of its control….…7

         d. IPI is a publicly-traded multinational corporation and its alleged lack of experience with ESI (or that of its in-house counsel) does not justify violating multiple Court orders....……………………………………………………………………………7

         e. The medical issues in Ms. Butcher's family and the coronavirus only arose *after* persistent noncompliance by IPI…..……………………………………………..9

         f. IPI chose to disobey this Court's orders rather than request an extension of time…..10

   B. **THERE IS NO "MEET AND CONFER" REQUIREMENT PRIOR TO FILING A MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(b)(2)**………………11

   C. **PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS**………..………13

   D. **THE COURT SHOULD ORDER THE SANCTIONS PROPOSED BY PLAINTIFFS, MAKING ACCOMMODATIONS ONLY WHERE IPI DEMONSTRATES SPECIFIC IMPEDIMENTS CREATED BY THE CORONAVIRUS**………………………………13

# **TABLE OF AUTHORITIES**

Cases

*Acosta v. Austin Elec. Servs. LLC*, 325 F.R.D. 322 (D. Ariz. 2018).............................................11-12

*Acosta v. Imperial Pacific International*, No. 19-CV-0007 (D. N. Mar. I.).........................................9

*Allstate Ins. Co. v. Nassiri*, No. 08-CV-00369, 2010 WL 5248111 (D. Nev. Dec. 16, 2010) ...........12

*Camsight, Inc. v. Hamamatsu Corp.*, No. 10-CV-101677,
    2011 WL 13214273 (C.D. Cal. May 12, 2011).................................................................................8

*Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175 (9th Cir. 2008) .......................................12

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693 (9th Cir. 1993)....................14

*Jorgensen v. Cassidy*, 320 F.3d 906 (9th Cir. 2003) ..........................................................................14

*Lizarraga v. Buffalo Wild Wings, Inc.*, No. 15-CV-1655,
    2016 WL 1465338 (D. Nev. Apr. 14, 2016) ....................................................................................8

*North Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447 (9th Cir. 1986)...........................4

*Sanchez v. Stryker Corp.*, No. 10-CV-8832, 2012 WL 13006186 (C.D. Cal. Mar. 28, 2012) .............8

*U.S. Bank N.A. v. SFR Investments Pool 1, LLC*, No. 16-CV-00576,
    2018 WL 701816 (D. Nev. Feb. 2, 2018) ............................................................................ 2, 7, 10-11

*United States v. Kahaluu Constr. Co., Inc.,* 857 F.2d 600 (9th Cir. 1988)...........................................4

*Yazdchi v. Am. Honda Fin. Corp.*, 217 F. App'x 299 (5th Cir. 2007) ..................................................7

## I. INTRODUCTION

Although IPI uses the word "complicated" ten times in its opposition brief (ECF Doc. 91 ("Opp.")), the issues presented by Plaintiffs' sanctions motion (ECF Doc. 85 ("Mem.")) are quite straightforward.[1] Sanctions are proper because IPI admits that it did not comply (and still has not complied) with this Court's orders to produce all discovery to Plaintiffs. IPI offers no legal authority to support its contention that its noncompliance was not its "fault," nor does IPI respond to the cases cited by Plaintiffs. Instead, IPI offers a series of excuses. However, none of these excuses establish that IPI's noncompliance, which dates back to at least January 2020, was due to reasons outside of IPI's control. These excuses, if relevant at all, only go to the issue of *what* sanctions are appropriate. Similarly, IPI's claims about the discovery that it *has* produced, aside from being grossly overstated, do not absolve it from disobeying other aspects of the Court's orders.

The excuses provided by IPI are unpersuasive and cannot justify its persistent noncompliance. More than six months ago, Plaintiffs informed IPI that employee emails, WeChat messages, ACONEX data, and other ESI would be requested and should be preserved. However, this publicly-listed company with billions of dollars in revenue that routinely engages international contractors simply failed to take the steps needed to collect or produce this information, even after two Court orders mandating compliance. IPI makes much of the FBI raid in November 2019; however, this event predated oral argument on Plaintiffs' initial motion to compel and IPI never raised this as an issue with the Court. The fact that documents and emails are in Chinese has been entirely foreseeable since the case began. IPI provides no reasonable explanation why the same ESI vendor and outside law firm now retained by IPI could not have been hired six months ago (or even three months ago), making IPI's claim that it proceeded "as diligently as reasonably possible" (Opp. at 1) highly dubious. IPI's

---

[1] The defined terms used in this reply brief have the same meaning as when used in Plaintiffs' initial memorandum of law in support of this motion. (ECF Doc. 85). In further support of this motion, Plaintiffs are also submitting the Second Declaration of Aaron Halegua, dated April 8, 2020 ("Second Halegua Decl.").

justifications are also unavailing because even the tasks that were not impacted by IPI's various excuses—such as collecting and producing English-language emails from its company servers, or copying and producing data from current employees' cell phones that were not seized by the FBI—has barely begun, let alone been completed.

Ms. Butcher's family emergency and the coronavirus are genuine concerns, but they have no bearing on whether sanctions should be imposed. Neither of these events justifies or explains IPI's months of persistent noncompliance. The personal issues faced by Ms. Butcher began around mid-February and the coronavirus did not start impacting operations in Saipan until March; but IPI had violated the first Court order by January and the terms of the Stipulation by the start of February. Furthermore, IPI never requested an extension or other relief from the Court due to any of the reasons that it now raises, but instead chose to disobey the Court's orders. *See U.S. Bank N.A. v. SFR Investments Pool 1, LLC*, No. 16-CV-00576, 2018 WL 701816, at *4 (D. Nev. Feb. 2, 2018) ("If a deadline cannot be met, the proper course is most assuredly not to simply ignore an order").

IPI's procedural argument that Plaintiffs did not meet and confer before filing this motion is squarely refuted by Ninth Circuit cases, and stems from IPI's reliance on the wrong section of Fed. R. Civ. P. 37. The present motion for sanctions is brought pursuant to Fed. R. Civ. P. 37(b)(2), which has no meet and confer requirement. Nevertheless, Plaintiffs did meet and confer with IPI.

As for what sanctions are proper, unfortunately, IPI's track-record demonstrates that Court orders alone are insufficient to compel its compliance. Plaintiffs proposed several sanctions that have been used in similar cases and are reasonably calculated to incentive IPI to (finally) make the necessary expenditures to comply with its obligations. Without distinguishing Plaintiffs' legal authority or providing any of its own, IPI deems Plaintiffs' proposal as "too much," but only offers this alternative: that IPI proceed with discovery at its own pace with no set deadline. (Opp. at 10). This proposal is not reasonable. Indeed, IPI's own in-house counsel acknowledged "that IPI must produce responsive non-

privileged discovery records reasonably promptly…" (ECF Doc. 91-1 ¶18). Accordingly, the Court should order IPI to produce all discovery within a narrow timeframe or face future terminating sanctions, only making exceptions where IPI can demonstrate that the coronavirus makes it impossible or dangerous for IPI vendors and attorneys to complete the required tasks by that deadline.

## II. ARGUMENT

### A. IPI HAS OFFERED NO CASELAW OR EVIDENCE TO ESTABLISH THAT ITS NONCOMPLIANCE WAS NOT ITS "FAULT".

#### 1. **IPI admits that it violated the orders of this Court**.

As a preliminary matter, IPI acknowledges that it has not fully complied with the orders of this Court. There are several clear examples of IPI's failure to comply, including tasks that remain uncompleted as of the filing of IPI's opposition on March 30, 2020.

*First*, the emails and attachments from company email accounts (not to mention personal accounts used for work purposes) have not yet been reviewed or produced. (*See* Opp. at 7 (this item is "not yet completely satisfied"; IPI "is in the process of complying")). In fact, IPI still has not proposed even a single Chinese search term despite being ordered to do so by January 27, 2020 (ECF Doc. 77, Item No. 7); instead, IPI has relied entirely on the list provided by Plaintiffs (Second Halegua Decl. ¶8, Ex. A).

*Second*, employee mobile phones, even including those issued by IPI, are only now being collected, and no data has been searched, reviewed, or produced. (*See* Opp. at 3–4 ("IPI is gathering the resultant data so it can be delivered to [IPI's vendor] so it can be searched as part of the search protocols we are actively negotiating with Plaintiffs' counsel.")). *Third*, data from the ACONEX system still has not been collected, let alone searched, reviewed, or produced (Opp. at 4–5).

Confronting this fatal fact, IPI goes to great lengths to make claims about the discovery that it *has* produced thus far. IPI's self-serving characterizations of its compliance efforts are often overstated

3

or simply inaccurate. (*See* Second Halegua Decl., ¶¶7–11, Ex. A).[2] For instance, while IPI celebrates its completion of paper discovery by March 12, 2020 (more than five weeks after the *second* deadline set by the Court), IPI actually did not comply with the Stipulation's explicit requirement that all documents be scanned and Bates-stamped. (Second Halegua Decl. ¶11). In fact, numerous boxes of documents have only been made available for inspection at Mr. Frink's law office. (*Id.*) Those acts that IPI cites as evidence of its "considerable efforts" in discovery—such as finding someone to sign its interrogatory responses nearly one month after it was ordered to do so—do not demonstrate diligence. However, the most critical point is that IPI's untimely compliance with some parts of the Court's orders does not absolve it from disobeying others, and IPI provides no legal authority to suggest it may pick-and-choose which parts of the Court's orders it would like to follow.

2. **IPI has not demonstrated that its noncompliance was outside its control**.

IPI argues that sanctions are inappropriate because its failures to comply with the Court's two orders were not its "fault." However, as set forth in Plaintiffs' brief, a party is at "fault" where the disobedient conduct, including belated compliance with discovery orders, is not shown to be outside the control of the litigant. (Mem. at 8–9 (*citing North Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986)). IPI does not provide any legal authority to dispute this standard. IPI only cites a single case, *United States v. Kahaluu Constr. Co., Inc.,* 857 F.2d 600, 603 (9th Cir. 1988), which only sets forth the general standard for imposing sanctions (Opp. at 1). Plaintiffs' brief also offered numerous factually-similar cases in which sanctions were imposed (Mem. at 9–10), but IPI neither refuted nor distinguished these cases.

---

[2] IPI offers an exhibit (ECF No. 92-1) that lists the discovery tasks ordered by the Stipulation and in which IPI claims to have "completed" most of the listed items. Many of these statements by IPI are inaccurate. IPI's exhibit also misstates the actual deadlines agreed to by the parties and ordered by the Court. (Plaintiffs pointed this out to IPI, but they declined to modify their exhibit.) Accordingly, Plaintiffs offer their own exhibit that contains the correct dates and explains that IPI has *not* in fact complied with many of the tasks that it claims to have "completed." (Second Halegua Decl. ¶7, Ex. A). Furthermore, IPI's chart fails to state that even the dates on which IPI alleges to have "completed" many of these tasks are long after the Court-ordered deadline.

4

To defend its noncompliance, IPI only offers a series of reasons for why discovery in this case is "complicated." None of these are compelling explanations for how virtually nothing was done until after IPI violated the first Court order, or how little has been accomplished since then. Further, none of these allegedly "complex" problems were unforeseeable or outside of IPI's control. For instance, IPI permitted individuals to use personal cell phones and email addresses for work purposes, and to conduct company business via WeChat. The fact that many key personnel have now left the company is a problem only because IPI neglected its discovery obligations for so many months. Nonetheless, Plaintiffs address each of IPI's stated justifications below and, in doing so, demonstrate how each failure undermines IPI's claim that it "has proceeded diligently and in good faith." (Opp. at 10).

    a.  <u>IPI has not established that collecting company emails, which are stored on a central server, was outside of its control</u>.

IPI's opposition goes to considerable length to describe how IPI lacks any centralized server ("a centralized trove of IPI electronic data does not exist") and claims that this has caused much delay. (Opp. at 1–2). However, even after IPI modified its opposition papers multiple times, IPI still does not mention that the email data for company-issued email accounts (unlike ESI data only stored on individual's mobile phones) has always been available on a central server, which IPI could access and copy at any time without going to the individual computer of each email user. Indeed, IPI stated this fact in an email to Plaintiffs on January 24, 2020: "Yes, there are documents and emails on a general company server and they are generally searchable." (Second Halegua Decl., ¶9, Ex. B). Therefore, the lack of a "central server" provides no defense or explanation for why it took IPI months to finally collect the email data for company-provided email accounts. Further, the accessibility of these emails was unaffected by the FBI raid.

    b. <u>IPI has not established that collecting or producing data from company-issued mobile phones was outside of its control</u>.

In terms of the ESI on employee mobile phones, IPI does not dispute that it still has not searched, reviewed, or produced information from any mobile phone used by an IPI employee. The fact that collecting this data required physically collecting employees' phones cannot have been a surprise, as Plaintiffs raised this with IPI in August 2019 (Second Halegua Decl. ¶4). Because IPI still had not performed this task when the first Court-ordered deadline passed, the Stipulation set a deadline of January 29, 2020 (ECF Doc. 77, Item No. 11) to complete this task—but IPI failed to comply with that deadline as well. IPI argues that difficulties were created because many employees have left the company; however, *IPI has not produced any ESI from the phones of people who are still at the company*. (ECF Doc. 91-8 ¶4 (IPI is still "in the process of gathering the phones")). Moreover, the fact that many relevant employees have already left the company underscores the significant prejudice to Plaintiffs caused by IPI's failure to diligently collect and preserve the data from these phones several months ago. In addition, recognizing that many key employees were never issued company phones, IPI agreed and was ordered to collect data from any "other devices [i.e. personal phones] ever used for work purposes" (ECF Doc. 77, Item No. 11). However, IPI has not informed Plaintiffs that it made any effort to perform this task. Instead, IPI seems to have unilaterally absolved itself of this duty.

The "significant" technological issues that IPI lists in backing up a mobile phone are grossly overstated. (Opp. at 3). The "special software" that IPI references (Opp. at 4) can be purchased online with a credit card for $1,500 and "testing" that software simply requires linking a cell phone to a computer and running the program—so this process should take a few hours, not months. (Second Halegua Decl. ¶12). Quite tellingly, IPI's opposition provides no specifics as to how or where it obtained this software, what makes it so "special," or how long it takes to do this allegedly complex "testing." IPI also offers no testimony from an IT professional stating that this procedure is particularly complex. The obvious reality is that if IPI had started collecting employees' phones after the Court's

first order in December, or even after the Stipulation in January, *at least some* ESI from the devices of current employees could have been produced by now.

    c. <u>IPI has not established that producing ACONEX data was outside of its control</u>.

Although not part of Plaintiffs' initial brief, IPI's opposition describes its efforts regarding data from the ACONEX system, which is the construction management platform used for the Casino Project. It is not clear why IPI mentions the ACONEX system—one more discovery request for which IPI has produced precisely *zero* data or documents. However, it does demonstrate why IPI's claims of making "good faith" efforts and exercising "diligence" are dubious. Plaintiffs informed IPI that they would seek data from the ACONEX system back in August 2019 (Second Halegua Decl. ¶4), but IPI was still only in "active consultation" with Oracle about producing the information as of March 30, 2020 (Opp. at 4). Plaintiffs previously tried to push this process ahead by having IPI produce a sworn statement describing how the system worked and what data it contained. Instead, IPI sent an email response that did not even mention ACONEX had a messaging feature (Second Halegua Decl. ¶10, Ex. C)—Plaintiffs needed to point this fact out (again) to IPI. Noticeably absent from IPI's opposition is any statement as to when it first attempted to copy any data from the system, when it first contacted Oracle to obtain this data, or any statement that Oracle has refused to cooperate in providing the data.

    d. <u>IPI is a publicly-traded multinational corporation and its alleged lack of experience with ESI (or that of its in-house counsel) does not justify violating multiple Court orders</u>.

IPI's arguments regarding the company's or its in-house counsel's lack of experience with ESI do not absolve IPI of its responsibility to comply with Court orders. IPI provides no legal authority to suggest such inexperience should be a shield from imposing sanctions. To the contrary, caselaw within the Ninth Circuit, as well as in others, repeatedly find such excuses unavailing. *See*, *e.g.*, *U.S. Bank N.A.*, 2018 WL 701816, at *4–5 (imposing sanctions because "[i]nadvertence and inexperience only go so far") (internal quotations omitted); *Yazdchi v. Am. Honda Fin. Corp.*, 217 F. App'x 299, 303 (5th Cir. 2007) ("inexperience…could arguably explain" initial deficiencies, but "continued failure to

7

comply even after…two orders from the district court" shows willfulness and warrants terminating sanctions under Rule 37(b)).[3]

IPI's arguments about inexperience are also simply unpersuasive. Even if we accept as true that neither IPI nor its attorneys have prior experience with discovery involving ESI, IPI could have retained a vendor or another law firm to assist with this matter—as it has now done. But why was the vendor only retained four or five months after Plaintiffs' discovery was served and after IPI had already violated this Court's first order? Similarly, why was Mr. Frink's firm, which is located in Saipan, only retained in March 2020, after all deadlines in the Stipulation had passed? The explanation for why finding a vendor was difficult (i.e. that discovery involves Chinese documents) is not compelling. (Opp. at 5.) There are numerous vendors providing ESI-related discovery services that not only are familiar with U.S. litigation and are equipped to handle foreign languages, but even have offices in Hong Kong, Taiwan, or mainland China. (Second Halegua Decl. ¶13.) IPI also never previously stated that it had any issue finding a suitable vendor and, if it had, Plaintiffs would have recommended several vendors—as it did for Defendant MCC. (*Id.* ¶14.) Quite tellingly, IPI has not provided any evidence of when it started searching for a vendor, how many vendors it contacted, or any detail as to why this process took several months.

The argument about IPI being "only a few years old" (ECF No. 91-1 ¶11) and this being its "first rodeo" (Opp. at 5) also rings hollow. IPI is the subsidiary of an international company listed on the Hong Kong Stock Exchange that reported HK$3.25 billion in revenue for 2018 and routinely hires vendors and professional service providers from across the globe. By the end of 2018, IPI had invested

---

[3] *See also Camsight, Inc. v. Hamamatsu Corp.*, No. 10-CV-101677, 2011 WL 13214273, at *3 (C.D. Cal. May 12, 2011) (recommending adverse inference instruction sanction under Rule 37(b) despite argument that missed deadlines were "[d]ue to … inexperience with litigation"); *Lizarraga v. Buffalo Wild Wings, Inc.*, No. 15-CV-1655, 2016 WL 1465338, at *2 (D. Nev. Apr. 14, 2016) ("The carelessness or inexperience of counsel, or individuals in counsel's employ, does not constitute good cause for untimely discovery responses."); *Sanchez v. Stryker Corp.*, No. 10-CV-8832, 2012 WL 13006186, at *3 (C.D. Cal. Mar. 28, 2012) ("Counsel's inadvertence or inexperience does not excuse Plaintiff from adhering to the Court's Scheduling Order.").

8

"approximately US$792 million … in design, consulting, engineering, construction material and labour" related to the Casino Project.[4] IPI has retained outside counsel to perform litigation and legal work on numerous occasions, including a law firm based in Washington, D.C. to handle a matter involving the U.S. Department of Labor. *See Acosta v. Imperial Pacific International*, No. 19-CV-0007 (D. N. Mar. I.). It was entirely within IPI's control to hire outside counsel and third-party vendors in this case, and IPI has provided no plausible explanation for why it took five months to do so.

    e. <u>The medical issues in Ms. Butcher's family and the coronavirus only arose *after* persistent noncompliance by IPI.</u>

Plaintiffs are sympathetic to the emergency personal matters faced by Ms. Butcher, but they do not excuse IPI's persistent disobedience.[5] These issues first arose in mid-February (ECF Doc. 91-1 ¶3), at which point IPI had already violated the Court's order to produce all discovery by January 13, 2020 and failed to comply with numerous elements of the Stipulation. Moreover, the obligation to comply belongs to IPI, not to Ms. Butcher. It should be noted that Mr. San Nicolas, IPI's general counsel, participated in several telephone calls between the parties (Second Halegua Decl. ¶6), was copied on emails (*id.*), and was apparently available to draft a declaration after Plaintiffs filed their motion for sanctions (ECF No. 91-6). However, noticeably absent from Mr. San Nicolas' declaration is why he never notified Plaintiffs that Ms. Butcher was addressing an emergency, why he did not request more time to comply with the Court's order, or why he did not take over in fulfilling IPI's discovery obligations. There is no excuse for IPI to simply ignore its duties to the Court.

Plaintiffs are also well aware of the coronavirus' broad impact. However, the virus did not start impacting the day-to-day work of Saipan's legal community until March 2020. The first mention that

---

[4] *See* Imperial Pacific International Holdings, "2018: Annual Report," pp. 4–6, available at: http://www.imperialpacific.com/uploads/attachment/2018-09/660755ba8c500abc7e.pdf.

[5] IPI submitted various forms of evidence related to this medical emergency, but Plaintiffs always took Ms. Butcher's representations at face value and never questioned that she was attending to a family medical issue.

IPI made of the coronavirus was Mr. Frink's email on March 6, 2020. (Opp. at 8). The Court first took official measures in response to the virus on March 16, 2020. (*See* General Order 20-00002). IPI has not provided any persuasive explanation as to how the virus impeded its ability to comply with the Court's order in December 2019 or the Stipulation entered in January 2020. Similarly, IPI never requested relief from this Court's orders due to the impact of the coronavirus (or for any other reason). Of course, the coronavirus may have an impact on this case moving forward—but this is a distinct issue that Plaintiffs address below in the section on crafting an appropriate sanction.

    f.  <u>IPI chose to disobey this Court's orders rather than request an extension of time</u>.

As a preliminary matter, any suggestion that Plaintiffs somehow "imposed" the discovery deadlines or IPI was "forced" to accept them is baseless. (*See* ECF No. 91-1 ¶15). The first deadline was set by the Federal Rules of Civil Procedure; the second was set by the Court; and the third, the Stipulation, was negotiated between the parties, with both Ms. Butcher and Mr. San Nichols on the telephone—and then ordered by the Court. (Mem. at 4; Second Halegua Decl. ¶6). Moreover, IPI could have sought relief from the Court's orders or to modify them—but it never did. Instead, IPI waited until long-after it violated two Court orders and Plaintiffs filed a sanctions motion before arguing the case is "complicated" and that it needs more time to comply.

The analysis and holding of the federal district court for Nevada in *U.S. Bank N.A.*, which faced a similar situation, illustrates the impropriety of IPI's behavior:

> It is a foundational element of our judicial system that attorneys must comply with Court orders. … To the extent an attorney disagrees with an order, his recourse is to seek relief from the issuing Court or through the appropriate appellate channels. … The same holds true for orders setting deadlines, as [c]alendars are simply too crowded for parties to treat scheduling orders as optional and to submit required court filings at their own convenience. If a deadline cannot be met, the proper course is most assuredly not to simply ignore an order. At bottom, that is what Mr. Davis has acknowledged doing in this case. He knew that orders had been issued setting deadlines…. *Indeed, the first of those orders granted a stipulation with deadlines to which Mr. Davis agreed*…. "[I]nadvertence and inexperience" only go so far, and they certainly

> do not excuse an attorney's asserted misunderstanding of the fundamental premise that orders must be followed. Moreover, the failure of Mr. Davis to do so here has resulted in wasted judicial resources, wasted resources of [the opposing party], and a delay in this case.

*U.S. Bank N.A.*, 2018 WL 701816, at *4 (internal quotations and citations omitted).[6] Similarly, if IPI was unable to meet the Court deadlines, it should have raised this with the Court prior to violating its orders. IPI first introduced its litany of excuses only in opposition to Plaintiffs' motion for sanctions.

### B. THERE IS NO "MEET AND CONFER" REQUIREMENT PRIOR TO FILING A MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(b)(2).

Once again, mimicking its opposition to Plaintiffs' motion to compel (ECF No. 57), IPI advances the procedural argument that Plaintiffs failed to properly meet and confer. In support of its position, IPI cites "Fed. R. Civ. P. 37(1)(1)"—which does not exist—and LR 26.2, but no caselaw.[7]

IPI's argument fails because Plaintiffs' motion is one for sanctions pursuant to Fed. R. Civ. P. 37(b)(2), as stated in the Notice of Motion. Both the plain language of Rule 37 and the caselaw of this Circuit make clear that no meet and confer requirement exists for bringing a sanctions motion under Rule 37(b)(2). The court in *Acosta v. Austin Elec. Servs. LLC* addressed this precise issue:

> Plaintiff is correct that there are important differences between Rules 37(a) and 37(b). Rule 37(a) governs motions for orders "compelling disclosure or discovery," such as when a party fails to answer an interrogatory, a deponent fails to answer a question, or fails to produce requested documents. Fed. R. Civ. P. 37(a). Any such motions "must include a certification that the movant has in good faith conferred or attempted to confer" with the opposing party prior to involving the Court…. In contrast, Rule 37(b) lists the various sanctions a court

---

[6] Numerous courts have come to the same conclusion. *See also Liguori v. Hansen*, No. 11-CV-00492, 2012 WL 760747, at *13 (D. Nev. Mar. 6, 2012) (granting Rule 37 relief in part because party who missed discovery deadlines failed to "file a timely request to extend"); *Blumenthal v. Drudge*, 186 F.R.D. 236, 240 (D.D.C. 1999) ("If plaintiffs' counsel were not able to meet a discovery deadline, they should have sought an agreement with defendant's lawyer to submit their responses at a later date. … If such consent was not provided by counsel as a professional courtesy, plaintiffs' counsel should then have sought an extension of time from the Court by motion.")

[7] Plaintiffs informed IPI that there is no Rule 37(1)(1) in the Federal Rules of Civil Procedure and that courts in this Circuit have held that Rule 37(a)'s meet and confer requirement is inapplicable to motions under Rule 37(b). However, IPI has chosen not to amend its pleading.

11

>  may impose for a party's failure to comply with a court's order, including an order to provide or permit discovery. Fed. R. Civ. P. 37(b). These sanctions include striking pleadings, dismissing the action, and rendering default judgment…. Importantly, unlike Rule 37(a), Rule 37(b) does not require the moving party include a certification that the parties met and conferred prior to involving the court…

*Acosta v. Austin Elec. Servs. LLC*, 325 F.R.D. 322, 324–25 (D. Ariz. 2018). *See also Allstate Ins. Co. v. Nassiri*, No. 08-CV-00369, 2010 WL 5248111, at *3 (D. Nev. Dec. 16, 2010) ("Rule 37 does not require the moving party to meet and confer with the opposing party prior to filing a motion for sanctions under Rule 37(b) or (c)") (*citing Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008)).

      The Local Rule cited by IPI, LR 26.2(a)(4)(B), is not applicable. This rule is under Chapter 5 ("Depositions and Discovery") of the Local Rules and its plain language makes clear that the rule applies to "discovery motions" in which the appropriateness of the propounding party's discovery request and adequacy of the responding party's response are at issue. Plaintiffs' motion is not a discovery motion; it is a motion for sanctions for violating a Court order. Even if LR 26.2(a)(4)(B) was intended to create an additional requirement before a motion for sanctions was filed— which there is no reason to believe it was—then the local rule would be "inconsistent" with Fed. R. Civ. P. 37(b) and thus "unenforceable." *Hoffman*, 541 F.3d at 1179 (a local rule imposing a meet and confer requirement for motions under Fed. R. Civ. P. 37(c) would be inconsistent and unenforceable). *See also* Fed. R. Civ. P. 83(a)(1) ("A local rule must be consistent with—but not duplicate—federal statutes and rules…"); LR 1.1 ("These Rules … supplement the Federal Rules of Civil Procedure and will be construed to be consistent with those rules…. If any local rule is or becomes in conflict with a federal rule or statute, the federal rule or statute applies.").

      Nonetheless, Plaintiffs *did* meet and confer with IPI prior to filing their sanctions motion. As explained in Plaintiffs' initial brief, Plaintiffs agreed to work out a new Stipulation after IPI disobeyed the order to produce discovery by January 13, 2020; continued conferring with IPI as it unliterally

modified the requirements and deadlines in the Stipulation; and, then had a telephone call with Mr. Frink and his co-counsel after they filed a notice of appearance on behalf of IPI.[8] (Mem. at 4–7). IPI initially agreed that one week after the call, it would provide a new deadline by which it would produce all discovery; however, IPI then stated it would not commit to any such date. (*Id.*) IPI's position that it should be permitted to conduct discovery at its own pace without any deadline—a position it still maintains—is untenable and made further negotiations pointless.

### C. PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS.

Fed. R. Civ. P. 37(b)(2)(C) provides that where a party does not comply with a Court order, the Court "must order the disobedient party… to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." IPI admits that it has failed to comply with the Court's orders. IPI has also waived any opposition to the awarding of fees and costs by not responding to this part of Plaintiffs' motion, let alone providing any legal authority to argue that its disobedience was "substantially justified." Therefore, the Court should grant attorneys' fees and costs related to Plaintiffs' tireless efforts—including teleconferences, emails, letters, and now a sanctions motion and oral argument—to make IPI comply with what this Court had already ordered.

### D. THE COURT SHOULD ORDER THE SANCTIONS PROPOSED BY PLAINTIFFS, MAKING ACCOMMODATIONS ONLY WHERE IPI DEMONSTRATES SPECIFIC IMPEDIMENTS CREATED BY THE CORONAVIRUS.

IPI's pattern of conduct has made obvious the need to impose sanctions to obtain IPI's compliance with Court orders. The sanctions proposed in Plaintiffs' initial brief are reasonable and less severe than those ordered in comparable cases—which IPI neither distinguishes nor addresses. More specifically, Plaintiffs propose that the Court (i) order IPI to produce all outstanding discovery

---

[8] It should also be noted that IPI was in discussions with Mr. Frink's law firm about the case "for several weeks" prior to them entering a formal notice of appearance. (Halegua Decl. ¶17).

13

on or before May 8, 2020, including all obligations set forth in the Stipulation; (ii) treat IPI's noncompliance as a contempt of Court; and (iii) warn IPI that failure to comply with the new deadline will result in either the striking of its answer or the entry of a default judgment. Given IPI's noncompliance with multiple prior orders (even after awarding attorneys' fees to Plaintiffs), the significant delays IPI has caused, and the substantial prejudice to Plaintiffs that has already transpired (such as critical employees leaving IPI without their data being saved), a tight deadline and strict warning are both necessary and reasonable.[9] *See Jorgensen v. Cassidy*, 320 F.3d 906, 914 (9th Cir. 2003) (affirming district court decision to enter a default judgment on similar facts).

IPI does not propose what sanctions would be appropriate, but only objects—unpersuasively—to each sanction proposed by Plaintiffs. For instance, IPI argues that it acted in "good faith" (Opp. at 10); but this is not a defense for a contempt finding where a Court order was violated. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). IPI argues that default judgments are only to be awarded in extreme circumstances (Opp. at 10); however, Plaintiffs only request that IPI be *warned* that further disobedience may result in such sanctions.

IPI even objects to the Court setting a new deadline for the production of all discovery. IPI essentially argues that it should be able to collect, search, review, and produce discovery at whatever pace it chooses. IPI cites to its emails stating that at least six more months of discovery are needed—effectively rewarding IPI with a "do-over" of the entire discovery period without any penalty for disobeying two Court orders until now. IPI provides no legal authority to support its bold proposal.[10]

---

[9] While Plaintiffs still support the imposition of a $5,000 per day fine until IPI produces all discovery, Plaintiffs believe that a tight deadline and the threat of terminating sanctions are absolutely necessary to induce IPI's compliance with its discovery obligations. Given the myriad of benefits that IPI achieves from delaying discovery, if only a daily fine were imposed, Plaintiffs are concerned that IPI may simply "buy" its way out of meaningful compliance with any Court order.

[10] Ms. Butcher is more reasonable and at least "recognize[s] that IPI must produce responsive non-privileged discovery records reasonably promptly…" (ECF Doc. 91-1 ¶18).

14

In terms of the coronavirus, IPI has not provided any specific details about what people are needed to perform the next stages of discovery, where they are located, and the extent to which they are impacted (or not impacted) by the virus. For instance, this Court continues to operate and IPI's attorneys in Saipan have continued filing pleadings. Much of the review of IPI's emails and ESI is likely to be performed remotely by contractors, so the fact that people may be homebound is not necessarily an impediment. Therefore, if IPI seeks an extension of the May 8 deadline, Plaintiffs propose that IPI bear the burden of demonstrating that the coronavirus has made meeting that deadline impossible or dangerous. IPI should be required to submit an emergency petition within five calendar days of the Court's order that provides sworn affidavits (i) specifically identifying any hardship and why it makes completing the required discovery tasks impossible or dangerous, (ii) describing efforts made to find alternate solutions to comply with the deadline, and (iii) stating the precise modifications it proposes to the Court's order. At this late stage, financial cost should not be a valid reason for extending the deadline. Plaintiffs should then be provided three days to respond, including an opportunity to provide evidence of vendors capable of performing the required tasks by May 8, 2020.

Respectfully submitted,

/s/_____
Aaron Halegua
Bruce Berline

Attorneys for Plaintiffs