F I L E D
Clerk
District Court

MAY 06 2020

for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

TIANMING WANG, *et al.*,

        Plaintiffs,

vs.

GOLD MANTIS CONSTRUCTION
DECORATION (CNMI), LLC., MCC
INTERNATIONAL SAIPAN LTD, CO., and
IMPERIAL PACIFIC INTERNATIONAL
(CNMI), LLC,

        Defendants.

Case No.: 18-cv-00030

**AMENDED***
**ORDER GRANTING PLAINTIFFS'**
**ATTORNEYS' FEES AND COSTS FOR**
**COUNTERMOTION TO COMPEL**
**DISCOVERY**

On December 12, 2019, the Court granted Plaintiffs' Countermotion to Compel (ECF No. 51)

and ordered Defendant Imperial Pacific International (CNMI), LLC ("IPI") to respond to Plaintiffs'

discovery requests. (Minutes, ECF No. 61.) The Court further granted Plaintiffs' motion for reasonable

expenses and attorneys' fees and ordered briefing as to the amount. (*Id.*) Before this Court is Plaintiffs'

Motion for Attorneys' Fees (ECF No. 62, hereinafter "Motion"), IPI's opposition (ECF No. 68,

"Opposition"), and Plaintiffs' Reply (ECF No. 74, "Reply"). For the reasons stated herein, the Court

ORDERS IPI to pay Plaintiffs attorneys' fees and costs in the amount of $29,459.

## I.      BACKGROUND

Plaintiffs are seven individuals from China who worked on IPI's casino construction project

in Saipan. (FAC ¶ 1, ECF No. 6.) Defendants are IPI, the exclusive casino licensee on Saipan, and two

---

* Pursuant to Federal Rule of Civil Procedure 60(a), the Court amends this order to correct the omission of a
deadline for compliance. The new language, on page 15, is noted in bold.

1

Saipan subsidiaries of China based construction companies, MCC and Gold Mantis, that IPI contracted to work on the casino project. (*Id.* ¶¶ 2, 36.) Plaintiffs allege that MCC and Gold Mantis forced them to work long hours, paid them less than promised if at all, threatened them, and financially coerced them, and that Defendant IPI knew of or recklessly disregarded its contractors' actions. (*Id.* ¶¶ 3–6.) Plaintiffs further allege that Defendants maintained the casino project construction site in unsafe conditions that resulted in serious physical injuries to each Plaintiff. (*Id.* ¶¶ 4–6.) Plaintiffs have filed this lawsuit against Defendants for forced labor under both the federal Trafficking Victims Protection Reauthorization Act ("TVPRA") and the CNMI Anti-Trafficking Act,, as well as state law claims of negligence and failure to secure workers' compensation.

Plaintiffs first served their discovery requests on IPI by email on September 18, 2019, and later by hand-delivery on October 25. (ECF Nos. 52-1, 52-7.) IPI initially objected to the manner of service and multi-part interrogatories, as well as raising numerous omnibus objections generally arguing that the discovery requests were overbroad, unduly burdensome, and vague. (*See generally* IPI's Objections to Plaintiffs' Rule 34 Production Request, ECF No. 52-6; IPI's Objections to Plaintiffs' Interrogatories, ECF No. 52-10.) Plaintiffs and IPI engaged in multiple communications about IPI's objections. (See emails and letters at ECF Nos. 52-8, 52-9, 52-11 to 52-15, 52-18.) After IPI filed the motion for a protective order, it maintained that it did not need to produce documents until its motion for a protective order and motion for a stay were resolved. (ECF Nos. 52-16 at 3, 52-17 at 3.) Plaintiffs filed a countermotion to compel discovery. (ECF No. 51 at 17–20.) They stated that IPI had failed to provide any documents or answer any interrogatories, and "repeatedly demonstrated an intent to simply avoid responding to discovery by any means necessary." (*Id.* at 18.)

## II.   LEGAL STANDARD

Under the Federal Rules of Civil Procedure, if a motion to compel discovery is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

Once the Court has determined that attorneys' fees and costs should be awarded, it must determine the reasonableness of the proposed amounts in a two-step process. First, "[d]istrict courts must calculate awards for attorneys' fees using the 'lodestar' method" which requires multiplying the hours "reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). In order to determine if the rate is reasonable, the court must identify the prevailing hourly rate for the relevant community. *Id.* at 979. In most cases, "the relevant community is the forum in which the district court sits." *Id.* However, a court may rely on prevailing rates from outside the forum "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Id.* (internal quotation omitted). Having determined the relevant community, the court then must determine the appropriate market rate for the attorney based on "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* (internal quotation omitted). The burden is on the party requesting the fees to provide satisfactory evidence of the prevailing market rate. *Id.* at 980 (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

To determine the reasonableness of the number of hours worked, the court cannot simply accept the hours presented by the attorney requesting fees, but instead must require that party prove that it exercised billing judgment for the hours billed. *Vogel v. Harbor Plaza Center, LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992). "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Time spent establishing the right to and amount of the fee should be included in the lodestar calculation. *Camacho*, 523 F.3d at 981.

The lodestar amount is presumptively reasonable, but the court can adjust it upwards or downwards based on other considerations. *Van Gerwen*, 214 F.3d at 1046. Thus, after calculating the lodestar figure, the second step is for the court to assess the rate for reasonableness based on the Kerr factors. *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996). The twelve Kerr factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* at 363 n.8. (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976)). The court should not consider factors that are already subsumed into the lodestar amount, such as novelty, complexity, skill, experience, quality of representation and results obtained. *Id.* at 364 n.9. Only in rare cases should the rate be adjusted. *Id.*

## III.   DISCUSSION

Plaintiffs request fees for hours expended by their two attorneys, Aaron Halegua and Bruce Berline, as well as paralegal Jacob Kessler. The Court will address each in turn.

### a.   Aaron Halegua

#### i.   *Relevant Community*

Halegua is a New York-based attorney appearing *pro hac vice* in this matter. (Order Admitting Aaron Halegua Pro Hac Vice, ECF No. 23.) Plaintiffs assert that the relevant community to determine his reasonable hourly rate is not Saipan, but rather the nation. (Motion at 4.) "Community may refer to 'a community of practitioners' when the subject matter of the litigation is 'one where the attorneys practicing it are highly specialized and the market of legal services in that area is a national market.'" *Radich v. Guerrero*, No. 1:14-CV-00020, 2016 WL 5109151, at *2 (D. N. Mar. I. Sept. 20, 2016) (quoting *Kaylor-Trent v. John C. Bonewicz, P.C.*, 916 F. Supp. 2d 878, 884 (C.D. Ill. 2013)). The Court agrees that civil TVPRA cases involve a specialized area of law and Halegua brings expertise and experience that local attorneys cannot provide.

Statistics from the Human Trafficking Legal Center show that only 299 federal civil trafficking cases were filed between 2004–2017, only 12 of which involved construction or landscaping labor. (Report at 10–13, ECF No. 63-2.) Halegua has specialized knowledge and experience with the

TVPRA, federal litigation involving labor trafficking, and Chinese law. (Motion at 5–6.) The Court recognizes that local attorneys have litigated a civil TVPRA case without the assistance of *pro hac vice* counsel before this Court. However, that case involved a nanny who worked in the home of a casino employee. (Verified Compl., *Jiang Li Rong v. Hong Kong Entertainment (Overseas) Investments Ltd*, 05-cv-00048 (D. N. Mar. I. Dec. 29, 2005), ECF No. 1.) The present case is more complicated as it involves multiple plaintiffs, a large construction project, three corporate defendants, and voluminous discovery in Chinese. Halegua is also fluent in Mandarin, which allows him to communicate directly with the seven plaintiffs, all currently living in China, without the assistance and cost of an interpreter. (Motion at 6.)

Plaintiffs further argue that this case is undesirable for local counsel because it involves a contingency fee and uncertain collection of judgment if successful. (*Id.* at 5.) However, these factors are less compelling. Local attorneys take cases on a contingency basis and collection of judgment is far from certain in many cases. Nevertheless, the Court finds that this TVPRA case is complex and Halegua's expertise is beyond what a local attorney could provide. Therefore, deviation from the general rule that the forum district is the relevant community is permissible. *See Camacho*, 523 F.3d at 979. The Court finds that the relevant community for Halegua is the nation, not the forum.

### ii.   *Reasonable Hourly Rate*

The Court must next determine a reasonable hourly rate for Halegua, based on the prevailing national rate for "similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 979. Plaintiffs propose an hourly rate of $417. IPI argues that Plaintiffs have not provided sufficient evidence of their proposed hourly rate because they did not

submit declarations from other attorneys regarding the reasonableness of the hourly rates. (Opposition at 3.) "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corporation*, 896 F.2d 403, 407 (9th Cir. 1990). Although affidavits from other attorneys are satisfactory, *Phelps* did not demand a specific type of evidence. A district court may consider other fee awards, as well as rely on its own knowledge and experience regarding hourly rates. *Sam K. ex rel Diane C. v. Hawaii Dept. of Educ.*, 788 F.3d 1033, 1041 (9th Cir. 2015) (citing *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)). Plaintiffs submitted satisfactory evidence, including Halegua's declaration, evidence of his past fee awards, rates as set forth in the matrices, and fee awards for attorneys with comparable experience.

A review of fee awards in TVPRA cases shows a range from $300 to $450 per hour for attorneys with eight to ten years' experience. *See Abafita v. Aldukhan*, 1:16-cv-06072(RMB)(SDA), 2019 WL 6735148, at *11 (S.D.N.Y. Apr. 4, 2019) adopted by 2019 WL 4409472 (S.D.N.Y. Sept. 16, 2019) ($450 hourly rate for senior attorneys, including one attorney with 9 years' experience, was reasonable); *Echon v. Sackett*, 14-cv-03420-PAB-NYW, at *40–41 (D. Colo. Feb. 12, 2019) (Pls' Ex. A, ECF No. 63-1) ($350 hourly fee for an attorney with 8 years' experience); *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1181 (D. Kan. 2018) ($300 hourly rate for attorney with ten years' experience); *Lipenga v. Kambalame*, GJH-14-3980, 2017 WL 2493101, at *2 (D. Md. June, 8, 2017) ($300 hourly rate for attorneys with nine years' experience). District Courts in New York awarded Halegua an hourly rate of $300 in 2018 and $250 in 2015. *Sai Qin Chen v. East Market Rest. Inc.*, 13-cv-3902

(HBP), 2018 WL 3970894, at *3 (S.D.N.Y. Aug. 20, 2018); *Song v. 47 Old Country, Inc.*, 09-cv-5566 (LDW)(SIL), 2015 WL 10641286, at *4 (E.D.N.Y. Oct. 1, 2015). Plaintiffs also cite to the Laffey and USAO fee matrices, which set hourly rates for attorneys with 8–10 years' experience in 2019 at $661 and $417, respectively. (ECF Nos. 63-7 at 4, 63-6 at 1.) The Ninth Circuit expressed concern about the appropriateness of using the Laffey matrix, which is an inflation-adjusted hourly rate chart for attorneys in the District of Columbia, for cases in other legal communities. *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). However, here, Plaintiffs submit the D.C. matrices not to prove a local rate, but rather as evidence of national rates. Halegua is an attorney with 10 years of experience, particularly skilled in labor and trafficking law. Using a national market rate for similarly experienced and skilled attorneys, the Court finds that a $400 hourly rate is a reasonable fee for the relevant national community.

### iii.   Reasonable Hours Worked

Having determined the hourly rate, the Court turns to the number of hours. Halegua requested reimbursement for 68.3 hours, a ten percent reduction from the 75.88 hours spent attempting to obtain discovery from IPI, responding to IPI's objections and discovery motions, filing the motion to compel, and preparing the fee motion. (Halegua Decl. ¶ 31, ECF No. 63; Halegua Timesheet, ECF No. 63-8.) He also requested an additional 19.45 hours for time spend on the reply brief. (Reply at 18; Halegua Timesheet, ECF No. 75-1.) His total hours expended are 95.33.

IPI objects to these hours because (1) they are not limited to Plaintiffs' counter-motion to compel; (2) any work performed before November 25 should not be included because the initial service of discovery was defective; (3) any time spent researching national fees is unreasonable

because the relevant community is the CNMI; and (4) time records must be contemporaneous. (Opposition at 4–5.) The Court will address these objections in reverse order. As to the time records submitted, the Ninth Circuit prefers contemporaneous records, but does not absolutely require them. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000). Moreover, both Plaintiffs' attorneys provided declarations swearing that the records provided were contemporaneously recorded. (Halegua Decl. ¶ 31; Berline Decl. ¶ 14, ECF No. 64.) Regarding the third objection, there are exceptions to the general rule that the relevant community is the forum district. Here, the Court found that the relevant community for Halegua's fees is at the national level, making his time spent researching those fees reasonable.

IPI's second objection is to the inclusion of hours expended prior to November 25 because its obligation to respond to the discovery requests only began on that day. However, IPI's claims that it has established that the email service of discovery on September 18 was defective and that Plaintiffs conceded as much, (Opposition at 5), are misleading. Plaintiffs served the discovery requests by hand on October 25 with a letter explaining that they did not concede to the validity of IPI's objection to email service and were reserving their rights to move to compel. (ECF No. 52-7.) The Court did not reach this question in deciding the motion to compel because at that point under either date of service IPI had missed the deadline to respond. The question is more complicated than the parties purport. Plaintiffs rely on a decision from this Court by Judge Bennett finding that a party consented to service of a jury demand by e-mail by its written consent to use the CM/ECF system generally. *Baldwin v. United States*, 823 F. Supp. 2d 1087, 1110 (D. N. Mar. I. Sept. 26, 2011). Notably, Judge Bennett found the question to be a "close call," *id.*, and this Court is not bound by his decision. Nonetheless,

the Court notes that IPI only raised this objection after it requested a two-week extension of the deadline to respond to the email service of the discovery requests. (*See* Butcher October 18, 2019 email, ECF No. 52-4.) IPI did not inform Plaintiffs that it objected to the underlying validity of the form of service at that time. Instead, it asked for additional time to respond due to time lost because of counsel's unexpected off-island travel and a typhoon. (*Id.*) Plaintiffs granted IPI the additional time requested, extending the deadline to November 4. (*See* Tydingco October 22, 2019 email, ECF No. 52-5.) If IPI truly believed that the email service was not valid, one wonders why it felt the need to request an extension of the deadline? IPI's actions demonstrate a lack of good faith, given that it led Plaintiffs to believe that it was going to respond to the discovery requests, not use the additional time to object to the form of service. Moreover, under Rule 37(a)(4), evasive responses to discovery requests are to be treated as a failure to respond. Therefore, the Court finds that, under these circumstances, IPI's objection to email service was not substantially justified and efforts expended by Plaintiffs prior to November 25 will be included in the fee award.

The first objection asks what hours should count towards the fee award. Should it be limited to the time spent on the motion to compel, or should the other efforts to obtain discovery be factored in? There are two schools of thought regarding fee awards for pre-motion efforts under Rule 37(a)(5)(A). *Swapalese, Inc. v. Sublease Exchange, Inc.*, 1:07-CV-45, 2009 WL 1119591, at *3–4 (S.D. Ohio Apr. 27, 2009). The debate turns on the following language in the rule: "reasonable expenses incurred in making the motion, including attorney's fees." *Id.* at *3 (citing Fed. R. Civ. P. 37(a)(5)(A)). Some judges have concluded that phrase precludes recovery for attempts at resolving the dispute before the filing of the motion. *Id.* Other judges reached the opposite conclusion, noting

that Rule 37 requires a good faith effort to resolve the issue without court intervention making such attempts a "necessary first step before filing a motion to compel." *Id.* Therefore, those hours spent before filing the motion are part of the expenses incurred in making the motion. *Id.* at *4; *see also Culver-Taylor v. Foster*, 5:17-cv-289-MCR-GRJ, 2018 WL 3853595, at *2 (N.D. Fla. May 9, 2018); *Acosta v. Gill*, 1:17-cv-00262-LJO-SKO, 2018 WL 1806623, at *3 (E.D. Cal. Apr. 17, 2018); *JPMorgan Chase Bank v. Neovi, Inc.*, 2:06-cv-0095, 2007 WL 1875928, at *7 (S.D. Ohio June 20, 2007). This Court agrees that efforts to obtain discovery required under Rule 37(a)(1) are part of bringing a motion to compel discovery, and therefore expenses incurred trying to resolve discovery disputes prior to filing the motion will be included in calculating a fee award under Rule 37(a)(5)(A).

In reviewing the hours submitted by Halegua, the Court finds that some hours must be excluded. First, all time spent responding to IPI's motion for a protective order cannot be considered time incurred in making the motion to compel. As such, the Court excludes the 16.47 hours Halegua spent on November 21–24, 2019 and 2.87 hours spent preparing for the December 12 hearing.

[1] (*See* Halegua Timesheet, ECF No. 63-8.) Next, the Court will exclude 1.78 hours spent preparing a motion to shorten time as no motion was filed. Finally, the Court will reduce Halegua's hours by ten percent, as proposed by Plaintiffs as part of their billing judgment. Although IPI did not contest the reasonableness of the hours expended, given the large amount of the fee requested, the

---

[1] The December 12 hearing was on three motions:  IPI's Motion for a Protective Order, IPI's Second Motion to Stay, and Plaintiffs' Countermotion to Compel. Halegua's timesheet indicates that he spent 4.3 hours preparing for and attending the hearing. (ECF No. 63-8 at 1.) Seeing as part of that time was necessarily spent on other motions, the Court excluded two-thirds of that time.

Court finds that a ten-percent reduction is appropriate to compensate for any additional overlap with time spent opposing the motion for a protective order, as well as trimming excessive hours spent on the motion to compel and motion for attorneys' fees. Halegua's first request for fees incorporated the ten percent reduction, but his second request did not. Therefore, the Court will reduce an additional 1.95 hours from the total 87.75 requested. Although this is a large award, it is based on time expended over a period of several months. The Court finds that Halegua reasonably expended 64.68 hours in bringing this motion to compel, resulting in a fee award of $25,872.

   b.  <u>Bruce Berline</u>

   For Bruce Berline, a local attorney, the relevant community is the forum in which the district court sits. Therefore, the Court must determine the prevailing hourly rate for similar work by comparable attorneys in Saipan. Plaintiffs are asking for a rate of $300 per hour, based on Berline's more than twenty years of experience and his current billing rate. (Berline Decl. ¶ 12.) Three years ago, the Court awarded Berline fees at an hourly rate of $250 in an FLSA case. Order Awarding Plaintiff Attorney Fees and Costs at 10, *Xuan v. Joo Yeon Corp. and Se Young Corp.*, 12-cv-00032 (D. N. Mar. I. Jan. 27, 2017), ECF No. 226. IPI does not expressly object to the $300 hourly rate but rather objects overall to the lack of sufficient evidence as to the reasonableness of the rates, arguing that the submission of Plaintiffs' counsel's own declarations alone does not satisfy the burden of proof. (Opposition at 3). As discussed above, IPI's argument that the motion should be denied because Plaintiffs failed to file affidavits from other attorneys regarding the prevailing rates is unpersuasive. Particularly relevant here, given the small size of the legal community, a district court may rely on its own knowledge and experience regarding hourly rates. *Sam K. ex rel Diane C.*, 788 F.3d at 1041.

Here, there is evidence that $300 is a reasonable hourly rate for an attorney of the same skill, reputation and experience in the CNMI. Therefore, the Court finds that an hourly rate of $300 is appropriate.

Berline billed 6.44 hours in relation to this motion. (*See* Berline Timesheets, ECF Nos. 64-1 and 76-1.) The Court will discount the 0.5 hours spent on the unfiled motion to shorten time. Otherwise, his hours expended are reasonable as the majority of work was performed by Halegua. At an hourly rate of $300, 5.94 hours results in a fee award of $1,782.

c.   Jacob Kessler

Plaintiffs request an $166 hourly rate for 16.4 hours of work performed by Halegua's paralegal, Jacob Kessler. (Mot. at 9, ECF Nos. 63-9, ECF No. 75-2.)  IPI opposes for the following reasons: (1) the hourly rate is based on New York rates, and not local rates; (2) they did not submit any declaration regarding his qualifications or skill; and (3) there is no explanation why the parties did not use a paralegal in the CNMI. (Opposition at 4.) Plaintiffs did provide a description of Kessler's qualifications in Halegua's declaration, although it is unclear how many years of experience he has. (ECF No. 63 ¶ 37.)  It would be impractical to force attorneys to use a paralegal outside their offices. Therefore, it makes sense that Halegua, as the lead attorney working in a different time zone, relied on his own paralegal for administrative support. Consequently, as for Halegua, a fair hourly rate for Kessler should be based on a national rate. Plaintiffs provided evidence of paralegal rates in the CNMI, Colorado and Washington, D.C. *See* Order Awarding Plaintiff Attorney Fees and Costs at 11, *Xuan v. Joo Yeon Corp. and Se Young Corp.*, 12-cv-00032 (D. N. Mar. I. Jan. 27, 2017) ($90 hourly fee for paralegal in Saipan); *Slaughter v. Sykes Enters, Inc.*, No. 17-cv-02038-KLM, 2019 WL 529512, at *9 (D. Colo. Feb. 11, 2019) ($260 in Colorado); Laffey Matrix (ECF No. 63-7 at 1) ($203 for paralegal

in 2019–20); USAO Attorney's Fees Matrix (ECF No. 63-6 at 1) ($173 for paralegal in 2019–20). A review of cases from other parts of the country shows lower rates awarded to paralegals. S*ee Durham v. FCA US LLC*, No. 2:17-CV-00596-JLT, 2020 WL 243115, at *9 (E.D. Cal. Jan. 16, 2020) ($75 in Fresno, CA); *Sergey F. v. Saul*, No. 0:18-CV-01276-KMM, 2020 WL 206245, at *3 n.2 (D. Minn. Jan. 14, 2020) ($115 in Minnesota, MN); *Azar v. Blount Int'l, Inc.*, No. 3:16-CV-0483-SI, 2019 WL 7372658, at *12 (D. Or. Dec. 31, 2019) ($100 in Oregon). Considering the range of fees throughout the country, the Court finds that an hourly rate of $125 for Kessler is reasonable.

As to the reasonableness of the hours expended, the Court will discount the 1.08 hours spent on downloading the cases from the motion for a protective order because that work was unrelated to the motion to compel.  Additionally, the Court will not award fees for the 2.13 hours Kessler spend printing out the documents and binders for the oral argument because Plaintiffs stated they were not seeking fees for those tasks. (Reply at 10.) That leaves 13.19 billable hours. At $125 per hour, the fees awarded to Plaintiffs for Kessler total $1,648.75.

  d. <u>Procedural Defects</u>

Finally, the Court will address IPI's argument that it should deny this motion because of Plaintiffs' failure to comply with two local rules. First, IPI argues that the motion was untimely because certain portions were filed after the deadline. (Opposition at 6.) The motion itself was timely filed, but Mr. Berline's supporting declaration and time sheet were filed six minutes after the deadline. IPI does not argue that it was prejudiced in any way by this delay and it would have a difficult time doing so as Plaintiffs stipulated to a seven-day extension of IPI's deadline to oppose the motion. (ECF No. 65.) Second, IPI points out that Plaintiffs' motion violated LR 7.1(d) which requires a table of

contents and a table of authorities for all briefs over ten pages. (Opposition at 7.) It is indeed correct as Plaintiffs' motion spills over two lines onto page eleven. Nevertheless, the Court is not persuaded that IPI should avoid paying a mandatory fee award on such a minor technicality.

## IV.    CONCLUSION

Based on the foregoing, the Court GRANTED Plaintiffs' Motion for Attorneys' Fees at the December 12 hearing and now ORDERS Defendant IPI to pay to Plaintiffs attorneys' fees and costs incurred in making their Countermotion to Compel in the amount of:

> (1) $25,872 for hours expended by counsel Aaron Halegua;
> (2) $1,782 for hours expended by counsel Bruce Berline;
> (3) $1,648.75 for hours expended by paralegal Jacob Kessler; and
> (4) $156.25 in costs.

**Defendant IPI must comply within thirty (30 days) of the issuance of this amended order.**

IT IS SO ORDERED this **6th** day of May, 2020.

RAMONA V. MANGLONA
Chief Judge