**Michael W. Dotts, Esq.**
**DOTTS LAW OFFICE**
Suite 208, DHL Building
Middle Rd. Chalan Lau Lau
PO Box 505979
Saipan, CNMI MP USA 96950
Tel. 670.234.1600
Email: mdotts@dottslaw.law

*Attorneys for Imperial Pacific International (CNMI), LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| **TIANMING WANG, et al.,** | CASE NO.: 1:18-CV-00030 |
| **Plaintiffs,** | |
| vs. | **OPPOSITION TO ENTRY OF DEFAULT** |
| **GOLD MANTIS CONSTRUCTION DECORATION (CNMI), LLC, et al.,** | |
| **Defendants.** | Date: June 12, 2020<br>Time: 9:00 a.m.<br>Chief Judge: Hon. Ramona V. Manglona |

**I.**
**Introduction**

On June 8, 2020, the Court ordered Imperial Pacific International (CNMI), LLC ("IPI") to show cause why a default should not be entered against IPI in this action for its failure to comply with discovery orders (ECF 149). The violations fall into three categories:

(1) failure to pay $29,459 in attorneys' fees and costs that were due on June 5, 2020;

(2) the failure to fully comply with various discovery requirements related to such matters as producing bank records, employee separation dates, and paper discovery; and

1

(3) the failure of IPI to pay for and arrange for the transfer of electronically stored information ("ESI") from a vendor in Singapore to a vendor in the United States chosen by Plaintiffs.

As will be explained below, (1) the failure to pay was unintentional and IPI is willing to pay[1] but needs more time; (2) the errors and omission in discovery production are minimal, not material, were unintentional, and IPI seeks to come into compliance; and (3) IPI has found ways to resolve the ESI debacle at no cost to Plaintiffs, that will keep that data secure within the CNMI, and will mean IPI can comply the discovery orders.

There have been violations by IPI of discovery orders but the facts behind those violations do not support the entry of default as a sanction. A daily sanction of $2,000 is running until IPI's full compliance is obtained and that will (and is) motivating IPI to come into compliance. There will be no prejudice to Plaintiffs by the violations as Plaintiffs have yet to amend their complaint and this matter is a long way away from trial. Finally, any prejudice that could result from a delay in IPI complying with a discovery order such as the loss of contact with a witness can be cured by a spoliation instruction making entry of default unjustified.

## II.
## Background

**A. IPI is in Financial Distress and is Unable to Pay Sanctions but NOT Unwilling**

---

[1] When Plaintiffs or the Court argue that IPI is unwilling to pay, they refer to the parent company's unwillingness to cover the discovery sanctions of IPI (the defendant here). The parent company, (*see* ECF 143), is barely able to cover their own expenses let alone the payroll and taxes of its subsidiary. Most importantly, the parent company is not before the Court, so its subsidiary should not be punished for the unwillingness of its parent to cover costs of discovery sanctions.

Provided herewith is the Declaration of Michael W. Dotts that in turn attaches a declaration from Frances Mafnas filed in the action *Pacific Rim Land Development, LLC v. Imperial Pacific International (CNMI), LLC,* Civ. No. 19-00016.  In the *Pacific Rim* case, a judgment of about $6.9 M has been entered against IPI.  IPI has appealed but has been unable to post a supersedeas bond.  IPI's motion to stay execution of the judgment was denied.  *Dotts Declaration.*  Writs of execution have been issued.  *Id.*  And as explained by Ms. Mafnas, IPI is having difficulty making payroll and paying utilities.  *Dotts Declaration*; See *also Declaration of Francis Mafnas in Support of Defendant's Motion for Stay of Execution of Judgment Pending Appeal* (ECF 123-2 in Civ. No. 19-00016).

**B.  Discovery Order Compliance**

IPI has been willing to address all issues with discovery.  This included adding staff. *See Dotts Declaration.*  As a result, this is the status of the discovery:

    1.  ACONEX

IPI has provided Plaintiffs with the username and password.  *See Declaration of Andrew Brendon Ojeda in Support of Certification as to the ACONEX Account* (ECF 151). IPI also discovered that no current or pending payments exist that would affect Plaintiffs' access to the ACONEX account.  *See id.*  Still, IPI is working on providing a read-only account to Plaintiffs to prevent manipulation of construction-related drawings, among other documents and information.  *See id.*  Further, IPI confirmed that although documents could be superseded on the ACONEX portal, the account keeps an inventory of all documents ever changed that includes the person who changed the documents as well as when.  *See Id.*

2. BANK RECORDS

By June 10, 2020, IPI will have complied with the Court's June 5 order by providing a Declaration of Frances Mafnas verifying and certifying prior productions of bank statements. In a declaration filed two days ago, Ms. Mafnas pointed out prior deficiencies and explained how the fourth production, which will supersede the first and second productions of Bank of Saipan and Bank of Hawaii bank statements and records, would correct all these errors and provide full and complete bank statements and records ranging from August 2014 to March 2017. *See Declaration of Frances Mafnas in Response to June 5 Order* (ECF 144). Ms. Mafnas conceded that she could not provide one bank statement for July 2015, but this was because the authorized signatory and the only person with access to the bank account no longer worked for the company and IPI lost the paper copy of the bank statement and record for July 2015. *See Id*. In an amended declaration filed the same day, Ms. Mafnas corrected an error as to the month when one bank account was opened and cleared up confusion that IPI, Inc. was not a bank account opened in Hong Kong. *See Amended Declaration of Frances Mafnas in Support of June 5 Order* (ECF 148).

IPI had planned on submitting bank statements and records by June 8, but Ms. Mafnas noticed that although Bank of Saipan provided full and complete bank statements and records as normally given to clients, it intentionally leaves out records, including checks on some bank statements like those in the IPI, LLC Cage Account. Ms. Mafnas did not want it to seem as though IPI was intentionally disobeying this Court's order to produce full, complete, and accurate bank statements and records. Thus, she will request these missing bank statements and records that are the fault of Bank of Saipan and provide a fourth production once Bank of

Saipan has provided this documentation. Additionally, Ms. Mafnas will update the Court with a forthcoming amended declaration.

### 3. PAPER DISCOVERY

On May 16, 2020, IPI provided 48,216 pages of documents that were bates-stamped, put into PDF format, and delivered on a CD to Plaintiffs. *See Response of Imperial Pacific International (CNMI), LLC to Plaintiffs' Status Report* (ECF 129). On May 28, 2020, the Court gave IPI 30 days to review 53 boxes it had made available for Plaintiffs to review. *See Minute Entry re: Status Conference* (ECF 135). IPI has hired extra staff to complete this monumental task and anticipates completing paper production responding to Plaintiffs' 43 production requests by the end of this month or filing a certification that there were no responsive documents. *See Dotts Declaration*.

### 4. SEPARATION DATES AND LAST KNOWN ADDRESSES

In compliance with the Court's March 29 Order, Ryan Litulumar, HR Specialist at IPI provided separation dates for custodians by June 1, 2020. *See Declaration of Ryan Litulumar in Support of Certificate Re Production of Employment Dates of the 68 Custodians* (ECF 137-1). Mr. Litulumar realized that the custodian list was incomplete and provided a revised IPI Custodian Chart, including all 67 alleged custodians, with separation dates for the custodians identified as having worked for IPI. *See Amended Declaration of Ryan Litulumar in Support of Certification Re Production of List of Employments Dates of the 68 Custodians*, (ECF 147). For certain custodians, Mr. Litulumar, in compliance with the May 28 Court Order, certified that he had no record of them having ever worked for IPI, so he could not

provide separation dates for these individuals. *See Declaration of Ryan Litulumar*; *see also Amended Declaration of Ryan Litumular*.

The last known addresses of IPI's employees have been added to the list Mr. Litulumar has been working on and will now be produced.

### 5. COLLECTION OF PHONES AND PHONE DOWNLOADS

On April 16, 2020, the Court ordered IPI to transmit data from eight phones by April 30, 2020. *See Minute Entry for Motion for Sanctions* (ECF 98). In compliance with the April 16 Order, IPI submitted a status report to update the Court regarding this order, in which it stated that of the 8 phones only three were issued by IPI. *See Status Report on Discovery by Imperial Pacific International (CNMI), LLC* (ECF 105). IPI stated that three of the five remaining phones were personal phones belonging to employees, and that two refused to give up their personal phones but one was considering it. *Id.* Of the two remaining phones, IPI stated that the status of Li-Wei Wu's phone was unclear, but it anticipated Kelley Butcher's phone once she returned to Saipan. *Id*.

A few weeks later, IPI conceded that although it was struggling with work cell phones, it had received 49,000 pages of cell phone data, including WhatsApp, WeChat, and SMS messages. *See Response of Imperial Pacific International (CNMI), LLC to Plaintiffs' Status Report* (ECF 129); *see also Declaration of Kelley Butcher in Support of Response of Imperial Pacific International (CNMI), LLC to Plaintiffs' Status Report* (ECF 130). A days before this concession, Brandon Benson, Assistant Technical Manager at IPI, stated that he experienced technical difficulties using Mobiledit to download data from Donald Browne's phone. *See Declaration of Brandon Benson* (ECF 123-3).

Today, Mr. Benson has solved the issue with Mobiledit. If a downloader did not have the password to someone's ITunes, the program would preclude extraction.[2] S*ee Declaration of Brandon Benson in Support of Opposition to Entry of Default*, filed herewith. Mr. Benson received permission from Donald Browne to obtain his ITunes password and successfully downloaded 38,986 pages of data from his phone yesterday. *Id*. Additionally, Eric Poon has agreed to give IPI his ITunes password to extract data from his phone and Mr. Benson began extraction yesterday. *Id*.

On May 28, 2020, the Court broadened the production from eight phones (*see* ECF 98), to all phones held by 59 so called "custodians." *See Declaration of Efforts Made Re: Collection of Phones From Current and Former Employees of Defendant* (ECF 146). To comply with this change of course, IPI issued subpoenas to "custodians" unwilling to provide phones and other documents. *See Federal Rule of Civil Procedure Rule 45(a)(4) Notice of Service of Subpoena* (ECF 142); *Federal Rule of Civil Procedure Rule 45(a)(4) Notice of Service of Subpoena* (ECF 145).[3]

### C. The ESI Data

There are several issues with the ESI data, but there is a development that should resolve all issues. It has been discovered that a full backup of data sent to the Singapore vendor was created on Saipan. S*ee Declaration of Brandon Benson in Support of Opposition to Entry of Default*, filed herewith.

---

[2] This was why Kelley Butcher could download 49,000 pages of phone data using Mobiledit because she had possession of her own ITunes password.

[3] IPI issued subpoenas to custodians who it had no records of ever employing to comply with the Court's order. *See Declaration of Ryan Litulumar in Support of Certificate Re Production of Employment Dates of the 68 Custodians* (ECF 137-1); *Amended Declaration of Ryan Litulumar In Support of Certification Re Production of List of Employments Dates of the 68 Custodians* (ECF 147).

i. Payment of $42,000 to Plaintiffs

The Court ordered that IPI pay $42,000 to Plaintiffs to cover costs of some vendor who potentially would take over hosting the ESI platform. The Court entered the Order at a hearing on an oral motion that had not been noticed. There was no support in the record for amount of $42,000.

When IPI inquired of Plaintiffs who was the vendor, Plaintiffs refused to disclose the identity of the vendor. *See Dotts Declaration*.

ii. Payment to Litigation Edge of Contract Balance

IPI entered into a contract with a company based in Singapore to ingest, perform OCR, and host on a platform, the ESI. Contract issues arose and the Singapore company (Litigation Edge Pte LTD) ("LEP") initially demanded about $56,000 to complete a contract when only about $31,000 remained due under the contract.[4] IPI worked with the vendor and nearly reached a resolution prior to the Court's order directing IPI to pay LEP.

iii. Payment to Litigation Edge for Transfer of ESI and ESI Security

The Court ordered IPI to pay LEP to transfer the ESI to an unnamed AWS server, under the control of Plaintiffs. The payment was initially $85,000 but IPI negotiated it down to $20,000 with LEP. It is very unclear what the basis is for the $20,000 charge but it is certainly more reasonable than $85,000 (the basis for the $85,000 charge is also unknown).

---

[4] LEP did have some justifications such as more users being given access to the platform than had been allowed under the contract, but IPI takes the position that it should have been given notice if it was going outside of its plan and the $26,000 additional charge was not supported.

IPI is willing to pay for the transfer of ESI. An issue remains as to whom it should be transferred. IPI objects to the transfer being made to an AWS server of Plaintiffs as the ESI contains privileged and confidential information.

IPI would agree to transfer the ESI to an AWS server under its own control or the control of a neutral third-party, like an escrow. IPI would agree to permit Plaintiffs' e-discovery expert access to verify that the ESI is intact but not to review or copy any of the data. The ESI can then be locked away to secure it for use in this litigation.

### iv. ESI Searches

When this issue first arose, the cost of searches with LEP was $200 per hour and with downloads costing $0.03 per page. Where it is at now is that once IPI pays the contract balance, it should be able to search the data for free and produce requested documents.

IPI's relationship with LEP may not be salvaged. IPI is willing to work with a new vendor, mutually selected by the parties and resident in the United States. IPI is willing to pay the costs of hosting and of the searches once it gets its finances in order.

## III.
## Argument

### Default is a Drastic Remedy and is NOT Appropriate Here

IPI believes that default judgment is inappropriate here because after being warned by the Court of dismissal it has made every effort possible to comply with the Court's orders. IPI never willfully refused to pay discovery sanctions or produce phones, among other discovery orders, which hypothetically may warrant such severe sanctions. Here, IPI has taken affirmative steps to produce at least some data, including 49,000 pages of data from WhatsApp,

9

WeChat, and SMS messages from Kelly Butcher, 38,986 pages of data from Donald Browne's phone, 48,216 pages of paper production bates numbered and put in PDF-format, a list of separation dates for alleged custodians who worked for IPI, and it has subpoenaed all alleged custodians, among other efforts.

IPI should not be punished for its inability to pay the following discovery orders during a time when its business has shut down because COVID-19 and it lacks money to even make payroll or pay its electricity bill, *see supra*:

| Amount | Reason | Date Due | Comments |
|---|---|---|---|
| $29,459.00 | May 6, 2020 Sanctions Order (*see* ECF 106). | June 5, 2020 | For attorneys' fees and costs payable to Plaintiffs related to the first motion to compel. |
| $30,990.00 | May 29, 2020 Order to pay IPI's Singapore vendor what was owed on a contract IPI had entered into with the vendor (*see* ECF 135). | June 8, 2020 | The vendor (Litigation Edge Pte LTD) had demanded $26,000.00 more than the contract amount and has been negotiating for an additional payment of $85,000.00 |
| $20,000.00 | May 29, 2020 Order to pay IPI's Singapore vendor what was demanded to transfer IPI's data to a third-party vendor Plaintiffs had contracted with (*see* ECF 135). | June 8, 2020 | This is the amount that on June 3, 2020 Litigation Edge said it would accept for the transfer rather than the $85,000.00 it was demanding if paid by June 5. |
| $42,000.00 | May 29, 2020 Order that IPI pay Plaintiffs this amount to cover e-discovery vendor costs (*see* ECF 135). | June 12, 2020 | |
| **Total:** | **$122,449.00** | | |

IPI's request for a sixty (60) days to pay $122,449.00 during this time of economic turmoil is not unreasonable. *See Certification Re: Nonpayment of Certain Sanctions and Costs* (ECF 143).[5]

The Ninth Circuit has declared that default judgment constitutes a drastic remedy that should only be imposed in "extreme circumstances and…where the violation is due to willfulness, bad faith, or fault of the party." *In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996). As mentioned above, IPI has not willfully, or in bad faith, violated any Court orders. It lacks the economic resources to cover discovery sanctions and has done all in its power to obey discovery orders despite being short-staffed after having had to furlough and lay off workers. *See supra*. IPI has taken affirmative steps to obey Court orders and has fallen short on some, but these deficiencies do not warrant a drastic remedy like default judgment.

### IV.
### Conclusion

For all the above stated reasons, a default judgment should not be entered.

Respectfully submitted this 10th day of June 2020.

By: _____/s/_____
    Michael W. Dotts, Esq.

---

[5] A few of the dates that payments are or were due in the Certification were not accurate. The table above is accurate.

11