F I L E D
Clerk
District Court

JUL 15 2020

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| TIANMING WANG, *et al.*, | Case No.: 18-cv-00030 |
| Plaintiffs, | |
| vs. | |
| GOLD MANTIS CONSTRUCTION DECORATION (CNMI), LLC., MCC INTERNATIONAL SAIPAN LTD, CO., and IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, | **MEMORANDUM DECISION STRIKING IPI'S ANSWER AND ENTERING DEFAULT JUDGMENT UNDER RULE 37** |
| Defendants. | |

On June 8, 2020, this Court issued an Order to Show Cause why a default judgment should not

be entered against Defendant IPI for its repeated violations of discovery orders. (ECF No. 149.) IPI

filed its response opposing an entry of default (ECF Nos. 153, 156[1]) and Plaintiffs filed their response

---

[1] IPI's attorney Michael Dotts' original declaration was stricken from the record because it contained a sealed
court document from a separate matter. The Court accepted the amended declaration filed on June 11, 2020.

in support of a default judgment (ECF No. 154). The matter came on for a hearing on June 12, 2020. Having reviewed the parties' submissions and considered the entirety of IPI's discovery conduct, the Court struck IPI's answer and entered a default judgment against it. The Court now issues this written decision to memorialize the reasons for these harsh sanctions.

## I.     BACKGROUND

Plaintiffs are seven individuals from China who worked on IPI's casino construction project in Saipan. (First Amended Complaint ¶ 1, ECF No. 6.) Defendants are IPI, the exclusive casino licensee on Saipan, and two construction companies, MCC and Gold Mantis, that worked on the casino project. (*Id.* ¶¶ 2, 36.) Plaintiffs filed this lawsuit against Defendants for forced labor under both the federal Trafficking Victims Protection Reauthorization Act ("TVPRA") and the CNMI Anti-Trafficking Act, as well as state law claims of negligence and failure to secure workers' compensation. They allege that MCC and Gold Mantis forced them to work long hours, paid them less than promised if at all, threatened them, and financially coerced them, and that Defendant IPI knew of or recklessly disregarded its contractors' actions. (*Id.* ¶¶ 3–6.) They further allege that Defendants maintained the casino project construction site in unsafe conditions that resulted in serious physical injuries to each Plaintiff. (*Id.* ¶¶ 4–6.)

Plaintiffs first served their discovery requests on IPI by email on September 18, 2019. (E-mail from Aaron Halegua to Phillip Tydingco and Kelley Butcher (Sept. 17, 2019[2]), ECF No. 52-1.) At

---

[2] Plaintiffs' attorney Aaron Halegua is based in New York. His email time stamp reflects that time zone. However, the parties do not contest that the email was received on September 18, 2019, Chamorro Standard Time.

2

that point in the litigation, IPI was represented by Phillip Tydingco, its general counsel, and Kelley Butcher, an in-house attorney. IPI objected to the manner of service, but only after Plaintiffs had granted a two-week extension to allow IPI to respond to their requests. (*See* IPI's Response to Plaintiffs' Rule 34 Production Request, ECF No. 52-6; E-mail from Tydingco to Plaintiffs' counsel (Oct. 22, 2019), ECF No. 52-5.) IPI also raised numerous omnibus objections generally arguing that the discovery requests were overbroad, unduly burdensome, and vague. (*See generally* IPI's Response to Plaintiffs' Rule 34 Production Request, ECF No. 52-6; IPI's Objections to Plaintiffs' Interrogatories, ECF No. 52-10.) On October 25, 2019, without conceding that email service was improper, Plaintiffs hand-delivered their discovery requests. (Letter from Halegua to Tydingco (Oct. 25, 2019), ECF No. 52-7.) On November 13, 2019, IPI filed its second motion for a stay in this action under the TVPRA, which provides for a stay of civil actions during the pendency of related criminal actions. (Second Mot. to Stay, ECF No. 44.) The following week, just four days before its discovery responses were due, IPI filed a motion for a protective order, arguing that discovery should not proceed in light of the pending stay application. (Mot. for Protective Order, ECF No. 47; Memo. at 2, ECF No. 47-1.) IPI subsequently refused to respond to the discovery requests, despite Plaintiffs providing authority that motions for protective orders are not self-executing. (E-mail from Halegua to Tydingco (Nov. 24, 2019), ECF No. 52-15.)

On November 26, 2019, Plaintiffs filed a countermotion to compel IPI to respond to their discovery requests. (Opposition to Mot. for Protective Order and Countermotion to Compel, ECF No. 52.) On December 12, 2020, the Court heard argument on all three motions – the motion to stay, the motion for a protective order, and the countermotion to compel. At the hearing, the Court denied IPI's

motion for a stay under the TVPRA because IPI had not shown that the criminal investigation it identified with a November 2019 search warrant against it arose out of the same occurrence as Plaintiffs' claims. Without a stay, IPI's argument for a protective order failed and the Court denied that motion as well. As to the countermotion to compel, IPI's opposition focused only on the purported procedural deficiencies of Plaintiffs' filing and did not raise any substantive objections to Plaintiffs' discovery requests to the Court. (*See generally* Memo. in Response to Opposition to Mot. for Protective Order and Mot. to Compel, ECF No. 57.) The Court granted Plaintiffs' countermotion to compel. IPI requested an additional thirty days to respond to Plaintiffs' requests and tender discovery. The Court granted this request and set a deadline of January 13, 2020. The Court also awarded Plaintiffs attorneys' fees and costs for bringing the motion to compel. At this same hearing, the Court also addressed Tydingco's motion to withdraw as counsel for IPI because he was terminated as general counsel. (Tydingco Mot. to Withdraw, ECF No. 58.) Because IPI was still represented by Butcher, who appeared at the hearing and had entered an appearance in August 2019, the Court granted Tydingco's motion to withdraw. Tydingco was the first IPI attorney to withdraw from this case.

The January 13 deadline passed without IPI filing a motion for an extension. On January 23, 2020, Plaintiffs and IPI filed a stipulation in which they agreed to a staggered schedule for IPI's production of discovery over an additional thirty days. (Stipulated Discovery Scheduling Order, ECF No. 77, hereinafter "Stipulation.") The stipulation provided for deadlines for production of electronically stored information (ESI) and paper documents, supplemental responses to interrogatories and written document responses, as well as for proposals regarding ESI review and search terms. (*Id.*) It also specifically required IPI to provide ESI, including mobile phone data, for

each identified custodian. (*Id.* at 4.)  IPI also agreed to produce all responsive paper discovery, scanned and Bates-stamped. (*Id.*) The Court granted the stipulation, in the hope that the parties would be able to resolve their disputes and move forward with discovery without further court intervention. On March 3, 2020, two additional attorneys, Sean Frink and Catherine Cachero of Marianas Legal Strategy Group (MLSG), entered an appearance on behalf of IPI. (MLSG Notice of Appearance, ECF No. 80.)

On March 11, 2020, Plaintiffs filed a Motion for Sanctions for IPI's violation of the Court's two discovery orders. (Mot. for Sanctions, ECF No. 84.) IPI conceded that it had not tendered discovery as ordered but asserted that it was making good faith efforts to respond to Plaintiffs' discovery requests. (*See generally* Opposition to Mot. for Sanctions, ECF No. 91.) IPI argued that discovery was complicated by a number of factors, including that (1) it did not have a central server for data storage and devices were shared among its employees;  (2) an FBI raid of its offices in November 2019 resulted in the seizure of its data storage devices; (3) IPI generally did not provide cellular phones to its employees; and (4) IPI and its counsel were inexperienced in large-scale ESI discovery. (*Id.*) To remedy that last issue, IPI hired MLSG for its expertise with ESI discovery issues and contracted with Litigation Edge, an e-discovery vendor, to assist it in complying with its discovery obligations. (Butcher Decl. ¶¶ 13, 16, ECF No. 91-1.) The Court held a hearing on April 16, 2020, at which time it found IPI in contempt for violating the Court's discovery orders. However, recognizing that IPI's new counsel was making efforts to bring itself into compliance, the Court set new deadlines for the discovery responses. The Court ordered a $2,000 daily sanction against IPI that would only be imposed if IPI failed to comply with the new deadlines. Additionally, the Court warned counsel that

continued failure to participate in discovery could result in harsher sanctions including default judgment. Because IPI had let the prior Court-ordered deadlines expire without requesting an extension, the Court granted Plaintiffs' request for attorneys' fees.

The very next day, IPI terminated MLSG, approximately six weeks after it retained those attorneys for their discovery expertise. (*See* Memo. in Support of Motion to Withdraw at 3, ECF No. 99-1.) Frink and Cachero filed their motion to withdraw on April 24, 2020, concurrently with Michael Dotts' motion to substitute as counsel. (MLSG Mot. to Withdraw, ECF No. 99.) Dotts, the fifth attorney to represent IPI in the matter, entered his appearance on April 30, 2020.  (Dotts' Notice of Appearance, ECF No. 103.) Plaintiffs objected to the motion to withdraw, expressing concerns that the change in counsel would delay discovery which, given the number of IPI employees that have left the company in recent months, could result in lost evidence and other prejudice to Plaintiffs. (Opposition to Mot. to Withdraw at 10, ECF No. 101.) The Court held a hearing on May 6, 2020 on MLSG's motion to withdraw at which time it granted the motion. (Minutes, ECF No. 107.) However, the Court informed Dotts that IPI was required to comply with the discovery deadlines set by the Court and warned him that harsh Rule 37 sanctions, including default judgment, were on the table.

On May 15, 2020, Plaintiffs and IPI filed a stipulated protective order that set out terms for designating discovery material as confidential. (Stipulation for Protective Order, ECF No. 115.) Pursuant to the April 16 Order, IPI was required to tender all items agreed to per the January stipulated discovery order by May 16, 2020, as well as file a certification of compliance. (Minutes at 2, ECF No. 98.) That date passed without any certification or request for an extension from IPI. Three days later, Plaintiffs filed a status report outlining IPI's non-compliance with the Court's order, including its

failure to tender any phone or ESI data. (Pls.' Status Report, ECF No. 123.) The Court set the matter for a status conference and ordered IPI to file a response to Plaintiffs' status report. IPI responded that it had produced 48,216 pages of documents on a CD, delivered to Plaintiffs' counsel. (IPI Response to Status Report, ECF No. 129 at 3.) Regarding the ESI, IPI reported that there were over 5 million documents held on its e-discovery vendor's server and proposed that it could meet its discovery obligations by making this information available for Plaintiffs to search at their own expense. (*Id.* at 5.) Similarly, IPI granted Plaintiffs complete access to ACONEX, a construction project management database, but it did not review or produce responsive material. (*Id.* at 4.) IPI admitted it was still struggling with collecting the cellular phone data. (*Id.* at 5.) On May 27, 2020, IPI filed a motion for a protective order, arguing that it could no longer afford to pay its e-discovery vendor, Litigation Edge. (Mot. for Protective Order, ECF No. 131-1 at 2–3.)

At the May 28 status conference, the Court, concerned about the possibility that IPI's ESI could be lost if no action was taken, ordered IPI to take the necessary steps to transfer the data held by Litigation Edge to Plaintiffs for safekeeping. (Minutes at 2, ECF No. 135.) IPI suggested this as one possible option in its motion for a protective order, noting it would be acceptable to IPI "provided that a strong protective order is put in place because Plaintiffs will have access to sensitive information protected by attorney client privilege." (ECF No. 131-1 at 4.) However, the Court did not agree that Plaintiffs should bear the cost of searching and storing IPI's ESI and therefore ordered IPI to transfer $42,000 to Plaintiffs to pay for a new vendor. (Minutes at 2, ECF No. 135.) The Court granted IPI an additional thirty days to tender paper discovery, as well as shorter deadlines to produce bank records and employment dates for the 68 custodians identified by the parties. (*Id.*) The Court denied IPI's

motion for a protective order without prejudice and ordered IPI to begin paying the $2,000 daily sanction as of May 17, 2020 for violating the Court's April 16 Order. (*Id.*) The Court again warned Dotts that continued noncompliance could result in a default judgment against IPI. (May 28 Tr. 121:17–122:6, ECF No. 161.)

On May 29, 2020, as ordered by the Court, IPI filed a certification regarding its efforts to contact Litigation Edge and arrange the ESI transfer. (Certification, ECF No. 134.)  It informed the Court that it could not possibly transfer the data in the time ordered by the Court and that Litigation Edge estimated the transfer would cost almost $100,000. (*Id.* ¶¶ 4, 5(e).) The Court set a status conference for the following week to address this issue. In the interim, with IPI's permission, Plaintiffs contacted Litigation Edge and negotiated a transfer of the data for a $20,000 flat fee, provided that IPI paid the outstanding balance it owes to the vendor. (Pls.' Second Status Report, ECF No. 138 ¶ 26.) Plaintiffs also complained that IPI had provided incomplete and disorganized bank records, employment dates with deleted information, and inconsistent information regarding which employees were provided with work cell phones. (*Id.* ¶¶ 6, 14, 15.) At a status conference held on June 5, 2020, the Court ordered IPI to transfer the ESI data to an Amazon Web Services account (a cloud-based data storage service) to be controlled by the Plaintiffs to maintain the data, but not search or review it until further ordered by the Court. (Minutes at 2, ECF No. 141.) IPI was to be responsible for the costs of the transfer and the Court warned IPI that if it did not comply, it would issue an order to show cause why it should not strike IPI's answer and enter default judgment against it. Tao Xing, an IPI representative, appeared telephonically at the status conference. (*Id.* at 1.)

On June 8, 2020, IPI informed the Court that it could not pay the vendor the necessary amounts to transfer the data. The Court issued the order to show cause and set an expedited briefing schedule. (Order to Show Cause, ECF No. 149.) IPI opposed an entry of default, requesting additional time to come into compliance and pay the necessary fees, which it could not pay as ordered due to its financial distress related to COVID-19 and other factors. (Opposition to Entry of Default, ECF No. 153.) IPI requested an additional sixty days without providing any explanation as to why it expected its financial position to change in that time. (*Id.* at 11.) On June 12, 2020, the Court held a hearing on the order to show cause. After hearing argument from both IPI and Plaintiffs, the Court struck IPI's answer and entered default judgment against it.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 37(b)(2)(A) provides a non-inclusive list of sanctions that a court may order if a party fails to obey a discovery order, ranging from designating facts as established, prohibiting a party from supporting or opposing claims or defenses, striking pleadings, staying the proceedings, dismissing the action, entering default judgment, or holding the disobedient party in contempt of court. A default judgment sanction is appropriate only in extreme circumstances where the violations are "due to the willfulness, bad faith, or fault of the [sanctioned] party." *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012) (internal quotation marks omitted). "Disobedient conduct not shown to be outside the litigant's control meets this standard." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002). A court may consider all of a party's discovery conduct when determining the appropriate sanction. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 947 (9th Cir. 1993).

There are five factors a court must consider before imposing a harsh sanction under Rule 37, such as striking a pleading or entering a default judgment: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Hester*, 687 F.3d at 1169 (internal quotation marks omitted). The first two factors weigh in favor of sanctions and the fourth against them. *Henry*, 983 F.2d at 948. "Thus the key factors are prejudice and the availability of lesser sanctions." *Id.* (quoting *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)). As to the fifth factor, a district court must consider the feasibility and adequacy of lesser sanctions, and should warn the offending party of the possibility of harsher sanctions. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1228–29 (9th Cir. 2006). A court may choose to implement lesser sanctions before moving on to the more extreme options under Rule 37 but is not required to take an incremental approach to sanctions. *Hester*, 687 F.3d at 1170.

### III.     DISCUSSION

Striking a pleading and entering default judgment are extreme sanctions for violating a discovery order, and as such this Court must find that IPI's violations were willful, in bad faith or its fault. Here, the Court finds that IPI's repeated failure to tender complete discovery was clearly within its own control. IPI willfully refused to abide by the discovery plan it stipulated to in January 2020. For example, while it agreed to review paper discovery for responsive documents and then scan, Bates-stamp, and produce those documents by early February 2020, IPI argued in May that providing the boxes of paper discovery for inspection would satisfy its discovery obligations. (*Compare* Stipulation

at 4 *with* IPI Response to Status Report at 32, ECF No. 129.) Similarly, IPI stipulated to produce cell phone data for *all* custodians. (Stipulation at 4.) In April, IPI's counsel MSLG reported that it was aware of eight IPI-owned phones and was working to get the data from those phones downloaded. The Court ordered IPI to tender the data from those phones by April 30, 2020, and the remaining items from the stipulated order by May 16, 2020. (Minutes at 2, ECF No 98.) However, IPI subsequently reported that not all eight phones were owned by IPI, identifying the following two employees as using personal phones: Yuping (Lucy) Guo, and Henan Ma. (IPI Status Report at 4, ECF No. 105.) This information was later contradicted by IPI's own phone lists provided to Plaintiffs. (Pls.' Second Status Report, ECF No. 138 at 5–6.) Also troubling is the fact that IPI did not begin to process the phones it did have access to until after the April 30 deadline had passed. When IPI ran into an issue with the software it had purchased to download the phone data on May 5, 2020, it apparently made no effort to contact the company to resolve this issue until almost a month later on June 2, 2020. (Benson Decl. ¶¶ 3–8, ECF No. 146-2; Benson Decl. Ex. 1, ECF No. 153-2.) While it has made some progress collecting the phone data, it has yet to review it or tender any of the data to the Plaintiffs.

Production of ESI has proceeded in a similar manner. IPI stipulated it would provide a proposal for reviewing ESI, including search terms if it opted to use them. (Stipulation at 3.) Plaintiffs were negotiating search terms with MLSG. IPI's current counsel believed that the parties had agreed to a final list of search terms and sent them to Litigation Edge, but conceded at the Order to Show Cause hearing that he had not run a single search of the ESI since he took over the case in April 2020. (IPI Status Report at 3, ECF No. 105.) To date, IPI has not tendered any discovery from the over 5 million documents held by Litigation Edge, meaning no e-mails and no online communications have been

produced by IPI. Overall, IPI has willfully ignored Court deadlines, repeatedly letting them pass without filing a single motion for an extension. It has walked back from the stipulations it agreed to in January 2020. It has provided confusing and contradicting information to both Plaintiffs and the Court. It argues financial distress but provides no documentation of its financial health. It has changed counsel several times during this period and was warned by the Court each time that such changes could negatively impact its ability to meet its discovery obligations. Therefore, the Court finds that IPI's violations of the discovery orders in this case were willful and clearly its own fault.

As to the five factors the Court must consider before striking IPI's answer and entering default, the Court finds that on the balance these factors support these extreme sanctions.  Public interest in the expeditious resolution of litigation clearly runs against IPI's requests for more time.  Under Rule 34, a party has thirty days to respond to a discovery request. Fed. R. Civ. P. 34(b)(2)(A). Here, IPI has had Plaintiffs' requests since September 18, 2019  – almost nine months – without tendering *any* ESI discovery. It asked for an additional sixty days to make the necessary payments for e-discovery but offered no explanation as to why or how it would comply in that timeframe. Moreover, it is unclear if IPI factored in the time needed to search and review the ESI after making the payments. Arguably, if the Court were to accept IPI's proposal, Plaintiffs may not have discovery in their hands until almost a year after they first sent their discovery requests. The Court's need to manage its docket also weighs in favor of harsh sanctions. Since IPI first filed its motion for a protective order in November 2019, there are eighty-three docket entries related to the discovery issues between IPI and Plaintiffs – motions, minutes, attorneys' fees filings, certifications, and status reports. Over the past two months, this Court has held five hearings or status conferences to address discovery.

The third factor, the risk of prejudice to the other party, supports a harsh sanction. Plaintiffs have repeatedly expressed concern about the impact of IPI's delays on its ability to collect evidence. Indeed, since Plaintiffs served their discovery requests, twelve of the IPI employees on the custodian list have left the company and an additional two have been furloughed. (Amended Litulumar Decl., ECF No. 147.) Plaintiffs are also relying on discovery to find information about possible additional defendants, meaning that IPI's failure to tender discovery is potentially preventing the case from moving forward against other parties. The fourth factor, public policy favoring the disposition of cases on their merits, will never run in favor of entering a default judgment, but is not strong enough to outweigh the other four factors here.

Lastly, less drastic sanctions have not been successful. This Court has already ordered IPI to play Plaintiffs $29,459 in attorneys' fees and costs that are currently past due. Two additional motions for attorneys' fees have been granted, but the Court has not yet determined the amounts owed. The Court also ordered IPI to pay a $2,000 per diem sanction starting on May 17, 2020, no part of which has been paid to date. Clearly, financial sanctions are not effective against IPI. Additionally, the Court held IPI in contempt on April 16, 2020 for violating two discovery orders, only to learn that IPI then fired its e-discovery expert attorneys the very next day. The Court warned IPI on several occasions that repeated discovery violations could result in a default judgment, making sure that each new IPI attorney was aware of that possibility. Lesser sanctions and warnings have not worked in this case.

///

//

/

**IV.     CONCLUSION**

For the reasons stated herein, the Court ORDERED:

    (1) IPI's Answer to the First Amended Complaint (ECF No. 33) STRICKEN from the

        record; and

    (2) DEFAULT JUDGMENT entered against IPI.

Issued this 15th day of July, 2020.

 

RAMONA V. MANGLONA
Chief Judge

14