Bruce Berline
BERLINE & ASSOCIATES, LLC
Second Floor, Macaranas Building
PO Box 5682 CHRB
Saipan, MP 96950
Tel: (670) 233-3663
Fax: (670) 233-5262
Email: bruce@saipanlaw.com

Aaron Halegua
AARON HALEGUA, PLLC
154 Grand Street
New York, New York 10013
Tel: (646) 854-9061
Email: ah@aaronhalegua.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| TIANMING WANG, *et. al*,<br><br>              Plaintiffs,<br><br>       v.<br><br>GOLD MANTIS CONSTRUCTION DECORATION (CNMI), LLC, *et. al*,<br><br>              Defendants. | Case No. 18-cv-0030<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' PETITION FOR DAMAGES**<br><br>Hearing Date: August 7, 2020<br>Hearing Time: 9:00 am<br>Judge: Hon. Ramona V. Manglona |

On July 2, 2020, Plaintiffs filed their memorandum of law (ECF No. 172 ("Mem.")) and supporting declarations (ECF Nos. 173–182) concerning their petition for damages for a default judgment against Defendant Imperial Pacific International (CNMI), LLC ("IPI"). On July 23, 2020, IPI filed its opposition (ECF No. 196 ("Opp.")).[1] Plaintiffs now file their reply as well as the declarations of Edith DeLeon Guerrero, dated July 29, 2020 ("Guerrero Decl."), Roger Pich, dated July 29, 2020 ("Pich Decl."), and Neda Farzan, M.D., dated July 28, 2020.

## I. PRELIMINARY STATEMENT

Plaintiffs have submitted detailed declarations from the seven Plaintiffs, three expert declarations, two fact witness declarations, as well as photographs, medical records, and other evidence in support of their petition for damages. IPI does not question the veracity of Plaintiffs' declarations, the categories of damages sought, or the calculations employed. The arguments in its opposition focus almost entirely on liability, which is irrelevant to the upcoming hearing. The only evidence that IPI has submitted relates to an alleged, indecipherable "meritorious defense."

Nonetheless, IPI takes the position that it should be afforded an opportunity to cross-examine Plaintiffs. The only justification for demanding cross-examination is that "IPI believes…it has found meritorious defenses in thousands of documents produced…" (Opp. at 25). But IPI's defenses are irrelevant to determining damages and thus would not even be a proper subject of cross-examination. *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974). The cases cited by IPI do not support its position: for instance, the *Blizzard* court declined to hold an evidentiary hearing because it found plaintiffs' submissions to be sufficient. *Blizzard Entm't, Inc. v. Reeves*, No. 09-cv-7621, 2010 WL 4054095, at *1 (C.D. Cal. Aug. 10, 2010). As IPI has provided no other reason for why cross-examination would assist the factfinder, and live testimony would create additional burdens, health risks, and delay for

---

[1] Citations to the parties' memorandum of law use the page numbers assigned by the authors. Citations to other filings, such as to declarations, use the ECF-assigned page number.

Plaintiffs and this Court, Plaintiffs request that the Court determine damages after a hearing that does not involve live witness testimony. IPI's history of delay and precarious financial situation also weigh in favor of resolving this matter expeditiously. Furthermore, IPI's suggestion that the ESI data it never produced may contain evidence relevant to damages (Opp. at 25) underscores the propriety of deeming the evidence submitted by Plaintiffs to be sufficient. *Same Day Garage Door Servs. v. Y.N.G. 24/7 Locksmith LLC*, No. 19-cv-04782, 2020 WL 1659913, at *3 (D. Ariz. Apr. 3, 2020).

## II.  ARGUMENT

IPI's opposition focuses almost entirely on the question of liability, and is thus irrelevant to Plaintiffs' petition for damages. The one argument that relates to damages—looking at other TVPRA awards—is misguided and unpersuasive. Nonetheless, Plaintiffs respond to each of IPI's arguments.

**A. The Court already determined that Plaintiffs made plausible claims under Rule 12(b)(6).**

The vast majority of IPI's brief argues that Plaintiffs' four cause of action fail to state a claim under Fed. R. Civ. P. 12(b)(6). (Opp. at 2–21). However, IPI does not *even mention* the fact that IPI previously filed a Rule 12(b)(6) motion concerning the same pleading (ECF No. 11), which the Court denied (ECF No. 30). Dedicating two-thirds of its brief to a non-relevant issue that has already been resolved demonstrates that IPI lacks any meritorious arguments on damages. Furthermore, this Rule 12(b)(6) argument underscores that IPI is still seeking to litigate liability and the merits of Plaintiffs' claims rather than litigate damages. Accordingly, this argument should be denied.

**B. IPI's claim that Plaintiffs' damages are "grossly inflated" lacks merit.**

IPI's 25-page opposition hardly mentions damages, and the only portion that even touches on the actual quantum of damages proposed by Plaintiffs argues that this number is "grossly inflated" and

cites TVPRA decisions that "award lower damages." (Opp. at 25).[2] But the four cases cited by IPI, all from outside the Ninth Circuit, are poor comparators. One case awards *higher* damages on a per plaintiff basis, and no case involves plaintiffs who sustained a significant physical injury.

In *Ross*, for instance, a single plaintiff—who was subjected to domestic work but suffered no physical injuries—was awarded $2.92 million in emotional distress, based on an award of $800 per day, and restitution of over $453,517. *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1183 (D. Kansas 2018). Here, Plaintiffs request a total of $3.86 million in compensatory damages for seven workers, all of whom suffered physical injuries, and the largest request for any single worker is $1.025 million. (Mem. at 29). Two other cases, *Abafita* and *Laagasan*, produce lower awards because there is only a single plaintiff, but the per plaintiff award is analogrous to Plaintiffs' request. *See Abafita v. Aldukham*, 2019 WL 6735148, at *12 (S.D.N.Y. Apr. 4, 2019) (awarding $822,950 in emotional distress damages); *Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 459 (E.D. Va. 2015) (awarding $400 per day in emotional distress). In the sole group case cited by IPI, those plaintiffs only worked for a short period of time (between six and 32 days) and only sought emotional distress damages of $200 per day, which the Court acknowledged was "less than the average range for emotional distress damages granted in TVPRA cases." *Arreguin v. Sanchez*, 398 F. Supp. 3d 1314, 1328 (S.D. Ga. 2019). While one plaintiff slipped in the shower, no compensatory damages were requested for his injury. *Id.* Thus, Plaintiffs' request for damages remains very reasonable in light of the awards in other cases.[3]

---

[2] IPI incorrectly states that Plaintiffs requested "combined compensatory and punitive damages of $7.7 million, respectively." (Opp. at 21). Plaintiffs are actually requesting $3,863,534 in compensatory damages and $7,727,068 in punitive damages, totaling $11,590,602. (Mem. at 29).

[3] IPI objects to Plaintiffs citing state court decisions to determine damages for a TVPRA claim. (Opp. at 22, n.14). However, Plaintiffs primarily rely on federal court decisions in nearly all aspects of their brief. Decisions from Guam or CNMI courts are principally used as comparators to determine pain and suffering damages for various physical injuries (Mem. at 24–27)—a topic on which there are few federal TVPRA cases. Furthermore, the pain and suffering awards in federal cases where forced labor victims suffered physical injuries are actually far greater than the non-federal cases. (*Id.* at 26–27).

**C. Demonstration of a meritorious defense is irrelevant to Plaintiffs' petition for damages.**

IPI argues that it "has meritorious defenses from recently produced discovery" (Opp. at 21–24), an issue that IPI also briefed in its Rule 55(c) motion to set aside the default (ECF No. 183-1). However, the presence of a meritorious defense relates only to the issue of liability, and is thus entirely irrelevant to Plaintiffs' petition for damages—and IPI offers no case law suggesting otherwise. Nonetheless, even if it were relevant, IPI does not persuasively establish that it has a meritorious defense. Instead, its argument is hard to follow or incomplete. For instance, IPI references several categories of documents included in its production that allegedly show that HCCG (without explaining who that is) made some efforts to ensure safety. (Opp. at 24). IPI does not state to what cause of action this would constitute a defense, or articulate why it is a defense at all. It references three exhibits, one of which is a Construction Manager's Report from May 2018 (Opp. at 24)—roughly one year after Plaintiffs left Saipan. If anything, the documents referenced by IPI, which demonstrate numerous safety violations that did not get corrected, seem to further demonstrate IPI's negligence.[4] In addition, IPI attaches over 100 pages of exhibits containing Chinese text for which no translation is provided (*see*, *e.g.*, ECF No. 196-1 at 59–67), a clear violation of Local Rule 16.5(a)(4).

**D. The Court should decide damages without requiring live testimony.**

The Court has substantial discretion over whether to hold a hearing on damages. (Mem. at 7–9). IPI has not made a single, specific objection to the basis for Plaintiffs' proposed damages or method of calculation, let alone offered its own alternative facts or calculations. Nonetheless, Plaintiffs do not object to a hearing on damages in which IPI participates. However, since IPI makes no showing of why live testimony is necessary, Plaintiffs believe the health risks, costs, and delay of requiring live testimony outweigh any benefit in this case.

---

[4] For instance, the documents reveal problems with the guardrail that were identified on April 7 (ECF No. 196-1 at 19) and had not been addressed three weeks later (*id.* at 20), and also a lack of proper PPE (*id.* at 19) and increased hazards from falling objects (*id.* at 18, 20, 23) on the construction site.

4

    1. <u>The Court can determine damages with reasonable certainty based on Plaintiffs' detailed declarations and other corroborating evidence</u>.

Plaintiffs have provided more than sufficient evidence to meet their "lenient" burden of proving up damages, *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003), and to permit the Court to establish damages with "reasonable certainty," *Same Day Garage Door Servs.*, 2020 WL 1659913, at *3. Plaintiffs have provided detailed declarations from the seven Plaintiffs, three expert declarations, two declarations from fact witnesses, and a series of photographs, medical records, and other documents. The contents of these declarations have not been challenged by IPI, let alone controverted by specific evidence. Moreover, the key facts relied upon to determine damages are corroborated by other evidence. *See United States v. Valdez-Soto*, 31 F.3d 1467, 1471 (9th Cir. 1994) ("corroborating evidence is a valid consideration in determining the trustworthiness of out-of-court statements"). In terms of their emotional distress as a result of being subjected to forced labor, the U.S. Department of Labor settlement agreements corroborate Plaintiffs' dates of work. (ECF No. 180, Exs. A–B). Plaintiffs' descriptions of dirty and inhumane living conditions are corroborated by photographs of overcrowded rooms, moldy walls, and piled-up trash, as well as the declarations of Roger Pich and Edith DeLeon Guerrero, who both witnessed the dormitory conditions. (Pich Decl. ¶¶4–15, Exs. A–B; Guerrero Decl. ¶5, Exs. B–F; ECF No. 174, Ex. D). Florence Burke's declaration attests to the emotional distress typically experienced by forced labor victims. (ECF No. 181).

Plaintiffs' claims for lost wages and pain and suffering stemming from their physical injuries are similarly corroborated by other evidence. Plaintiffs provided photographs of the injuries, medical records from Saipan (and a certificate of authenticity), medical records from China, and a declaration from Dr. Neda Farzan confirming that the degree of pain and complications with recovery experienced by each Plaintiff is consistent with his medical records. Guerrero's declaration also establishes that certain Plaintiffs came to her office seeking medical attention months after their injuries, permitting

an inference that they were still experiencing pain. (Guerrero Decl. ¶4, Ex. A). Plaintiffs' claims for lost wages are supported by bank records and documents from their employers.

IPI's demand for live testimony without offering *any* statement of its probative value suggests this is merely a delay tactic. Given that IPI is not paying its financial obligations, any delay prejudices Plaintiffs and their ability to ever enforce a judgment, which weighs in favor of deciding damages as expeditiously as possible. *See O'Connor v. Powell*, No. 99-cv-6582, 2000 WL 1230459, at *3–*5 (N.D. Ill. Aug. 23, 2000) (providing plaintiff choice of proceeding by affidavit or with live testimony where defaulting defendant showed "blatant disregard of the courts' orders," "continually engaged in dilatory conduct," and had not been forthcoming about their assets); *see also Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004) (delay in entering judgment against defaulting defendant may prejudice plaintiff).

2. <u>The COVID-19 pandemic creates significant obstacles to Plaintiffs testifying and provides an additional, compelling basis to not require live testimony.</u>

The COVID-19 pandemic weighs in favor of not requiring live testimony from Plaintiffs. Numerous district courts in the Ninth Circuit have directed that civil matters, including motions and bench trials, be decided on the papers unless a "hearing is necessary," in which case it be conducted by telephone or videoconference. *See*, *e.g.*, Northern District of California, General Order 72-5 (July 23, 2020); Eastern District of California, General Order No. 618 (May 13, 2020). Accordingly, district courts have been deciding issues on the papers where a hearing is not necessary. *See Dekker v. Vivint Solar, Inc.*, No. 19-cv-07918, 2020 WL 2556956, at *1 (N.D. Cal. May 20, 2020) ("this order … was decided on the papers due to the public health concern caused by COVID-19").[5] Courts are also

---

[5] *See also Stiles v. Walmart, Inc.*, No. 2:14-cv-2234, 2020 WL 1433154, at *1 (E.D. Cal. Mar. 24, 2020); *In re Dudley*, No. 19-27357-B-7, 2020 WL 2569921, at *1 (Bankr. E.D. Cal. May 18, 2020); *Manci v. TJX Companies, Inc.*, No. 20-cv-668, 2020 WL 1546423, at *1 (C.D. Cal. Mar. 31, 2020); *In re Guevarra*, No. 18-25306-B-7, 2020 WL 2844384, at *3 (Bankr. E.D. Cal. June 1, 2020); *Castillo v. Trinity Services Group, Inc.*, No. 1:19-cv-01013, 2020 WL 3819415, at *1 (E.D. Cal. July 8, 2020).

deciding motions without a live hearing to avoid delay and resolve issues "in the near term." *Sec. & Exch. Comm'n v. Faulkner*, No. 3:16-cv-1735, 2020 WL 2042339, at *2 (N.D. Tex. Apr. 28, 2020).

Courts have also seen the COVID pandemic as a reason to forego hearings involving defaulting defendants. In *Nemesis 2*, the Court issued an order to show cause why a default judgment should not be entered against a defendant who failed to appear. *Nemesis 2 LLC v. Salvati*, No. 19-cv-3373, 2020 WL 2306444, at *2 (S.D.N.Y. May 8, 2020). After contacting the Court, the defendant was provided additional time to respond, but then failed to submit any opposition papers. In light of this situation and "the COVID-19 crisis," the Court cancelled the hearing and decided the matter on the papers. *Id.*

The pandemic also presents specific difficulties in this case. The seven Plaintiffs all live in China and pursuant to a Proclamation by the White House, issued January 31, 2020, no alien may enter the United States if he was physically present in China within the prior 14 days.[6] Even if Plaintiffs were permitted to enter the CNMI, they would be required to bear the health risks and costs of international travel as well as be subjected to mandatory quarantine at their own expense. Moreover, upon returning to China, Plaintiffs would again be subjected to a mandatory 14-day quarantine, with at least seven of those days at a government-approved facility at their own expense.[7] These difficulties, health risks, and costs should be considered in deciding the marginal value of live testimony where IPI has not made any specific objections to Plaintiffs' declarations.[8]

---

[6] Donald J. Trump, "Proclamation on Suspension of Entry as Immigrants and Nonimmigrants of Persons who Pose a Risk of Transmitting 2019 Novel Coronavirus," 31 January 2020.

[7] "China clarifies quarantine, detection rules for overseas arrivals," *Xinhua*, 24 July 2020.

[8] It should also be noted that whereas Plaintiffs made their initial disclosures on August 16, 2019, IPI did not propound interrogatories or any other discovery on Plaintiffs until April 9, 2020, nearly three weeks after this Court had already issued General Order No. 20-00002 concerning the COVID-19 outbreak. In other words, IPI had seven months prior to the outbreak to depose Plaintiffs, but never noticed a deposition or served any other discovery.

3. <u>IPI has not articulated *any* reason why cross-examining Plaintiffs will be helpful in determining damages, let alone necessary</u>.

The Confrontation Clause is not applicable in civil cases and "cross-examination is not, in every instance, a sine qua non of due process. It all depends on the situation." *United States v. Alisal Water Corp.*, 431 F.3d 643, 658 (9th Cir. 2005) (internal quotations omitted) (no due process violation at remedy phase hearing where district court considered information obtained through the public hearings); *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 609 (9th Cir. 1993) (district court may rely on hearsay in the form of letters from the public in calculating defendant's potential liability). Further, the Court retains broad power to preclude or limit the scope of cross-examination where it does not assist the finder of fact. *See*, *e.g.*, *Stringer v. City of San Pablo*, No. 07-cv-3544, 2009 WL 302616, at *2 (N.D. Cal. Feb. 6, 2009) ("even an inquiry on cross-examination is subject to the court's discretion and overriding provisions of FRE 403") (*citing* Fed. R. Evid. 403); *see also* Fed. R. Evid. 611 ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment").

IPI acknowledges that the decision on whether to require live witness testimony is within the Court's discretion, but argues it should be able to cross-examine Plaintiffs "since it has found meritorious defenses in thousands of documents produced." (Opp. at 25). However, this is not a reason to require live testimony or permit cross-examination. Whether or not IPI has a meritorious defense relates to the issue of liability, but any hearing—with or without live witnesses—will only be on damages. In fact, this is precisely the type of demand for cross-examination that courts have rejected. *See Henry*, 490 F.2d at 318 (proper to exclude evidence "relevant only as to liability" and not damages); *In re Emami*, No. 2:13-AP-02149, 2016 WL 3963097, at *4 (Bankr. C.D. Cal. July 18, 2016) (rejecting Emami's request for evidentiary hearing that was merely "an attempt to litigate an affirmative defense" and awarding $6.2 million based on the declarations submitted); *Drone Techs.,*

8

*Inc. v. Parrot S.A.*, No. 14-cv-0111, 2015 WL 12752847, at *1 (W.D. Pa. Apr. 9, 2015) (precluding cross-examination at damages proceeding by defendant seeking to "challenge the witnesses' credibility" because "[s]uch cross-examination would not produce any relevant testimony or evidence [on issues that have] previously been determined and will not be at issue during the damages trial").

IPI has neither challenged Plaintiffs' theory of damages nor offered its own. *See Domanus v. Lewicki*, 742 F.3d 290, 304 (7th Cir. 2014) (affirming entry of $413 million default judgment without hearing where "[t]he defendants did not submit a damages expert or put forth an alternative damages theory of their own, though they presumably possessed sufficient information to construct one… The district court had figures in hand. In these circumstances it was no abuse of discretion to decline to hold a damages hearing."). Similarly, IPI has not articulated the topics on which it intends to cross-examine Plaintiffs, let alone the probative value of doing so. *See Funk v. Town of Paradise*, No. 2:09-cv-01000, 2014 WL 654550, at *5 (E.D. Cal. Feb. 19, 2014) (court acted within its discretion in precluding cross-examination that will "result[] in a waste of resources" and where party "never made an offer of proof" as to the value of the testimony); *Thomas v. Beard*, No. 11-cv-1488, 2014 WL 2858519, at *20 (S.D. Cal. June 23, 2014) (precluding cross-examination in a criminal matter where no suggestion of what additional, probative testimony would be sought from the witness).

The three cases cited by IPI also do not support its position. IPI cites *Blizzard* for the proposition that "courts have even found that witness testimony is *required* to determine damages" (Opp. at 24 (emphasis in original)). But the case actually states that a plaintiff is "required to provide evidence of its damages," not witness testimony. *Blizzard Entm't*, 2010 WL 4054095, at *1. The court even awarded $3 million in damages without any hearing upon finding that Plaintiff's evidence was sufficient. *Id.* ("Having considered Plaintiff's supplemental evidentiary filing, the Court concludes that Plaintiff has adequately proven its damages and an evidentiary hearing is unnecessary").

In *Whitworth*, the Court found a lack of sufficient evidence to corroborate the damages claimed by the plaintiff, and thus ordered a hearing at which the plaintiff must "provide evidentiary support…such as documents, *affidavits*, or witness or expert testimony." *Whitworth v. Fidelity Mortgage Company*, 2010 WL 678917, at *1 (N.D. Cal. Feb. 25, 2010) (emphasis added). The Court did not express a preference for any particular type of evidence. And, in *Rubicon*, the court addressed whether a defaulting defendant should be afforded the right to participate in the damages hearing at all. *Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.*, 226 F. Supp. 3d 1141, 1147 (D. Or. 2016). Plaintiffs do not object to IPI participating in a hearing. Plaintiffs believe that live witness testimony is simply unnecessary in this case and unjustified in light of the costs and delay.

### E. IPI's admitted failure to produce ESI relevant to damages actually favors denying its request for live testimony that will further delay this case.

IPI requests additional time to search its ESI for evidence to support mitigation of damages. But IPI had this information since before this lawsuit and it is solely responsible for not yet having reviewed it—even despite Court orders to produce it to Plaintiffs. *See U.S. v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365 (9th Cir. 1980) (precluding defaulting defendant from introducing damages evidence after failing to comply with discovery orders). The fact that the ESI may contain evidence relevant to damages, of which Plaintiffs have been deprived, further supports declining to require live testimony. *See Same Day Garage Door Servs.*, 2020 WL 1659913, at *3 ("Courts have also accepted less precise estimates of damages where a defendant frustrates the discovery of a precise amount"). IPI should not benefit from withholding relevant discovery. For all these reasons, Plaintiffs damages request should be accepted and live testimony should not be required at the August 7 hearing.

                                          Respectfully submitted,

                                          _____/s/_____
                                          Aaron Halegua

                                          Attorney for Plaintiffs