F I L E D
Clerk
District Court
OCT 09 2020
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| TIANMING WANG, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> GOLD MANTIS CONSTRUCTION DECORATION (CNMI), LLC., MCC INTERNATIONAL SAIPAN LTD, CO., and IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, <br><br> Defendants. | Case No.: 1:18-cv-00030 <br><br><br> **DECISION AND ORDER DENYING DEFENDANT IPI'S THIRD MOTION TO STAY AND TO VACATE DISCOVERY SANCTIONS** |

Before the Court is Defendant Imperial Pacific International (CNMI), LLC ("IPI")'s third motion to stay proceedings pending resolution of criminal indictment and to vacate discovery sanctions ("Motion," ECF No. 216). The matter was fully briefed and came on for a hearing on September 18, 2020 at which time the Court DENIED IPI's motion to stay and to vacate discovery sanctions. Having ruled on IPI's motion at the hearing, the Court issues this written order memorializing its reasoning.

**I.   BACKGROUND**

Plaintiffs are seven men from China who worked on a casino construction project in Saipan. (First Amended Complaint "FAC," ¶ 1, ECF No. 6.) Defendants are IPI, the exclusive casino licensee and owner of the project, and two construction companies—MCC and Gold Mantis—that IPI

contracted to work on the project. (*Id.* ¶¶ 2, 36.) Plaintiffs accuse Defendants MCC and Gold Mantis of forcing them to work long hours, paying less than promised (if at all), threatening them, and financially coercing them. (*Id.* ¶¶ 3–5.) Plaintiffs further allege that Defendant IPI knew of or recklessly disregarded its contractors' actions. (*Id.* ¶ 6.) Plaintiffs brought claims under (1) the Trafficking Victims Protection Reauthorization Act ("TVPRA") for their forced labor through defendants' means or threats of serious harm, (2) the CNMI Anti-Trafficking Act, (3) negligence, for defendants' failure to provide a safe worksite, and (4) the CNMI Workers' Compensation Law providing for the liability of contractors where the subcontractor fails to secure compensation to the worker. (*Id.* ¶¶ 308–340).

IPI first moved for a stay—under 18 U.S.C. § 1595(b)(1)—on April 30, 2019, arguing that although the United States had not yet indicated whether it would pursue charges against IPI, the civil case could give rise to a criminal case exposing IPI to criminal prosecution. (ECF Nos. 13, 14, 14-1). In support of that first motion, former IPI counsel Phillip Tydingco submitted his own affidavit making a broad, general representation that "it is prudent to reasonably assume that a criminal investigation exists" against IPI. (Decl. of Phillip Tydingo ¶ 8, ECF No. 14-1.) Counsel also attached copies of 2017 newspaper articles regarding individuals employed by *other* companies, such as Beilida Overseas Ltd. *as well as co-defendant MCC*, who were prosecuted for illegal harboring charges. (ECF Nos. 14-2 through 14-15.) Yet no affidavits were provided from people with personal knowledge of the existence of a pending criminal investigation against IPI that arises out of the same occurrence in which the claimants are the victim, particularly a statement from the United States Attorney's Office ("USAO"). At the first motion hearing, the Court encouraged IPI to contact the USAO rather than

rely on speculation and newspaper articles to obtain the information it needs to justify a stay and to refile the motion.[1]  Accordingly, the Court denied IPI's first motion to stay without prejudice. (Minutes, ECF No. 29.)

Five months after denying the motion, on November 12, 2019, IPI moved for a second stay (ECF No. 44) on the same legal basis, but with a different factual basis. The second stay relied on the November 2019 search warrant executed at IPI's offices, a grand jury subpoena directed at IPI's custodian of record which seeks, among other things, all communications between IPI and the Office of the Governor, and an FBI receipt for property. (ECF Nos. 45, 45-1, 45-2, 45-3.) On December 12, 2019, the Court denied the second motion for stay. (Minutes, ECF No. 61.) The Court memorialized its reasonings in a decision explaining that IPI failed to establish that the criminal investigation arose "out of the same occurrence *in which the claimant is the victim*" and that the mere link to the casino project was insufficient. (Decision Denying Second Stay Mot. at 4–5, ECF No. 97.) After a series of discovery violations on the part of IPI, the Court entered default against IPI. (Minutes, ECF No. 157). An entry of default under Rule 37 was entered on July 17, 2020.  (Amended Memorandum Decision, ECF No. 193.)

---

[1] In this third motion for a stay filed by new counsel Michael Dotts, IPI ignores to mention this procedural fact anywhere in its filings.  Instead, IPI blames the Court for erroneously denying IPI a mandatory stay despite having knowledge of sealed information unrelated to this civil action. It was not until the September 2020 hearing on the current motion that IPI's counsel confirmed that the U.S. Attorney's Office was previously contacted but did not provide any information to IPI about any possible pending investigation or prosecution against it. Yet IPI seems to suggest that the Court must go out of its way to determine for IPI whether there is an ongoing or pending investigation against IPI.  As stated in Plaintiffs' opposition, "IPI provides no legal authority to suggest that the Court has an obligation to essentially present evidence and argue IPI's case on its behalf, as IPI appears to be suggesting." (Opposition at 13.)

For a third time, IPI filed a motion to stay and also seeks a vacatur of the discovery sanctions order, this time arguing that a mandatory stay was warranted under 18 U.S.C. § 1595(b)(1) because the now unsealed criminal indictment against IPI's executives reveal parallels to the plaintiffs' civil case. (Memo. Supporting Mot. to Stay "Memo" at 17, ECF No. 217.)  IPI also asserts that constitutional issues are at play because denying IPI a stay of civil proceedings pending resolution of the indictment against its executives would violate IPI's Fifth Amendment rights. (*Id.* at 21.) Plaintiffs filed their opposition to the motion primarily highlighting that the case involves different defendants and different victims, the criminal indictment has no TVPRA claim, and that the alleged conduct in the indictment concerns a specific occurrence not involving the plaintiffs.  ("Opposition" to Stay at 4-10, ECF No. 236.)  Plaintiffs also highlight that a corporation has no Fifth Amendment right. (*Id.* at 2, 11.) IPI subsequently filed its reply to the opposition ("Reply" to Stay, ECF No. 243.) After hearing arguments from both sides, the Court denied IPI's third motion for a stay. (Minutes, ECF No. 252.) The Court sets forth its reasoning as follows.

## II.     MOTION FOR STAY

The TVPRA provides trafficking victims with a civil remedy against their perpetrators or anyone who knowingly benefits from their trafficking. 18 U.S.C. § 1595(a).  The same section also states that "[a]ny civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim." § 1595(b)(1). The statute defines criminal action as including investigations and prosecutions, which are considered pending until final adjudication. § 1595(b)(2).

While cases on TVPRA stays are scant, at least three courts that considered the legislative history of the TVPRA have held that the mandatory stay provision was designed to protect the DOJ's "ability to try criminal cases 'unfettered by the complications of civil discovery'" and not to help defendants delay civil actions. *Plaintiff A v. Schair*, 744 F.3d 1247, 1254 (11th Cir. 2014); *see also Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, No. 4:10-CV-04124, 2011 WL 5188424, at *2 (W.D. Ark. Oct. 31, 2011) ("In other words, the statute was not created to protect civil defendants. Nor was the statute amended, in providing for a private right of action and mandatory stay, in order to protect the rights of civil defendants."); *Lunkes v. Yannai*, 882 F. Supp. 2d 545 (S.D.N.Y. 2012) ("The inclusion of the mandatory stay provision was meant to allay" the DOJ's concern that civil cases would pose "a risk of adversely affecting the government's ability to prosecute the case.").

Despite the policy rationale in aiding the government with investigations, some courts have granted stays by the motion of the defendant and not necessarily the government. *See Lunkes*, 882 F. Supp. 2d at 550–51 (motion made by civil defendant who was not yet criminally charged); *Jiang Li Rong v. Hong Kong Entm't (Overseas) Invs., Ltd.*, 1:05-cv-00048 (D. N. Mar. I. Mar. 20, 2006) (Order at 8, ECF No. 17) (granting defendants' motion for a stay); *Nesbitt v. Bemer*, No. 3:18-CV-00699 (VLB), 2018 WL 5619716, at *2, 5 (D. Conn. Oct. 30, 2018) (motion made by defendant for reconsideration). Based on these authorities, the Court agrees with IPI that the government need not be the party moving for a stay.

Nonetheless, the clear and unambiguous language of § 1595(b)(1) mandates a stay only where the criminal action "aris[es] out of the same occurrence in which the claimant is the victim." Yet IPI has again failed to do its job to demonstrate that: (1) there is a criminal action against IPI, (2) the

5

criminal action arises out of the same occurrence as the civil action, and (3) the claimants in the civil action are the victims of the criminal action.

Notably, IPI has failed to show even a criminal action against IPI. In support of its motion, IPI attached the government's superseding indictment of IPI executives Liwen Wu and Jianmin Xu, MCC supervisor Yan Shi, and other unnamed co-conspirator *individuals*, including an unnamed IPI individual. (Superseding Indictment ¶¶ 7–18, ECF No. 218-1.) IPI, the corporation, is not included in the criminal indictment at all. *Id.* While IPI believes that criminal investigations are ongoing based on the superseding indictment's allegations that reference IPI, the Court finds that this belief is too speculative to warrant a stay. Over two years have passed since the original indictment, and IPI was never charged. (Indictment, ECF No. 218-1.) The government is well aware of how to indict a corporation, and it has not done so in this matter. *See United States v. Hong Kong Entm't (Overseas) Invs., Ltd.*, 1:13-cr-00002 (D. N. Mar. I. April 19, 2013) (Compl. ¶ 7, ECF No. 3.) IPI therefore cannot mandate the Court to issue a stay here based on mere speculation of a potential criminal charge. *See Kolbek*, 2011 WL 5188424, at *2 ("Defendants, however, may not mandate the imposition of a stay under the statute based on mere speculation that the government may be involved in an ongoing investigation.")

Furthermore, the criminal action referenced by IPI is not based on the same occurrence as the civil complaint, in contrast to the cases where § 1595(b) stays were granted. In those cases, the link between the civil and criminal case was clear such that a court could easily discern that the criminal case arose out of the "same occurrence in which the claimant is the victim." For example, in *Lunkes*, the plaintiffs were three women who filed a civil action under the TVPRA and other laws against two

defendants for enslaving them and sexually abusing them after luring them to this country with false promises of employment. 882 F. Supp. 2d at 546. The criminal counterpart charged one of the defendants for "inducing women to travel to the United States for the purpose of committing sexual abuse, attempted forced labor, forced labor, fraud in labor contracting, importing aliens for immoral purposes, inducing aliens to illegally enter and reside in the United States, and unlawful employment of aliens." *Id.* at 548. While the court did not address that the criminal case arose from the same occurrence as the civil case in granting the § 1595(b) stay, the connection that both underlying cases involved trafficking and sexual abuse was evident such that it was not at issue. *Id*.

Likewise, in *Plaintiff A*, involving the trafficking of young women for sex work, the court explicitly stated that "[b]ecause the U.S. Department of Justice was conducting a criminal investigation into the same conduct alleged in the plaintiffs' complaint, the district court stayed this civil action pursuant to 18 U.S.C. § 1595(b)(1)." 744 F.3d at 1250.  Even in *Nesbitt*, where the court granted a stay in the exercise of its discretion and not pursuant to a § 1595(b) mandatory stay, the civil and the criminal cases involved prostitution and trafficking of minors. 2018 WL 5619716 at *1, 5.

Unlike those clear connections, IPI makes its connection to the "same occurrence" by a word-for-word comparison between the civil complaint and superseding indictment allegations, and argues that the actions involve the same occurrence merely because both mention hiring *heigong*, paying illegal works less wages, housing workers in Tanapag Village dormitories, evading agencies, and hiring workers that were unqualified and worked in unsafe work conditions. (Memo at 17–20.) To IPI, because both the civil action and criminal action involve this similar factual background, they involve the "same occurrence." (Reply at 2.)

7

However, the Court finds that this argument misconstrues the type of conduct defendants are charged for in the superseding indictment, which charges the individual defendants with RICO conspiracy in violation of 18 U.S.C. § 1962, conspiracy to harbor illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (v)(I), harboring illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), unlawful employment of aliens in violation of 8 U.S.C. § 1324(a) and 18 U.S.C. § 2, and international promotional money laundering in violation of 18 U.S.C. § 1956 and 2. (Superseding Indictment ¶¶ 38–71.) These criminal charges are based on defendants defrauding and deceiving the U.S. government and its agencies, including USCIS and Customs and Border Protection, by exploiting the conditional parole program intended for business and pleasure to get Chinese laborers to the CNMI. (*Id*. ¶¶ 24–26). In contrast, the civil complaint is based on trafficking, worker exploitation, forced labor, and egregious working conditions. (*See* FAC ¶¶ 308–340.) Moreover, the scheme alleged in the criminal indictment involves defendants paying the airfare of workers and their companions to pose as female girlfriends or spouses during a narrow period between February 26, 2017 to March 31, 2017. (Superseding Indictment ¶ 27.) Plaintiffs' case on the other hand, allege a different scheme where they paid recruitment fees predating this period. (FAC ¶¶ 52–62.) IPI's argument that criminal action arises out of the same occurrence as the civil action is thus belied by the record, distinguishing it from the aforementioned cases.

Furthermore, the Court rejects IPI's argument that "same occurrence" should be construed broadly. The plain language of the statute narrows the scope of "same occurrence" to that in which "*the claimant is the victim*." § 1595(b)(1) (emphasis added). Thus, the claimant in the civil action must be the victim in the criminal case for a mandated stay under the TVPRA. The seven plaintiffs

clearly are not the victims in the criminal action. IPI's counsel conceded during the motion hearing that the victims in the criminal action are the government and its agencies.[2] Even if the Court were to construe the 32 alleged harbored aliens listed in the superseding indictment as victims, which they are not, none of the listed individuals correspond to the seven plaintiffs who entered the CNMI prior the dates listed in the indictment. (*See* Pet. for Damages, ECF No. 172; Superseding Indictment ¶ 42.) IPI's allegation that the "Y.M" listed in the superseding indictment is Yougjun Meng, one of the seven plaintiffs, is not supported by any admissible evidence and is further refuted by Meng's own declaration, previously filed before this court and available to IPI, indicating that his arrival and work started prior to the indictment's listed dates. (Decl. of Yongjun Meng ¶ 11, ECF No. 176).

Finally, the Court disagrees with IPI's assertion that evidence of Plaintiffs' attorney researching *Touhy* requests and corresponding with the Department of Justice and the USAO in Guam suggests that Plaintiffs' claims arise out of the same occurrence as the criminal case. (*See* Reply at 6.) As IPI's own reply brief suggests, a *Touhy* request involves a request for information and documents *from* a government agent for litigation purposes. *See id.*; *see generally United States ex. rel. Touhy v. Ragen*, 340 U.S. 461 (1951). IPI is therefore indicating that the claimants here are the ones seeking information from the government, whereas if the criminal action arose from the same occurrence in which the claimants are the victims, the government would have been required to contact Plaintiffs instead of the inverse. Federal law requires that prosecutors make their best efforts to notify crime

---

[2] On this basis alone, the court may deny IPI's motion.

victims of their rights.[3] 18 U.S.C. § 3771(c)(1). Nothing suggests that the seven plaintiffs in this case were ever notified by the government of the criminal charges against IPI's executives and other individuals, lending further support to the fact that the claimants are not the victims in the criminal action. For these reasons, the Court denies IPI's motion for a mandatory stay pursuant to 18 U.S.C. § 1595(b).

As to IPI's alternative request that the Court grant a discretionary stay due to Fifth Amendment concerns, the Court concludes that a stay is not warranted because a corporation has no Fifth Amendment right against self-incrimination. *See Braswell v. United States*, 487 U.S. 99, 105–106, 110–112 (1988); *Hale v. Henkel*, 201 U.S. 43, 74 (1906). Counsel for IPI conceded at the hearing that a corporation has no Fifth Amendment rights, and therefore no constitutional issues are implicated. To the extent that discovery could implicate IPI's current executives in the criminal action, IPI can appoint someone as an agent who "without fear of self-incrimination" could furnish the requested information available to the corporation. *See U.S. v. Kordel*, 397 U.S. 1, 8 (1970); *see also Braswell*, 487 U.S. at 112–113 ("[A] custodian may not resist a subpoena for corporate records on Fifth Amendment grounds." (citing *Fisher v. United States*, 425 U.S. 391, 429 (1976))).

IPI's blanket assertion of a privilege is also inadequate for issuing a stay. *See United States v. Lot 5, Fox Grove, Alachua Cty., Fla.*, 23 F.3d 359, 364 (11th Cir. 1994) (stating that "a blanket

---

[3] For this same reason, the Court also finds that IPI's reliance on *Nesbitt* for the proposition that an indictment need not name victims is misguided. In that case, the relevant documents involved the information and an arrest warrant, which under Connecticut law did not require all individuals be named. *Nesbitt*, 2018 WL 5619716, at *4–5.

assertion of the privilege [against self-incrimination] is an inadequate basis for the issuance of a stay"); *Plaintiff A*, 744 F.3d at 1255 ("A blanket assertion of the privilege against self-incrimination is an inadequate basis for the issuance of a stay."). For these reasons, the court DENIES IPI's Motion to Stay Proceedings Pending Resolution of Criminal Indictment.

### III. MOTION TO VACATE DISCOVERY SANCTIONS

IPI also moves to vacate the discovery sanctions under FRCP 60(b)(6), arguing that the Court erred in denying its two prior motions to stay and that all discovery sanctions were subsequent "fruit[s] of the poisonous tree." (Motion at 1; Memo at 22.) The Court does not find any error in denying any of IPI's prior motions to stay. As explained above, the recently unsealed criminal case against IPI's executives and co-defendant MCC's supervisor did not and does not warrant granting the stay. There is nothing illegal or improper about the multiple discovery sanctions imposed against IPI. Accordingly, IPI's motion to vacate discovery sanctions is also DENIED.

IT IS SO ORDERED this 9th day of October, 2020.

/s/ *signature*

RAMONA V. MANGLONA
Chief Judge