F I L E D
Clerk
District Court

NOV 25 2020

for the Northern Mariana Islands
By_____
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| TIANMING WANG, *et al.*,<br><br>      Plaintiffs,<br><br>vs.<br><br>GOLD MANTIS CONSTRUCTION DECORATION (CNMI), LLC, MCC INTERNATIONAL SAIPAN LTD, CO., and IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,<br><br>      Defendants. | Case No.: 1:18-cv-00030<br><br>**DECISION AND ORDER DENYING WITHOUT PREJUDICE PLAINTIFFS' PETITION FOR DAMAGES AND FOURTH MOTION FOR ATTORNEYS' FEES AGAINST DEFENDANT IPI** |

### I.    INTRODUCTION

Before the Court are Plaintiffs' petition for damages (ECF No. 172) and fourth motion for attorneys' fees (ECF No. 226) against Defendant Imperial Pacific International (CNMI), LLC ("IPI") in relation to an entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b).  In resolving those motions, the Court must consider as a preliminary matter whether it can enter default judgment against less than all defendants pursuant to Federal Rule of Civil Procedure 54(b).  Because Defendant IPI's liability in this case is predicated on the other two defendants' liability—such that inconsistent judgments may result if the other defendants defend on the merits—the answer is no.  Accordingly, the Court DENIES WITHOUT PREJUDICE Plaintiffs' petition for damages (ECF No. 172) and fourth motion for attorneys' fees (ECF No. 226) for the reasons further explained below.

## II.    BACKGROUND

Plaintiffs are seven Chinese construction workers who bring claims against their former employers Gold Mantis Construction Decoration (CNMI), LLC ("Gold Mantis") and MCC International Saipan Ltd. Co. ("MCC"), and the project owner IPI under four causes of action: 1) forced labor under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C §§ 1589, 1590, 1592, 1595; (2) forced labor under the CNMI Anti-Trafficking Act, 6 CMC §§ 1502, 1503, 1507; (3) negligence; and (4) liability under 4 CMC § 9304(c) for employees of a subcontractor. (First Amended Complaint "FAC" ¶¶ 308–340, ECF No. 6.)  Plaintiffs allege that they were recruited by Defendants and/or their agents from China under false promises of good conditions, high wages, and legal work status. (*Id*. ¶ 52.)  However, after paying high recruitment fees, Plaintiffs were instead subjected to over 12-hour work days without any rest and sometimes 24-hour work shifts, paid below legal minimum wage, crammed into dormitories, yelled at by their supervisors, forced to pay fines for arriving late or not working hard enough, and subjected to extreme, dangerous and inhumane work conditions on the Imperial Pacific Casino construction site in Garapan.  (*Id.* ¶¶ 1, 4, 56.)  Furthermore, Defendants arranged for Plaintiffs to enter as "tourists" instead of under a lawful temporary work visa, took away their passports, instructed them to hide when government officials came to inspect the worksite or dormitories, threatened them from seeking medical care for their injuries, and failed to compensate them for their injuries suffered from working on the construction site—which varied from severe burns to damaged fingers or feet. (*Id.* ¶¶ 6, 45, 56, 160, 230, 244, 254, 267, 284, 287, 298, 318.)

The complaint specifically alleges that MCC was the general contractor on the casino project. (*Id*. ¶ 129.)  Three of the Plaintiffs were employed under MCC. (*Id*. ¶ 57.) During their employment

with MCC, they had to pay an additional $2,000 recruitment fee upon arrival and work 12-hour or more work shifts with no rest. (*Id*. ¶¶ 63–64.) Plaintiffs under MCC were also never paid on time, paid less than minimum wage, forced to buy their own protective gear, threatened to be sent back to China given their unlawful status, and told that their complaints were useless given their immigration status. (*Id*. ¶¶ 65–75.) MCC's managers also held on to Plaintiffs' passports. (*Id*. ¶ 76.)

Eventually, all of the Plaintiffs worked under Gold Mantis. (*Id*. ¶¶ 218, 235, 242, 252, 265, 277, 286.) A Gold Mantis manager charged Plaintiffs an additional $1,000 fee for their jobs. (*Id*. ¶ 80.) Plaintiffs regularly worked 12-hour or longer days, including up to 24-hour shifts on occasion. (*Id*. ¶¶ 84, 85.) They were not paid in a timely manner and, if paid at all, were paid less than minimum wage and less overtime than they performed. (*Id*. ¶¶ 94–97.) The Gold Mantis manager fined employees when they did not work hard enough, rested on the job, or refused a shift. (*Id*. ¶ 105–108.) He also threatened to physically harm and kill employees. (*Id*. ¶ 109, 111.) Gold Mantis also threatened employees without immigration status that they would be deported or arrested if they went to government or medical authorities, and actively hid them during inspections. (*Id*. ¶ 115–119.)

As to IPI's role, Plaintiffs allege that IPI was the developer that was granted an exclusive license to build the casino project in Saipan and that hired multiple Chinese construction firms including MCC and Gold Mantis to build the casino. (*Id*. ¶¶ 2, 36, 37, 168.) Plaintiffs further allege that IPI exercised control over the construction site, including its safety conditions; exercised control over which companies to hire or fire for the casino project; and directed the companies' tasks. (*Id*. ¶¶ 37, 168–182.) Furthermore, IPI knew or should have known about the use of unauthorized workers, the lack of compensation insurance, the lack of adequate safety, and their contractors' policies

regarding hours and harsh punishments. (*Id*. ¶¶ 164–166, 197.) IPI also arranged or provided the unsanitary housing for many of the unauthorized workers, including Plaintiffs, and owned or arranged the buses that transported the workers to the casino project each day. (*Id*. ¶¶ 193–195, 201.) They also allege that IPI assisted in hiding unauthorized construction workers from government investigators. (*Id*. ¶ 202.) Accordingly, Plaintiffs sought general, special, and punitive damages, along with attorney fees and costs. (*Id*. ¶ 341.)

After months of discovery and pre-trial motions, the Court on June 12, 2020 entered default against IPI pursuant to Federal Rule of Civil Procedure 37 for IPI's repeated violations of discovery orders. (Minutes, ECF No. 157.) Plaintiffs subsequently filed their petition for damages for entry of default judgment against IPI, specifically focusing on damages under the TVPRA because any damages for Plaintiffs' other three cause of actions would be duplicative. ("Pet. for Damages" at 6, ECF No. 172.) Plaintiffs specifically seek approximately $3.86 million in compensatory damages for emotional distress suffered each day they were subjected to forced labor, lost income from their physical injuries incurred working for the casino project, future lost income, and pain and suffering related to those injuries. (*Id*. at 9–27, 29.) Plaintiffs also seek twice that amount in punitive damages, for an approximate total of $11.6 million in damages. (*Id*. at 27–30.)

IPI filed an opposition (ECF No. 196), Plaintiffs filed a reply (ECF No. 205), and IPI filed a further opposition (ECF No. 214). The matter came on for a hearing on August 7, 2020, at which time the Court ordered that the parties file supplemental briefing on the issue of entry of default judgment against one of multiple jointly liable defendants. (Minutes, ECF No. 219.) Particularly, the Court had concerns about the entry of default judgment against one defendant while the case is still pending

against joint defendants who could refute Plaintiffs' claims, a risk recognized in *Frow v. De La Vega*, 82 US. 552 (1872).  Accordingly, Plaintiffs filed their supplemental brief in support of their petition for damages on August 20, 2020 ("Supp. Pet.," ECF No. 230), and IPI filed its supplemental brief in opposition ("Supp. Opp'n," ECF No. 240).

Plaintiffs also filed their fourth motion for attorneys' fees against IPI in connection to entry of default judgment against IPI.  ("Mot. for Att'y Fees," ECF No. 226.)  IPI filed a limited opposition (ECF No. 231), and Plaintiffs filed their reply (ECF No. 241).  This matter came before the Court on September 18, 2020, at which time the Court took the matter under advisement. (Minutes, ECF No. 252.) Having reviewed the briefs, arguments made at the hearings, and relevant law, the Court DENIES both petitions without prejudice for the following reasons.

### III.    PLAINTIFFS' PETITION FOR DAMAGES

A.  Legal standard

Under Federal Rules of Civil Procedure 55(b)(2), the Court has discretion to enter default judgment following an entry of default.  In considering whether to enter default judgment, courts in the Ninth Circuit consider the following factors:

> 1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citing 6 *Moore's Federal Practice* ¶ 55–05[2], at 55–24 to 55–26).  However, "when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties *only if the court expressly*

*determines that there is no just reason for delay.*" Fed. R. Civ. P. 54(b) (emphasis added). Thus, while a court has discretion in determining whether to enter default judgment against less than all defendants, *see Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980), there are circumstances in which a court should not do so because as a matter of law there would be a "just reason for delay." The leading case on whether default judgment should be entered when there are multiple defendants is *Frow v. De La Vega*, 82 U.S. 552 (1872).

In *Frow*, the U.S. Supreme Court held that "[a] final decree on the merits cannot be made separately against one of several defendants upon a joint charge against all, where the case is still pending as to the others." *Id.* at 554. The Court in *Frow* was concerned with the "absurdity" and "incongruity" that might occur if a joint charge was sustained against one defendant but then dismissed as to other defendants. *Id.* Thus, in these situations, a court is only to enter a default until the case is decided on the merits against the other defendants. *Id.* If the plaintiff prevails on the merits against the non-defaulting parties, then it is entitled to a final judgment against the defaulting and non-defaulting parties alike; however, if the plaintiff loses on the merits, then the claims are to be dismissed against all parties, including the defaulting defendant. *Id.*

In *Neilson v. Chang (In re First T.D. & Inv. Inc.)*, 253 F.3d 520, 532 (9th Cir. 2001), the Ninth Circuit recognized the general rule in *Frow* that "where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants." (citing *Frow*, 82 U.S. at 554). However, the court then extended the rule in *Frow* to also apply to defendants who were "similarly situated"

such that the case against each defendant rested on the same legal theories.[1] *Id.* (citing *Gulf Coast Fans, Inc. v. Midwest Elecs. Imps., Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984)). The court noted that it would likewise be "incongruent and unfair" to allow a plaintiff to prevail against the defaulting party on a legal theory already rejected by the court against non-defaulting defendants, therefore reversing the lower court's entry of default judgment against the defaulting defendants. *Id.* at 532–33; *see also Garamendi v. Henin*, 683 F.3d 1069, 1082–83 (9th Cir. 2012) (noting same rules where complaint alleged joint and several liability, but affirming district court decision because the court followed the proper procedure of entering default judgment after completion of trial against the non-defaulting defendants); *Kapadia v. Thompson*, No. 06–CV–1359–PCT–EHC, 2008 WL 5225813, at *3 (D. Ariz. Dec. 15, 2008) (declining to enter default judgment against one defaulting defendant where other defendants were similarly situated as joint beneficiaries of a life insurance policy); *but see Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1008–09 (N.D. Cal. 2001) (noting "where uniformity of liability is not logically required by the facts and theories of the case, the risk of inconsistent judgments is not sufficiently extreme to bar entry of default judgment as a matter of law.").

---

[1] A few other circuits have also interpreted *Frow* more broadly.  *See, e.g.*, *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) ("[I]t would be 'incongruous' and 'unfair' to allow some defendants to prevail, while not providing the same benefit to similarly situated defendants." (citation omitted)); *Wilcox v. Raintree Inns of Am., Inc.*, 76 F.3d 394, 1996 WL 48857, at *3 (10th Cir. 1996) (unpublished) ("The *Frow* rule is also applicable in situations where multiple defendants have closely related defenses"); *United States ex rel. Hudson v. Peerless Ins. Co.,* 374 F.2d 942, 944 (4th Cir. 1967) (applying *Frow* to situations where defendants are "joint and/or several"). On the other hand, other circuits have interpreted *Frow* more narrowly to apply only in situations where multiple defendants are truly jointly liable. *See, e.g., McMillian/McMillian, Inc. v. Monticello Ins. Co.*, 116 F.3d 319, 321 (8th Cir. 1997) (finding *Frow* inapplicable where defendants shared closely related interests because they were not truly jointly liable); *Whelan v. Abell*, 953 F.2d 663, 674–75 (D.C. Cir. 1992) ("[I]n cases involving multiple defendants, a default order that is inconsistent with a judgment on the merits must be set aside only when liability is truly joint—that is, when the theory of recovery requires that all defendants be found liable if any one of them is liable—and when the relief sought can only be effective if judgment is granted against all." (citation omitted)); *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1256–58 (7th Cir. 1980) (finding that *Frow* rule is inapplicable when defendants are alleged to be jointly and severally liable).

B. <u>Discussion</u>

The issue before the Court then is whether there is "just reason for delay" barring entry of default judgment against IPI when there are other non-defaulting defendants active in the case.[2] In other words, the Court must consider whether IPI is jointly liable or "similarly situated" with Gold Mantis and MCC such that entry of default judgment against IPI at this time would be improper. With respect to Plaintiffs' TVPRA claim—the focus of Plaintiffs' petition for damages—the answer is yes. (*See* Pet. for Damages at 6.)

Plaintiffs allege that defendants subjected them to forced labor in violation of the TVPRA under 18 U.S.C §§ 1589, 1590, 1592, 1595. First, § 1589(a) provides criminal penalties for anyone who "knowingly" obtains labor or services in four ways:

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> (2) by means of serious harm or threats of serious harm to that person or another person;
> (3) by means of the abuse or threatened abuse of law or legal process; or
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another

---

[2] Plaintiffs and IPI both discuss the seven factors in *Eitel,* but consideration of the *Eitel* factors are irrelevant if the Court is barred by *Frow*'s ruling from entering default judgment against IPI. *See* Supp Pet. at 3–5; Supp. Opp'n at 1–6. Plaintiffs heavily rely on *Shanghai Automation* in arguing that courts consider multiple factors in determining whether to grant default judgment and not solely the factor of the possibility of inconsistent judgments. *See* Supp Pet. at 6–7; *Shanghai Automation*, 194 F. Supp. 2d at 1009 ("The purpose of Rule 54(b) which postdates *Frow* by nearly a century, is to strike a balance between premature decision-making and the pragmatic needs of the litigants in complex multiple-party actions. Preserving the Court's discretion in balancing those competing interests comports with other provisions of the Federal Rules which weigh the policy against inconsistent judgments against the pragmatic consideration of the hardship to existing parties in the litigation." (internal quotations and citations omitted)). The distinction in *Shanghai Automation*, however, of when a Court retains its discretion is when uniformity of liability is not logically required, and the risk of inconsistent judgments is low. *See Shanghai Automation*, 194 F. Supp. 2d at 1009–10 (noting that "because differing judgments would not necessarily be illogical, *Frow* does not apply, and the Court retains discretion to enter default judgments against less than all defendants under Rule 54(b).").  The only logical reading of this is: where *Frow* does apply, the Court does not retain discretion to enter default judgment against less than all defendants.

person would suffer serious harm or physical restraint[.]

18 U.S.C. § 1589(a)(1)–(4).  Section 1590(a) also provides penalties against anyone who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter." Under § 1592(a), "[w]hoever knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person" in the course of violating and with intent to violate §§ 1589 and 1590, for example, or to prevent or restrict the person's liberty to move or travel, is also subject to a fine or imprisonment. Sections 1590(b) and 1592(c) also provide criminal penalties against anyone who "obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement" of those respective sections. Finally, § 1595(a) provides victims civil remedies, including damages and attorneys' fees "against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)."

To be sure, Plaintiffs are correct that none of those cited provisions of the TVPRA require joint participation or a joint venture in order to establish liability. (*See* Supp. Pet. at 15.)  Anyone who knowingly violates those provisions with an overt act may be subject to criminal or civil penalties, and anyone who knowingly benefits from a forced labor scheme that they knew or should have known about (even absent an overt act) may be subject to a civil action.  *See* 18 U.S.C. §§ 1589, 1590, 1592, 1595; *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, at *3, 6 (N.D. Cal. July 30, 2020) (holding that a plaintiff need not allege an overt act in furtherance of or actual knowledge of a venture in order to sufficiently plead a civil liability § 1595 claim and

recognizing agency liability in the context of the TVPRA). Plaintiffs also do not refer to "joint liability" or "joint and several" liability anywhere in their complaint.[3] (*See* Supp. Pet. at 16; *see generally* FAC.)

Nonetheless, IPI's liability under the TVPRA as alleged in Plaintiffs' first amended complaint is so connected and tied to the actions of MCC and Gold Mantis such that IPI cannot be held liable unless MCC or Gold Mantis were found to be liable. Plaintiffs do not sufficiently allege an overt act committed by IPI that on its own would make IPI directly liable under the TVPRA. While Plaintiffs conclusively plead that defendants collectively violated the TVPRA provisions above, *see* FAC ¶¶ 308–322, the specific allegations reference only MCC and Gold Mantis subjecting the workers to over 12-hour workdays, threatening them with fines and/or sending them back to China, and reminding them of their unlawful "heigong" status and their large debts back at home, *see* FAC ¶¶ 64, 70–72, 82–85, 101–108. The facts also only allege that Gold Mantis' supervisor threatened to physically harm or kill Plaintiff(s). (*See* FAC ¶¶ 109–114.) As to IPI's role, however, none of the facts in the complaint establish that IPI, the developer and owner, directly participated in obtaining the labor of Plaintiffs through threats, abuse of process, or serious harm in violation of § 1589. (*See* FAC ¶¶ 164–216.) Furthermore, facts in the complaint only reference MCC holding on to Plaintiffs' passports in violation of § 1592 of the TVPRA. (*See* FAC ¶ 76.)

---

[3] However, the Court notes that Plaintiffs' argument on their supplemental brief contradicts what counsel stated during the hearing on the motion for damages. Specifically, Plaintiffs' counsel, Aaron Halegua, stated, "But I think under the TVPRA, it did – my understanding is it is joint and several liability." (Transcript of Motion Hearing at 51:8–51:9, ECF No. 238.) Even when the Court asked counsel, "So you believe the TVPRA as well as the CNMI's equivalent statute does allow for, and your complaint does allege, joint and several liability?" counsel responded, "I believe that it does. Yes, Your Honor." (*Id*. at 51:15–51:20.)

Plaintiffs are correct that a jury could find that IPI violated § 1590 for providing the buses that took workers to and from the construction site and for owning the dormitories in which workers were housed. (*See* Supp. Pet. at 17; FAC ¶¶ 193, 201.) However, as Plaintiffs note, § 1590 only provides for liability if a defendant knowingly harbors and transports victims for labor or services in violation of § 1589.  (*See* Supp. Pet. at 17; 18 U.S.C. § 1590(a).) Accordingly, IPI's liability for such harboring and transporting is again attached to MCC and Gold Mantis' violation of § 1589. If MCC and Gold Mantis' actions were found to be lawful and not in violation of the TVPRA, IPI's actions for harboring and transporting Plaintiffs would also likewise then not be in violation of the TVPRA. Furthermore, while civil recovery under the TVPRA does not require that a defendant that "knowingly benefits" from a scheme also directly participate in the forced labor scheme, IPI's liability—even through an agency theory—requires MCC and Gold Mantis to have been found liable for participating in a forced labor scheme. Otherwise, there is no violation of the TVPRA under which IPI knowingly benefited from.  Defendant IPI's liability is therefore clearly attached to those of the other two non-defaulting defendants, such that the defendants here are so similarly situated, and a judgment of liability against IPI would necessarily be inconsistent with a judgment in favor of MCC and/or Gold Mantis.  This is the exact absurd and incongruent result that the *Frow* Court was concerned about.

Plaintiffs heavily rely on *Shanghai Automation* in arguing that the risk of inconsistent judgments is low, but that case is distinguishable.  *See* Supp. Pet. at 18; 194 F. Supp. 2d 995, 1008–09.  In *Shanghai Automation*, the defaulting defendants were various related corporations and one corporate officer; and the non-defaulting defendant was another officer. 194 F. Supp. 2d 995, 998–999.  Liability against the defaulting defendants would not necessarily be inconsistent or illogical with

a judgment in favor of the non-defaulting officer, because the non-defaulting officer could prove that he had no direct involvement with the alleged transactions.[4] *Id.* at 1009.  In contrast, if Gold Mantis and MCC could prove that they did not participate in any forced labor scheme, IPI cannot be held directly or vicariously liable.  Any other conclusion would be illogical.

To be clear, the Court does not take lightly the seriousness of the offenses alleged in Plaintiffs' complaint. Human trafficking is a modern form of slavery involving some of the most egregious and heinous acts committed by its perpetrators and the dehumanization of its victims.  The Court in no way condones these actions.  The Court furthermore recognizes the continued hardships that Plaintiffs may face each passing day without relief.  The Court, however, is bound by *Frow* and its progeny. Plaintiffs have the benefit of the Court's entry of default. (ECF No. 193.) However, entry of default judgment pursuant to FRCP 55(b) at this juncture remains premature in light of the similarly situated defendants who remain active in this case and in light of the significant risk of inconsistent judgments that the Court faces. Just reasons exist for delay such that the Court cannot enter default judgment against IPI pursuant to FRCP 55(b) and final default judgment under FRCP 54(b).  In addition, even if *Frow* does not apply, the Court will not exercise its discretion to enter a multimillion-dollar judgment based on a default under these facts and circumstances.  Plaintiffs' petition for damages in

---

[4] Plaintiffs' references to other cases are also distinguishable because in those cases, entering default judgment against one party would have been consistent with a favorable judgment against the other defendants.  *See, e.g., Tattersalls Ltd. v. Wiener*, No.: 17-cv-1125-BTM, 2019 WL 2209400, at *6 (S.D. Cal. May 21, 2019) (noting that entering default judgment against one defendant, after dismissing the other defendant because of bankruptcy, would be consistent with a favorable judgment against the non-remaining defendants because they could prove that they were not part of the conspiracy in a fraud scheme).  Plaintiffs also rely on *Corporate Commission of Milles Lac Band of Ojibwe Indians v. Money Centers of America, Inc.*, 986 F.Supp.2d 1062, 1066–67 (D. Minn. 2013), but in that case the "modest" similarities in the breach of contract claim between the two defendants (one a corporation and the other its alleged alter-ego) "militate[d] against entering judgment." (*See* Supp. Pet. at 13–14, 18.)

connection to an entry of default judgment is therefore denied.[5]

## IV.    PLAINTIFFS' FOURTH MOTION FOR ATTORNEYS' FEES

Under the TVPRA, a prevailing party is entitled to reasonable attorneys' fees.  18 U.S.C. § 1595; *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 951 (N.D. Cal. 2019).  A prevailing party is also entitled to costs. Fed. R. Civ. P. 54(d)(1).  Plaintiffs' petition for attorneys' fees seeks a total of $795,341.20 for attorneys' fees and $16,877.97 in costs (Mot. for Att'y Fees at 2, 13–14.) However, as previously discussed, the Court cannot enter default judgment against IPI at this time.  Because Plaintiffs' fourth motion for attorneys' fees against IPI are in connection to the entry of default judgment against IPI, the motion for attorneys' fees must also be denied without prejudice.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs' petition for damages and entry of default judgment (ECF No. 172), as well as Plaintiffs' fourth motion for attorneys' fees in connection to default judgment (ECF No. 226), are DENIED WITHOUT PREJUDICE to refiling.[6]

IT IS SO ORDERED this 25th day of November, 2020.

RAMONA V. MANGLONA
Chief Judge

---

[5] Because the court cannot enter default judgment, it cannot consider Plaintiffs' alternatives such as having IPI move for a stay of enforcement by posting a bond or other security pursuant to Rule 62, placing the money in escrow, or modifying the judgment against IPI under Rule 60(b) if the verdict is inconsistent.  (*See* Supp. Pet. at 23.)

[6] Should Plaintiffs prevail on the merits against the non-defaulting parties, they will be entitled to final judgment and can refile their petition for damages and motion for attorneys' fees for the Court's consideration. At this time, the Court makes no determination as to the merits of the requested damages amount or the reasonableness of the requested hourly rate for law clerks.

13