Bruce Berline
BERLINE & ASSOCIATES, LLC
Second Floor, Macaranas Building
PO Box 5682 CHRB
Saipan, MP 96950
Tel: (670) 233-3663
Fax: (670) 233-5262
Email: bruce@saipanlaw.com

Aaron Halegua
AARON HALEGUA, PLLC
524 Broadway, 11th Floor
New York, New York 10012
Tel: (646) 854-9061
Email: ah@aaronhalegua.com

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| TIANMING WANG, *et. al*,<br><br>Plaintiffs,<br><br>v.<br><br>GOLD MANTIS CONSTRUCTION DECORATION (CNMI), LLC, *et. al*,<br><br>Defendants. | Case No. 18-cv-0030<br><br>**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF AN ORDER TO SHOW CAUSE AGAINST LIJIE CUI**<br><br>Hearing Date: n/a<br>Hearing Time: n/a<br>Judge: Hon. Ramona V. Manglona |

**PRELIMINARY STATEMENT**

On March 31, 2021, the Court issued its amended order ("Order") directing Ms. Lijie Cui to identify any ESI Data used or created by her, to make a forensic copy of all such ESI Data, and to file a certification with the Court that all such ESI Data, including Ms. Cui's WeChat data, had been preserved. (ECF No. 310).[1] Ms. Cui has failed to comply with the Court's Order. On April 13, 2021, Ms. Cui's attorney, Mr. Lizama, filed a certification ("Lizama Certification" (ECF No. 311)) and her translator, Mr. How-Yo Chi, filed a declaration ("Chi 4/13 Decl." (ECF No. 312)). However, the certification does not describe "the search to identify any ESI Data …"; does not "detail[] the ESI Data that exists…"; and does not "affirm[] that a forensic copy of any cell phones, including WeChat data, has been made. (Order at 2). The mobile phone copied by Ms. Cui included zero phone calls, zero messages, zero emails, and only a single contact. On April 22, 2021, more than one week after filing his certification with the Court, and only after numerous emails and letters from Plaintiffs, Mr. Lizama then confirmed in an email to Plaintiffs' counsel that the WeChat data had <u>not</u> been copied. In light of Ms. Cui's clear failure to comply with the Order, Plaintiffs request that the Court issue an order to show cause why Ms. Cui should not be held in contempt.

The request filed by Ms. Cui on April 23, 2021 for a status conference to clarify the Order is unnecessary and designed to divert attention from Ms. Cui's obvious noncompliance and create delay. (ECF No. 313). The filing does not even identify what issues need clarification. (Notably, Ms. Cui never opposed Plaintiffs' motion seeking the preservation Order and never objected to any of its components.) The simple truth is that Ms. Cui has not satisfied the Order's clear mandate to file a certification describing the search for any ESI Data, identifying all available ESI Data, and affirming that such ESI Data was preserved. Moreover, despite Plaintiffs numerous attempts to resolve these issues without Court intervention, Ms. Cui has refused to describe the ESI that she uses/creates or to offer any explanation for the implausibly miniscule amount of data that appears to be on her phone. Accordingly, Plaintiffs support the Court scheduling a hearing, but for the purpose of holding Ms. Cui in contempt and imposing appropriate sanctions.

---

[1] The term "ESI Data" referred to the information on Ms. Cui's "cell phone, including all WeChat data, as well as any other email accounts, messaging accounts, or other ESI used by her." (*Id.*).

1

## BACKGROUND

The Court is already very familiar with the procedural history of this case. Ms. Cui—the President of Imperial Pacific International Holdings Ltd. ("IPIH"), the parent company of Imperial Pacific International (CNMI), LLC ("IPI")—initially became involved in this matter when Plaintiffs issued her a subpoena to produce documents and appear for a deposition. Ms. Cui did not produce documents in response to the subpoena and did not appear for a deposition on the date noticed. Ms. Cui eventually appeared for a deposition on February 5, 2021, where her responses were largely evasive and untruthful. Due to Ms. Cui's "decision to actually resist, evade and obstruct this process," the Court found her in contempt and ordered her to pay Plaintiffs' attorneys' fees. (Transcript for March 23, 2021 Hearing (ECF No. 305) ("Hr'g Tr. 3/23/21") at 17:1-2).[2]

On March 31, 2021, upon finding that there is a concern that Ms. Cui possessed relevant ESI that would not be maintained without Court intervention, the Court issued an Order requiring Ms. Cui to identify and preserve all ESI Data. Specifically, the Court directed that: (i) Ms. Cui "make a forensic copy of any and all cell phones that she uses or has used since March 26, 2020, including any and all data from her WeChat account, and preserve all other ESI Data; (ii) … Ms. Cui's attorney shall file a certification with the Court that describes the search to identify any ESI Data, details the ESI Data that exists, and affirms that a forensic copy of any cell phones, including WeChat data, has been made and that all other ESI Data has been preserved; (iii) Plaintiffs shall be permitted to have a consultant verify that any ESI Data, including the contents of the phone, were adequately preserved and that no data, particularly WeChat messages, was deleted prior to copying the data; and (iv) Ms. Cui's counsel shall retain the copies of any ESI Data in his possession until this Court orders otherwise." (Order at 2).

On April 13, 2021, Ms. Cui's attorney, Mr. Lizama, filed a certification with the Court and Mr. Chi, who is identified as Ms. Cui's translator, submitted a declaration. (Lizama Decl.; Chi 4/13 Decl.). These documents only mention Ms. Cui's cell phone; they do not reference any broader search for ESI

---

[2] More specifically, the Court found that Ms. Cui evaded service of the subpoena, failed to respond to the subpoena, failed to appear for her deposition, and, when she did appear, provided evasive and untruthful testimony. (*See generally* Hr'g Tr. 3/23/21; ECF No. 299).

Data. (*Id.*) They do not identify what ESI Data is created or used by Ms. Cui on that phone or otherwise. (*Id.*). Neither Mr. Lizama nor Mr. Chi affirmed that WeChat data had actually been copied. (*Id.*). Instead, Mr. Lizama states only that "any ESI Data that *may* exist *should* be in the USB for view." (Lizama Cert. ¶5 (emphasis added)).

On April 15, 2021, Plaintiffs emailed a letter to Mr. Lizama detailing at least four ways in which Ms. Cui had failed to comply with the Order. (Declaration of Aaron Halegua, dated April 26, 2021, Ex. 1). Specifically, Plaintiffs noted that the certification did not: (i) describe the search to identify any ESI Data; (ii) detail the ESI Data that exists; (iii) affirm that a forensic copy of any cell phones, including WeChat data, has been made; or (iv) confirm that all other ESI Data has been preserved. (*Id.*). On April 15, 2021 (New York Time), upon Mr. Lizama's request, Plaintiffs' counsel also engaged in a phone call to further explain what was required by the Order and the deficiencies in the certification and declaration that were submitted. In an effort to resolve this issue without Court intervention, Plaintiffs agreed to first look at the PDF report generated as part of the MOBILedit backup performed on Ms. Cui's phone, as this would provide some idea of what data had been copied.

On April 20, 2021, Mr. Lizama sent the PDF report for the copying procedure performed on April 5, 2021 ("April 5 Report"). The April 5 Report was only 370 pages in length and stated that the entire copying process took under four minutes.[3]  (Halegua Decl. ¶5, Ex. 2 ("April 5 Report Excerpt") at 1). Page 118 of the April 5 Report, which concerns the copying of the WeChat application, states: "Application analysis is empty." (Halegua Decl., Ex. 3).

Plaintiffs emailed a letter to Mr. Lizama on April 21, 2021 expressing concern that the report did not show a single phone call, a single message, or a single email; only one contact was found; and it appeared that no WeChat data had been copied. (ECF No. 314-1; *see also* April 5 Report Excerpt at 14-17; Halegua Decl., Ex. 3). Plaintiffs therefore insisted it would be necessary for Ms. Cui (or her

---

[3] Earlier in this litigation, a former IPI employee, Kelley Butcher, successfully used MOBILedit to copy all of the WeChat and other data on her iPhone, resulting in a PDF report with over 49,000 pages of data. (Declaration of Kelley Butcher, May 25, 2020 (ECF No. 130)).

3

representative) to prepare a certification that complied with the Order, and stated their intention to move the Court for a finding of contempt if she failed to do so. (*Id.*)

On April 22, 2021, Mr. Lizama sent an email to Plaintiffs stating that Mr. Chi copied Ms. Cui's cell phone again that day and created a video of the recording. (Halegua Decl., Ex. 4). He also stated: "I am told we-chat record can't be copied. I am told it may require contact in China - due to heavy load of encryption." (*Id.*). Mr. Lizama also transmitted the PDF report ("April 22 Report") generated from this second copying procedure. Like the April 5 copy, this procedure also took under four minutes, produced a report of only 353 pages, and showed no phone calls, messages, or emails. (Halegua Decl. ¶8, Ex. 5). Once again, the page of the April 22 Report concerning copying of the WeChat application (page 118) states: "Application analysis is empty." (Halegua Decl., Ex. 6).

On April 22, 2021, Plaintiffs sent an email to Mr. Lizama stating that the same issues with the April 5 copying procedure had not been rectified and Plaintiffs had not been provided the screenshots or video demonstrating how the copying was performed. (Halegua Decl., Ex. 7). Plaintiffs once again insisted that Ms. Cui provide a certification that complies with the Order. (*Id.*) Plaintiffs also noted that a former IPI employee, Kelley Butcher, had successfully used MOBILedit to copy all of the data on her mobile phone, resulting in a report with 49,000 pages of data. (*Id.*)

On April 23, 2021, without responding to Plaintiffs' email or notifying Plaintiffs, Ms. Cui filed a request for the Court "to set a date and time for status and clarification of the court's prior order issued on March 31, 2021 requiring Ms. Cui to preserve ESI information contained on her phone." (ECF No. 313). The filing did not explain what aspect of the Order required clarification. The request was accompanied by the April 21 letter from Plaintiffs to Mr. Lizama (ECF No. 314-1), the April 23 email from Plaintiffs to Mr. Lizama (ECF No. 314-2), and a declaration from Mr. Chi, dated April 23, 2021 (ECF No. 314-2 ("Chi 4/23 Decl.")).

The same day, April 23, 2021, Plaintiffs sent an email to Mr. Lizama stating that neither the updated certifications, nor the screenshots and video of the copying process had been provided. (Halegua Decl., Ex. 8). Plaintiffs also noted the inconsistency between Mr. Lizama's statement that WeChat data could not be copied and the statement in Mr. Chi's April 23 declaration that "wechat was

4

copied." (*Id.*). Later that day, Mr. Lizama sent the screenshots and video, but he did not respond to the other concerns. Thus, on April 23, 2021, Plaintiffs sent another email to Mr. Lizama reiterating that the updated certifications had not been provided and posing specific questions about the ESI Data to be answered by Sunday, April 25. (Halegua Decl., Ex. 9). Mr. Lizama responded that he would "get back to [Plaintiffs]" on Monday, April 26. On April 24, 2021, Plaintiffs emailed Mr. Lizama to request that because so little data appears to be on Ms. Cui's phone, the questions posed by Plaintiff should be answered through a sworn statement by Ms. Cui. (Halegua Decl., Ex. 10). Plaintiffs also requested an explanation of what aspects of the Order required clarification. (*Id.*)

On April 26, 2021, Mr. Lizama sent a letter arguing that the "crux" of the Order was preserving Ms. Cui's phone. (Halegua Decl., Ex. 11). The letter did not address the fact that the Order covers ESI Data beyond Ms. Cui's cell phone. Plaintiffs were not provided with an updated certification detailing the ESI Data that Ms. Cui creates or uses. Plaintiffs were not provided any further information concerning why Ms. Cui's phone had so little data, whether Ms. Cui deleted any data, or whether Ms. Cui used any other SIM cards. (*Id.*). Crucially, Plaintiffs and the Court still have not received a clear statement affirming that Ms. Cui's WeChat data has been successfully preserved. (*Id.*).

## ARGUMENT

### A. Ms. Cui should be held in contempt for failing to comply with a Court Order.

A finding of contempt is appropriate when a party disobeys "a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *Id.* (*quoting In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987)). Where a third-party failed to comply with its obligation to preserve evidence, district courts have found it proper to hold that party in contempt and impose sanctions. *See, e.g., SonoMedica, Inc. v. Mohler*, No. 08-cv-230, 2009 WL 2371507, at *5 (E.D. Va. July 28, 2009) (finding non-parties in civil contempt for failing to produce documents, being untruthful during deposition, and not preserving the ESI on a computer; ordering non-parties to pay attorney's fees and referring matter to U.S. Attorney for criminal

contempt proceedings). *See also Poly-Med, Inc. v. Novus Sci. PTE Ltd.*, No. 17-cv-649, 2017 WL 2291942, at **2–4 (S.D. Cal. May 25, 2017) (issuing order to show cause why third-party that disobeyed subpoena should not be found in contempt); *Morgutia-Johnson v. City of Fresno*, No. 14-cv-00127, 2015 WL 1021123, at *3 (E.D. Cal. Mar. 9, 2015) (issuing order to show cause after third-party witness fails to appear at deposition).

Ms. Cui has not only violated the Order in *at least* three ways, but also made misleading representations to the Court. First, the Order requires that the certification by Ms. Cui's counsel describe "the search to identify any ESI Data …". (Order at 2). No document submitted by Ms. Cui discusses any effort to determine whether there might be any ESI Data in existence other than what is on Ms. Cui's phone, such as an email account or any computer that Ms. Cui has used. (Lizama Cert.; Chi 4/13 Decl.; Chi 4/23 Decl.). Furthermore, the documents do not even address what ESI Data is created/used by Ms. Cui on her phone, such as whether she makes phone calls, sends text messages, stores contact information, or uses iMessage, WeChat, WhatsApp, QQ, Facebook, or other social media platforms. (*Id.*) Ms. Cui entirely ignored this aspect of the Order.

Second, the Order requires that the certification by Ms. Cui's counsel "details the ESI Data that exists…". (Order at 2). Neither the Lizama Certification nor the two declarations by Mr. Chi complied with this directive. There is not a single statement as to what ESI Data has been created or used by Ms. Cui since March 26, 2020. The Lizama Certification only makes reference to "any ESI Data that *may* exist" (Lizama Cert. ¶5)—which falls far short of the Court's direction to detail the contents of that ESI Data. This is a clear failure to comply with the Order. Furthermore, without knowing what ESI Data exists, it is impossible to determine whether or not all ESI Data has been properly copied and preserved. This is particularly important given the infinitesimal quantity of ESI Data that appears to have been copied from Ms. Cui's phone, which apparently has no record of even a single phone call, email, or text message. (April 5 Report Excerpt at 15-17).

Third, the Order specifically mandates that the certification by Ms. Cui's counsel "affirms that a forensic copy of any cell phones, including WeChat data, has been made." Neither the Lizama Certification nor the two Chi declarations complied with this directive. No document affirms that all

ESI Data has been preserved. Furthermore, despite the clear instruction in the Order, there is no affirmation that a copy of Ms. Cui's WeChat data was preserved. (*Id.*) Instead, Mr. Lizama only made the non-committal statement that "any ESI Data that *may* exist *should* be in the USB for view" (Lizama Cert. ¶5 (emphasis added)). This statement is far short of an actual affirmation that a copy was preserved. Indeed, only after Plaintiffs' counsel raised this issue with Mr. Lizama did he admit that: "I am told we-chat record can't be copied. I am told it may require contact in China - due to heavy load of encryption." (Halegua Decl., Ex. 4). In other words, Ms. Cui and her representatives were aware that the WeChat data in fact had not been copied.

This statement in Mr. Chi's subsequent declaration is similarly misleading: "On the [April 5] report (page 118) it showed that wechat was copied and analyzed by the software MobilEdit." (Chi 4/23 Decl. ¶2). Once again, this is far from an affirmative verification that a copy of all data has been preserved. Notably, Ms. Cui also did not provide the Court with this report allegedly demonstrating that a copy was made. The reality is that page 118 of the April 5 Report shows that the size of the WeChat application was 382.0 MB and the user had 2.6 GB of data on the phone; however, it then states: "Application analysis is empty." (Halegua Decl., Ex. 3). This suggests that no copy was made.

Furthermore, the video of the backup provided by Ms. Cui also makes clear that the 2.6 GB of user data was not copied. The video reveals that the folder of copied "phone_files" only contains 306 MB of data; thus it is extremely unlikely to contain the 2.6 GB of WeChat data. (Halegua Decl. ¶15). Additionally, Plaintiffs consulted with two ESI experts who both believed that based on the fact that the copying process was less than four minutes, the "Application analysis is empty" message in the April 5 Report and April 22 Report, and the small size of the copied phone files, it is highly implausible that a complete copy of the WeChat data, let alone the entire phone's contents, was actually made. (*Id.* ¶16). Finally, indeed, Ms. Cui has still not filed a certification unequivocally stating that the WeChat or other phone data has all been successfully copied and preserved.[4]

---

[4] Plaintiffs also note a discrepancy concerning Ms. Cui's SIM card. During her February 5, 2021 deposition, Ms. Cui testified that her cell phone had a ten-digit number that began with the numbers "133," and that she did not have a Saipan phone number. (Cui Dep. Tr., dated Feb. 5, 2021 (ECF 296-2) at 40:2-5). This format is consistent with a mobile telephone number for mainland China. (*See* Wikipedia, "List of mobile telephone prefixes by country,"

### B. Ms. Cui should be ordered to provide a sworn statement concerning the devices she used and the ESI Data she used/created, and send all necessary devices and passwords to a third-party vendor to make forensic images and analyze the ESI Data.

The implausibly small amount of data copied from Ms. Cui's cell phone, the discrepancy concerning her SIM card, and conflicting statements from her representatives raise serious concerns and require an explanation. In order to avoid problems with hearsay and limit issues with translation, Ms. Cui herself should be ordered to provide a sworn statement concerning the devices she has used and the ESI Data she has used/created since March 26, 2020. This is necessary to provide a roadmap as to what devices and SIM cards need to be collected and what ESI Data needs to be preserved. The proposed order to show cause submitted by Plaintiffs enumerates several questions concerning these topics that Ms. Cui should explain clearly.

Since Ms. Cui and her associates have failed to successfully preserve a copy of even the limited ESI Data on the mobile phone that has been identified, the Court should order her to engage an independent third-party vendor in the United States, consented to by Plaintiffs, to make forensic images of all available ESI Data. Plaintiffs have consulted with two reputable vendors and this can be accomplished for under $3,000. Ms. Cui should be ordered to immediately turn over all mobile phones, SIM cards, and any other devices to Mr. Lizama, as well as provide any and all passwords, so that they may be delivered to the vendor and appropriate copies may be made. This same vendor should then be directed to perform an analysis of the ESI Data that is recovered and report on whether any data has been deleted, and share its findings with Plaintiffs. Ms. Cui should then file a sworn statement from the vendor verifying that all ESI Data, including Ms. Cui's WeChat account, has been preserved as well as stating the key findings from its analysis of the data. Ms. Cui should bear all costs related to the engagement of the third-party vendor.

---

https://en.wikipedia.org/wiki/List_of_mobile_telephone_prefixes_by_country). However, the April 5 Report and April 22 Report list the "SIM Card Country" as "United States." (*See*, *e.g.*, April 5 Report at 2). The third digit of the "ICCID" code for the SIM card, a "1," also indicates that the SIM card is from North America. (*Id.*). This is a further reason why Ms. Cui must be compelled to explain under oath the various devices and SIM cards that she has used since March 26, 2020. This discrepancy also raises questions about the current status of Ms. Cui's WeChat account because she testified in her deposition that the account was linked to her 133- number. (Cui Dep. Tr., at 40:11-13). If she is no using that number, it may have implications for accessing and copying her account.

8

### C. A substantial daily fine is an appropriate coercive civil contempt sanction for Ms. Cui given her financial situation and pattern of disrespecting the Court's authority.

If a lawful order or command is disobeyed, a district court has "the power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority…." 18 U.S.C. § 401. In determining an appropriate sanction, "the court must 'consider the character and magnitude of the harm threatened by continued contumacy, and the probabl[e] effectiveness of any suggested sanction in bringing about the desired result.'" *Morgutia-Johnson*, 2015 WL 1021123, at *3 (*quoting Bademyan v. Receivable Mgmt. Servs. Corp.*, No. 08-cv-00519, 2009 WL 605789, at *3 (C.D. Cal. Mar. 9, 2009)).

It is notable that just two months ago, Ms. Cui was held in contempt and ordered to pay a monetary sanction by this Court for refusing to comply with a subpoena. (ECF No. 299). This shows a pattern of behavior by Ms. Cui designed to obstruct Plaintiffs from accessing needed information, even if it means disobeying the Court's orders and paying financial penalties. Therefore, monetary sanctions alone may prove insufficient to compel Ms. Cui to comply with the preservation Order, and even harsher sanctions may ultimately prove to be necessary. *See Trustees of Heating, Piping & Refrigeration Pension Fund v. Clean Air Mech., Inc.*, No. 17-cv-3690, 2020 WL 6395292, at *2 (D. Md. Nov. 2, 2020) (incarcerating party where "experience indicates that monetary penalties alone will be insufficient to coerce compliance"). Nonetheless, if the Court chooses to begin with a financial sanction, it should be significant in light of Ms. Cui's financial resources.[5] Plaintiffs recommend that the Court impose an initial daily fine of at least $10,000 until Ms. Cui complies with the Order.

---

[5] In 2017, Ms. Cui was one of Hong Kong's 50 richest people. *See* Emmanuel T. Erediano, "Hong Kong billionaire showcases Saipan casino suites," *The Guam Daily Post*, June 6, 2020, https://www.postguam.com/news/cnmi/hong-kong-billionaire-showcases-saipan-casino-suites/article_f35e9b26-a6ea-11ea-9367-fbc38bdf3ead.html (accessed January 27, 2021).

### D. Ms. Cui should be ordered to pay Plaintiffs' reasonable attorneys' fees and costs.

The Court may award the payment of attorneys' fees and costs as a compensatory civil contempt sanction, including against a third-party witness. *In re Sula, Inc.*, No. 15-BK-23350, 2016 WL 3960513, at *4 (Bankr. C.D. Cal. July 15, 2016); *SonoMedica, Inc.*, 2009 WL 2371507, at *5. Ms. Cui's disobedience has already caused Plaintiffs to expend a substantial number of attorneys' hours to compel her compliance with the Order, including exchanging letters and emails as well as telephone calls with her counsel. The misleading statements provided by Ms. Cui, and then refusal to explain the lack of data in the April 5 Report, also forced Plaintiffs to spend numerous hours conducting their own investigation as to whether a legitimate copy of her cell phone data had been preserved, including multiple consultations with ESI experts. Therefore, Ms. Cui should be required to compensate Plaintiffs for these efforts as well as the preparation and litigation of this motion.

### CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court issue an order to show cause as set forth above. The order should provide Ms. Cui an opportunity to respond and set a hearing date. Given the risk that any ESI Data will be manipulated or lost, particularly in light of Ms. Cui's demonstrated bad faith up to this point, Plaintiffs request that the hearing date be soon. In order to assist the Court, Plaintiffs are sending a proposed order to the Clerk.

DATED: April 27, 2021.

                                         /s/
                                       Aaron Halegua
                                       Bruce Berline

                                       Attorneys for Plaintiffs