Bruce Berline
LAW OFFICE OF BRUCE BERLINE, LLC
Second Floor, Macaranas Building
PO Box 5682 CHRB
Saipan, MP 96950
Tel: (670) 233-3663
Fax: (670) 233-5262
Email: bruce@saipanlaw.com

Aaron Halegua
AARON HALEGUA, PLLC
524 Broadway, 11th Floor
New York, New York 10012
Tel: (646) 854-9061
Email: ah@aaronhalegua.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| TIANMING WANG, *et. al*,<br><br>Plaintiffs,<br><br>v.<br><br>GOLD MANTIS CONSTRUCTION DECORATION (CNMI), LLC, *et. al*,<br><br>Defendants. | Case No. 18-cv-0030<br><br>**PLAINTIFFS' STATUS REPORT ON LIJIE CUI'S COMPLIANCE WITH THE COURT'S CONTEMPT ORDER**<br><br>Hearing Date: October 4, 2021<br>Hearing Time: 8:30 a.m.<br>Judge: Hon. Ramona V. Manglona |

## Introduction

On August 25, 2021, after a more than three-hour hearing on its Order to Show Cause against Lijie Cui, the Court issued an order finding Ms. Cui in contempt for violating the Preservation Order and related orders, directing that Ms. Cui pay Plaintiffs' attorneys' fees and costs, and identifying additional sanctions that would be imposed if Ms. Cui persisted in her failure to comply with the

Court's orders.[1] (ECF No. 411 ("Contempt Order")). The Contempt Order required, *inter alia*, that Ms. Cui file an amended sworn statement within five (5) days of the Contempt Order "clearly explaining" ten specific items. (*Id.* at 2-3). During the OSC hearing, the Court made crystal clear that this would be Ms. Cui's "final warning [that] it's time to come forward" about her ESI Data and devices. (Hr'g Tr. 8/25/21 at 60:4-5). The Court was also clear that *all* information should be incorporated into this new amended submission so that Plaintiffs and the Court do not need to cross-reference this updated declaration with her prior statements, and to eliminate ambiguity as to which elements of her prior statements she is still asserting to be true and which she acknowledges are false. (Hr'g Tr. 8/25/201 at 64:12-16 ("it's best that it's just all in one submission")). Ms. Cui was also required to tender her computer to TransPerfect to be preserved and analyzed.

On August 30, 2021, Ms. Cui submitted her first amended declaration regarding ESI Data. (ECF No. 414 ("Amended ESI Declaration")). The Amended ESI Declaration did not comply with the Contempt Order, which Plaintiffs explained in a letter to Ms. Cui, dated September 15, 2021 (the "Deficiency Letter," which is attached as **Exhibit 1**). On September 24, 2021, Ms. Cui then filed another amended declaration regarding ESI Data. (ECF No. 426 ("Second Amended Declaration")). Even after Plaintiffs meticulously described the deficiencies in the Amended ESI Declaration, her second attempt still does not comply with the Contempt Order because it fails to clearly explain each item required by the Court, wholly ignores certain items, and provides information that is contradicted by other evidence.[2] Indeed, although the amended declarations submitted by Ms. Cui

---

[1]  The defined terms used herein shall have the same meaning as in Plaintiffs' Response to the OSC (ECF No. 400), unless otherwise noted.

[2]  Ms. Cui was previously ordered to submit a Chinese-language version of her declaration. During the OSC hearing, however, the Court did not explicitly make this requirement, but warned Ms. Cui that "any other false or misrepresentations that was adopted by counsel can only be attributed to

were supposed to be comprehensive and integrate all relevant information, each one was only a few pages in length and significantly *shorter* than her original ESI declaration filed on June 10, 2021. (*See* ESI Declaration, ECF No. 335).

Moreover, Plaintiffs have obtained additional evidence—including the Declaration of John Lizama, dated September 22, 2021 ("Lizama Decl."), the Second Declaration of Fely P. Forbes, dated September 27, 2021 ("Second Forbes Decl."), and the Third Declaration of Jonathan Langton, dated September 24, 2021 ("Third Langton Decl."), who analyzed Ms. Cui's computer—that Ms. Cui has made numerous additional false statements under oath and continues to defraud Plaintiffs and the Court. These three declarations are being filed along with this status report.

### Summary of Ms. Cui's Disobedience and Efforts to Defraud

The clear deficiencies in Ms. Cui's Supplemental Amended Declaration that violate the Contempt Order, and the other evidence demonstrating that Ms. Cui has violated the Court's orders, includes but is not limited to:

- There is still no explanation as to why a brand-new SIM card was sent to TransPerfect.

- Ms. Cui still has not tendered the Saipan SIM card that she used during the relevant period.

- Ms. Cui still has not explained why TransPerfect detected about 80 non-WeChat phone calls on the tendered phone.

- Ms. Cui still offers no explanation why CNMI Representative Christina Sablan's phone number is stored in the "Contacts" application of the tendered phone.

---

her." (Hr'g Tr. 8/25/21 at 61:1-2). Ms. Cui has chosen to submit these amended declarations in English along with a certification that it was accurately translated for her prior to signing. Therefore, Ms. Cui is fully responsible for all the contents of these amended declarations. Ms. Cui "cannot hide behind" the defense that she did not know what her lawyers were stating. (*Id.* at 61:6-9).

- Ms. Cui does not state the storage capacity or precise iPhone X model (i.e. whether it is an iPhone X, iPhone Xs, or iPhone Xs Max) of her Hong Kong cell phone.

- There is still no explanation of why the tendered phone was wiped clean on March 21, 2021 or how it was restored; in fact, this event is not even mentioned in the Second Amended Declaration despite the Deficiency Letter noting this omission.

- There is zero mention of any ESI backups (even after the Deficiency Letter noted this omission), let alone a clear explanation as to how backups were created, who created them, where they were stored, or how a backup was installed on the tendered phone when it was initialized on March 21, 2021.

- Ms. Cui did not disclose that the computer had actually been moved from her residence months after the Preservation Order took effect.

- Ms. Cui did not disclose that Mr. Xing Tao used the computer, let alone that he even continued to use it after the OSC was issued by the Court.

- Ms. Cui did not identify her QQ email address.

Evidence obtained by Plaintiffs also demonstrates further violations of the Preservation Order by Ms. Cui, efforts to defraud the Court, and additional false testimony by her, including:

- The computer in Ms. Cui's residence was moved to another location months after the Preservation Order took effect, and Ms. Cui never disclosed this fact until *after* pressed by Plaintiffs in their Deficiency Letter.

- Ms. Cui's computer continued to be used by other individuals even after her attorneys learned of the computer during her deposition in July 2021—including Mr. Xing Tao checking his email, someone accessing WhatsApp via a web application, and someone connecting USB drives to the computer.

- Ms. Cui now (incredibly) testifies that her Hong Kong SIM card was lost in March 2021, after she and Mr. Chi provided multiple sworn statements that the phone had two SIIM cards up through May 10, 2021. Further, Ms. Cui's purported corroborating evidence is a statement issued four months after the alleged event by someone with no personal knowledge of the alleged loss of the SIM card.

- Ms. Cui tendered TransPerfect a silver phone and now testifies that she only used her "Rose Gold" iPhone 12 Pro Max after May 10, 2010 (Second Amended Declaration at 3). However, Mr. Lizama testified that he observed Ms. Cui using a rose-gold phone on at least two occasions in January and February, 2021, and that was not the phone he was given by Ms. Cui. Moreover, the IT&E receipt showed that Ms. Cui purchased a "gold" color iPhone 12 Pro Max on May 10, 2021; Apple does not make this model phone in a "rose gold" color.

- Ms. Cui testified that her old phone held two SIM cards, Mr. Chi stated that her old phone held two SIM cards, and Fely Forbes testified that she was given a "dual SIM" phone on May 10, 2021; however, the phone tendered to TransPerfect only holds a single SIM card.

In short, it is indisputable that Ms. Cui has violated the Contempt Order and that she has provided false testimony to this Court. There is also clear evidence that she continues to defraud Plaintiffs and this Court. As monetary sanctions have once again proven insufficient to compel compliance, Ms. Cui should be incarcerated until she complies with the Court's order.

### Detailed Discussion of Ms. Cui's Violations of Court Orders, False Statements, and Efforts to Defraud the Court

This section provides greater detail and citations to evidence demonstrating that Ms. Cui has violated the Contempt Order and several of the Court's previous orders, presented false testimony to the Court, and continues in her effort to defraud the Court.

- Ms. Cui still has not explained why an unused SIM card was sent to TransPerfect, nor has she tendered the Saipan SIM card that she used during the relevant period. Prior to the contempt hearing, Plaintiffs notified the Court and Ms. Cui that an unused SIM card had been tendered to TransPerfect and asked for an explanation. No explanation was offered either prior to or after the contempt hearing. Ms. Cui's Amended ESI Declaration, far from "clearly explaining" her SIM Card situation, only states that she had one Hong Kong SIM card and two Saipan SIM cards. (Amended ESI Decl. at 3). In the Deficiency Letter, Plaintiffs state that "Ms. Cui does not provide the information requested in the Contempt Order about her SIM cards, nor does she explain why an unused SIM card was sent to TransPerfect." However, Ms. Cui still failed to address this issue. Her most recent declaration once again states that she had three SIM cards, all of which were used by her. Thus, it remains entirely unclear why the SIM card tendered to TransPerfect was unused. Furthermore, none of the SIM cards that actually were used by Ms. Cui—such as the Saipan SIM card allegedly purchased by Mr. Liu and used by Ms. Cui—have been tendered, despite the clear direction in the Contempt Order to do so. (Contempt Order at 4).

- Ms. Cui provided no information about the "initialization" of her old phone in March 2021 or about any backups of her mobile phone. TransPerfect discovered that the tendered cell phone was wiped clean in March 2021 and an iTunes backup was installed on the phone. The Contempt Order thus required Ms. Cui to provide "a description of all ESI backups … used by Ms. Cui since March

26, 2020." (Contempt Order at 3). The Amended ESI Declaration did not mention any backups. This fact was pointed out in the Deficiency Letter. Nonetheless, Ms. Cui still provided no information about any backups in her Second Amended ESI Declaration. Similarly, Ms. Cui still provides no explanation—or even mention—of the initialization in March 2021 and what information was installed onto the cell phone. (*See* Hr'g Tr. 8/25/21 at 69:13-16 (ordering that Ms. Cui address the various deletions of data and "reconcile all those crashes; the Circle of Death explanation.")). This is a crucial piece of information in determining where ESI data may be stored, but Ms. Cui refuses to even acknowledge the Court's order to provide this information, let alone comply.

- Ms. Cui still offers no explanation why Representative Christina Sablan's phone number is stored in the "Contacts" application of the tendered phone. After Ms. Cui initially claimed that she never used the "Contacts" application on her phone but only WeChat (ESI Decl., ECF No. 335 ¶36(6)), Plaintiffs demonstrated that an entry for Representative Christina Sablan existed in the tendered phone's "Contacts." (*See* Pl.'s Response to OSC, ECF No. 400 ¶28). This fact was even discussed at the OSC hearing on August 25, 2021. (Hr'g Tr. 8/25/21 at 33:24-34:2). Nonetheless, Ms. Cui provides no explanation for this blatant contradiction. Indeed, the issue of backups is *not even addressed* in her Second Amended Declaration, even after Plaintiffs noted this failure in their Deficiency Letter.

- Ms. Cui did not disclose her QQ email address. Fely Forbes has testified that she noticed that on May 10, 2021, Ms. Cui used a "qq.com" email address to log into her iCloud account. (Second Forbes Decl. ¶7). However, Ms. Cui does not mention having a QQ email address in any of her statements, including the Second Amended Declaration. Furthermore, although she alleges that she has not used QQ in two years, Ms. Cui testified that she has the QQ application on the phone that she

allegedly purchased in Saipan in May 10, 2021. (Second Amended Decl. at 4). This fact suggests that Ms. Cui does still use QQ.

- Ms. Cui moved the computer months after the Preservation Order and never disclosed this fact. At her deposition, Ms. Cui testified that she had a computer at her residence at Flametree. However, the computer sent to TransPerfect was taken from Chalan Laulau—a fact never addressed, let alone "clearly explained," in Ms. Cui's Amended ESI Declaration. (*See* Amended ESI Decl.). Only *after* Plaintiffs sent their Deficiency Letter did Ms. Cui then allege (without any corroborating evidence) that the computer was moved in June 2020—a date conveniently prior to her deposition but still several months *after* Plaintiffs had already moved for an OSC why Ms. Cui should not be held in contempt for violating the Preservation Order.

- Not only did Ms. Cui fail to tender the computer after the deposition, Xing Tao and others continued using the computer to access email, access WhatsApp, and attach external hard drives long-after Ms. Cui's deposition. The existence of Ms. Cui's computer was revealed to Plaintiffs for the first time at her deposition on July 20, 2021. At the contempt hearing, Ms. Cui's counsel agreed that the computer should have been tendered at that point (Hr'g Tr. 8/25/21 at 38:13-39:11), but it was not. Ms. Cui and her counsel provided the assurance that the computer was "sitting in the same place that it's always been sitting in" (*id.* at 39:12-15), but the reality is that the computer had been moved from her residence.

Furthermore, Ms. Cui not only failed to preserve the computer after her deposition by immediately making a forensic copy, but the analysis by TransPerfect shows that other people continued using the computer even after the deposition. For instance, somebody (presumably Mr.

Xing Tao) used the computer to log into the email address "tao_xing@yahoo.com" in August, 2021.[3] (Third Langston Decl. ¶15, Ex. 5). The computer was used to log into a WhatsApp account on August 2, 2021 and August 18, 2021. (*Id.* ¶16, Ex. 5). In addition, multiple external hard drives were connected to the computer after the Preservation Order and even after the deposition. (*Id.* ¶¶18, 20, Ex. 6, Ex. 7). Hence, once again, Ms. Cui blatantly disregarded the obligation to preserve the computer, even after her new counsel was made aware of its existence.

- <u>Ms. Cui has lied about what happened to her Hong Kong SIM card</u>. In her Second Amended ESI Declaration, Ms. Cui now provides *another* story about the "loss" of her Hong Kong SIM card—that IT&E lost the card when IPI employee Hanqin Liu took Ms. Cui's phone there in March 2021 to buy Ms. Cui a CNMI SIM card. (Second Amended ESI Decl. at 2).

This story is not credible for a number of reasons. First, although the SIM card was allegedly lost in March 2021, *nobody* mentioned or even raised this defense until after the contempt hearing. Second, Mr. Liu's original declaration only states that he "purchased" a SIM card for Ms. Cui at IT&E in March 2021; *no* mention is made of a SIM card being lost. (ECF No. 318-14). Third, Ms. Cui and Mr. Chi repeatedly stated under oath that when they gave the old phone to Fely Forbes at IT&E on May 10, 2021, it had two SIM cards. (ECF No. 324-1; ESI Declaration, ECF No. 335 ¶4; *id.* ¶21 ("Howyo Chi and I went to Saipan IT&E… I gave Chi the old phone with two cards")).

The *only* evidence that Ms. Cui proffers in support of this new story is an unsworn statement by Janice Tenorio of IT&E signed four months after the alleged incident, but this should not be given any evidentiary weight. Indeed, after Plaintiffs sent a subpoena to IT&E, Ms. Tenorio has confirmed that she did not assist Mr. Liu back in March 2021; she has no personal knowledge of the

---

[3] In addition, Ms. Cui stated in her Second Amended Declaration that the "*only* people with access to the computer were How Yo Chi and Ms. Guan Manni," but that appears to be false. (Second Amended Declaration at 3) (emphasis added).

card being lost; IT&E has no records of the card being lost; IT&E has no written policy concerning when to dispose of SIM cards; and she signed the statement because "she wanted to help [a] customer." (**Exhibit 2** is a copy of the letter from Janice Tenorio, dated September 29, 2021, clarifying her prior signed statement). Therefore, the great weight of the evidence shows that Ms. Cui's SIM card was not lost by IT&E on March 18, 2021, but that she still had it in May 2021. Thus, Ms. Cui still has not provided a plausible explanation for why this SIM card has never been tendered.

- The silver iPhone that holds a single SIM card tendered by Ms. Cui is not the phone (or at least not the only phone) that she used during the relevant period. Ms. Cui tendered TransPerfect a silver iPhone with a single SIM card tray (Third Langton Decl. ¶4) and she has now testified that this silver iPhone and the Samsung phone are the only ones that she used during the relevant period. However, numerous crucial pieces of evidence from third-parties, as well as Ms. Cui's multiple sworn statements and Mr. Chi's own admissions, demonstrate that the phone she sent to TransPerfect is not the phone (or the only phone) that she was using during the relevant period.

First, Mr. Lizama observed Ms. Cui using a rose-gold iPhone, which has a pink color, but Ms. Cui has never admitted to using this phone. In his June 23, 2021 email to Mr. Chi, Mr. Lizama documented that he saw Ms. Cui using a rose-gold iPhone. (ECF No. 401-10). After being confronted with this evidence at the OSC hearing, Ms. Cui tried to argue that the rose-gold iPhone is the one purchased in May, 2021. (Hr'g Tr. 8/25/21 at 65:16-20). However, Mr. Lizama's declaration demonstrates that this is not true: he saw Ms. Cui using the pink-colored, rose-gold iPhone on at least two occasions, in January and February, 2021, near the beginning of his involvement in this case (Lizama Decl. ¶¶3, 4)—months prior to when Ms. Cui purchased a phone in May, 2021. Mr. Lizama has stated under oath that the phone tendered to him (and then to TransPerfect) is not the rose-gold iPhone that he had previously seen. (*Id.* ¶5).

<u>Second</u>, the phone purchased on May 10, 2021 is not even a pink-colored "rose-gold" iPhone. While Ms. Cui states in her Second Amended ESI Declaration that the phone is a "Rose Gold I-Phone 12, Pro Max" (ECF No. 426 at 3), the receipt for the phone purchased on May 10, 2021 at IT&E shows the phone is an "iPhone 12 Pro Max 128 GB Gold" (ECF No. 415-1), which is a gold color and not a pink or rose color. In fact, the iPhone 12 Pro Max is not sold in a pink or "rose-gold" color, only in silver, graphite, gold, and pacific blue.[4] Moreover, Ms. Cui testified at her deposition that the phone she used after May 10, 2021—which she conveniently did not bring to the deposition—was a "white or gray…but the side is gold." (Cui Dep. Tr. 7/20/21 at 94:18-19). In short, the rose-gold iPhone that Mr. Lizama saw is <u>not</u> the iPhone 12 Pro Max that Ms. Cui allegedly purchased on May 10, 2021. Moreover, Ms. Cui's Amended ESI Declaration still fails to provide truthful and accurate information about her phone.

<u>Third</u>, the evidence overwhelmingly shows that Ms. Cui had a "dual SIM" phone, but the phone sent to TransPerfect only holds a single SIM card and Ms. Cui has not accounted for the "dual SIM" phone. Ms. Cui testified under oath on multiple occasions that she had two SIM cards in her old cell phone. (*See* ECF No. 324-1 ("I handed my old phone with 2 SIMS to him after we bought the new phone"); ECF No. 327-2 ("the old phone was given to our lawyer straight with the Hongkong SIM Card in it"); ESI Decl., ECF No. 335 ¶21 ("I gave Chi the old phone with two cards.")). Mr. Chi also testified repeatedly about the old phone being able to accommodate two SIM cards. (*See*, e.g., ECF No. 324-12 ¶3 ("I asked Fellie if she had already transferred the old sims onto the new phone too and she said that she's already done that…"); *id.* ¶4 ("Without double checking of how many SIIMS were in the phone …"); *id.* ¶6 ("My best guess is that the Hong Kong SIM card

---

[4]  The available colors of the iPhone 12 Pro Max can be viewed by accessing the Apple website (https://www.apple.com/il/iphone-12-pro/) and clicking on the "Tech Specs" tab at the top.

may have been lost while transferred old data to new phone at IT&E.)). Fely Forbes also confirms that when Mr. Chi came to IT&E on May 10, 2021, he told her that the phone that he wanted copied was a "dual SIM" phone. (Second Forbes Decl. ¶6).

Even if the Court were to believe the latest (albeit totally incredible) story that Ms. Cui and Mr. Chi both failed to realize that the Hong Kong SIM card was actually lost back in February, 2021, the mere fact that they believed that the Hong Kong SIM card *may* have been in the phone on May 10, 2021 (after Mr. Liu had already put in the Saipan SIM card) demonstrates that Ms. Cui's phone at least had the capacity to hold two SIM cards. And, indeed, Ms. Forbes observed that the phone she was handed was a "dual SIM" phone with such capacity. (Second Forbes Decl. ¶6). However, the phone tendered to Mr. Lizama and sent to TransPerfect is only able to handle a single SIM card. (Third Langton Decl. ¶4). Therefore, there must be another "dual SIM" phone that Ms. Cui was using that has never been identified by Ms. Cui, let alone tendered to her attorneys.

## **Conclusion**

After Plaintiffs caught Ms. Cui in a pattern of lies and obfuscation, including what the Court identified as "surreptitious conduct, deleting, [and] pointing fingers" (Hr'g Tr. 8/25/21 at 72:4-5), the Court found Ms. Cui in contempt and ordered that she provide a comprehensive declaration that "clearly explain[s]" her ESI devices and creation of ESI Data. The Court *twice* said that this was Ms. Cui's "final warning." (*Id.* at 60:4-5; 83:18-22). Nonetheless, Ms. Cui still did not comply with the Contempt Order by providing the requested information. *Even after* Plaintiffs sent the Deficiency Letter, Ms. Cui still has not provided the requested information, let alone "clearly explain[ed]" the points identified by the Court. For example, Ms. Cui claims to possess an iPhone 12 Pro Max "Rose-Gold," which does not exist and does not match the receipt. Ms. Cui has not even addressed the issue

of ESI backups, contacts on her phone, or the deletion of all data in March 2021. This constitutes a clear violation of the Contempt Order by Ms. Cui. *See Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 287 (N.D. Cal. 2015) (where party did not explain its initial failure to disclose call records, court found that the failure "was a bad faith misrepresentation worthy of sanctions").

The Contempt Order further ordered Ms. Cui to "[i]mmediately turn over any remaining SIM cards and other devices" used since March 26, 2020 (Contempt Order at 4), but Ms. Cui still has not tendered the Saipan SIM card allegedly put in her phone by Mr. Liu, nor has she explained why an unused SIM card was tendered to TransPerfect. This constitutes a clear violation of the Contempt Order by Ms. Cui.

In addition, the evidence shows that Ms. Cui violated the Court's orders by failing to secure and preserve the data on the computer; instead, people (including Xing Tao, who was not listed in her declarations) continued using the computer after it was identified at her July 2021 deposition.

In terms of the physical cell phone, the evidence also shows that Ms. Cui had a "dual SIM" phone, but this phone was not tendered to TransPerfect. The evidence also shows that Ms. Cui had a pink-colored "rose gold" phone in January and February, 2021, but this is not the phone tendered to TransPerfect. This confirms that Ms. Cui has been defrauding Plaintiffs and the Court, and Ms. Cui provides no explanation to account for this evidence. *See Lofton*, 308 F.R.D. at 287 (failure to explain is ground for sanctions).

The Court had warned Ms. Cui that "this needs to be a final warning [that] it's time to come forward." (Hr'g Tr. 8/25/21 at 60:4-5). The Court then repeated its "final warning" and stated that "if the motivation of sanctions, the monetary fines, does not work, the last piece of power that I have is a possible finding of contempt with some sort of jail term" (Hr'g Tr. 8/25/21 at 83:18-22). Unfortunately, after those warnings, Plaintiffs and the Court are no closer to understanding what

devices Ms. Cui actually used or what happened to her ESI Data. Ms. Cui cannot continue to waste Plaintiffs' and the Court's time with false statements, untruthful stories, and incomplete declarations. Ms. Cui should face a daily fine and incarceration until the time that she provides a truthful explanation for the areas identified by the Court, provides all SIM cards and ESI devices, and otherwise complies with the Court's orders.

DATED: September 29, 2021.


_____/s/_____

Aaron Halegua
Bruce Berline

Attorneys for Plaintiffs

Exhibit 1

# AARON HALEGUA, PLLC

524 Broadway, 11th Floor
New York, NY 10012
T: (646) 854-9061 ♦ E: ah@aaronhalegua.com

September 15, 2021

Clyde Lemons, Jr.
Lujan & Wolff LLP
300 DNA Building
238 Archbishop Flores Street
Hagatna, Guam 96910
Tel: (617) 477-8064
E-mail: clemons@lawguam.com

**_Via electronic mail_**

RE:    Deficiencies in Lijie Cui's Amended Declaration
Case No. 18-cv-0030: _Tianming Wang, et al. v. Gold Mantis, et al._

Dear Mr. Lemons,

On August 25, 2021, the Court issued an order finding your client, Ms. Lijie Cui, in contempt. (ECF No. 411 ("Contempt Order")). The Contempt Order required, _inter alia_, that Ms. Cui file an amended sworn statement within five (5) days of the Contempt Order "clearly explaining" ten specific items. (_Id._ at 2-3). During the hearing, the Court was very clear that _all_ information should be incorporated into this new amended submission so that Plaintiffs and the Court do not need to cross-reference this updated declaration with her prior statements, and to eliminate ambiguity as to which elements of her prior statements she is still asserting to be true and which she acknowledges are false. (Hr'g Tr. 8/25/201 at 64: 12-16).

On August 30, 2021, Ms. Cui filed her updated declaration (ECF No. 414 ("Amended Declaration"))—a four-page document accompanied by five exhibits. The Amended Declaration simply does not provide the information requested in the Contempt Order. Moreover, despite the events that have led the parties to this point, most of the responses are vague and lacking in detail, precision or definitiveness. The Amended Declaration also does not acknowledge or explain many of the questions raised in Plaintiffs' response to the OSC that resulted in Ms. Cui being held in contempt. (ECF No. 400). In fact, many aspects of the Amended Declaration create more questions because they contradict other sworn statements have been submitted to the Court. In short, the Amended Declaration falls far short of "clearly explaining" the items identified in the Contempt Order. Instead, it constitutes one more bad faith act by Ms. Cui to create an appearance of compliance while actually continuing to defy the Court and obstruct efforts to determine the truth about the ESI that she created and/or used.

While by no means an exhaustive list of the Amended Declaration's inadequacies, some of the more glaring deficiencies include:

- Ms. Cui does not state when she got the HP computer and from whom, where she kept the computer, or any other details.

- Ms. Cui only describes the Gmail account that she allegedly established to create an iCloud account, but does not definitively state whether she had any other email accounts or whether she ever sent or received emails from any other account.

- Ms. Cui does not state what telephone numbers are linked to her WeChat account(s) or what WeChat ID(s) were used by her during the relevant period.

- Ms. Cui does not provide information about the dates that the "Hong Kong cell phone" was used, the precise model of the phone, or its storage capacity.

- Ms. Cui describes the cell phone that she "gave to Mr. Lizama," but there is no definitive statement as to whether this is (along with the Samsung phone) the *only* cell phone used by her during the relevant period. There is no statement as to whether the "Hong Kong cell phone" is the same phone that was given to Mr. Lizama.

- Ms. Cui does not state the color of her "current cell phone."

- Neither Ms. Cui nor Mr. Chi clearly state whether the phone onto which Ms. Fely Forbes copied Ms. Cui's data is the same as the "current cell phone" that she is using today (and whether this is the same as the rose-gold phone purchased on May 10, 2021).

- Ms. Cui does not explain what Henan Ma did with the Samsung phone or what efforts she has made to find out.

- Ms. Cui does not provide a description of all ESI backups that she has used since March 26, 2020.

- Ms. Cui does not provide the information requested in the Contempt Order about her SIM cards, nor does she explain why an unused SIM card was sent to TransPerfect.

- Ms. Cui still denies any data ever being deleted from her phone, even though it has already been demonstrated that the phone tendered to TransPerfect was wiped clean of all data.

- Ms. Cui does not state the dates that she deleted WeChat messages, does not provide any indication of how many messages she deleted, and does not state whether she ever stopped deleting messages.

- Ms. Cui does not provide any information about the devices used by Mr. Chi or Ms. Zhu to make communications on her behalf, such as the phones/phone numbers, email addresses, or computers that they used.

In light of the numerous deficiencies and shortcomings of the Amended Declaration, Plaintiffs believe that Ms. Cui has failed to comply with the Contempt Order and that additional sanctions should be imposed. In addition, Ms. Cui should prepare and file a revised declaration that complies with the Contempt Order. (This should be a single declaration that contains all responsive information.) The revised declaration should not only address the deficiencies outlined in this letter, but also "clearly explain" all aspects of Ms. Cui's creation or use of ESI and address the questions identified in Plaintiffs' multiple Court filings, including Plaintiffs' OSC response (ECF No. 400), and at the August 25, 2021 hearing. Plaintiffs request that this revised declaration be filed on or before September 20, 2021, otherwise Plaintiffs will raise this issue with the Court.

Please let us know if you would like to discuss these issues.

Sincerely,

Aaron Halegua
Bruce Berline

Attorneys for Plaintiffs

CC:    David Lujan (djl@lawguam.com)
       Joey P. San Nicolas (jpsn@sannicolaslaw.net)

Exhibit 2



September 29, 2021


Dear Mr. Halegua,

I have discussed your subpoena with IT&E's general counsel, Steven Carrara. I am writing to clarify a few points concerning the "IT&E Statement" that I signed on July 14, 2021.

On March 18, 2021, Mr. Liu was helped by another IT&E employee. I personally do not recall any interactions with him on that day.

IT&E's system has a record showing that Mr. Liu activated a SIM card on March 18, 2021. However, there are no notes in IT&E's system that discuss anything relating to an old SIM card or a foreign SIM card.

IT&E has no written policies concerning how to handle customer's old SIM cards or how to handle foreign SIM cards.  Generally, if a customer does not request a return of the SIM card, foreign or not, it is disposed after about a week.

I recall that on or around July 14, 2021, Mr. Liu came to the IT&E CLL store and asked an IT&E employee for a signed statement that IT&E did not return his foreign SIM card back on March 18, 2021. Mr. Liu insisted to the other IT&E employee that he needed a statement from IT&E, and I wanted to help our customer, so I agreed to sign the "IT&E Statement" as a manager of the store.

Sincerely,

Janice Tenorio
IT&E Customer Service Manager