Bruce Berline
LAW OFFICE OF BRUCE BERLINE, LLC
Second Floor, Macaranas Building
PO Box 5682 CHRB
Saipan, MP 96950
Tel.: (670) 233-3663
Fax: (670) 233-5262
Email: bruce@saipanlaw.com

Aaron Halegua
AARON HALEGUA, PLLC
524 Broadway, 11th Floor
New York, New York 10012
Tel.: (646) 854-9061
Email: ah@aaronhalegua.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| TIANMING WANG, *et al.*, | Case No. 18-cv-0030 |
| Plaintiffs, | |
| v. | **PLAINTIFFS' THIRD PETITION FOR ATTORNEYS' FEES AGAINST LIJIE CUI** |
| GOLD MANTIS CONSTRUCTION DECORATION (CNMI), LLC, *et al.*, | Hearing Date: n/a |
| Defendants. | Hearing Time: n/a |
| | Judge: Hon. Ramona V. Manglona |

1

On November 5, 2021, the Court found third-party witness Lijie Cui in contempt (again) for failing to comply with the Preservation Order and subsequent related orders that required her to produce all ESI backups, produce login credentials for her iTunes and/or iCloud accounts containing those backups, and file a sworn statement addressing these subjects. (ECF No. 447 ("November 5 Contempt Order)).[1] As one of the sanctions for this contempt, the Court awarded attorney' fees and costs to Plaintiffs. (*Id.*). Accordingly, Plaintiffs bring this third petition for attorneys' fees and costs against Ms. Cui.[2] The petition is supported by the declarations of Aaron Halegua, dated November 28, 2021 ("Halegua Decl."), and Bruce Berline, also dated November 28, 2021 ("Berline Decl."), and the appendices attached thereto. After excluding more than 8.90 hours spent on the issue of the rose-gold iPhone, excluding all 28.65 hours of time spent by Mr. Berline's administrative assistant, and then applying a 40% discount to time spent preparing for and conducting the evidentiary hearing (thus excluding another 30.52 hours), Plaintiffs seek $33,270.00 in attorneys' fees and $2,873.20 in reasonable litigation costs related to compelling Ms. Cui to comply with the Court's orders.

## I. BACKGROUND

As Plaintiffs have stated previously, the Preservation Order issued by this Court should have been a simple, uneventful affair. However, Ms. Cui's pattern of disobedience and persistent obstruction required Plaintiffs to undertake considerable efforts to ensure her compliance—which has still not been fully obtained.[3]

---

[1] The defined terms used in Plaintiffs' fee petition have the same meaning as in Plaintiffs' response to the Order to Show Cause (ECF No. 400), unless otherwise noted.

[2] Plaintiffs' second petition for attorneys' fees against Ms. Cui has been fully briefed and is pending before the Court. (ECF Nos. 423, 430, 434). Plaintiffs also filed a motion requesting that the Court issue an order to show cause concerning Ms. Cui's refusal to pay one particular portion of TransPerfect's invoice (Mr. Langton's preparation of a declaration to submit to the Court) that was also part of Plaintiffs' second fee petition. (ECF No. 451).

[3] Since the Court is intimately familiar with the history of events that led to its finding of contempt against Ms. Cui, Plaintiffs do not recite the entire factual and procedural background again in this fee petition.

The amended Preservation Order was issued on March 31, 2021. (ECF No. 310). After months of failing to comply and the issuance of an order to show cause, on August 25, 2021, the Court issued an Order finding Ms. Cui in contempt for violating the Preservation Order and awarded attorneys' fees to Plaintiffs. (ECF No. 411 ("August 25 Contempt Order")). Plaintiffs' second fee petition covered work performed from the issuance of the Preservation Order until the submission of the fee petition on September 13, 2021, as well as work on the reply brief for the petition. (*See* ECF Nos. 423, 434).

The August 25 Contempt Order required Ms. Cui to, *inter alia*, provide an amended sworn statement addressing her ESI Data (including information on her QQ account and a description of all ESI backups, including any iCloud accounts), turn over her personal computer for forensic imaging, provide all applicable passwords for her devices and accounts, and file a certification from TransPerfect as to the results of its analysis.

At a status conference on October 6, 2021, because Ms. Cui still had not complied with many aspects of the August 25 Contempt Order, and there was considerable evidence that she had possessed another cell phone that was never identified by her, the Court scheduled an evidentiary hearing. (ECF No. 437). The evidentiary hearing lasted four days and nine witnesses testified. (ECF Nos. 439-442).

On November 5, 2021, the Court noted the high evidentiary standard to find contempt and declined to find Ms. Cui in contempt regarding the cell phone at that time, but did find her in contempt regarding her failure to provide her ESI backups, passwords to her iTunes and/or iCloud account, and a sworn statement explaining these items. The Court instructed Plaintiffs to submit a fee petition that accounted for the fact that Ms. Cui was found in contempt for some violations but not others.

On November 12, 2021, the Court held a status conference regarding Ms. Cui's compliance with the November 5 finding of contempt. The Court found that Ms. Cui still had not complied with the Court's order as she still had not retrieved whatever data may or may not exist in the iCloud account that allegedly belongs to her. (ECF No. 453).

## II. ARGUMENT

In the Ninth Circuit, calculation of a reasonable fee award begins with the lodestar method: the number of hours reasonably expended by the party multiplied by a reasonable hourly rate. *See Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996); *Radich v. Guerrero*, No. 14-cv-0020, 2016 WL 5109151, at *1–3 (D. N. Mar. I. Sept. 20, 2016). "After making that computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation."[4] *Morales*, 96 F.3d at 363–64 (citations and footnote omitted). The preferred method is to incorporate the relevant factors into the initial lodestar calculation rather than use them to make an adjustment afterwards. *Id.* at 364, n.9.

### Reasonable Hourly Rates

In granting Plaintiffs' various motions for attorneys' fees against IPI and Ms. Cui earlier in this action, the Court has already determined the reasonable hourly rate for Mr. Halegua ($400), Mr. Berline ($300), and Mr. Wang ($350) in this litigation. (ECF Nos. 108, 232). In Plaintiffs' second fee petition against Ms. Cui, an adjusted rate of $450 per hour was requested for Mr. Halegua to reflect the time passed since the Court's initial fee award in this case and recognition of his heightened expertise on forced labor issues.[5] (ECF No. 423 at 5-6). Plaintiffs request these same hourly rates—$450 for Mr. Halegua and $300 for Mr. Berline—for work performed in relation to this fee petition.

---

[4] The *Kerr* factors include: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Radich*, 2016 WL 5109151, at *1.

[5] Plaintiffs did not request that this adjusted rate apply to the fee petition related to the default judgment against IPI that was fully briefed as of February 17, 2021 and is pending before the Court. (*See* ECF Nos. 226, 241, 295).

**Reasonable Hours**

Plaintiffs have taken several steps in order to ensure that the hours requested in this fee petition are reasonable in light of the Court's ruling that work related to the rose-gold iPhone issue should be excluded. The work performed by Plaintiffs that are the subject of this fee petition generally concern three time periods: (1) work performed from the August 25 Contempt Order until the October 6 hearing; (2) time spent after October 6 preparing for and conducting the evidentiary hearing, and then attending the November 5 status conference; and (3) time spent preparing this fee petition. (Halegua Decl. ¶9). As explained herein, Plaintiffs excluded 8.90 hours of time spent solely or predominantly on the phone issue from the first and second time periods. For the second time period (preparing for and conducting the evidentiary hearing), Plaintiffs then applied a 40% reduction to the remaining time entries (thus excluding an additional 30.52 hours) that were difficult to distinguish as applying to either the phone or other issues. Plaintiffs also do not seek any fees for the 28.65 hours of administrative assistant time spent during these periods. (Berline Decl. ¶9). The requested hours are supported by the contemporaneous time records maintained by Plaintiffs' attorneys. (*See* Halegua Decl. ¶¶7–8, App. A; Berline Decl. ¶6, App. A).

*First Period*

For the first period (from August 25 to October 6), Plaintiffs first excluded any time spent on tasks solely related to the cell phone issue, such as the preparation of Corrado Modica's declaration. (Halegua Decl. ¶10). During this time, Plaintiffs made considerable efforts to compel Ms. Cui to comply with the August 25 Contempt Order. This work included, *inter alia*, conferring with Mr. Langton about whether any backups existed on the computer tendered by Ms. Cui (there were none), whether iTunes was installed on that computer (it was not), and preparing a declaration on these subjects (ECF No. 429-3); preparing deficiency letters and correspondence to Ms. Cui's attorneys about the lack of information concerning backups and the non-working passwords; subpoenaing IT&E for any information about the work performed on Ms. Cui's phones and accounts when she visited the store in Saipan and reviewing those records; interviewing Ms. Forbes and eventually obtaining a declaration from

her stating that she was provided a phone displaying a "qq.com" email address as the Apple ID and login for Ms. Cui's iCloud account (ECF No. 429-2); and preparing a status report detailing for the Court the continued disobedience and failures to comply by Ms. Cui (ECF No. 429). (*Id.*). Plaintiffs also reviewed documents produced by Howyo Chi in response to Plaintiffs' subpoena, drafted a deficiency letter, and tried to arrange for his deposition (which he refused) since Mr. Chi was involved in the efforts to backup Ms. Cui's phone and in drafting all the various declarations that were submitted to the Court by or on behalf of Ms. Cui.[6] (*Id.*) Plaintiffs also worked with Mr. Langton to examine if the passwords that were provided by Ms. Cui could be used to login to her iCloud account and then prepare a declaration reporting that the passwords did not work (*see* ECF No. 438). (*Id.*)

*Second Period*

For the second period (from October 6 through November 5), Plaintiffs excluded 4.70 hours from Mr. Halegua's time sheet and 4.20 from Mr. Berline's time sheet that were spent specifically on the question of whether Ms. Cui had a rose-gold iPhone, including: time spent reviewing Ms. Cui's deposition testimony and statements on this particular issue of how many phones she had; interviews and conversations with Corrado Modica; any work related to Ms. Cui's passport, I-94 report, and whether she was in Saipan in the summer of 2019; preparation of Tina Sablan's testimony; preparation of Mike Yang's testimony; and the preparation of Glenn Bell's testimony (who ultimately did not testify). (Halegua Decl. ¶12; Berline Decl. ¶7).

After excluding the time spent solely on the phone issue, for the remaining hours, it is not possible to precisely decipher the proportion spent on the phone issue versus the ESI backups, iCloud account, passwords, and related issues. Having already excluded 8.90 hours of work that were related solely to the phone, Plaintiffs applied a reduction of 40% to these remaining hours—resulting in 30.52 additional hours being excluded. (Halegua Decl. ¶13; Berline Decl. ¶8). This reduction is reasonable because the majority of the hearing witnesses

---

[6] Mr. Chi still has not agreed to appear for a deposition and has refused to provide information about the make and model of his own cell phone. During a video-teleconference on November 17, 2021 (ChST) at which Mr. Chi was present, Plaintiffs asked him for an update on his search for counsel. He promised to email an update on his search but never did.

(five of the nine) testified about the issue of the ESI Data backups and Ms. Cui's iTunes and iCloud accounts: Jonathan Langton, Fely Forbes, John Lizama, Manni Guan, and Howyo Chi. For instance, Mr. Langton testified about how his analysis determined that the phone was wiped clean on March 21, 2021 and an iTunes backup was installed. Ms. Forbes testified about how she was provided an iCloud account that used a "QQ" email address as a login. Ms. Guan testified about the operations that she performed on the phone on March 21, 2021—an account grossly inconsistent with Ms. Cui's own declaration and the findings of Mr. Langton. Mr. Lizama's testimony and emails also addressed that he did not trust Ms. Guan's account of how the data on the phone was lost. Mr. Howyo Chi's testimony also addressed his interactions with Ms. Forbes at IT&E. Further, while four out of nine witnesses only testified about the phone issue, both the actual testimony by Tina Sablan, Mike Yang, and Chuanfu Huang as well as the time needed to prepare for their testimony were relatively limited. (Halegua Decl. ¶13).

*Third Period*

Plaintiffs spent 8.70 hours on the preparation of this fee petition and seek fees for all of that time. This time also includes the significant efforts made in an attempt to get Ms. Cui to agree to pay even the portions of the TransPerfect invoices that she was clearly ordered to cover by the Court. (Halegua Decl. ¶14; *see also* ECF No. 451 (Plaintiffs' motion for an order to show cause to hold Ms. Cui in contempt for refusing to pay certain costs incurred by TransPerfect)). In short, despite Clyde Lemons' assurances that Ms. Cui would pay all costs incurred by TransPerfect as ordered by the Court (with the exception of any Court testimony by Jonathan Langton), when the invoice was issued and transferred to Mr. San Nicolas, Ms. Cui then objected to paying numerous line items in TransPerfect's invoice. Plaintiffs were required to exchange multiple emails and engage in numerous videoconferences, including warning Ms. Cui that Plaintiffs would seek contempt if she refused to pay those costs clearly ordered by the Court, until Ms. Cui finally agreed to pay some of these costs. (Halegua Decl. ¶14). Even then, as explained below, Ms. Cui has still objected to paying certain costs, such as the hours that Mr. Langton spent testifying at the evidentiary hearing.

| Time-Keeper | Rate | Hours | Total |
|---|---|---|---|
| Bruce Berline | $300 | 16.97 | $5,091.00 |
| Aaron Halegua | $450 | 62.62 | $28,179.00 |

*Billing Discretion*

As described above, a significant number of hours were excluded to account for the iPhone issue and no fees are being sought for any time spent by Mr. Berline's administrative assistant. Plaintiffs' attorneys also worked efficiently and reasonably divided responsibilities to avoid any duplication of efforts. Mr. Halegua took primary responsibility for all aspects of this portion of the litigation; and Mr. Berline participated in strategy calls, did legal research, and attended all Court proceedings. (*See* Halegua Decl. ¶¶6, 8, 14; Berline Decl. ¶4).

**Reasonable Costs**

Plaintiffs seek $2,873.20 for costs incurred in connection with their efforts to compel Ms. Cui's compliance with the Preservation Order and the evidentiary hearing. These costs include service of process and witness fees for Plaintiffs' hearing witnesses, Juan Lizama and Fely P. Forbes. Reimbursement is not sought for costs related to the testimony of Corrado Modica, who focused on the phone issue. Plaintiffs also seek costs for the services of Mandarin interpreter Mike Yang, who was present to interpret the testimony of Ms. Cui and serve as check-interpreter when Ms. Cui's Mandarin-speaking witnesses testified. In addition, Plaintiffs seek costs for the services of TransPerfect that Ms. Cui has refused to pay. As concerns this fee petition, Ms. Cui has refused to pay for the $1,112.50 charge for a line item for 2.50 hours spent on "Standby & Testimony" by Mr. Langton related to the evidentiary hearing. (Berline Decl. ¶11, App. D). Ms. Cui should be ordered to pay for this line item because Mr. Langston's testimony was reasonably necessary to establishing that Ms. Cui violated the Court's orders and should be held in contempt. Specifically, Mr. Langton testified about how his analysis determined that the tendered iPhone was wiped clean on or around March 21, 2021 and an iTunes backup was installed; that no backups were found on Ms. Cui's computer; and that he was unable to log into Ms. Cui's iCloud account using the credentials that he was provided.

### III. CONCLUSION

In conclusion, Plaintiffs request $33,270.00 in attorneys' fees and $2,873.20 in costs as a reasonable award for their efforts in compelling Ms. Cui to comply with the Court's orders, pursuing a finding of contempt, and preparing this fee petition. Plaintiffs request that Ms. Cui be ordered to pay this amount within seven (7) days, rather than the usual thirty (30) days, due to her record of disobeying Court orders. (*See* ECF No. 302 (ordering Ms. Cui to pay fees related to prior contempt finding within seven (7) days)).

Respectfully submitted,

/s/

_____

Aaron Halegua
Bruce Berline

Attorneys for Plaintiffs