F I L E D
Clerk
District Court

APR 14 2022

for the Northern Mariana Islands
By_____
(Deputy Clerk)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| TIANMING WANG, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>GOLD MANTIS CONSTRUCTION DECORATION (CNMI), LLC, MCC INTERNATIONAL SAIPAN LTD, CO., and IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC,<br><br>　　　　　Defendants. | Case No.: 1:18-cv-00030<br><br><br>**DECISION AND ORDER AWARDING PLAINTIFFS ATTORNEYS' FEES AGAINST DEFENDANT IPI** |

### I.　　INTRODUCTION

Before the Court is Plaintiffs' fourth petition for attorneys' fees and costs against Defendant Imperial Pacific International (CNMI), LLC ("IPI") based on the entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). ("Mot.," ECF No. 226.) IPI filed a limited opposition ("Opp'n" ECF No. 231), and Plaintiffs filed their reply (Reply, ECF No. 241). This matter came before the Court on September 18, 2020, at which time the Court took the matter under advisement. (Min., ECF No. 252.) The Court then subsequently denied the motion without prejudice given that entry of default judgment at that time for less than all defendants would be inconsistent with *Frow v. De La Vega*, 82 U.S. 552 (1872) and its progeny and posed a risk of inconsistent judgments. (ECF No. 274.) Thereafter, Plaintiffs settled with and dismissed their actions against Defendants Gold Mantis Construction Decoration (CNMI), LLC ("Gold Mantis") and MCC International Saipan Ltd.,

Co. ("MCC"). (*See* ECF Nos. 288, 292.) The Court then granted Plaintiffs' motion for reconsideration to renew their request for the entry of default judgment against IPI. (Mot. for Reconsideration at 3, ECF No. 295; Min., ECF No. 299.) On May 24, 2021, the Court granted Plaintiffs' petition for damages in support of the entry of default judgment against Defendant IPI and directed the entry of default judgment in the amount of $5,430,595.58, with notice to the parties that such judgment would be amended after the Court's review of Plaintiffs' motion for attorneys' fees and costs. [1] (Default Judg. Order at 39–40 n. 23, ECF No. 322.) Having reviewed Plaintiffs' petition and all relevant briefing, the Court now awards Plaintiffs attorneys' fees in the lesser amount of **$687,793.70** for the following reasons.

## II.     JURISDICTION

As a preliminary matter, this Court must determine whether it retains jurisdiction to award Plaintiffs attorneys' fees and costs based on the entry of default judgment against Defendant IPI in light of the procedural posture of this case. On August 16, 2021, IPI filed its notice of appeal with the Ninth Circuit Court of Appeals from this Court's decision and order directing entry of default judgment against IPI as well as this Court's minute order denying IPI's motion for reconsideration of default judgment. (Notice of Appeal, ECF Nos. 416, 417.)

"[T]he filing of a notice of appeal generally divests the trial court of jurisdiction." *In re Silberkraus*, 336 F.3d 864, 869 (9th Cir. 2003). However, "[t]here are a number of exceptions to [this]

---

[1] Given that much of the case's factual and procedural background is detailed in the Court's Decision and Order entering default judgment against IPI, the Court need not reiterate those facts. (*See* Default Judg. Order at 2–8, ECF No. 233.)

general rule." *Stein v. Wood*, 127 F.3d 1187, 1189 (9th Cir. 1997).  For example, a court may retain jurisdiction to "correct clerical errors or clarify its judgment pursuant to Fed. R. Civ. P. 60(a)," "when it has a duty to supervise the status quo during the pendency of an appeal, or in aid of execution of a judgment that has not been superseded," or by statute. *Id*. (citations omitted). An appeal also does not "divest the trial court of jurisdiction over matters or issues not appealed." *In re Castaic Partners II, LLC*, 823 F.3d 966, 969 n. 3 (9th Cir. 2016).

The Ninth Circuit has additionally recognized that a "district court retained the power to award attorneys' fees after the notice of appeal from the decision on the merits had been filed." *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983). Recognition of that authority to retain jurisdiction "will prevent hasty consideration of postjudgment fee motions," and "will prevent postponement of fee consideration until after the circuit court mandate, when the relevant circumstances will no longer be fresh in the mind of the district judge." *Id*. (citations omitted). However, "the district court may, in its discretion, 'rule on the claim for fees, [ ] defer its ruling on the motion, or [ ] deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved.'" *G.P.P., Inc. v. Guardian Prot. Prods., Inc*., No. 1:15-CV-00321-SKO, 2018 WL 932087, at *2 (E.D. Cal. Feb. 16, 2018) (quoting Fed. R. Civ. P. 54(d) advisory committee's note to 1993 amendment) (alternations in original); *see also* Fed. R. Civ. P. 58 advisory committee's note to 1993 amendment ("Particularly if the claim for fees involves substantial issues or is likely to be affected by the appellate decision, the district court may prefer to defer consideration of the claim for fees until after the appeal is resolved."). "Courts consider four factors to determine whether to stay awarding attorneys' fees and costs pending appeal: (1) 'whether the stay

applicant has made a strong showing that he is likely to succeed on the merits;' (2) 'whether the applicant will be irreparably injured absent a stay;' (3) 'whether issuance of the stay will substantially injure the other parties interested in the proceeding;' and (4) 'where the public interest lies.'" *Personal Web Techs., LLC v. EMC Corp.*, No. 13-cv-01358-EJD, 2020 WL 1557441, at *1 (N.D. Cal. Apr. 1, 2020) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Here, Defendant IPI has not sought a stay on the resolution of Plaintiffs' attorneys' fees petition. Instead, the Stay Agreement entered into by the parties effective February 3, 2022, which this Court has adopted, expressly acknowledges that the fee petition is still pending before this Court and that nothing in the Agreement precludes this Court from ruling on the petition. (Stay Agreement ¶ 19,  ECF No. 501; Order Granting Stip., ECF No. 505.) Moreover, in the Stay Agreement, IPI "knowingly and voluntarily waives any and all rights to appeal such order or decision" on the fee petition and "further agrees not to vacate, seek any form of reconsideration, or seek any form of stay or injunction concerning that order or decision." (Stay Agreement ¶ 20.) The Court thus finds no reason to delay its award of attorneys' fees until after a decision on appeal on the entry of default judgment.

### III.    LEGAL STANDARD

Under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), a prevailing party is entitled to reasonable attorneys' fees.  18 U.S.C. § 1595; *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 951 (N.D. Cal. 2019).  A prevailing party is also entitled to costs. Fed. R. Civ. P. 54(d)(1). Plaintiffs are therefore entitled to reasonable attorneys' fees and costs.

Once the Court has determined that attorneys' fees and costs should be awarded, it must determine the reasonableness of the proposed amounts in a two-step process. First, "[d]istrict courts

must calculate awards for attorneys' fees using the 'lodestar' method," which requires multiplying the number of hours "reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

In order to determine if an hourly rate is reasonable, the court must identify the prevailing hourly rate for the relevant community, and then it must determine the appropriate market rate for the attorney based on "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* at 979. (internal quotation omitted).

To determine the reasonableness of the number of hours worked, the court cannot simply accept the hours presented by the attorney requesting fees, but instead must require that party prove that it exercised billing judgment for the hours billed. *Vogel v. Harbor Plaza Center, LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992). "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley*, 461 U.S. at 434). Time spent establishing the right to and amount of the fee should be included in the lodestar calculation. *Camacho*, 523 F.3d at 981.

The lodestar amount is presumptively reasonable, but the court can adjust it upwards or downwards based on other considerations. *Van Gerwen*, 214 F.3d at 1046. Thus, after calculating the lodestar figure, the second step is for the court to assess the rate for reasonableness based on the *Kerr* factors. *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996). The twelve *Kerr* factors are:  (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976). Only in rare cases should the rate be adjusted. *Morales,* 96 F.3d at 363–64.

## IV.   DISCUSSION

Plaintiffs' original petition filed on August 18, 2020 for attorneys' fees sought the amount of $795,341.20 for attorneys' fees and $16,877.97 in costs (Mot. at 2, 13–14; ECF No. 226), along with an additional $784.00 for the 1.96 hours Halegua spent on preparing the reply brief (Reply at 5). In Plaintiffs' more recently filed motion for reconsideration, Plaintiffs seek a 1.5 multiplier to their requested amount in attorneys' fees and have conceded to forgoing the $16,877.97 in costs.  (Mot. for Reconsideration at 10.)  The Court must therefore determine if Plaintiffs are entitled to their requested total amount of attorneys' fees of $796,125.20, along with a 1.5 multiplier.

\

A. <u>Reasonable Rate</u>

Plaintiffs seek attorneys' fees for the work of four attorneys (Aaron Halegua, Bruce Berline, Times Wang, and Ben Petersburg), one paralegal (Jacob Kessler), and four full-time law student interns (Zach de Stefan, Yun Zhang, Yiwen Zhang, Lulu Sun). (Mot. at 2, 7.) The Court has already previously determined that $400 per hour for Aaron Halegua, $300 per hour for Bruce Berline, $350 per hour for Times Wang, and $125 for Jacob Kessler are reasonable hourly rates. (*See* Amended Order Granting Plaintiffs' First Motion for Attorneys' Fees and Costs against IPI at 8, 13-14, ECF No. 108; Order Granting Plaintiffs' Second Motion for Attorneys' Fees at 6, ECF No. 232.) The Court must therefore determine what the reasonable rates are for attorney Ben Petersburg and the four law student interns.

(1) <u>Ben Petersburg</u>

Plaintiffs seek $200 per hour for the work performed by Ben Petersburg.  (Mot. at 4.) In support of that rate, they provide a declaration from Bruce Berline detailing Petersburg's credentials: 2009 graduate from the University of Iowa College of Law who worked for the CNMI Office of the Attorney General (Criminal Division) from 2010–2011, the CNMI Office of the Public Defender from 2011–2015, Berline's law firm as an associate from 2015–2019, the CNMI Office of the Attorney General (Civil Division) for a few months in 2019, and whom now works for the U.S. Attorneys' Office in Guam. (Berline Decl. ¶ 5, ECF No. 228.)

In 2017, when Mr. Petersburg had over six years of legal experience, this Court awarded him an hourly rate of $175 in a Fair Labor Standards Act action. *See Yu Xuan v. Joo Yeon Corp. and Se Young Corp., et al.*, No. 12-cv-0032, ECF No. 226 at 11 (D. N. Mar. I., Jan. 27, 2017).  With more

years of practice, a higher rate is warranted for Petersburg.  However, Plaintiffs request $200 per hour for Petersburg, and the Court notes that it has recently awarded other attorneys in the CNMI who have practiced law for *at least* ten years a rate of $200 per hour. *See, e.g.*, *Fox Financial v. Forson Holdings*, No. 1:20-cv-00008, ECF No. 26 (D. N. Mar. I, Mar. 9, 2021) (awarding $200 per hour for local attorney with over 10 years of practice); *Tang's Corp. v. Imperial Pac. Int'l (CNMI), LLC*, No. 1:20-cv-00006, ECF No. 40 (D. N. Mar. I, April 13, 2021) (awarding $200 per hour for local attorney with 14 years of practice). The majority of Petersburg's work for this matter were performed in 2017 and 2018, when he had less than ten years of experience.  The Court therefore finds $190 per hour a reasonable rate for Petersburg for his work performed in this case.

### (2) Law Student Interns: Zach de Stefan, Yun Zhang, Yiwen Zhang, Lulu Sun

Plaintiffs seek a rate of $160 per hour for each of the four full-time law student interns. (Mot. at 4.) At the time of their initial request for attorneys' fees in August 2020, Zach de Stefan was a rising third-year law student at Harvard Law School and a 2018 graduate of Cornell University.  (Halegua Decl. ¶ 5, ECF No. 227.) Yun Zhang was a rising second-year law student at Columbia Law School who graduated from Colby College in 2019.  (*Id*. ¶ 12.) Yiwen Zhang was a rising second-year law student at UC Irvine School of Law who graduated from UC Berkeley in 2018.  (*Id*. ¶ 13.) Lulu Sun was a rising second-year law student at Harvard Law School, who majored in law as an undergraduate at Tsinghua University in Beijing, China (*Id*. ¶ 14.)  Yun Zhang, Yiwen Zhang, and Sun are native Mandarin speakers. (*Id*. ¶¶ 12–14.)

In support of their rates, Plaintiffs argue that the Court should consider the national market in determining hourly rates for law students given the lack of a law students pool in the CNMI and the

impracticability for Halegua to work with law students in a time zone 14 hours ahead of New York. (Mot. at 5.) Furthermore, Plaintiffs argue that $160 per hour is reasonable given that interns possess certain knowledge, experience, and skills that paralegals lack, therefore justifying a higher rate than $125 per hour, which this Court determined as reasonable for paralegal Jacob Kessler under a national market. (*Id*. at 5; *see* Attorney Fees against IPI at 13–14.)

In its limited opposition, IPI opposes that rate as unsupported by any declarations for reasonable rates in the CNMI. (Opp'n at 11.) IPI also notes that rates for CJA attorneys in the CNMI are $152, and it would be inappropriate to award law student interns who have not yet graduated law school more. (*Id*.)

The Court agrees with Plaintiffs that the relevant community is the nation, given the shortage of law clerks available in the CNMI and the impracticability of forcing attorneys to use law clerks outside of their offices. However, the Court finds that $160 is an unreasonable rate for law student interns.

In support of a $160 per hour rate, Plaintiffs offer evidence of law intern rates from high cost of living areas such as California. *See Californians for Disability Rights v. California Dep't of Transp.*, No. 06-cv-05125, 2010 WL 8746910, at *13 (N.D. Cal. Dec. 13, 2010), *report and recommendation adopted*, No. 06-cv-5125, 2011 WL 8180376 (N.D. Cal. Feb. 2, 2011) (awarding summer associates $245 per hour and paralegals $225 per hour in complex civil rights case); *Fitzgerald v. City of Los Angeles*, No. 03-cv-01876, 2009 WL 960825, at *11 (C.D. Cal. Apr. 7, 2009) (awarding $200 per hour for law students and $175 per hour for paralegals at the ACLU); *see also Blakeslee v. Shaw Envtl. & Infrastructure, Inc.*, No. 09-CV-00214, 2013 WL 11309603, at *1 (D. Alaska Oct. 28, 2013) (awarding

$160 for summer law clerks and $120 for paralegals). In making the same arguments for a $160 rate for law student interns for attorneys' fees against Gold Mantis (*see* ECF No. 263), Plaintiffs also provided rates for summer associates and law student interns from high-cost areas such as Washington, D.C., and New York. *See, e.g., Laffrey* Matrix (setting reasonable fees of $206 for paralegals and law clerks starting June 2020 to May 2021); USAO Attorney Fee's Matrix—2015-2020 (setting hourly rate of $173 for paralegals and law clerks in 2019-2020); *Ravina v. Columbia Univ.*, No. 16-CV-2137, 2020 WL 1080780, at *7 (S.D.N.Y. Mar. 6, 2020) (awarding $195 per hour to summer associates); *Schwartz v. United States Drug Enf't Admin.*, No. 13-CV-5004, 2019 WL 1299192, at *9 (E.D.N.Y. Mar. 1, 2019), *report and recommendation adopted*, No. 13-CV-5004, 2019 WL 1299660 (E.D.N.Y. Mar. 21, 2019) (awarding $200 per hour for summer associate in complex litigation case as reasonable); *see also Asta Funding, Inc. v. Neal*, No. 14-CV-2495, 2017 WL 4330362, at *10 (D.N.J. Sept. 29, 2017) (finding $150 for a summer associate reasonable); *BVS Acquisition Co., LLC v. Brown*, No. 12-CV-80247, 2015 WL 12921971, at *7 (S.D. Fla. Aug. 5, 2015) (finding $150 for summer associate and paralegals reasonable).

However, courts in other jurisdictions around the nation have awarded reasonable attorneys' fees for law clerks/summer associates that were much less. *See, e.g.*, *Hill v. Glob. Mediation Grp., LLC*, No. 19-CV-4309, 2020 WL 1434458, at *3 (S.D. Ohio Mar. 24, 2020) (awarding $130 per hour to summer associate); *Echon v. Sackett*, No. 14-cv-0342-PAB-NYW, 2017 WL 11512176, at *4 (D. Colo. Sept. 20, 2017) (finding a rate of $100 per hour reasonable for a second year law student); *Doe v. Darien Bd. of Educ.*, No. 3:11CV1581 (JBA), 2015 WL 8770003, at *6 (D. Conn. Dec. 14, 2015) (finding $100 per hour for a legal intern or summer associate reasonable).

Considering the range of fees throughout the country, the Court finds that an hourly rate of $130 for all four law student interns reasonable. Such rate is also comparable to that the Court previously awarded for paralegal Mr. Kessler, but provides a slightly higher rate to account for more extensive skills and knowledge of law students.

Having determined the relevant reasonable rates, the Court must next determine the reasonable hours expended by each person.

B. Reasonable Hours

Plaintiffs seek 1,375.56 hours for Aaron Halegua, 135.80 hours for Bruce Berline, 91.29 hours for Times Wang, 33.30 hours for Ben Petersburg, 398.32 hours for Jacob Kessler, 229.72 hours for Zach de Stefan, 265.37 hours for Yun Zhang, 155.51 hours for Yiwen Zhang, and 50.62 hours for Lulu Sun. (Mot. at 11; Reply at 5.) In support of their hours, Plaintiffs included the declarations of attorneys Halegua, Berline, and Wang. (*See* Halegua Decl., ECF No. 227; Halegua Second Decl., ECF No. 241-1; Halegua Third Decl., ECF No. 295-1; Berline Decl., ECF No. 228; Wang Decl., ECF No. 229.) Plaintiffs also included contemporaneous time records for each individual. (*See* Halegua Timesheet, Ex. A to Halegua Decl. ¶ 4, ECF No. 227-1; Berline Timesheet, App'x B to Berline Decl. ¶ 8, ECF No. 228-2; Wang Timesheet, App'x A to Times Decl. ¶ 6, ECF No. 229; Petersburg Timesheet, App'x A to Berline Decl. ¶ 6, ECF No. 228-1; Kessler Timesheet, Ex. F to Halegua Decl. ¶ 16, ECF No. 227-6; Stefan Timesheet, Ex. B to Halegua Decl. ¶ 11, ECF No. 227-2; Yun Zhang Timesheet, Ex. C to Halegua Decl. ¶ 12, ECF No. 227-3; Yiwen Zhang Timesheet, Ex. D to Halegua Decl. ¶ 13, ECF No. 227-4; Sun Timesheet, Ex. E to Halegua Decl. ¶ 14, ECF No. 227-5.) Plaintiffs' request excludes hundreds of hours of work performed by several attorneys, law students, and volunteers on legal

research and translation.  (Halegua Decl. ¶ 8.)

In its limited opposition, IPI argues that: (1) the Court should discount any hours for tasks performed not involving IPI whatsoever, such as tasks involving MCC or Gold Mantis, and (2) the hours requested for work relating to IPI's motion to vacate and stay (ECF Nos. 216-17) and the supplemental briefing ordered by the Court for default judgment (Mins., ECF No. 219) were premature since the Court had not yet disposed of those motions in favor of Plaintiff.  (Opp'n at 2-11.)

As to the former argument, the Court agrees with IPI that work performed for tasks related to other previous co-defendants should not be billed against IPI.  The Court will therefore discount those hours, as further discussed in detail below. As to IPI's second argument, that argument is now moot given that the Court has ruled favorably for Plaintiffs against IPI's third motion to stay (*see* Min., ECF No. 252; Decision and Order, ECF No. 257) and has issued an order favorably for Plaintiffs for default judgment (Default Judg. Order, ECF No. 322.)  While the Court initially denied without prejudice IPI's petition for damages for entry of default judgment (ECF No. 274), any supplemental briefs were reasonably necessary to ultimately obtain default judgment against IPI. *See Hensley*, 461 U.S. at 435 (noting that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee" and that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.").

(1)  Aaron Halegua

Plaintiffs seek 1,375.56 hours for Aaron Halegua.  (Mot. at 11.) After reviewing Halegua's timesheet, the Court calculates a total of 1,375.54 hours, and therefore the Court can only award up to that amount despite the minimal difference and will use that adjusted amount as the base total amount

from which the Court will discount from. (*See* Halegua Timesheet.)   Furthermore, the Court will exclude some hours in Halegua's timesheet from the lodestar amount.

While the Court recognizes that over 462.60 hours of work that relate primarily to Gold Mantis or MCC have already been excluded (Mot. at 2), Plaintiffs still seek attorneys' fees for numerous hours expended by Halegua on work related to Gold Mantis and MCC. A review of Halegua's timesheet, for example, reveals hours sought for teleconferences, review of ESI search terms, protective orders, and stipulations regarding discovery between Plaintiffs and co-defendants Gold Mantis and/or MCC. The timesheet also reveals hours sought for review of discovery materials produced by Gold Mantis and/or MCC. IPI objects to an award for hours expended not involving IPI whatsoever. (*See* Opp'n at 3-4.) Plaintiffs contend that these hours involving MCC and Gold Mantis warrant inclusion as they were necessary for pursuing Plaintiffs' claims against IPI. (Mot. at 6.) Plaintiffs argue that "even if Gold Mantis and MCC were not parties to the litigation, Plaintiffs would still need to request documents from them, negotiate a confidentiality order to protect that discovery (if requested), and review the information received." (*Id.*) Plaintiffs rely on *Hensley v. Eckerhart*, 461 U.S. 424 (1983) in support.

In *Hensley*, the United States Supreme Court held in the context of Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, that "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440. But the Court recognized that in civil rights cases, plaintiffs may bring other claims for relief "that will involve a common core of facts or will be based on related legal theories" such that "counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.*

at 436. The Court thus held that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988" and that district courts should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id*. at 435, 440. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee" even if "plaintiff failed to prevail on every contention raised in the lawsuit." *Id*. at 435. "But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id*. at 440. Plaintiffs argue that the "same logic of *Hensley* applies when pursuing claims against multiple defendants that involve common facts." (Mot. at 6.) They contend that because they prevailed on their claims against IPI, they should receive fees for all efforts reasonably necessary in pursuit of that objective. (*Id*. at 6.)

But the Court finds *Hensley* distinguishable, as the hours expended on individual but related claims were difficult to divide. In contrast, here, the Court finds that the hours expended on each defendant are more easily apportionable. While the hours spent on working with Gold Mantis and MCC regarding discovery matters and reviewing the discoverable materials may have assisted Plaintiffs in their claims against IPI, those hours nonetheless expended on Gold Mantis and MCC can easily be attributed to them rather than IPI, as the time spent involved direct correspondences with Gold Mantis' and MCC's attorneys and review of their discovery materials. This is evidenced by Plaintiffs' timesheets themselves, where Plaintiffs were able to divide the hours expended on work relating to each co-defendant. Furthermore, Plaintiffs cannot stipulate with Gold Mantis and MCC to bear their own attorneys' fees and costs, and claim no offset on that basis, but then punt those same

fees onto Defendant IPI. (*See* Stipulation with Gold Mantis, ECF No. 287; Stipulation with MCC, ECF No. 291.) By settling, Plaintiffs bore the risk that they would not recover for the attorneys' fees expended against those other defendants. Moreover, Plaintiffs have prevailed against IPI given IPI's default for failure to comply with the Court's discovery orders. IPI has suffered the harshest consequence for its failure to adequately tender discovery as required by the Federal Rules of Civil Procedure. For IPI to have suffered these consequences yet pay Plaintiffs attorneys' fees on hours expended on discovery from other co-defendants would be unjust and unreasonable. Consequently, the Court finds that Plaintiffs are not entitled to attorneys' fees and costs against IPI for these hours on tasks related to Gold Mantis and MCC.

IPI has identified some of these hours, such as the 0.20 hours expended to "[d]raft letter to Gold Mantis re improper contact with our clients in China" and 0.12 hours expended for "[t]eleconference with ZY re client approached by Gold Mantis counsel in China" on August 11, 2020, as well the 0.12 hours expended to "[r]eview notes on Gold Mantis contacting clients in China without our permission" and 0.55 hours on "[t]eleconference with Tibi re Gold Mantis contacting Plaintiffs; draft follow up letter" on August 12, 2020.  (*See* Opp'n at 4.) Plaintiffs do not object to the 0.99 hours being discounted. (*See* Reply at 4.) Accordingly, the Court will exclude these 0.99 hours on work expended regarding solely Gold Mantis.

However, in thoroughly reviewing the timesheets, the Court has additionally identified numerous hours in Halegua's timesheets that must be discounted for work relating to Gold Mantis and MCC, as further outlined in **Appendix A** to this Decision and Order. For portions that are blocked billed with other work that involves IPI, the Court has discounted those block billing portions in half.

The Court will therefore additionally exclude 164.14 hours for Halegua.

In sum, the Court will discount a total of 165.13 hours for Halegua, and will only reward Plaintiffs for 1,210.41 hours reasonably expended by Halegua.

     (2)  <u>Bruce Berline</u>

Plaintiffs seek 135.80 hours[2] for Bruce Berline.  (Mot. at 11.) However, the Court will only award up to the amount requested by Plaintiffs. (*See* Berline Timesheet.) Having reviewed Berline's timesheet, the Court finds that a substantial majority of the hours expended by Berline on the matter are reasonable. However, the Court will discount a few hours.

First, the Court will discount the 0.50 hours expended on May 17, 2017 for "[c]onference with BKP and interpreter regarding potential representation of injured Chinese." (*See* Berline Timesheet.) An award for attorneys' fees presumes an attorney-client relationship, and therefore an attorney cannot recover attorneys' fees for work done prior to representation.  *See Kay v. Ehrler*, 499 U.S. 432, 435-36 (1991) (noting that in the context of reasonable attorney fees provided for under 42 U.S.C. § 1988 for civil rights actions, "the word 'attorney' assumes an agency relationship, and it seems likely that Congress contemplated an attorney-client relationship as the predicate for an award"). The Court also agrees with IPI that the 0.10 hours spent on June 30, 2020 for "[e]-mail Amanda regarding pre - settlement phone call in Gold Mantis" should be discounted, as it did not involve any work related to IPI.[3] (Opp'n at 2; *see* Berline Timesheet.) For the same reason, the Court also excludes the 0.30 hours

---

[2] Based on Berline's timesheet, the Court calculates the higher amount of 142.6 hours total.  (*See* Berline Timesheet.) However, because Plaintiffs only seek 135.8 hours, the Court will use that amount.

[3] Plaintiffs also concede to discounting the 0.1 hours. (*See* Reply at 4.)

expended on January 23, 2020 for review of discovery inadequacies with MCC.

The Court will therefore discount a total of 0.9 hours from Berline. In carefully reviewing the timesheet, the Court finds that 134.9 hours expended by Berline in this case reasonable.

(3)  Times Wang

Plaintiffs seek 91.29 hours for Times Wang. (Mot. at 11.) IPI argues, however, that the Court should discount the 0.50 hours expended by Wang on May 12, 2020 to "[a]nalyze MCC stip re admissibility of evidence." (Opp'n at 2.)  In response, Plaintiffs argue that work for a stipulation with MCC was necessary, as any evidence obtained from MCC was necessary to prove liability against IPI, and therefore should be included.  (Reply at 4.)  The Court disagrees with Plaintiffs here, for the same reasons as discussed above in excluding any hours for work pertaining to Gold Mantis and MCC Accordingly, the Court will discount 0.50 hours.  Given that the other hours expended by Wang were for legal research, analysis, and drafting related to work in this matter and related to IPI, the Court finds the 90.79 hours expended by attorney Times Wang reasonable.

(4)  Ben Petersburg

Plaintiffs seek 33.30 hours for Ben Petersburg. (Mot. at 11.) The Court finds that the hours expended on meetings, research, and review for the complaint reasonable. However, the Court will discount those hours expended prior to an attorney-client relationship being formed.  *See Kay*, 499 U.S. at 435-36. Accordingly, the Court will discount the 0.7 hours expended on May 17, 2017; the 0.40 hours expended on May 19, 2017; the 1.6 hours expended on May 23, 2017; and the 0.40 hours expended on May 24, 2017 for conferences with Berline and the interpreter regarding potential representation, fee agreements, and medical releases – for a total of 3.1 hours. (*See* Petersburg

Timesheet.) Accordingly, the Court will award 30.2 hours for Petersburg.

(5)   Jacob Kessler

Plaintiffs seek 398.32 hours for Jacob Kessler. (Mot. at 11.) After reviewing Kessler's timesheet, the Court calculates a total of 398.22 hours, and therefore the Court can only award up to that amount despite the minimal difference and uses this adjusted amount as the base amount from which discounts will be made from. (*See* Kessler Timesheet.)

In reviewing Kessler's timesheet, the Court finds that a majority of the hours expended are reasonable. In *Missouri v. Jenkins*, the Supreme Court noted that lower courts have recognized paralegal work to include "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence. Much such work lies in a gray area of tasks that might appropriately be performed either by an attorney or a paralegal." 491 U.S. 274, 289 n. 10 (1989). Much of the tasks performed by Kessler fall in this gray area that may be appropriately awarded for. However, "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Id*.; *see Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1102 (9th Cir. 2008). The Court has identified some tasks performed by Kessler that are purely administrative or secretarial, such as the 0.5 hours expended on September 3, 2019 going to the "Post Office to mail OSHA FOIA money," the 1.32 hours expended on September 9, 2019 to "[f]ill out chart about clients' phone numbers, etc.," the 0.18 hours expended on September 20, 2019 to "[c]ontact clients to schedule appointments," the 1.5 hours expended on September 23, 2019 to "[p]rint documents for clients," and the 0.22 hours expended on October 22, 2019 to "[e]dit Client

phone info sheet based on Aaron comments." The Court will therefore exclude 3.72 hours.

Furthermore, in thoroughly reviewing the timesheets, the Court has additionally identified numerous hours in Kessler's timesheet that must be excluded for work relating to Gold Mantis and MCC, for the same reasons as discussed above for discounting hours for Mr. Halegua. The Court will therefore exclude an additional 93.57 hours from Kessler's timesheet, as further outlined in **Appendix B** to this Decision and Order. Accordingly, the Court will award 300.93 hours for Kessler.

(6)   Zach de Stefan

Plaintiffs seek 229.72 hours[4] for Zach de Stefan.  (Mot. at 11.) Having carefully reviewed Stefan's timesheet, which involve numerous hours expended on legal research on topics such as discovery, default judgment, vacating entry of default, and damages under the TVPRA, the Court finds those hours reasonable. However, the Court finds the 3.14 hours expended by Stefan on July 21, 2020 to research COVID-19 related changes to court procedures excessive (*see* Stefan Timesheet), especially where Yiwen Zhang already expended 9.45 hours researching the same issues between July 9 and July 16, 2020.  The Court will therefore trim those hours by half (1.57 hours).  *See Van Gerwen*, 214 F.3d at 1045 (noting that excessive hours should be excluded from the lodestar amount). The Court therefore finds 228.15 hours reasonable for Stefan.

(7)   Yun Zhang

Plaintiffs seek 265.37 hours for Yun Zhang.  (Mot. at 11.) The Court finds those hours

---

[4] Based on Stefan's timesheet, the Court calculates 236.91 hours. (*See* Stefan Timesheet.) However, the Court will only award up to the amount requested by Plaintiffs.

expended by Zhang on legal research, translation, interviews of clients, drafting, and editing all reasonably necessary for this matter.  However, the Court will exclude the 4.65 hours expended by Zhang on July 6, 2020 to "[c]ompile a list of all blurry checks," as compiling a list of blurry checks is a clerical task that should not be billed at an attorney's rate.  *See Prison Legal News* 561 F. Supp. 2d at 1102.  The Court also finds that 1.85 hours expended by Zhang on August 7, 2020 "[r]esearching cases similar to *Shanghai Automation* on Rule 54" duplicative of the 5.02 hours of research performed by Sun on the same day and on August 10, 2020.  *See* Yun Zhang Timesheet; Sun Timesheet; *Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1130 (9th Cir. 2008), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014) (noting that a district court may "reduce an award for attorney's fees for unnecessarily duplicative work"). The Court will therefore discount those hours, for a total of 6.5 hours being discounted for Zhang.  Accordingly, the Court finds 258.87 reasonable for Yun Zhang.

(8)   <u>Yiwen Zhang</u>

Plaintiffs seek 155.51 hours for Yiwen Zhang. (Mot. at 11.) The Court finds those hours expended by Zhang on legal research, translation, interviews of clients, and drafting reasonable. However, the Court finds that the 4.43 hours expended by Yiwen Zhang on July 23, 2020 researching a court's discretion to limit a defendant's request for cross-examination duplicative of the 5.12 hours expended by Stefan on the same day doing research on a defendant's right to cross-examination and excessive when also accounting for the 12.45 hours expended by Yun Zhang between July 20 and July 24, 2020 and the 3 hours expended by attorney Wang on July 23, 2020 researching the same. (*See* Stefan Timesheet; Yun Zhang Timesheet; Yiwen Zhang Timesheet.) The Court will therefore entirely

trim those hours. *See Mendez*, 540 F.3d at 1130.  The Court therefore awards 151.08 hours for Yiwen Zhang.

(9)  Lulu Sun

Plaintiffs seek 50.62 hours for Lulu Sun. (Mot. at 11.)  Having reviewed Sun's timesheet, which reflects time spent on legal research on topics including relief from default, inconsistency issues of entry of default judgment against less than all defendants, and attorneys' fees, the Court finds those hours expended reasonable.  The Court therefore awards 50.62 hours for Sun.

C.  Lodestar Amount

In sum, the Court awards as follows:

|  | Reasonable Rate | Reasonable Hours | Total |
|---|---|---|---|
| Aaron Halegua | $400 | 1,210.41 | $484,164.00 |
| Bruce Berline | $300 | 134.9 | $40,470.00 |
| Times Wang | $350 | 90.79 | $31,776.50 |
| Ben Petersburg | $190 | 30.2 | $5,738.00 |
| Jacob Kessler | $120 | 300.93 | $36,111.60 |
| Zach de Stefan | $130 | 228.15 | $29,659.50 |
| Yun Zhang | $130 | 258.87 | $33,653.10 |
| Yiwen Zhang | $130 | 151.08 | $19,640.40 |
| Lulu Sun | $130 | 50.62 | $6,580.60 |
| **Total** | | | **$687,793.70** |

D.  Adjustment to Lodestar Amount

Plaintiffs formally seek a 1.5 multiplier to this lodestar amount. (Mot. for Reconsideration at 10.)  Plaintiffs argue that an upward adjustment to the lodestar amount is warranted, given the undesirability of bringing a forced labor case on behalf of seven Mandarin speaking plaintiffs residing

in China, and given the risk assumed by Plaintiffs in continuing to litigate against IPI despite being unsure if they would ever be able to collect against IPI. (*Id*. at 10.)  IPI counters that this is not an undesirable case that justifies a 1.5 multiplier, as evidenced by Janet King representing 26 construction workers against IPI before the Department of Labor in *Tzu Li Tan, et. al., v. Imperial Pacific International (CNMI), LLC*, Consolidated Labor Case Nos. 19-058 to 19-083. (Opp'n at 1-2.) In response, Plaintiffs argue that this case is distinguishable, as the workers in the Department of Labor case had valid work visas, contracts with IPI, and sued for breach of contract and wage claims, whereas this matter involved a "fact-intensive trafficking claim in federal court on behalf of workers who lacked work authorization or any contract with IPI." (Reply at 2.)

The Court finds that a lodestar adjustment is not warranted here, as the Court already accounted for some of these factors when deviating from the general rule that the forum district is the relevant community and awarding Halegua based on the national forum. (*See* Amended Order Granting Plaintiffs' First Motion for Attorneys' Fees and Costs against IPI at 6, ECF No. 108.)  In finding $400 per hour reasonable for Halegua based on the national market, the Court noted the complexity of this case as it "involves multiple plaintiffs, a large construction project, three corporate defendants, and voluminous discovery in Chinese" with the seven Plaintiffs all living in China, and agreed with the specialized expertise required for civil TVPRA cases.  (*Id*. at 5-6.)  The Court awarded Halegua his rate given the expertise and fluency in Mandarin he would provide for this case. (*Id*.)  Thus, the factors that lend towards the undesirability of the case were already accounted for in the lodestar.  "Where a factor is generally considered as part of the lodestar, further adjustments based on that factor will ordinarily amount to impermissible double counting and will rarely be sustained." *Cunningham v. Cty.*

*of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988).

As to the sole remaining consideration—the risk factor on the ability to collect—the Court finds Plaintiffs' reliance on *Dixon v. City of Oakland*, No. 12-CV-05207, 2014 WL 6951260 (N.D. Cal. Dec. 8, 2014) unsupportive, as the court in that case was applying California law and the California Supreme Court ruled on the special considerations warranted for contingency cases, *see Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (Cal. 2001).

In contrast, under federal fee-shifting statutes, enhancements based on contingency fees are not permitted.  In *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992), the Supreme Court held that "enhancement for contingency is not permitted under the fee-shifting statutes" pursuant to the Solid Waste Disposal Act and Clean Water Act). Part of the Court's rationale was that:

> Just as the statutory language limiting fees to prevailing (or substantially prevailing) parties bars a prevailing plaintiff from recovering fees relating to claims on which he lost, so should it bar a prevailing plaintiff from recovering for the risk of loss. An attorney operating on a contingency-fee basis pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not. To award a contingency enhancement under a fee-shifting statute would in effect pay for the attorney's time (or anticipated time) in cases where his client does not prevail.

*Id*. at 565 (citations omitted). The Court there also noted that Solid Waste Disposal Act and Clean Water Act's statute permitting costs of litigation, including reasonable attorney fees, for the prevailing party was similar to that of many other federal fee-shifting statutes, including under 42 U.S.C. § 1988, and "our case law construing what is a 'reasonable' fee applies uniformly to all of them." *Id*. at 5761-62 (citations omitted).  In recognizing that latter reasoning, the Ninth Circuit in *Gates v. Deukmejian*, 987 F.2d at 1403, held that contingency multipliers are no longer permitted under § 1988 civil rights

23

proceedings.

Here, the Court recognizes that TVPRA's provision providing for attorney's fees is distinguishable, in that it only provides for fee-shifting for a prevailing plaintiff to be entitled to "reasonable" attorneys' fees but is silent as to a prevailing defendant. *See* 18 U.S.C. § 1595(a) (providing that an individual who is a victim of a TVPRA violation may recover "reasonable attorneys fees"). Nonetheless, the rationale is the same in that if a plaintiff is barred from recovery for claims lost, a prevailing plaintiff should be likewise barred from recovering for the risk of loss. *See Dague*, 505 U.S. at 565. Accordingly, an upward adjustment due to the contingency nature of the attorney's fees, and thus risk of inability to collect, is not permitted. The Court therefore denies Plaintiffs' request for a lodestar adjustment.

E. Offset

Finally, the Court must consider whether there should be any offsets to the award of attorneys' fees given the settlement with MCC and Gold Mantis. The Ninth Circuit has held that "a non-settling defendant is entitled to offset attorney's fees owed by the amount already paid by settling defendants." *Corder v. Brown*, 25 F.3d 833, 840 (9th Cir. 1994). Plaintiffs argue that there should be no offset due to the settlements, given that the settlements did not apportion any amount for attorneys' fees. (*See* Mot. for Reconsideration at 7-8). The Court agrees with Plaintiffs' argument. Given that the parties agreed to bear their own attorneys' fees and costs pursuant to the stipulations, no offset is required. *See* Stipulation with Gold Mantis, ECF No. 287; Stipulation with MCC, ECF No. 291; *Bd. of Trustees v. Piedmont Lumber & Mill Co*., Case No. 13-cv-03898-HSG, 2016 WL 4446993, at *1 n. 1 (N.D. Cal. Aug. 24, 2016) (noting that because the settlement with the settling defendant did not apportion

24

any of the settlement payment for attorneys' fees, "there is no need to offset the grant of attorneys' fees among the settling and non-settling Defendants."). Additionally, the Court has discounted from the lodestar amount any work performed by Plaintiffs' attorneys that primarily involve Gold Mantis and/or MCC and that have no relation to liability against IPI, such that Plaintiffs will not receive an improper windfall.  Accordingly, no offset is required here.

<h2 style="text-align:center">V.     CONCLUSION</h2>

For the reasons set forth above, Plaintiffs' fourth motion for attorneys' fees as an award for prevailing under the TVPRA (ECF No. 226) is GRANTED in the amount of **$687,793.70**.  The default judgment entered against Defendant IPI on May 26, 2021 (ECF No. 323) shall be **amended** to reflect the amount of $5,430,595.58, plus $687,793.70 in attorneys' fees, plus post-judgment interest at the applicable federal rate on May 26, 2021.

**The Clerk is directed to enter civil judgment in the amended amount accordingly.**

IT IS SO ORDERED this 14th day of April, 2022.

RAMONA V. MANGLONA
Chief Judge

**APPENDIX A**
HALEGUA'S HOURS EXCLUDED

| Date | Tasks | Hours Requested | Hours Excluded |
|------|-------|-----------------|----------------|
| 9/12/19 | Talk with OSHA officer in Honolulu; review FOIA documents for MCC | 0.77 | 0.385* |
| 9/24/19 | Review MCC chart; research on different corporate entities | 0.50 | 0.5 |
| 10/16/19 | TC with TM re outstanding discovery (CCC docs, Denton's information, ESI, info from OSHA, etc.) | 0.33 | 0.33 |
| 10/16/19 | TC with BB re call with TM; discovery strategy | 0.97 | 0.97 |
| 10/17/19 | TC with RT -- has 45 boxes of docs, will not touch computer, got FBI docs, return Saipan on 10/28 | 0.40 | 0.40 |
| 10/25/19 | GM discovery -- review documents sent by TM | 0.25 | 0.25 |
| 10/25/19 | GM discovery -- review documents sent by TM | 0.33 | 0.33 |
| 10/28/19 | TC with TM re discovery deficiencies, schedule | 0.15 | 0.15 |
| 10/30/19 | TC with RT re: outstanding discovery issues | 0.75 | 0.75 |
| 10/31/19 | Review FBI documents sent by MCC | 1.32 | 1.32 |
| 11/1/19 | Review FBI documents sent by MCC | 0.57 | 0.57 |
| 11/1/19 | Review FBI documents sent by MCC | 1.37 | 1.37 |
| 11/1/19 | Review FBI documents sent by MCC | 1.18 | 1.18 |
| 11/2/19 | Review FBI documents sent by MCC | 2.10 | 2.10 |
| 11/3/19 | Review FBI documents sent by MCC | 0.18 | 0.18 |
| 11/3/19 | Review FBI documents sent by MCC | 1.13 | 1.13 |
| 11/3/19 | Review FBI documents sent by MCC; summarize in chart; plan follow-up questions | 4.32 | 4.32 |
| 11/3/19 | Protective order proposed by RT - consider other examples; draft track-changes revisions | 1.92 | 1.92 |
| 11/4/19 | Review Gold Mantis documents produced by TM | 0.70 | 0.70 |
| 11/4/19 | Review discovery responses sent by MCC | 0.83 | 0.83 |
| 11/5/19 | TC with Rob Torres re discovery | 0.67 | 0.67 |
| 11/5/19 | Review list of custodians for MCC | 0.27 | 0.27 |
| 11/6/19 | TC with Tiberius on interrogatories deficiencies, production schedule | 0.13 | 0.13 |
| 11/6/19 | Review RT's proposed protective order | 0.58 | 0.58 |
| 11/7/19 | Review RT's proposed protective order | 0.27 | 0.27 |
| 11/7/19 | TC with BB about protective order | 0.73 | 0.73 |
| 11/7/19 | Work on protective order edits, research other examples | 0.75 | 0.75 |

| 11/8/19 | Edit letter to Rob Torres re ESI; email to DS (ESI expert) and BB for review | 0.23 | 0.23 |
|---------|------------------------------------------------------------------------------|------|------|
| 11/8/19 | Review documents produced by GM | 1.32 | 1.32 |
| 11/9/19 | Edits to protective order; email to BB | 0.97 | 0.97 |
| 11/11/19 | Editing protective order to incorporate EDNY edits | 0.33 | 0.33 |
| 11/12/19 | TC with Bruce on protective order and ESI letter to MCC; emails to RT of MCC on same | 0.73 | 0.73 |
| 11/13/19 | Review documents produced by GM; follow-up on that; review written responses by GM | 1.82 | 1.82 |
| 11/14/19 | Email to GM re discovery | 0.18 | 0.18 |
| 11/14/19 | TC with Rob Torres re ESI protocol and protective order | 1.08 | 1.08 |
| 11/17/19 | Edit custodian list for GM | 0.73 | 0.73 |
| 11/19/19 | Edit MCC protective order | 0.33 | 0.33 |
| 11/20/19 | Letter to Tiberius (GM) re privilege log | 0.50 | 0.50 |
| 11/21/19 | Draft ESI protocol letter to GM, with custodians | 1.33 | 1.33 |
| 12/4/19 | TC with Rob Torres (MCC) regarding discovery | 0.52 | 0.52 |
| 12/5/19 | Meet at MCC documents room to review documents | 1.50 | 1.5 |
| 12/6/19 | Address imaging and copying of MCC computer hard drive; troubleshoot technical problems | 2.00 | 2.00 |
| 12/7/19 | Review documents from MCC computer hard drive | 1.57 | 1.57 |
| 12/9/19 | Review documents from MCC computer hard drive | 0.95 | |
| 12/9/19 | Draft deficiency letter to Gold Mantis on ESI and deficiencies | 1.37 | 1.37 |
| 12/9/19 | Review MCC spreadsheet on individual custodians; compare to own notes | 0.90 | 0.90 |
| 12/9/19 | Review MCC production and objections to production | 0.98 | 0.98 |
| 12/10/19 | Review and edit reply brief, additional research on discovery objections | 2.67 | 2.67 |
| 12/11/19 | Meeting with 3P witness and BB re MCC | 1.58 | 1.58 |
| 12/11/19 | Review discovery responses from GM and MCC; prepare for status conference tomorrow | 2.25 | 2.25 |
| 12/11/19 | TC with Rob Torres re discovery issues | 0.47 | 0.47 |
| 12/12/19 | Review MCC documents (MCC office) | 3.50 | 3.50 |
| 12/13/19 | Review MCC documents (MCC office) | 2.67 | 2.67 |
| 12/13/19 | Review MCC documents (MCC office) | 0.68 | 0.68 |
| 12/16/19 | Review MCC documents (MCC office) | 0.75 | 0.75 |
| 12/16/19 | Review MCC documents (MCC office) | 4.42 | 4.42 |
| 12/17/19 | Review MCC documents (MCC office) | 2.17 | 2.17 |
| 12/17/19 | Review MCC documents (MCC office) | 3.33 | 3.33 |
| 12/20/19 | Review MCC documents (MCC office) | 1.28 | 1.28 |

| 12/20/19 | Review MCC documents (MCC office) | 1.73 | 1.73 |
|---|---|---|---|
| 12/23/19 | Review MCC documents (MCC office) | 4.77 | 4.77 |
| 12/24/19 | Review MCC documents (MCC office) | 3.72 | 3.72 |
| 1/2/20 | Review summary of relevant MCC documents (MCC Computer), note next steps | 1.25 | 1.25 |
| 1/2/20 | Review summary of relevant MCC documents (MCC Computer), note next steps | 0.67 | 0.67 |
| 1/3/20 | Meeting with JK on MCC and GM discovery docs, custodian lists, documents to translate | 1.75 | 1.75 |
| 1/12/20 | Review MCC documents scanned by Mike O | 0.32 | 0.32 |
| 1/13/20 | Review MCC documents scanned by Mike O | 0.88 | 0.88 |
| 1/13/20 | Review MCC documents scanned by Mike O | 0.67 | 0.67 |
| 1/15/20 | Review correspondence with GM and docs produced in preparation for TC with TM | 0.40 | 0.40 |
| 1/15/20 | TC with TM re discovery issues, ESI | 0.40 | 0.40 |
| 1/16/20 | Draft email to TB re GM discovery conversation | 0.10 | 0.10 |
| 1/21/20 | Prepare deficiency letter for MCC - interrogatories | 1.82 | 1.82 |
| 1/21/20 | Prepare deficiency letter for MCC - document requests | 0.25 | 0.25 |
| 1/22/20 | Prepare deficiency letter for MCC | 2.77 | 2.77 |
| 1/23/20 | Finalize deficiency letter for MCC | 0.67 | 0.67 |
| 1/25/20 | Email response to GM re discovery | 0.23 | 0.23 |
| 1/27/20 | Review MCC paper documents for numbering, production | 1.53 | 1.53 |
| 1/30/20 | TC with Mike Ortizo re MCC production | 0.25 | 0.25 |
| 2/3/20 | Review MCC desktop computer files | 1.18 | 1.18 |
| 2/3/20 | Review Bates Stamped paper MCC documents from MO | 0.50 | 0.5 |
| 2/3/20 | Draft email to RT re: bank records, review MO email | 0.50 | 0.50 |
| 2/5/20 | Review and organize Bates Stamped MCC docs and index | 0.25 | 0.25 |
| 2/16/20 | Review key documents from MCC production | 0.65 | 0.65 |
| 3/11/20 | MCC - review proposed search terms, input into master list | 0.28 | 0.28 |
| 3/11/20 | MCC - edit proposed search term list | 0.43 | 0.43 |
| 3/11/20 | MCC - edit proposed search term list | 0.35 | 0.35 |
| 3/11/20 | MCC - edit proposed search term list | 0.27 | 0.27 |
| 3/11/20 | MCC - edit proposed search term list | 0.77 | 0.77 |
| 3/12/20 | TC with Rob Torres re discovery issues | 0.95 | 0.95 |
| 3/13/20 | Email to RT re ESI | 0.15 | 0.15 |
| 3/13/20 | Review translation by YY of MCC docs | 0.32 | 0.32 |
| 3/13/20 | Review MCC discovery and find docs for translation; prepare email to Yuan Yuan | 3.17 | 3.17 |
| 3/14/20 | Review MCC discovery and find docs for translation; prepare email to Yuan Yuan | 1.40 | 1.40 |

| 3/26/20 | Edit YY translations of MCC docs | 0.57 | 0.57 |
| 3/26/20 | Investigate producing MCC computer files | 0.62 | 0.62 |
| 3/27/20 | Investigate producing MCC computer files | 0.23 | 0.23 |
| 3/27/20 | Review FBI files for MCC that produced; review need for translation | 0.45 | 0.45 |
| 3/27/20 | Review translated documents | 0.58 | 0.58 |
| 3/27/20 | Review translated documents | 2.48 | 2.48 |
| 3/28/20 | Work on draft stipulation for MCC productions; research FRE; sort documents and create Index | 0.87 | 0.87 |
| 3/28/20 | Work on draft stipulation for MCC productions; research FRE; sort documents and create Index | 1.63 | 1.63 |
| 3/28/20 | Draft email to Times Wang re: stipulation | 0.22 | 0.22 |
| 4/1/20 | Review MCC updated roggs; draft deficiency letter to MCC | 2.25 | 2.25 |
| 4/9/20 | Review documents on MCC computer, identify for translation | 1.20 | 1.20 |
| 4/9/20 | Review MCC updated rogg and exhibits | 0.48 | 0.48 |
| 4/10/20 | Draft email responding to MCC's update | 0.43 | 0.43 |
| 4/10/20 | Edit Yuan Yuan translations of MCC docs | 0.42 | 0.42 |
| 4/10/20 | Edit Yuan Yuan translations of MCC docs | 2.18 | 2.18 |
| 4/11/20 | Review MCC computer files spreadsheet from MO | 0.22 | 0.22 |
| 4/13/20 | Review MCC production of documents | 2.33 | 2.33 |
| 4/20/20 | Research how to authenticate MCC computer documents | 0.67 | 0.67 |
| 4/21/20 | Review MCC document translations by RF and JM | 1.07 | 1.07 |
| 4/22/20 | Edit search terms for MCC ESI search; update emails for IPI to upload; update IPI search term list | 1.18 | 0.59* |
| 4/23/20 | Edit search terms for MCC ESI search; update emails for IPI to upload; update IPI search term list | 0.82 | 0.41* |
| 4/23/20 | Edit MCC search term list | 0.37 | 0.37 |
| 4/23/20 | Draft Touhy response letter to DOJ re MCC files | 1.48 | 1.48 |
| 4/24/20 | Draft Touhy response letter to DOJ re MCC files | 0.67 | 0.67 |
| 4/24/20 | Review MCC doc translations; edit MCC search terms | 0.62 | 0.62 |
| 4/24/20 | Review MCC doc translations; edit MCC search terms | 0.78 | 0.78 |
| 4/30/20 | MCC - go through computer hard drive files, WeChat | 1.30 | 1.30 |
| 4/30/20 | MCC - computer files, extract metadata into excel sheet and authentication | 0.97 | 0.97 |
| 4/30/20 | MCC - draft stipulation re evidence authenticity, hearsay, including time on research of these issues | 0.32 | 0.32 |

| | | | |
|---|---|---|---|
| 4/30/20 | MCC - draft stipulation re evidence authenticity, hearsay, including time on research of these issues | 0.53 | 0.53 |
| 5/1/20 | MCC - respond to RT email on dates for search; email on search terms | 0.37 | 0.37 |
| 5/1/20 | MCC - Research on Chinese state secrets law | 0.67 | 0.67 |
| 5/1/20 | MCC - Research on Chinese state secrets law; respond to search term comments, email to RT | 2.93 | 2.93 |
| 5/2/20 | GM - letter re: MOFCOM/Suzhou govt inspection | 0.27 | 0.27 |
| 5/10/20 | Review translations of MCC computer docs by Jorja and YY | 2.32 | 2.32 |
| 5/10/20 | Review summary of MCC computer docs by YY | 1.18 | 1.18 |
| 5/10/20 | Review MCC hit report on emails and search terms | 0.80 | 0.80 |
| 5/10/20 | Draft declaration re: evidence produced by MCC | 0.45 | 0.45 |
| 5/10/20 | MCC - web conference with RT, MCC and ESI vendor re: search terms, parameters | 1.17 | 1.17 |
| 5/11/20 | MCC - update search terms | 0.52 | 0.52 |
| 5/11/20 | MCC - update search terms | 0.13 | 0.13 |
| 5/11/20 | MCC - narrow search terms | 2.28 | 2.28 |
| 5/12/20 | Review GM affidavit sent by TM re ESI | 0.62 | 0.62 |
| 5/12/20 | Emails re discovery issues to MCC and GM | 0.48 | 0.48 |
| 5/13/20 | MCC - prepare documents for MCC to authenticate, email to RT re same | 0.48 | 0.48 |
| 5/13/20 | Review MCC discovery production, list of custodians; prepare for call with RT | 0.50 | 0.50 |
| 5/13/20 | MCC - narrow search terms | 0.50 | 0.50 |
| 5/13/20 | TC with Rob Torres re discovery issues | 0.87 | 0.87 |
| 5/13/20 | MCC - narrow search terms | 0.58 | 0.58 |
| 5/15/20 | Review translation of Gold Mantis contracts | 0.27 | 0.27 |
| 5/15/20 | Review GM discovery, investigate subcontractor payments and principals | 2.88 | 2.88 |
| 5/17/20 | TC with GM re meet and confer on protective order, scheduling, CA subpoena, affidavit forthcoming; MOFCOM report; meet and confer on bank records | 0.23 | 0.23 |
| 5/19/20 | Review J Ma translation of MCC FBI docs | 0.48 | 0.48 |
| 6/2/20 | Review GM production, identify deficiencies | 1.10 | 1.10 |
| 6/2/20 | Draft email to TM re GM discovery deficiencies | 0.32 | 0.32 |
| 6/3/20 | TC with RT (MCC) re ESI issues | 0.87 | 0.87 |

| | | | |
|---|---|---|---|
| 6/3/20 | TC with Tibi (GM) re discovery issues | 0.28 | 0.28 |
| 6/4/20 | Review MCC edits to stipulation | 0.12 | 0.12 |
| 6/7/20 | Review MCC edits to declaration/stipulation re admissibility | 0.25 | 0.25 |
| 6/8/20 | Review MCC stipulations, MCC search terms | 2.08 | 2.08 |
| 6/9/20 | Review MCC stipulations, MCC search terms | 0.40 | 0.40 |
| 6/25/20 | Review MCC search term proposals | 1.58 | 1.58 |
| 7/13/20 | TC with RT (MCC) re extending deadline to amend complaint, discovery deadlines | 0.58 | 0.58 |
| 7/26/20 | MCC - review ESI search terms | 1.57 | 1.57 |
| 8/1/20 | MCC - review ESI search terms revisions | 0.38 | 0.38 |
| 8/2/20 | MCC - review ESI searchh terms, email to RT | 0.30 | 0.30 |
| 8/2/20 | MCC - review affidavit on documents produced by MCC, email to Rob | 0.40 | 0.40 |
| 8/8/20 | Review MCC search terms; analyze superseding indictment; draft email to RT | 1.27 | 1.27 |
| 8/9/20 | TC with RT re ESI discovery, Rule 54 issues | 0.62 | 0.31* |
| 8/10/20 | MCC - edits to ESI, ESI protocol, email to RT regarding same | 0.88 | 0.88 |
| 8/11/20 | Draft email to RT re e-discovery with MCC | 0.22 | 0.22 |
| 8/12/20 | TC with BB re strategy on 54(b), contact by GM, settlement, etc. | 1.17 | 0.585* |
| 8/14/20 | Respond to MCC emails re ESI | 0.13 | 0.13 |
| **Total** | | 167.37 | **164.14** |

Note: Hours marked with an (*) represent hours discounted by half due to blockbilling.

**APPENDIX B**
KESSLER'S HOURS EXCLUDED

| Date | Tasks | Hours Requested | Hours Excluded |
|------|-------|-----------------|----------------|
| 9/12/19 | Go through and Summarize OSHA documents (GM 1198879) | 1.28 | 1.28 |
| 9/12/19 | Go through and Summarize OSHA documents (GM 1198879) | 2.43 | 2.43 |
| 9/13/19 | Go through MCC OSHA 1198878 and summarize | 1.87 | 1.87 |
| 9/13/19 | Go through MCC OSHA 1198878 and summarize | 1.05 | 1.05 |
| 9/13/19 | Go through MCC OSHA 1198878 and summarize | 1.80 | 1.80 |
| 9/13/19 | MCC 1195407 (OSHA case) summarize | 0.87 | 0.87 |
| 9/16/19 | MCC 1195407 (OSHA case) summarize | 1.32 | 1.32 |
| 9/16/19 | MCC 1195407 (OSHA case) summarize | 0.88 | 0.88 |
| 9/16/19 | MCC 1195407 (OSHA case) summarize | 0.98 | 0.98 |
| 9/17/19 | MCC 1195407 (OSHA case) summarize | 0.73 | 0.73 |
| 9/19/19 | Go through the MCC filings on the HKEX website look for Saipan mentions | 1.43 | 1.43 |
| 9/20/19 | Research MCC entities | 0.68 | 0.68 |
| 9/23/19 | MCC Entities Research | 1.27 | 1.27 |
| 9/24/19 | MCC Entities Research | 0.25 | 0.25 |
| 9/24/19 | MCC Corporate Research | 1.78 | 1.78 |
| 9/24/19 | MCC research edit based on Aaron comments | 0.78 | 1.78 |
| 9/25/19 | Find GM report which has HBA info and send to Aaron | 0.45 | 0.45 |
| 9/25/19 | Research on HBA, connection to GM | 0.53 | 0.53 |
| 9/26/19 | Find and analyze Torres responses to OSHA | 1.02 | 1.02 |
| 9/26/19 | Search http://www.20mcc.com.cn/ website for mentions of Saipan | 0.42 | 0.42 |
| 9/26/19 | Search http://www.20mcc.com.cn/ website for mentions of Saipan | 0.15 | 0.15 |
| 11/11/19 | Gold Mantis Custodians Chart | 1.63 | 1.63 |
| 11/11/19 | Gold Mantis Custodians Chart | 0.12 | 0.12 |
| 11/11/19 | Gold Mantis Custodians Chart | 0.18 | 0.18 |
| 11/11/19 | Gold Mantis Production Chart (edit and read new documents) | 0.85 | 0.85 |
| 11/12/19 | Gold Mantis Production Chart (edit and read new documents) | 2.08 | 2.08 |

| 11/12/19 | Gold Mantis Production Chart (edit and read new documents) | 2.38 | 2.38 |
|---|---|---|---|
| 11/14/19 | Summarize new Gold Mantis production | 1.65 | 1.65 |
| 11/15/19 | Edit MCC Custodian List based on FBI info | 0.25 | 0.25 |
| 11/18/19 | Research Suzhou GM connection to our case | 0.45 | 0.45 |
| 11/18/19 | Go through Aaron comment on GM Production Summary | 0.67 | 0.67 |
| 11/19/19 | MCC Custodian list - find emails | 2.07 | 0.25 |
| 11/20/19 | Create list of MCC CNMI and China entities connections | 1.15 | 1.15 |
| 11/20/19 | MCC FBI production - Aaron questions | 0.95 | 0.95 |
| 11/21/19 | MCC discovery emails | 0.40 | 0.40 |
| 11/21/19 | Figure out who signed MCC document | 0.18 | 0.18 |
| 11/21/19 | Response to MCC Custodian Chart comments | 0.47 | 0.47 |
| 11/21/19 | Response to MCC Custodian Chart comments | 0.23 | 0.23 |
| 11/21/19 | Response to MCC Custodian Chart comments | 0.50 | 0.50 |
| 11/21/19 | List of GM China and GM Saipan Connections | 1.23 | 1.23 |
| 11/22/19 | List Deficiencies in GM Docs | 3.58 | 3.58 |
| 12/2/19 | Search for Gold Mantis bank information | 0.53 | 0.53 |
| 12/3/19 | Gold Mantis bank information add to Google Doc | 0.08 | 0.08 |
| 12/6/19 | Update GM Custodian List based on new info | 0.33 | 0.33 |
| 12/6/19 | GM Privilege Log emails task/Convert and arrange documents | 0.37 | 0.37 |
| 12/9/19 | Add names/info from Rob's chart to our MCC Custodian list | 1.43 | 1.43 |
| 12/9/19 | Cross-check our custodian chart for MCC with Ding Yue Chart | 0.77 | 0.77 |
| 12/10/19 | Finish saving GM emails attachments and add to client summaries | 2.92 | 2.92 |
| 12/11/19 | Go through MCC Desktop Computer Harddrive and summarize | 1.93 | 1.93 |
| 12/11/19 | Go through MCC Desktop Computer Harddrive and summarize | 1.23 | 1.23 |
| 12/11/19 | Go through MCC Desktop Computer Harddrive and summarize | 2.17 | 2.17 |
| 12/11/19 | Go through MCC Desktop Computer Harddrive and summarize | 0.98 | 0.98 |
| 12/13/19 | Go through MCC Desktop Computer Harddrive and summarize | 2.28 | 2.28 |
| 12/16/19 | Go through MCC Desktop Computer Harddrive and summarize | 1.72 | 1.72 |

| 12/16/19 | Go through MCC Desktop Computer Harddrive and summarize | 3.07 | 3.07 |
|---|---|---|---|
| 12/17/19 | Go through MCC Desktop Computer Harddrive and summarize | 2.23 | 2.23 |
| 12/17/19 | Go through MCC Desktop Computer Harddrive and summarize | 1.40 | 1.40 |
| 12/17/19 | Go through MCC Desktop Computer Harddrive and summarize | 1.08 | 1.08 |
| 12/19/19 | Go through MCC Desktop Computer Harddrive and summarize | 2.85 | 2.85 |
| 12/27/19 | Go through MCC Desktop Computer Harddrive and summarize | 1.38 | 1.38 |
| 12/27/19 | Go through MCC Desktop Computer Harddrive and summarize | 2.57 | 2.57 |
| 12/30/19 | Go through aaron comments on MCC summary desktop computer | 1.37 | 1.37 |
| 12/30/19 | Add dates and languages of documents in MCC summary that are missing | 1.82 | 1.82 |
| 12/30/19 | GO through Zip Files from MCC Desktop hardrive | 1.63 | 1.63 |
| 1/2/20 | Create translation list from documents on MCC Hardrive | 0.87 | 0.87 |
| 1/2/20 | Make Folder with important MCC Docs | 0.55 | 0.55 |
| 1/3/20 | Remaining Aaron comments on MCC Desktop Computer Harddrive | 0.30 | 0.30 |
| 1/3/20 | Update MCC Custodian list based on MCC Desktop Computer Harddrive | 0.57 | 0.57 |
| 1/6/20 | Add MCC Desktop Computer Files to folder and summarize | 1.15 | 1.15 |
| 1/7/20 | Go through Tiberius "ADDL" files and make sure they are in proper folders | 0.75 | 0.75 |
| 1/7/20 | Combine Tiberius emails and attachments (convert excel to pdf) | 1.67 | 1.67 |
| 1/8/20 | Create search term list for MCC and Gold Mantis and updating Custodian lists | 2.47 | 2.47 |
| 1/8/20 | Create search term list for MCC and Gold Mantis and updating Custodian lists | 3.83 | 3.83 |
| 1/9/20 | Create search term list for MCC and Gold Mantis and updating Custodian lists | 0.88 | 0.88 |
| 1/23/20 | Proofread letter to Torres regarding deficiencies | 2.22 | 2.22 |
| **Total** | | 94.39 | **93.57** |